Catha Worthman (SBN 230399)
Darin Ranahan (SBN 273532)
Michael Caesar (SBN 280548)
LEWIS, FEINBERG, LEE &
JACKSON, P.C.
476 9th Street
Oakland, California 94607
Telephone: (510) 839-6824
Facsimile: (510) 839-7839
cworthman@lewisfeinberg.com
dranahan@lewisfeinberg.com
mcaesar@lewisfeinberg.com

Charles Trudrung Taylor (SBN 127105)
Ana de Alba (SBN 253917)
LANG, RICHERT & PATCH
Fig Garden Financial Center
5200 North Palm Avenue, Fourth Floor
Fresno, California 93704
Telephone: (559) 228-6700
Facsimile: (559) 228-6727
ctt@lrplaw.net
ada@lrplaw.net

*Counsel for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY M. LINDELL, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>vs.<br><br>SYNTHES USA, SYNTHES USA SALES LLC, SYNTHES SPINE COMPANY, LP,<br><br>Defendants. | Case No.: No. 11-cv-02053-LJO-BAM<br><br>**PLAINTIFF'S OBJECTIONS TO DEFENDANTS' SUPPLEMENTAL STATEMENT OF UNDISPUTED FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS AND DEFENDANTS' DECLARATORY JUDGMENT COUNTERCLAIMS; ADDITIONAL SUPPLEMENTAL FACTS**<br><br>**Court:**  Hon. Lawrence O'Neill<br>**Courtroom:** Department 4<br>**Date:**  December 10, 2015<br>**Time:**  8:30 a.m. |

Plaintiff responds to Defendants' Synthes USA, Synthes USA Sales LLC, and Synthes

Spine Company LP (collectively, "Synthes") Supplemental Statement of Undisputed Facts in

support of their Motion for Summary Judgment and Motion to Decertify the Class, as follows.

Below each "fact" that Synthes has identified, Plaintiff notes agreement that the fact is undisputed, where true, or identifies where the contention is disputed, along with the basis for the contention.  This document is referred to in Plaintiff's Opposition to Defendants' Motion for Summary Judgment as "SOF."

## I.   UNDISPUTED BACKGROUND FACTS RELATING TO THE PARTIES.

1.      Plaintiff Troy Lindell is a former Sales Consultant in California for Synthes' Trauma division.  *See* Ex. 57 (Dep. Ex. 9) at SYNTHES-000073-74; *See also* Ex. 5, Lindell Dep. at 10:19-20, 82:22-83:1.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

2.      Defendant Synthes is a worldwide leader in the medical device industry, and designs, manufactures, markets, and sells medical implants and instrumentation used in orthopedic surgeries by surgeons and hospitals throughout the United States.   *See* Ex. 24, Shillinglaw Decl. ¶¶ 3-4.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

3.      Synthes merged with Johnson & Johnson effective June 14, 2012.  *See* Ex. 7, Meister (12/19/12) Dep. at 74:15-75:18.  As part of this merger, Synthes was integrated with Johnson & Johnson's DePuy business unit to create a new business unit named the DePuySynthes Companies of Johnson & Johnson.  *See* Ex. 7, Meister (12/19/12) Dep. at 75:12-18;  *See also* "Johnson & Johnson Announces Completion of Synthes Acquisition," *available at* http://www.jnj.com/news/all/johnson-and-johnson-announces-completion-of-synthes-acquisition (last checked September 4, 2015).

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

## II.   UNDISPUTED BACKGROUND FACTS RELATING TO PLAINTIFF / COUNTER-DEFENDANT TROY LINDELL

4.      Lindell is the only named plaintiff in this case.  *See* Dkt. 149 at 3.  Mark Pope was previously a named plaintiff, but Pope dismissed his claims with prejudice on June 18, 2012.  *See* Dkt. 50.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

5.     Lindell began employment with Synthes on July 19, 1999 as a Sales Consultant in the Trauma division.  *See* Ex. 57 (Dep. Ex. 9) at SYNTHES-000073-74.  Synthes assigned Lindell to a new "expansion territory" in Bakersfield, California.  *See* Ex. 5, Lindell Dep. at 56:5-17;  *See also* Ex. 58 (Dep. Ex. 10) at SYNTHES-000062.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

6.     In or around May 2002, Lindell transferred from the Bakersfield territory to a territory in Fresno, California.  *See* Ex. 5, Lindell Dep. at 132:2-15; *See also* Ex. 66 (Dep. Ex. 28) at SYNTHES-000041.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

7.     Lindell resigned from employment with Synthes in May 2011.  *See* Ex. 5, Lindell Dep. at 82:22-83:1.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

**III.    UNDISPUTED BACKGROUND FACTS RELATING TO THE CLASS.**

8.     On May 6, 2014, the Court certified two classes of current and former Sales Consultants employed by Synthes in California, an "Expense Class" and a "Deduction Class." *See* Dkt. 149.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

9.     The Court defined the "Expense Class" as follows:

> [A]ll former, current, and future sales consultants who have been are, or will be employed by Synthes in California from four years prior to the filing of this action (December 13, 2007) to the date of final disposition, and who are subject to the following straight commission compensation policies:
>
> The policy that sales consultants from the Trauma and Spine Sales Divisions who receive straight commission are not eligible for an automobile allowance or in-territory business expense reimbursement; and
>
> The policy that sales consultants from the CMF Sales Division receive a predetermined base salary of $30,000, plus a higher level of commission with no expenses

*See* Dkt. 149 at 2.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

10.     The Court defined the "Deduction Class" as follows:

[A]ll former, current, and future Sales Consultants who have been, are, or will be employed by Synthes in California from four years prior to the filing of this action (December 13, 2007) to the date of final disposition, who at some time during Synthes' employ had a deduction assessed against them

*See* Dkt. 149 at 2-3.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

11.     Lindell is the only class representative for the Expense Class and the Deduction Class.  *See* Dkt. 149 at 3.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

**IV.    UNDISPUTED BACKGROUND FACTS RELATING TO SYNTHES AND ITS SALES CONSULTANTS.**

12.     Synthes has a number of operating divisions, including the three divisions at issue in this case, Trauma, Spine, and Craniomaxillofacial ("CMF").  *See* Ex. 24, Shillinglaw Decl. ¶ 4.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

13.     Each operating division has its own sales force through which Synthes sells its products to its customers.  *See* Ex. 24, Shillinglaw Decl. ¶ 4.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

14.     Each operating division is divided into multi-state "areas" that are overseen by Area Vice Presidents.  "Areas" are divided into "regions" that are overseen by Regional Managers.  "Regions" consist of unique geographic "territories" that are assigned to sales consultants.  *See* Ex. 24, Shillinglaw Decl. ¶¶ 5-6.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

1    15.    In their territories, sales consultants are responsible not only for the sale of

2   Synthes' products, but for all aspects of Synthes' business.  Cynthia Shillinglaw, a retired

3   Synthes employee who worked for more than thirty years as a Sales Consultant, Regional

4   Manager, and Area Vice President, explained:

> Sales Consultants operate with a large degree of autonomy and are the only Synthes representatives within their territories with the customer relationships necessary to manage the day-to-day aspects of the company's business.  Sales Consultants are therefore responsible not only for the sale of Synthes' products, but also for all aspects of Synthes' business in their territories, including customer relations, training, evaluation of equipment, inventory management, surgical coverage, availability of products for use in surgery, record-keeping of items used in surgery, billing and payment, and advancement of new products and techniques for surgery.

*See* Ex. 24, Shillinglaw Decl. ¶ 8.

**DISPUTED.  This is not a material fact.  Furthermore, Labor Code sections 221, 223, and 300 make any deduction from an employee's wages unlawful regardless of Ms. Shillinglaw's declaration.  See Plaintiff's objections to evidence filed concurrently herewith.**

16.    Laurie Hurley, a Sales Administration Manager for the Trauma division, explained further that "Sales Consultants have the responsibility to manage the ordering processes and any necessary follow-up in their assigned accounts to ensure that Synthes is provided with a valid purchase order so that it may obtain payment for products used in surgery or provided to a hospital for evaluation."  *See* Ex. 18, Hurley (10-28-13) Decl. ¶ 2.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

17.    Jacqueline Meister, Synthes' Rule 30(b)(6) corporate representative, explained further that territories "are like mini-franchises" and sales consultants "really run their own business" in their territories.  *See* Ex. 7, Meister (12-19-12) Dep. at 158:2-12.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

18.    Lindell agreed at his deposition that he was "given a high degree of independence" by Synthes "to manage [his] own territory."  *See* Ex. 5, Lindell Dep. at 79:13-16.

Lindell was "the key interface between the company in all aspects of the company and the accounts for which [he was] responsible" during his employment with Synthes. *See id.* at 79:17-20.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

**V.     UNDISPUTED FACTS RELATING TO THE EXPENSE CLAIM.**

       **A.     Background on Synthes' Sales Consultant Compensation Formula.**

       19.      Synthes compensates its Sales Consultants pursuant to a compensation formula that originated in the Trauma division. *See* Ex. 17, R. Gennett Decl. ¶¶ 1-18. The Trauma division's compensation formula was subsequently adopted, with modification, by the Spine and CMF divisions. *See id.* at ¶ 19.

       **DISPUTED.  Plaintiff disputes the existence of a "compensation formula." No written documents exist that show Synthes used such a "formula" for the Expense Class. E.g., UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members. UMF Nos. 17, 21, 23, 26, 47-51. Additionally, class members have testified that there was no "formula" as Synthes is using the term.  *See, e.g.*, Warne Decl. ¶¶ 5, 10-11, ECF No. 89-16; Marsh Decl. ¶¶ 5, 10-11, ECF No. 89-15; Hayes Decl. ¶¶ 5, 10, 12, ECF No. 89-14; Lindell Decl. ¶¶ 4, 7, ECF No. 89-8; Harrison Decl. ¶¶ 5, 10-11, ECF No. 89-9; Ranahan Decl. Ex. A (Garaygordobil Decl.) ¶¶ 4-5, 7; Ranahan Decl. Ex. B (Greenman Decl.) ¶¶ 4-5, 7; Ranahan Decl. Ex. C (Myers Decl.) ¶¶ 4-5, 7; Ranahan Decl. Ex. D (Reitmeier Decl.) ¶¶ 4-5, 7; Ranahan Decl. Ex. E (Simons Decl.) ¶¶ 4-5, 7; Ranahan Decl. Ex. F (Spotts Decl.) ¶¶ 4-5, 7 (all declarations of class members, collectively, hereinafter Class Member Declarations"). See also Plaintiff's objections to evidence filed concurrently herewith.**

       20.      Sales Consultants in the Trauma, Spine, and CMF divisions typically start employment on a "base compensation plan," and receive a base salary, reduced commission rate,

car allowance, and allowance for direct reimbursement of in-territory business expenses.  *See* Ex.
61 (Dep. Ex. 20) at P000407; Ex. 62 (Dep. Ex. 21) at SYNTHES-000427, 000432, 000436; Ex.
63 (Dep. Ex. 22) at SYNTHES-000532, 000536, 000540; Ex. 92 (Dep. Ex. 205) at SYNTHES-
003573-74, 003576-77, 003580-81; Ex. 86 (Dep. Ex. 199) at SYNTHES-003542-43; Ex. 91
(Dep. Ex. 204) at SYNTHES-003560; Ex. 83 (Dep. Ex. 194) at SYNTHES-008073; Ex. 87
(Dep. Ex. 200) at SYNTHES-008094-95; Ex. 90 (Dep. Ex. 203) at SYNTHES-009266-67; Ex.
95 (Dep. Ex. 215) at SYNTHES-009287.  Sales Consultants may convert from the base
compensation plan to a "straight commission plan" when their in-territory sales reach a specified
threshold.  *See* Ex. 61 (Dep. Ex. 20) at P000407; Ex. 62 (Dep. Ex. 21) at SYNTHES-000427-28,
000432, 000436; Ex. 63 (Dep. Ex. 22) at SYNTHES-000532, 000536, 000540-41; Ex. 92 (Dep.
Ex. 205) at SYNTHES-003573-74, 003576-77, 003580-81; Ex. 86 (Dep. Ex 199) at SYNTHES-
003545; Ex. 91 (Dep Ex. 204) at SYNTHES-003563;  Ex. 83 (Dep. Ex. 194) at SYNTHES-
008076-77; Ex. 87 (Dep. Ex. 200) at SYNTHES-008098; Ex. 90 (Dep. Ex. 203) at SYNTHES-
009269-70; Ex. 95 (Dep. Ex. 215) at SYNTHES-009292-93.

**DISPUTED.  Plaintiff disputes that Sales Consultants in these divisions always started their employment with a base compensation plan.  Some Sales Consultant were immediately hired as commission-only Sales Consultants, others did not have to meet a territory threshold in order to be transferred to commission only, and others were transferred prior to meeting any "threshold" at all. See Plaintiff's objections to evidence filed concurrently herewith.**

21.     In each division, the conversion threshold is set at a level of annualized sales
where a Sales Consultant's total compensation under the straight commission plan will cover and
exceed the combined base salary, reduced commission rate, car allowance, and allowance for
direct reimbursement of in-territory business expenses under the base plan.  *See* Ex. 17, R.
Gennett Decl. ¶¶ 14-19; Ex. 21, Landau Decl. ¶¶ 2-3; Ex. 15, Bertz Decl. ¶ 2; Ex. 14, Bennett
(9-18-15) Decl. ¶¶ 2-3; *See also* Ex. 61 (Dep. Ex. 20) at P000407-08; Ex. 62 (Dep. Ex. 21) at

SYNTHES-000427-28, 000432, 000436; Ex. 63 (Dep. Ex. 22) at SYNTHES-000532-33, 000536, 000540-41; Ex. 92 (Dep. Ex. 205) at SYNTHES-003573-74, 003576-77, 003580-81; Ex. 86 (Dep. Ex. 199) at SYNTHES-003545; Ex. 91 (Dep. Ex. 204) at SYNTHES-003563; Ex. 83 (Dep. Ex. 194) at SYNTHES-008076-77; Ex. 87 (Dep. Ex. 200) at SYNTHES-008098; Ex. 90 (Dep. Ex. 203) at SYNTHES-009269-70; Ex. 95 (Dep. Ex. 215) at SYNTHES-009292-93;

**DISPUTED. Plaintiff disputes the existence of a "compensation formula." No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)) . To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members. UMF Nos. 17, 21, 23, 26, 47-51. Additionally, class members have testified that there was no "formula" as Synthes is using the term. See Class Member Declarations. See also Plaintiff's objections to evidence filed concurrently herewith.**

B.      The Sales Consultant Compensation Formula in the Trauma Division.

1.      Overview of the Trauma Division's Compensation Formula.

22.     Throughout and preceding the class period, Synthes has compensated Sales Consultants in the Trauma division pursuant to the following formula:

*Annualized sales x 12.5% commission >*

*Base salary + 4% commission + car allowance + direct expense reimbursement allowance*

*See* Ex. 17, R. Gennett Decl. ¶¶ 14-19; *See also* Ex. 61 (Dep. Ex. 20) at P000407-08; Ex. 62 (Dep. Ex. 21) at SYNTHES-000427-28, Ex. 63 (Dep. Ex. 22) at SYNTHES-000540-41; Ex. 92 (Dep. Ex. 205) at SYNTHES-003573-74; Ex. 86 (Dep. Ex. 199) at SYNTHES-003542-43; Ex. 83 (Dep. Ex. 194) at SYNTHES-008073-74; Ex. 90 (Dep. Ex. 203) at SYNTHES-009266.

**DISPUTED. Plaintiff disputes the existence of a "compensation formula." No**

**written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations. See also Plaintiff's objections to evidence filed concurrently herewith.**

23.    One side of the compensation formula is the base compensation plan.  In the Trauma division, the base plan offers Sales Consultants a base salary, a reduced 4% commission rate, a car allowance, and an allowance for direct reimbursement of in-territory business expenses.  *See* Ex. 17, R. Gennett Decl. ¶¶ 11, 16-17;  Ex. 61 (Dep. Ex. 20) at        P000407; Ex. 62 (Dep. Ex. 21) at SYNTHES-000427; Ex. 63 (Dep. Ex. 22) at SYNTHES-000540; Ex. 86 (Dep. Ex. 199) at SYNTHES-003542-43; Ex. 83 (Dep. Ex. 194) at SYNTHES-008073; Ex. 90 (Dep. Ex. 203) at SYNTHES-009266.

**DISPUTED.  Plaintiff disputes the existence of a "compensation formula." No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations. See also Plaintiff's objections to evidence filed concurrently herewith.**

24.    The other side of the compensation formula is the straight commission compensation plan.  In the Trauma division, the straight commission plan offers Sales

Consultants an enhanced commission rate (12.5%) that is designed to include all of the elements of the base compensation plan.  Ex. 61 (Dep. Ex. 20) at P000407-08; Ex. 62 (Dep. Ex. 21) at SYNTHES-000427-28; Ex. 63 (Dep. Ex. 22) at SYNTHES-000540; Ex. 92 (Dep. Ex. 205) at SYNTHES-003573-74; Ex. 86 (Dep. Ex. 199) at SYNTHES-003543, 003545; Ex. 83 (Dep. Ex. 194) at SYNTHES-008073-74, 008076-77; Ex. 95 (Dep. Ex. 215) at SYNTHES-009267-68.

**DISPUTED.  Plaintiff disputes the existence of a "compensation formula." No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations.  See also Plaintiff's objections to evidence filed concurrently herewith.**

### 2.    The Design of the Compensation Formula.

25.    Synthes designed the compensation formula to always reimburse or indemnify sales consultants' necessary business expenses.

**DISPUTED.  Plaintiff disputes the existence of a "compensation formula." No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations.  See also Plaintiff's objections to evidence filed concurrently herewith.**

26.     Prior to 1990, Sales Consultants were independent contractors.  *See* Ex. 17, R. Gennett Decl. ¶ 9; Ex. 24, Shillinglaw Decl. ¶ 17; *See also* Ex. 29, Becky Decl. ¶ 2 at SYNTHES-003462 ("I first started with Synthes in or around 1989 as a sub-agent of an Independent Agent.  I became a direct employee of Synthes in or around 1990."); Ex. 56, Wisner Decl. ¶ 2 at SYNTHES-003520 ("I began work as a Sales Consultant employed by Synthes on or about January 1, 1990.  Before then I was an Independent Consultant for Synthes.  I started in this independent contractor role for Synthes in 1981.").

**UNDISPUTED but see also Plaintiff's objections to evidence filed concurrently herewith.**

27.     As independent contractors, Sales Consultants were paid by commission on their sales and were responsible for their own business expenses.  *See* Ex. 24, Shillinglaw Decl. ¶ 17; *See also* Ex. 2, Birchler Dep. at 39:2-5 ("Q: You were responsible for your own expenses when you were an independent contractor, correct?; A: Yes.").

**UNDISPUTED but see also Plaintiff's objections to evidence filed concurrently herewith.**

28.     In 1990, Synthes extended offers of employment, with benefits such as a medical and 401(k) plan, to the Sales Consultants.  *See* Ex. 17, R. Gennett Decl. ¶ 9; Ex. 24, Shillinglaw Decl. ¶ 17; Ex. 29, Becky Decl. ¶ 2 at SYNTHES-003462; Ex. 56, Wisner Decl. ¶ 2 at SYNTHES-003520;  *Cf.* Ex. 2, Birchler Dep. at 36:7-9 ("It was a few years, several years after I started [in 1983] that we converted to being direct employees.").

**UNDISPUTED but see also Plaintiff's objections to evidence filed concurrently herewith.**

29.     When Synthes made its Sales Consultants employees in 1990, Synthes adopted a compensation policy that offered a 12.5% commission rate on in-territory sales, with indemnification for in-territory business expenses built into this commission rate.  *See* Ex. 17, R. Gennett Decl. ¶ 9.  By indemnifying Sales Consultants for their business expenses through an

1   enhanced commission rate, Synthes made the decision not to have the administrative cost and

2   burden of a direct expense reimbursement system.  *See id.*

3      **DISPUTED.  Plaintiff disputes the existence of a "compensation policy." No written**

4   **documents exist that show Synthes informed the Expense Class of such a policy. UMF No.**

5   **47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for**

6   **Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the**

7   **absence of any "formula" allocating a set amount to expenses, because under its facial**

8   **policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17,**

9   **21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as**

10  **Synthes is using the term.  See Class Member Declarations. See Plaintiff's objections to**

11  **evidence filed concurrently herewith.**

12     30.   Both as independent contractors and as employees immediately following the

13  1990 conversion, Trauma Sales Consultants were responsible for large territories, both

14  geographically and in terms of the number of customers in the territories.  *See* Ex. 24,

15  Shillinglaw Decl. ¶ 17;  Ex. 17, R. Gennett Decl. ¶ 6.

16     **UNDISPUTED but see also Plaintiff's objections to evidence filed concurrently**

17  **herewith.**

18     31.   In the mid-1990's, the Trauma division recognized that there were many areas of

19  the country and hospitals where there was under-penetration of the market because the company

20  had no or limited physical coverage by Sales Consultants.  *See* Ex. 24, Shillinglaw Decl. ¶ 18.

21  The Trauma division thus began to create new, smaller "expansion territories" from the larger

22  existing territories in an effort to increase the company's market penetration.  *See id.* ¶ 19; Ex.

23  17, R. Gennett Decl. ¶ 6.

24     **UNDISPUTED but see also Plaintiff's objections to evidence filed concurrently**

25  **herewith.**

26     32.   The Trauma division recognized that these expansion territories, which typically

began with annual sales of approximately $400,000, would not immediately generate the level of Sales Consultant income that the 12.5% commission structure was designed to achieve and would not generate sufficient income to attract and retain new talent.  *See* Ex. 24, Shillinglaw Decl. ¶ 19; *See also* Ex. 17, R. Gennett Decl. ¶ 11.

**DISPUTED.  This fact is immaterial.  Synthes' subjective belief regarding the purpose of the conversion threshold is irrelevant.  Whatever their beliefs are, they do not show that Synthes established a policy that reimburses its Sales Consultants for expenses, communicates a specific apportionment between wages and expenses, or fully indemnifies the Sales Consultants for their reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)).  See Plaintiff's objections to evidence filed concurrently herewith.**

33.     The Trauma division therefore also at that time developed a new base compensation structure that offered Sales Consultants a fixed salary of $32,000 to $35,000, a 4% commission rate, a $400 monthly car allowance (that would be paid directly to Sales Consultants), and a $900 monthly allowance for in-territory business expenses (that would be submitted for direct reimbursement).  *See* Ex. 17, R. Gennett Decl. ¶¶ 11, 16; *See also* Ex. 24, Shillinglaw Decl. ¶ 19.

**DISPUTED.  This fact is immaterial.  Synthes' subjective belief regarding the purpose of the conversion threshold is irrelevant.  Whatever their beliefs are, they do not show that Synthes established a policy that reimburses its Sales Consultants for expenses, communicates a specific apportionment between wages and expenses, or fully indemnifies the Sales Consultants for their reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)).  See Plaintiff's objections to evidence filed concurrently herewith.**

34.     Rick Gennett, who at the time was the National Sales Manager for the Trauma division, was the architect of the expansion territory plan and the base compensation structure.  *See* Ex. 17, R. Gennett Decl. ¶¶ 6, 11-12.

1  **UNDISPUTED but see also Plaintiff's objections to evidence filed concurrently**

2  **herewith.**

3      35.     The Trauma division designed the new base compensation structure as a

4  "stepping-stone" to the existing straight commission compensation structure.  *See* Ex. 17, R.

5  Gennett Decl. ¶¶ 11-12.  Rick Gennett explained that "[b]y paying market rate for talent,

6  providing capital equipment and training, and directly reimbursing expenses, the sales consultant

7  had the opportunity to grow the territory without the potential insecurity of starting from day one

8  on straight commission." *See id.* ¶ 12.

9      **DISPUTED.  This fact is immaterial.  Synthes' subjective belief regarding the**

10  **purpose of the conversion threshold is irrelevant.  Whatever their beliefs are, they do not**

11  **show that Synthes established a policy that reimburses its Sales Consultants for expenses,**

12  **communicates a specific apportionment between wages and expenses, or fully indemnifies**

13  **the Sales Consultants for their reasonably necessary business expenses.  UMF No. 47; see**

14  **also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of**

15  **Docs. (Set Four)). See Plaintiff's objections to evidence filed concurrently herewith.**

16      36.     Rick Gennett explained further:

17          The carrot for the Sales Consultants was always however the
            ability ultimately to convert to straight commission because this
18          provided an opportunity to make a lot of money and substantially
            more than the base compensation plan, often by a hundred
19          thousand dollars or more. This opportunity provided a significant
            positive incentive to develop business and was an integral part of
20          the compensation system. Given that the company was
            experiencing double-digit growth throughout this period, the Sales
21          Consultants were likely to experience significant increased
            compensation.
22

23  *See* Ex. 17, R. Gennett Decl. ¶ 13.

24      **DISPUTED.  This fact is immaterial.  Synthes' subjective belief regarding the**

25  **purpose of the conversion threshold is irrelevant.  Whatever their beliefs are, they do not**

26  **show that Synthes established a policy that reimburses its Sales Consultants for expenses,**

27  **communicates a specific apportionment between wages and expenses, or fully indemnifies**

28  **the Sales Consultants for their reasonably necessary business expenses.  UMF No. 47; see**

**also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of**

**Docs. (Set Four)). See Plaintiff's objections to evidence filed concurrently herewith.**

37.     Rick Gennett also explained that Synthes "very specifically designed" the new compensation structure to provide "a sales consultant the option to convert to straight commission only if, and when, the territory reached a defined minimum threshold in projected annual sales with the intent, purpose, and effect of making sure that the sales consultant's total compensation upon conversion would: (a) include allocations for ***all*** of the base compensation package including the full car and the maximum direct reimbursement expense allowance and (b) throw off additional income." *See* Ex. 17, R. Gennett Decl. ¶ 14. *See also id*. ¶ 15 ("The compensation system was designed and implemented to include an allocation of expenses at the maximum amount allowable on the base package[.]"); *See generally* Ex. 24, Shillinglaw Decl. ¶¶ 21, 24.

**DISPUTED. This fact is immaterial. Synthes' subjective belief regarding the**

**purpose of the conversion threshold is irrelevant. Whatever their beliefs are, they do not**

**show that Synthes established a policy that reimburses its Sales Consultants for expenses,**

**communicates a specific apportionment between wages and expenses, or fully indemnifies**

**the Sales Consultants for their reasonably necessary business expenses. UMF No. 47; see**

**also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of**

**Docs. (Set Four)). See Plaintiff's objections to evidence filed concurrently herewith.**

38.     When Synthes introduced the new compensation structure in the Trauma division, the minimum threshold for conversion to the straight commission plan was set a $600,000 in annualized sales. *See* Ex. 17, R. Gennett Decl. ¶ 16.

**DISPUTED. This fact is immaterial. Synthes' subjective belief regarding the**

**purpose of the conversion threshold is irrelevant. Whatever their beliefs are, they do not**

**show that Synthes established a policy that reimburses its Sales Consultants for expenses,**

**communicates a specific apportionment between wages and expenses, or fully indemnifies**

**the Sales Consultants for their reasonably necessary business expenses. UMF No. 47; see**

**also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of**

**Docs. (Set Four)).  See Plaintiff's objections to evidence filed concurrently herewith.**

39.      As shown by the following table, at the $600,000 in annualized sales threshold, a Trauma Sales Consultant's total compensation under the straight commission structure ($75,000) included and exceeded a Trauma Sales Consultant's maximum total compensation under the combined elements of the base structure ($74,600):

|  | **Base** | **Straight Commission** |
|---|---|---|
| **Salary** | $35,000 | $0 |
| **Commissions** | $24,000 *($600,000 x 4%)* | $75,000 *($600,000 x 12.5%)* |
| **Auto Allowance** | $4,800 *($400/month x 12)* | $0 *(Indemnification)* |
| **Direct Reimbursement Allowance** | $10,800 *($900/month x 12)* | $0 *(Indemnification)* |
| **TOTAL COMPENSATION** | **$74,600** | **$75,000** |

*See* Ex. 17, R. Gennett Decl. ¶ 16.

**DISPUTED.  Plaintiff disputes the existence of a "commission structure."  Some Sales Consultants received a different commission rate and/or base salary. There is no written policy before 2013 that proves that such a "structure" existed nor that the total compensation upon conversion would include allocations of all of the base compensation package including full car and maximum expense allowance.  Furthermore, this table was not part of any documentation Synthes' Sales Consultants received when determining whether to switch to full commission. UMF No. 47, Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four) Decl. ¶ 11;  Hayes Decl. ¶ 11;  Warne Decl. ¶ 11; Marsh Decl. ¶ 11.  See Plaintiff's objections to evidence filed concurrently herewith.**

40.      Rick Gennett confirmed that the conversion threshold "was specifically and deliberately selected because the company wanted to make sure sales consultants upon conversion were indemnified for every element of their prior compensation including every penny of the car and expense allowance."  *See* Ex. 17, R. Gennett Decl. ¶ 18.  Gennett explained

1   further that "[t]his was the policy and practice after I became National Sales Manager [in 1992]
2   and has been the consistent policy and practice since then."  *Id.*

3   **DISPUTED.  This fact is immaterial.  Synthes' subjective belief regarding the**
4   **purpose of the conversion threshold is irrelevant.  Whatever their beliefs are, they do not**
5   **show that Synthes established a policy that reimburses its Sales Consultants for expenses,**
6   **communicates a specific apportionment between wages and expenses, or fully indemnifies**
7   **the Sales Consultants for their reasonably necessary business expenses.  UMF No. 47; see**
8   **also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of**
9   **Docs. (Set Four)).  See Plaintiff's objections to evidence filed concurrently herewith.**

10   41.   In 1999, the Trauma division adjusted the base compensation structure, increasing
11   the annual salary to $40,000.  *See* Ex. 17, R. Gennett Decl. ¶¶ 11, 17; *See also* Ex. 61 (Dep. Ex.
12   20) at P000407.

13   **DISPUTED.  This fact is immaterial.  Synthes' subjective belief regarding the**
14   **purpose of the conversion threshold is irrelevant.  Whatever their beliefs are, they do not**
15   **show that Synthes established a policy that reimburses its Sales Consultants for expenses,**
16   **communicates a specific apportionment between wages and expenses, or fully indemnifies**
17   **the Sales Consultants for their reasonably necessary business expenses.  UMF No. 47; see**
18   **also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of**
19   **Docs. (Set Four)). See Plaintiff's objections to evidence filed concurrently herewith.**

20   42.   At this time, the Trauma division also increased the minimum threshold for
21   conversion to $700,000 in annualized sales.  *See* Ex. 17, R. Gennett Decl. ¶ 17;  *See also* Ex. 61
22   (Dep. Ex. 20) at P000407.  Rick Gennett explained that the Trauma division increased the
23   threshold "to ensure that the total compensation upon conversion continued to provide
24   indemnification for all of the base compensation including the full car and maximum direct
25   reimbursement expense allowance."  *See* Ex. 17, R. Gennett Decl. ¶ 16; *See also* Ex. 61 (Dep.
26   Ex. 20) at P000407.

27   **DISPUTED.  This fact is immaterial.  Synthes' subjective belief regarding the**
28   **purpose of the conversion threshold is irrelevant.  Whatever their beliefs are, they do not**

**show that Synthes established a policy that reimburses its Sales Consultants for expenses, communicates a specific apportionment between wages and expenses, or fully indemnifies the Sales Consultants for their reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)).  See Plaintiff's objections to evidence filed concurrently herewith.**

43.    As shown by the following table, at the $700,000 in annualized sales threshold, a Trauma Sales Consultant's total compensation under the straight commission structure ($87,500) included and exceeded a Trauma Sales Consultant's maximum total compensation under the combined elements of the base structure in effect as of 1999 ($83,600):

| | Base | Straight Commission |
|---|---|---|
| **Salary** | $40,000 | $0 |
| **Commissions** | $28,000<br>*($700,000 x 4%)* | $87,500<br>*($700,000 x 12.5%)* |
| **Auto Allowance** | $4,800<br>*($400/month x 12)* | $0<br>*(Indemnification)* |
| **Direct Reimbursement Allowance** | $10,800<br>*($900/month x 12)* | $0<br>*(Indemnification)* |
| **TOTAL COMPENSATION** | **$83,600** | **$87,500** |

*See* Ex. 17, R. Gennett Decl. ¶ 17;  *See also* Ex. 61 (Dep. Ex. 20) at P000407.

**DISPUTED.  This fact is immaterial.  Synthes' subjective belief regarding the purpose of the conversion threshold is irrelevant.  Whatever their beliefs are, they do not show that Synthes established a policy that reimburses its Sales Consultants for expenses, communicates a specific apportionment between wages and expenses, or fully indemnifies the Sales Consultants for their reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)).  Furthermore, this table was not part of any documentation Synthes' Sales Consultants received when determining whether to switch to full commission. See Plaintiff's objections to evidence filed concurrently herewith.**

44.     Shortly thereafter, the Trauma division also increased the car allowance under the base compensation structure to $500 per month.  *See* Ex. 17, R. Gennett Decl. ¶ 17;  *See also* Ex. 62 (Dep. Ex. 21) at SYNTHES-000427-28.  The Trauma division did not adjust the conversion threshold further at this time because, at the $700,000 threshold, a Sales Consultant's total compensation under the straight commission structure ($87,500) still included and exceeded a Sales Consultant's maximum total compensation under the combined elements of the base structure adjusted to account for the higher car allowance ($84,800).  *See* Ex. 17, R. Gennett Decl. ¶ 17;  *See also* Ex. 62 (Dep. Ex. 21) at SYNTHES-000427-28.

**DISPUTED.  This fact is immaterial.  Synthes' subjective belief regarding the purpose of the conversion threshold is irrelevant.  Whatever their beliefs are, they do not show that Synthes established a policy that reimburses its Sales Consultants for expenses, communicates a specific apportionment between wages and expenses, or fully indemnifies the Sales Consultants for their reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)).  See Plaintiff's objections to evidence filed concurrently herewith.**

### 3.     The Compensation Formula in the Trauma Division During the Class Period.

45.     Throughout the class period, Synthes' Sales Policy Manuals and Compensation Plans have provided that Sales Consultants in the Trauma division generally start employment under the base compensation plan with a $40,000 base salary, a 4% commission rate, a $500 monthly car allowance, and a $900 monthly allowance for direct reimbursement of in-territory business expenses.  *See* Ex. 62 (Dep. Ex. 21) at SYNTHES-000427-28; Ex. 63 (Dep. Ex. 22) at SYNTHES-000540-41; Ex. 92 (Dep. Ex. 205) at SYNTHES-003573-74; Ex. 86 (Dep. Ex. 199) at SYNTHES-003542; Ex. 83 (Dep. Ex. 194) at SYNTHES-008073; Ex. 90 (Dep. Ex. 203) at SYNTHES-009266;  *See also* Ex. 10, Wholey Dep. at 72:16-25.

**UNDISPUTED, but misleading as there are facts that evidence that Sales Consultants in the Trauma division did not always start employment under the base compensation plan with a $40,000 base salary, a 4% commission rate, a $500 monthly car**

1    **allowance, and a $900 monthly allowance for direct reimbursement of in-territory business**

2    **expenses. See Plaintiff's objections to evidence filed concurrently herewith.**

3          46.   Throughout the class period until January 1, 2015, Synthes' Sales Policy Manuals

4    and Compensation Plans provided that Trauma Sales Consultants could convert to the straight

5    commission plan at $700,000 in annualized sales.  *See* Ex. 62 (Dep. Ex. 21) at SYNTHES-

6    000427-28; Ex. 63 (Dep. Ex. 22) at SYNTHES-000540-41; Ex. 92 (Dep. Ex. 205) at SYNTHES-

7    003573-74; Ex. 86 (Dep. Ex. 199) at SYNTHES-003542; Ex. 83 (Dep. Ex. 194) at SYNTHES-

8    008073; Ex. 90 (Dep. Ex. 203) at SYNTHES-009266.

9          **UNDISPUTED, but misleading as not all Sales Consultants converted to straight**

10   **commission plans only after reaching $700,000 in annualized sales.  In fact, some were**

11   **hired under straight commission and others converted before reaching that amount in**

12   **sales. See Plaintiff's objections to evidence filed concurrently herewith.**

13         47.   At the $700,000 in annualized sales threshold, a Trauma Sales Consultant's total

14   compensation under the straight commission structure ($87,500) included and exceeded a

15   Trauma Sales Consultant's maximum total compensation under the combined elements of the

16   base structure in effect during the class period ($83,600).  *See* Ex. 62 (Dep. Ex. 21) at

17   SYNTHES-000427-28; Ex. 63 (Dep. Ex. 22) at SYNTHES-000540-41; Ex. 92 (Dep. Ex. 205) at

18   SYNTHES-003573-74; Ex. 86 (Dep. Ex. 199) at SYNTHES-003542; Ex. 83 (Dep. Ex. 194) at

19   SYNTHES-008073; Ex. 90 (Dep. Ex. 203) at SYNTHES-009266.

20         **DISPUTED.  Plaintiff disputes the existence of a "commission structure."  Some**

21   **Sales Consultants received a different commission rate and/or base salary. There is no**

22   **written policy before 2013 that proves that such a "structure" existed nor that the total**

23   **compensation upon conversion would include allocations of all of the base compensation**

24   **package including full car and maximum expense allowance.  UMF No. 47; Ex. 14 at Nos.**

25   **74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four) Decl. ¶ 11;  Hayes Decl. ¶**

26   **11;  Warne Decl. ¶ 11; Marsh Decl. ¶ 11. See Plaintiff's objections to evidence filed**

27   **concurrently herewith.**

28         48.   The published conversion threshold in the Trauma division reflects the minimum

1   level of sales where a Sales Consultant may convert to the straight commission plan.  If, for

2   example, a Sales Consultant on the base plan has a different compensation arrangement than the

3   standard arrangement under the base plan (such as a higher base salary), the Trauma division

4   adjusts the conversion threshold to ensure that the Sales Consultant may convert only at a level

5   of annualized sales where the total compensation under the straight commission structure

6   includes and exceeds the Sales Consultant's maximum total compensation under the combined

7   elements of the Sales Consultant's base structure.  *See* Ex. 17, R. Gennett Decl. ¶ 18 ("If base

8   salary was adjusted for a specific hire or market (which happened from time to time), we would

9   adjust the conversion point for the SC so that on conversion, they were fully indemnified for all

10  their prior compensation, including the allowances."); *See also* Ex. 10, Wholey Dep. at 88:22-

11  89:1;  Ex. 9, Sorensen Dep. at 115:24-116:5.

12          **DISPUTED.  Plaintiff disputes the universal application of a "conversion**

13  **threshold."  Some Sales Consultants received a different commission rate and/or base**

14  **salary. There is no written policy before 2013 that proves that such a "structure" existed**

15  **nor that the total compensation upon conversion would include allocations of all of the base**

16  **compensation package including full car and maximum expense allowance. UMF No. 47;**

17  **Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four) Decl. ¶ 11;**

18  **Hayes Decl. ¶ 11;  Warne Decl. ¶ 11; Marsh Decl. ¶ 11. See Plaintiff's objections to**

19  **evidence filed concurrently herewith.**

20          49.     During the class period, Sales Consultants in the Trauma division in California

21  have started employment with a higher base salary of between $45,000 and $50,000 per year.

22  *See* Ex. 10, Wholey Dep. at 72:16-25; *See also* Ex. 47, Miller Decl. ¶ 3 at SYNTHES-003499

23  ($50,000 base salary in November 2009).  *Cf.* Ex. 28, Bartlett Decl. ¶ 2 at SYNTHES-003460

24  ($45,000 base salary in October 2004); Ex. 37, Felty Decl. ¶ 2 at SYNTHES-003477 ($45,000

25  base salary in May 2004); Ex. 39, D. Gennett Decl. ¶ 2 at SYNTHES-003481 ($50,000 base

26  salary in September 2007); Ex. 40, Goeckeritz Decl. ¶ 2 at SYNTHES-003483 ($45,000 base

27  salary in September 2005); Ex. 55, Turner Decl. ¶ 2 at SYNTHES-003518 ($45,000 base salary

28  in February 2005).

1    **DISPUTED.  Some Sales Consultants were immediately hired as commission only**
2    **Sales Consultants and others received a different commission rate and/or base salary.**
3    **Furthermore, there is no written policy before 2013 that proves that such a "structure"**
4    **existed nor that the total compensation upon conversion would include allocations of all of**
5    **the base compensation package including full car and maximum expense allowance.  UMF**
6    **No. 47; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)**
7    **Decl. ¶ 11;  Hayes Decl. ¶ 11;  Warne Decl. ¶ 11; Marsh Decl. ¶ 11. See Plaintiff's**
8    **objections to evidence filed concurrently herewith.**

9    50.    During the class period, Synthes has typically required Trauma Sales Consultants
10   in California to reach a threshold of $750,000 to $800,000 in annualized sales to convert to the
11   straight commission plan.  *See*, *e.g.*, Ex. 10, Wholey Dep. at 88:22-89:1 ("40 [thousand] and 4
12   [percent] was basically the formula, but I've changed it – or I've asked and pushed for a little bit
13   higher base, 45 [thousand] in one situation.  And as a result I think the territories may be 750
14   [thousand, for conversion]."); Ex. 9, Sorensen Dep. at 115:24-116:5 ("We take – we take into –
15   into account the salary plus the commissions earned, the car allowance, the expense
16   reimbursement allotment, and come up with a total package.  And, typically speaking, depending
17   on the first variable that's the – that's the guarantee or the salary, that's going to come up to that
18   – to that range of total dollar volume [for the conversion threshold]."); Ex. 9, Sorensen Decl. ¶ 7.

19   **DISPUTED.  Plaintiff disputes the existence of a "compensation formula." No**
20   **written documents exist that show Synthes used such a "formula" for the Expense Class.**
21   **UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req.**
22   **for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the**
23   **absence of any "formula" allocating a set amount to expenses, because under its facial**
24   **policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17,**
25   **21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as**
26   **Synthes is using the term.  See Class Member Declarations.  See Plaintiff's objections to**
27   **evidence filed concurrently herewith.**

28   51.    As shown by the following table, at $750,000 in annualized sales, a Trauma Sales

Consultant's total compensation under the straight commission structure ($93,750) includes and exceeds a Trauma Sales Consultant's maximum total compensation under the combined elements of the base structure in effect during the class period, adjusted to reflect a $45,000 base salary ($91,800):

|  | Base | Straight Commission |
|---|---|---|
| **Salary** | $45,000 | $0 |
| **Commissions** | $30,000<br>*($750,000 x 4%)* | $93,750<br>*($750,000 x 12.5%)* |
| **Auto Allowance** | $6,000<br>*($500/month x 12)* | $0<br>*(Indemnification)* |
| **Direct Reimbursement Allowance** | $10,800<br>*($900/month x 12)* | $0<br>*(Indemnification)* |
| **TOTAL COMPENSATION** | **$91,800** | **$93,750** |

*See* Ex. 62 (Dep. Ex. 21) at SYNTHES-000427-28; Ex. 63 (Dep. Ex. 22) at SYNTHES-000540-41; Ex. 92 (Dep. Ex. 205) at SYNTHES-003573-74; Ex. 86 (Dep. Ex. 199) at SYNTHES-003542; Ex. 83 (Dep. Ex. 194) at SYNTHES-008073; Ex. 90 (Dep. Ex. 203) at SYNTHES-009266.

**DISPUTED.  Plaintiff disputes the existence of a "commission structure."  Some Sales Consultants received a different commission rate and/or base salary. There is no written policy before 2013 that proves that such a "structure" existed nor that the total compensation upon conversion would include allocations of all of the base compensation package including full car and maximum expense allowance.  Furthermore, this table was not part of any documentation Synthes' Sales Consultants received when determining whether to switch to full commission. UMF No. 47; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four) Decl. ¶ 11;  Hayes Decl. ¶ 11;  Warne Decl. ¶ 11; Marsh Decl. ¶ 11. See Plaintiff's objections to evidence filed concurrently herewith.**

52.     As shown by the following table, at $800,000 in annualized sales, a Trauma Sales Consultant's total compensation under the straight commission structure ($100,000) includes and

exceeds a Trauma Sales Consultant's maximum total compensation under the combined elements of the base structure in effect during the class period, adjusted to reflect a $50,000 base salary ($98,800):

|  | Base | Straight Commission |
|---|---|---|
| Salary | $50,000 | $0 |
| Commissions | $32,000<br>*($800,000 x 4%)* | $100,000<br>*($800,000 x 12.5%)* |
| Auto Allowance | $6,000<br>*($500/month x 12)* | $0<br>*(Indemnification)* |
| Direct Reimbursement Allowance | $10,800<br>*($900/month x 12)* | $0<br>*(Indemnification)* |
| TOTAL COMPENSATION | $98,800 | $100,000 |

*See* Ex. 62 (Dep. Ex. 21) at SYNTHES-000427-28; Ex. 63 (Dep. Ex. 22) at SYNTHES-000540-41; Ex. 92 (Dep. Ex. 205) at SYNTHES-003573-74; Ex. 86 (Dep. Ex. 199) at SYNTHES-003542; Ex. 83 (Dep. Ex. 194) at SYNTHES-008073; Ex. 90 (Dep. Ex. 203) at SYNTHES-009266.

**DISPUTED.  Plaintiff disputes the existence of a "commission structure."  Some Sales Consultants received a different commission rate and/or base salary. There is no written policy before 2013 that proves that such a "structure" existed nor that the total compensation upon conversion would include allocations of all of the base compensation package including full car and maximum expense allowance.  Furthermore, this table was not part of any documentation Synthes' Sales Consultants received when determining whether to switch to full commission. UMF No. 47; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four) Decl. ¶ 11;  Hayes Decl. ¶ 11;  Warne Decl. ¶ 11; Marsh Decl. ¶ 11. See Plaintiff's objections to evidence filed concurrently herewith.**

53.     Effective January 1, 2015, the Trauma division adjusted its published conversion threshold to $800,000 in annualized sales.  *See* Ex. 90 (Dep. Ex. 203) at SYNTHES-009269. Laurie Hurley, a Sales Administration Manager for the Trauma division, testified that this

adjustment reflected the effect of the Medical Device Excise Tax under the Affordable Care Act, which reduces the net sales of Sales Consultants by 2.3%. *See* Ex. 4, Hurley Dep. at 142:8-143:2 ("[W]hen the law came into effect for the medical device tax, gross sales are reduced on certain product[s] by 2.3 percent; there's a tax on those. So, their gross sales are reduced. So, to make up for the difference in doing the calculation, it was determined that we needed to increase the threshold because of that medical device tax.").

**DISPUTED.  Plaintiff disputes that the "conversion threshold" was applied uniformly.  Some Sales Consultants received a different commission rate and/or base salary. There is no written policy before 2013 that proves that such a "structure" existed nor that the total compensation upon conversion would include allocations of all of the base compensation package including full car and maximum expense allowance.  UMF No. 47; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four) Decl. ¶ 11; Hayes Decl. ¶ 11;  Warne Decl. ¶ 11; Marsh Decl. ¶ 11. See Plaintiff's objections to evidence filed concurrently herewith.**

54.     The Trauma division follows the compensation formula and, by policy and practice, does not allow Sales Consultants to convert to the straight commission plan until and unless their annualized sales reach the conversion threshold. *See* Ex. 17, R. Gennett Decl. ¶ 18; Ex. 15, Bertz Decl. ¶ 4.

**DISPUTED.  Plaintiff disputes the existence of a "compensation formula." No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations.  See Plaintiff's objections to evidence filed concurrently herewith.**

55.     Rick Gennett explained that Trauma Sales Consultants are often "chomping at the

bit to move to straight commission," but "[m]anagers [are] trained to handle these requests, to explain how the system work[s], and to emphasize the need for a consistent and reliable level of sales at or above the threshold to ensure the conversion formula worked as designed."  *See* Ex. 17, R. Gennett Decl. ¶ 22;  *See also* Ex. 102, Marsh Dep. at 53:3-8 (testifying that "your goal as a consultant was to convert to straight commission [and] make the maximum amount of money potential you can").

**DISPUTED.  Plaintiff disputes the existence of a "compensation formula." No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations.  See Plaintiff's objections to evidence filed concurrently herewith.**

56.     Stephen Bertz, the former West Area Vice President for the Trauma division, explained that "I would not approve a conversion unless I was convinced that the sales in the territory were consistently and reliably running at or above the minimum threshold for conversion."  *See* Ex. 15, Bertz Decl. ¶ 4.

**DISPUTED.  Plaintiff disputes that the "conversion threshold" was applied uniformly.  Some Sales Consultants received a different commission rate and/or base salary. There is no written policy before 2013 that proves that such a "structure" existed nor that the total compensation upon conversion would include allocations of all of the base compensation package including full car and maximum expense allowance.  UMF No. 47; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four) Decl. ¶ 11; Hayes Decl. ¶ 11;  Warne Decl. ¶ 11; Marsh Decl. ¶ 11. See Plaintiff's objections to evidence filed concurrently herewith.**

57.     Throughout the class period, the Trauma division has not required Sales

Consultants to convert to the straight commission plan, either at the conversion threshold or at any other level of sales. *See* Ex. 24, Shillinglaw Decl. ¶ 21; *See also* Ex. 5, Lindell Dep. at 110:15-17 ("Q: You also understand that there was no requirement on anyone to move to full commission, right?; A: No, it was a financial opportunity."). The decision by a Sales Consultant to convert from the base plan to the straight commission plan is voluntary. *See* Ex. 10, Wholey Dep. at 78:8-9 ("they don't have to go to straight commission"); Ex. 9, Sorensen Dep. at 136:3-137:12 (Q: "I understand that you have never forced anyone to make the switch."; A: "Yes.").

**DISPUTED. Plaintiff disputes that the Trauma division has not required Sales Consultants to convert to the straight commission plan, either at the conversion threshold or at any other level of sales. Further, the evidence Synthes cites does not prove this fact as Plaintiff is not aware of what the case was for every single Trauma division employee. UMF No. 47; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four) Decl. ¶ 11; Hayes Decl. ¶ 11; Warne Decl. ¶ 11; Marsh Decl. ¶ 11. See Plaintiff's objections to evidence filed concurrently herewith.**

58.   If a Trauma Sales Consultant's territory sales decline below the conversion threshold after the Sales Consultant converts to the straight commission plan (such as, for example, if Synthes loses a hospital contract or a doctor leaves the territory), Synthes protects the Sales Consultant by providing a guaranteed salary or other guarantees to ensure that the Sales Consultant's total income remains above the conversion threshold. *See* Ex. 24, Shillinglaw Decl. ¶ 23; *See also* Ex. 10, Wholey Dep. at 95:17-19 ("I'm not sure of a risk unless we lose a major contract. If that's the case, I intervene and we work something out."); Ex. 4, Hurley Dep. at 105:6-8 ("We'll move them back to the first compensation, base salary, four percent, auto and expenses, or we'll put them on a guarantee."); Ex. 28, Bartlett Decl. ¶ 6 at SYNTHES-003461 (describing use of guaranteed salary to protect income).

**UNDISPUTED but see also Plaintiff's objections to evidence filed concurrently herewith.**

59.   Trauma Sales Consultants who convert to the straight commission plan may choose to convert back to the base plan at any time. *See* Ex. 24, Shillinglaw Decl. ¶ 23; Ex. 10,

Wholey Dep. at 78:6-11 ("It's always an option to go back . . . they always have the option to go back to that safety net of base, small commission, and direct expenses."); Ex. 9, Sorensen Dep. at 90:21-91:5; *See also*, *e.g.*, Ex. 33, Branco Decl. ¶ 4 at SYNTHES-003469 ("I was aware I could always go back to my original plan as a safety net if my territory sales did not compensate me sufficiently to cover all my expenses and produce more income."); Ex. 35, Buran Decl. ¶ 5 at SYNTHES-003473-74 ("I also understood that I always had the option to return to the base plus commission arrangement if circumstances led me to believe my commissions would not fully cover my prior in-territory expenses.").  However, Trauma Sales Consultants rarely choose to convert back from the straight commission plan to the base plan.  *See* Ex. 9, Sorensen Dep. at 90:24 ("I've never run into that situation"); Ex. 10, Wholey Dep. at 29:4-8 ("I don't believe I have any consultants who have ever gone back once they've had an opportunity to go to straight commission."); Ex. 11, Wilkin Dep. at 94:19-22 ("It's my testimony that there has been dips in sales consultants' volume and none of them have ever come to me and said, can I go back on salary plus expenses plus four percent commission."

**UNDISPUTED but see also Plaintiff's objections to evidence filed concurrently herewith.**

60.     The compensation formula in the Trauma division does not incorporate out-of-territory expenses. *See* Ex. 61 (Dep. Ex. 20) at P000407; Ex. 62 (Dep. Ex. 21) at SYNTHES-000427; Ex. 63 (Dep. Ex. 22) at SYNTHES-000540; Ex. 92 (Dep. Ex. 205) at SYNTHES-003573-74; Ex. 86 (Dep. Ex. 199) at SYNTHES-003543; Ex. 83 (Dep. Ex. 194) at SYNTHES-008073-74; Ex. 90 (Dep. Ex. 203) at SYNTHES-009266. Trauma Sales Consultants on the base plan and Trauma Sales Consultants on the straight commission plan are eligible for direct reimbursement of out-of-territory business expenses pursuant to Synthes' expense reimbursement policies.  *See* Ex. 62 (Dep. Ex. 21) at SYNTHES-000447-48; Ex. 64 (Dep. Ex. 24) at SYNTHES-000585; *See also* Ex. 5, Lindell Dep. at 121:2-5 ("Q: And you were aware that even though you went to full commission that expenses out of the territory could be reimbursed through this policy?; A: Yes."); Ex. 7, Meister (12/19/12) Dep. at 134:22-135:8 ("They would [submit for direct reimbursement] if they were outside of the territory."); *id.* at 244:20-24.

1   **DISPUTED.  Plaintiff disputes the existence of a "compensation formula."  No**

2   **written documents exist that show Synthes used such a "formula" for the Expense Class.**

3   **UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req.**

4   **for Produc. of Docs. (Set Four)).  To the contrary, all written documents demonstrate the**

5   **absence of any "formula" allocating a set amount to expenses, because under its facial**

6   **policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17,**

7   **21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as**

8   **Synthes is using the term.  See Class Member Declarations.  See Plaintiff's objections to**

9   **evidence filed concurrently herewith**

10   61.    The compensation formula in the Trauma division also does not incorporate

11   extraordinary in-territory expenses that would be reimbursed outside of the expense allowance

12   for Sales Consultants on the base plan.  *See* Ex. 92 (Dep. Ex. 205) at SYNTHES-003573-74; Ex.

13   86 (Dep. Ex. 199) at SYNTHES-003545; Ex. 83 (Dep. Ex. 194) at SYNTHES-008077; Ex. 90

14   (Dep. Ex. 203) at SYNTHES-009269; *See also* Ex. 4, Hurley Dep. at 86:1-24; 87:1-24; 88:1-24;

15   89:1-7; 92:10-24.  Trauma Sales Consultants on the base plan and Trauma Sales Consultants

16   straight commission plan are eligible for direct reimbursement of extraordinary in-territory

17   business expenses.  *See* Ex. 92 (Dep. Ex. 205) at SYNTHES-003573-74; Ex. 86 (Dep. Ex. 199)

18   at SYNTHES-003545; Ex. 83 (Dep. Ex. 194) at SYNTHES-008077; Ex. 90 (Dep. Ex. 203) at

19   SYNTHES-009269; *See also* Ex. 9, Sorensen Dep. at 91:15-92:2; Ex. 11, Wilkin Dep. at 84:3-

20   18.

21   **DISPUTED.  Plaintiff disputes the existence of a "compensation formula."  No**

22   **written documents exist that show Synthes used such a "formula" for the Expense Class.**

23   **UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req.**

24   **for Produc. of Docs. (Set Four)).  To the contrary, all written documents demonstrate the**

25   **absence of any "formula" allocating a set amount to expenses, because under its facial**

26   **policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17,**

27   **21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as**

28   **Synthes is using the term.  See Class Member Declarations.  See Plaintiff's objections to**

**evidence filed concurrently herewith.**

        **4.**      **The Trauma Division Communicates the Compensation Formula to Sales Consultants.**

      62.      Throughout the class period, the Trauma division has provided Sales Consultants with numerous forms of written and oral communication describing its compensation formula, including the expense reimbursement allowances offered by the base compensation plan and the allocations for expense indemnification built into the straight commission plan.  These communications occur at all times during a Sales Consultant's employment, from hiring through the decision to convert to the straight commission plan.

      **DISPUTED.  Plaintiff disputes the existence of a "compensation formula." No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations. See Plaintiff's objections to evidence filed concurrently herewith.**

      63.      Steven Wilken, a Trauma Sales Consultant who was promoted to a California Regional Manager position in 2013, testified that the compensation formula was "common knowledge" and was "explained to us early on [and] at several points throughout the process." *See* Ex. 11, Wilkin Dep. at 31:9-18.

      **DISPUTED.  Plaintiff disputes the existence of a "compensation formula." No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial**

**policies, Synthes denied expense reimbursement to Expense Class members. UMF Nos. 17, 21, 23, 26, 47-51. Additionally, class members have testified that there was no "formula" as Synthes is using the term. See Class Member Declarations. See Plaintiff's objections to evidence filed concurrently herewith.**

### a.   The Interview and Hiring Process.

64.   The Trauma division trains and requires its Regional Managers to discuss the compensation formula, including the expense allowances under the base plan and the expense allocations built into the straight commission plan with prospective Sales Consultants during the interview and hiring process. *See* Ex. 17, R. Gennett Decl. ¶ 22; Ex. 15, Bertz Decl. ¶ 4. *See also* Ex. 10, Wholey Dep. at 51:24-25.

**DISPUTED. Plaintiff disputes the existence of a "compensation formula." No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members. UMF Nos. 17, 21, 23, 26, 47-51. Additionally, class members have testified that there was no "formula" as Synthes is using the term. See Class Member Declarations. See Plaintiff's objections to evidence filed concurrently herewith.**

65.   Rick Gennett explained that he "expected and required" Regional Managers to discuss Synthes' compensation system "in the the recruitment process":

> Managers were trained to explain the compensation system and how it worked, including the formula. The existence of this opportunity [to convert to straight commission] was a way of attracting talent so I expected and required that it would be discussed in detail during the recruitment process.

*See* Ex. 17, R. Gennett Decl. ¶ 22. *See also id.* ¶ 23 ("I personally explained the system of compensation including the reasons for the formula and how in-territory expenses were included

with many consultants in interviews, at sales meetings, at fundamentals training, and other occasions.").

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that Regional Managers were required to discuss the compensation formula and how in-territory expenses were included because prior to 2013, there is no written policy that evidences this requirement nor any sort of "compensation formula." Whatever conversations Regional Managers had with Sales Consultants, they do not show that Synthes established a policy that reimburses its Sales Consultants for expenses, communicates a specific apportionment between wages and expenses, or fully indemnifies the Sales Consultants for their reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). See Plaintiff's objections to evidence filed concurrently herewith.**

66.     Stephen Bertz explained that he "expect[s] Regional Managers to discuss the compensation system during the interview process and to specifically explain that the expenses directly reimbursed under the base plan were built into the enhanced commission rate under the straight commission plan."  *See* Ex. 15, Bertz Decl. ¶ 6.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that Regional Managers were required to discuss the compensation formula and how in-territory expenses were included because prior to 2013, there is no written policy that evidences this requirement nor any sort of "compensation formula." Whatever conversations Regional Managers had with Sales Consultants, they do not show that Synthes established a policy that reimburses its Sales Consultants for expenses, communicates a specific apportionment between wages and expenses, or fully indemnifies the Sales Consultants for their reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)).  See Plaintiff's objections to evidence filed concurrently herewith.**

67.     California Regional Managers in the Trauma division have confirmed that they

were trained to discuss Synthes' compensation formula with prospective and newly-hired Sales Consultants.  David Wholey testified that he was trained to explain that "as a [straight commission] consultant your expenses are included in your 12-and-a-half percent commission."  *See* Ex. 10, Wholey Dep. at 51:24-25.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that Regional Managers were required to discuss the compensation formula and how in-territory expenses were included because prior to 2013, there is no written policy that evidences this requirement nor any sort of "compensation formula."  Whatever conversations Regional Managers had with Sales Consultants, they do not show that Synthes established a policy that reimburses its Sales Consultants for expenses, communicates a specific apportionment between wages and expenses, or fully indemnifies the Sales Consultants for their reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). See Plaintiff's objections to evidence filed concurrently herewith.**

68.    Consistent with this training, Eric Sorensen testified that he would discuss the compensation formula, the expense allowances under the base plan, and the expense allocations built into the enhanced commission rate under the straight commission plan in the "first and second interview when we're talking compensation to begin with":

> That's discussed [in the] first and second interview when we're talking compensation to begin with. . . . [F]rom day one on an interview process, day two, whenever it happens to be early on when we're talking of compensation, they know full well that they are going to start out whatever it happens to be on a salary plus, and ultimately it's going to be a commission only.   And the commission only at that point includes the expenses and the car allowance.   And we would come up – we have always gone over that formula to state that it's 7, 8, 900 [thousand at the conversion threshold], whatever it may be in that range, depending on what their salary was.   That's the variable in the equation. But we have always used that.   And they have always known, I mean, since before their hire date.

*See* Ex. 9, Sorensen Dep. at 118:10-13, 151:16-152:4.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that Regional Managers were required to discuss the compensation formula and how in-territory expenses were included because prior to 2013, there is no written policy that evidences this requirement nor any sort of "compensation formula." Whatever conversations Regional Managers had with Sales Consultants, they do not show that Synthes established a policy that reimburses its Sales Consultants for expenses, communicates a specific apportionment between wages and expenses, or fully indemnifies the Sales Consultants for their reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). See Plaintiff's objections to evidence filed concurrently herewith.**

69.     David Wholey testified that "when I'm hiring anyone, I'll tell them the commission structure," including the expense allocations built into the enhanced commission rate under the straight commission plan:

> [W]hen I'm hiring anyone, I'll tell them [the] commission structure· We can hire you, base pay, small percent commission and your expenses, or straight commission.  This is from '99 on, and we've hired – I've hired a majority on the hybrid model, but I think there's one or two that are straight commission.  But the cost of their business or doing this business is taken care of within the 12 and a half percent.  It's allocated to that 12 and a half percent.

*See* Ex. 10, Wholey Dep. at 92:8-18.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that Regional Managers were required to discuss the compensation formula and how in-territory expenses were included because prior to 2013, there is no written policy that evidences this requirement nor any sort of "compensation formula." Whatever conversations Regional Managers had with Sales Consultants, they do not show that Synthes established a policy that reimburses its Sales Consultants for expenses, communicates a specific apportionment between wages and expenses, or fully indemnifies the Sales Consultants for their reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). See Plaintiff's**

1   objections to evidence filed concurrently herewith.

2                    **b.      Sales Consultants Train Their Colleagues.**

3       70.   Sales Consultants, including members of the Expense Class, also train newly-

4   hired colleagues on Synthes' compensation formula and the expense allocations built into the

5   straight commission plan.  *See* Ex. 33, Branco Decl. ¶ 5 at SYNTHES-003469; Ex. 41, Hahn

6   Decl. ¶ 9 at SYNTHES-003486; Ex. 20, Ingram Decl. ¶ 3; Ex. 22, Lisignoli Decl. ¶ 8.

7       **DISPUTED.  This fact is immaterial.  Plaintiff further disputes that Regional**

8   **Managers were required to discuss the compensation formula and how in-territory**

9   **expenses were included because prior to 2013, there is no written policy that evidences this**

10  **requirement nor any sort of "compensation formula."  Whatever conversations Regional**

11  **Managers had with Sales Consultants, they do not show that Synthes established a policy**

12  **that reimburses its Sales Consultants for expenses, communicates a specific apportionment**

13  **between wages and expenses, or fully indemnifies the Sales Consultants for their**

14  **reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14**

15  **at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). See Plaintiff's**

16  **objections to evidence filed concurrently herewith.**

17      71.   For example, John Branco, a Trauma Sales Consultant in California who has

18  worked for Synthes since September 2002 and converted to the straight commission plan in 2003

19  (and is a member of the Expense Class), is a "Field Trainer" in California:

20          I am a Field Trainer for Synthes in California.  I have trained a
            number of new hires and they frequently ask me about the
21          company's compensation plan.  They are very anxious to go full
            commission because at the levels that Synthes approves full
22          commission status, their income will be significantly more under
            this program than on the base plus 4%, with in-territory expenses
23          reimbursed directly as opposed to being built into the
            compensation plan. I tell them that this is their decision but that
24          there is a "golden" number at around $70,000 a month or $800,000
            a year where they should consider the move because, when they do
25          the calculations, they will see that they otherwise would be leaving
            money on the table. ***I tell them that the 12.5% commission rate, at***
26          ***the "golden" number, is intended to provide income which off-***
            ***sets in-territory expenses, covers them, and then throws off***
27          ***substantial additional income.***

28

1  *See* Ex. 33, Branco Decl. ¶ 5 at SYNTHES-003469 (emphasis added).

2  **DISPUTED. This fact is immaterial. Plaintiff further disputes that Regional**

3  **Managers were required to discuss the compensation formula and how in-territory**

4  **expenses were included because prior to 2013, there is no written policy that evidences this**

5  **requirement nor any sort of "compensation formula." Whatever conversations Regional**

6  **Managers had with Sales Consultants, they do not show that Synthes established a policy**

7  **that reimburses its Sales Consultants for expenses, communicates a specific apportionment**

8  **between wages and expenses, or fully indemnifies the Sales Consultants for their**

9  **reasonably necessary business expenses. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14**

10 **at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). See Plaintiff's**

11 **objections to evidence filed concurrently herewith.**

12 72.   Trauma Sales Consultants from outside California provide similar training to their

13 colleagues regarding the compensation formula and the expense allocations built into the straight

14 commission plan. Stephen Ingram, a Sales Consultant in Norfolk, Virginia, served as a

15 "Regional Trainer" between 1991 and 1999:

16 > As a Regional Trainer, I would frequently have conversations with
   > new sales consultants about the compensation system and what
17 > transpired when converting to full commission. I explained to
   > them that this was an option and not something that anyone was
18 > forced to do. I told them how they would be able to transition to
   > full commission if they built a territory to the point where there
19 > were enough sales to reach the minimum threshold for conversion
   > which was originally $600,000 in annualized sales and later
20 > $700,000 in annualized sales. I told them that if they were able to
   > build when they converted at the enhanced commission rate of
21 > 12.5% multiplied by sales over the minimum threshold that they
   > would receive all of their prior compensation in the base package
22 > and be able to make considerably more money.

23 *See* Ex. 20, Ingram Decl. ¶ 3.

24 **DISPUTED. This fact is immaterial. Plaintiff further disputes that Regional**

25 **Managers were required to discuss the compensation formula and how in-territory**

26 **expenses were included because prior to 2013, there is no written policy that evidences this**

27 **requirement nor any sort of "compensation formula." Whatever conversations Regional**

28

1   Managers had with Sales Consultants, they do not show that Synthes established a policy

2   that reimburses its Sales Consultants for expenses, communicates a specific apportionment

3   between wages and expenses, or fully indemnifies the Sales Consultants for their

4   reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14

5   at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). See Plaintiff's

6   objections to evidence filed concurrently herewith.

7       73.     James Lisignoli, a Trauma Sales Consultant in St. Paul, Minnesota, also served as

8   a Regional Trainer and "[i]n this role . . . discussed the conversion formula with a number of

9   Sales Consultants."  See Ex. 22, Lisignoli Decl. ¶ 8.

10      **DISPUTED.  This fact is immaterial.  Plaintiff further disputes that Regional**

11  **Managers were required to discuss the compensation formula and how in-territory**

12  **expenses were included because prior to 2013, there is no written policy that evidences this**

13  **requirement nor any sort of "compensation formula." Whatever conversations Regional**

14  **Managers had with Sales Consultants, they do not show that Synthes established a policy**

15  **that reimburses its Sales Consultants for expenses, communicates a specific apportionment**

16  **between wages and expenses, or fully indemnifies the Sales Consultants for their**

17  **reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14**

18  **at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). See Plaintiff's**

19  **objections to evidence filed concurrently herewith.**

20          c.     **Offer Letters.**

21      74.     At hiring, new Trauma Sales Consultants receive – and are required to read and

22  sign – a detailed offer letter setting forth their base salary, commission rate, car allowance, and

23  in-territory expense reimbursement allowance.  See, e.g., Ex. 57 (Dep. Ex. 9) at SYNTHES-

24  000073-74 (Lindell offer letter).

25      **UNDISPUTED, but misleading because as phrased, this fact gives the impression**

26  **that total compensation upon conversion would include allocations of all of the base**

27  **compensation package including full car and maximum expense allowance, which it does**

28

not.  *See*, *e.g.*, **Ex. 57 (Dep. Ex. 9) at SYNTHES-000073-74 (Lindell offer letter). See Plaintiff's objections to evidence filed concurrently herewith.**

75.     Jacqueline Meister explained at her deposition that the offer letter "was part of the new hire packet of information" provided to each new Sales Consultant across the company.  *See* Ex. 7, Meister (12/19/12) Dep. at 101:5-9.

**UNDISPUTED, but misleading because as phrased, this fact gives the impression that total compensation upon conversion would include allocations of all of the base compensation package including full car and maximum expense allowance, which it does not.  *See*, *e.g.*, Ex. 57 (Dep. Ex. 9) at SYNTHES-000073-74 (Lindell offer letter) See Plaintiff's objections to evidence filed concurrently herewith.**

76.     Meister testified further that "the allocation is there, it's in the original offer letter, which talks about their auto allowance, plus their variable [expenses]."  *See* Ex. 7, Meister (12/19/12) Dep. at 145:2-5.

**UNDISPUTED, but misleading because as phrased, this fact gives the impression that total compensation upon conversion would include allocations of all of the base compensation package including full car and maximum expense allowance, which it does not.  *See*, *e.g.*, Ex. 57 (Dep. Ex. 9) at SYNTHES-000073-74 (Lindell offer letter) See Plaintiff's objections to evidence filed concurrently herewith.**

### d.     Sales Policy Manuals.

77.     Prior to 2012, Synthes issued Sales Policy Manuals that contained information "specific to policies around sales" and "employment policies specific to sales," including Sales Consultant compensation.  *See* Ex. 7, Meister (12/19/12) Dep. at 108:1-15.

**UNDISPUTED, but misleading because as phrased, this fact gives the impression that total compensation upon conversion would include allocations of all of the base compensation package including full car and maximum expense allowance, which it does not.  UMF No. 47; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four) Decl. ¶ 11;  Hayes Decl. ¶ 11;  Warne Decl. ¶ 11; Marsh Decl. ¶ 11.  See Plaintiff's objections to evidence filed concurrently herewith.**

78.     The Sales Policy Manuals were "distributed in a hard copy form at the time of hire" to Sales Consultants. *See* Ex. 7, Meister (12/19/12) Dep. at 109:6-13.

**UNDISPUTED but also see Plaintiff's objections to evidence filed concurrently herewith.**

79.     Sales Consultants were required to provide Synthes with a signed acknowledgment that they had "read and understand" the "policies and procedures" described in the Sales Policy Manuals. *See*, *e.g.*, Ex. 60 (Dep. Ex. 14) at SYNTHES-000081 (Lindell acknowledgment); Ex. 80 (Dep. Ex. 152) at SYNTHES-008803 (Warne acknowledgment); Ex. 81 (Dep. Ex. 179) at SYNTHES-008915 (Marsh acknowledgment); Ex. 77 (Dep. Ex. 123) at SYNTHES-008270 (H. Hayes acknowledgment); Ex. 72 (Dep. Ex. 70) at SYNTHES-008188 (Harrison acknowledgment).

**UNDISPUTED, but misleading because as phrased, this fact gives the impression that Sales Consultants were told that the total compensation upon conversion would include allocations of all of the base compensation package including full car and maximum expense allowance.  There is nothing in writing, however, to evidence this until 2013.  UMF No. 47; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four) Decl. ¶ 11;  Hayes Decl. ¶ 11;  Warne Decl. ¶ 11; Marsh Decl. ¶ 11.  See Plaintiff's objections to evidence filed concurrently herewith.**

80.     Around and during the class period in this case, Synthes issued updated versions of the Sales Policy Manual in 1999, 2007, and 2010.  *See* Ex. 61 (Dep. Ex. 20) at P000405-P000540; Ex. 62 (Dep. Ex. 21) at SYNTHES-000426-000483; Ex. 63 (Dep. Ex. 22) at SYNTHES-000484-000562.  *See also* Ex. 7, Meister (12-19-12) Dep. at 114:11-115:5.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

81.     When Synthes issued an updated version of the Sales Policy Manual, it was distributed to Sales Consultants in hard copy and posted on Synthes' intranet.  *See* Ex. 7, Meister (12-19-12) Dep. at 115:13-17.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

82.     The 1999 Sales Policy Manual included a single explanation of the compensation

formula:

COMPENSATION FOR SUSA SALES

New Hire Compensation

All new hires begin employment as salaried Sales Consultants. Compensation is a predetermined base salary, plus commission based on the current commission rate in effect. Compensation for new hires will be paid on sales beginning the first full calendar month of territory responsibility. Commission is paid on monthly net sales excluding repairs. The current commission rate for newly hired SUSA Sales Consultants is 4%. An automobile allowance of $400/month is also paid to the salaried Sales Consultant. New hires are also eligible for business expense reimbursement of up to $900 per month. Up to $400 of the expense budget may be used for communications.

Conversion to Straight Commission

The Regional Manager may recommend the following, based on the Sales Consultant's annualized territory sales:

Territory Sales Annualize $700,000 or More

When a Sales Consultant's territory reaches an annualized volume sales of $700,000 or more, the Regional Manager may recommend that the Sales Consultant converts his/her compensation package from salary plus commission to straight commission. Commission is paid according to the current commission program in effect. The current commission rate for a Sales Consultant receiving straight commission is 12.5%. Sales Consultants who convert to straight commission are not eligible for an automobile allowance or in-territory business expense reimbursements.

Conversion to a commissioned Sales Consultant may be considered when annualized territory sales regularly exceed $700,000. . . .

Territory Sales Annualize $699,999 or Less

If the territory sales are less than $699,999 annualized, the Sales Consultant may continue on salary plus commission until such time that the territory sales trends show annualized sales of at least $700,000, based on his/her performance on the job

*See* Ex. 61 (Dep. Ex. 20) at P000407-08.

**DISPUTED. Plaintiff disputes that the policy was properly cited (see below) and the existence of any such "compensation formula" in writing until 2013. For this court's**

**convenience, Plaintiff has properly cited the policy and highlighted any discrepancies. UMF No. 47; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four) Decl. ¶ 11;  Hayes Decl. ¶ 11;  Warne Decl. ¶ 11; Marsh Decl. ¶ 11.  See Plaintiff's objections to evidence filed concurrently herewith.**

COMPENSATION FOR SUSA SALES

A.     New Hire Compensation

All new hires begin employment as salaried Sales Consultants. Compensation is a predetermined base salary, plus commission based on the current commission rate in effect.  Commission for new hires will be paid on sales beginning the first full calendar month of territory responsibility.  Commission is paid on monthly net sales excluding repairs.  The current commission rate for newly hired SUSA Sales Consultants is 4%.  An automobile allowance of $400/month is also paid to the salaried Sales Consultant.  New Hires are also eligible for business expense reimbursement of up to $900 per month.  Up to $400 of the expense budget may be used for communications.

B.     Conversion to Straight Commission

The Regional Manager may recommend the following, based on the Sales Consultant's annualized territory sales:

1.     Territory Sales Annualize $700,000 or More

When a Sales Consultant's territory reaches an annualized volume sales of $700,000 or more, the Regional Manager may recommend that the Sales Consultant converts his/her compensation package from salary plus commission to straight commission.  Commission is paid according to the current commission program in effect.  The current commission rate for a Sales Consultant receiving straight commission is 12.5%.  Sales Consultants who convert to straight commission are not eligible for an automobile allowance or in-territory business expense reimbursements.

Conversion to a commissioned Sales Consultant may be considered when annualized territory sales regularly exceed $700,000. . . .

2.     Territory Sales Annualize $699,999 or Less

If the territory sales are less than $699,999 annualized, the Sales Consultant may continue on salary plus commission until such time that the territory sales trends show annualized sales of at least $700,000, based on his/her performance on the job.

1

2      83.     The 2007 Sales Policy Manual included separate explanations of the

3   compensation formula for the Trauma, Spine, and CMF divisions.  *See* Ex. 62 (Dep. Ex. 21) at

4   SYNTHES-000427-28, 000432, 000436.  For the Trauma division, the 2007 Sales Policy

5   Manual explained:

6              COMPENSATION FOR SUSA SALES

7              A.  New Hire Compensation

8              All new hires begin employment as salaried Sales Consultants.
             Compensation is a predetermined base salary, plus commission
9              based on the current commission rate in effect. Commission for
             new hires will be paid on sales beginning the first full calendar
10             month of territory responsibility. Commission is paid on monthly
             net sales excluding repairs. The current commission rate for newly
11             hired SUSA Sales Consultants is 4%. An automobile allowance of
             $500/month is also paid to the salaried Sales Consultant. New
12             Hires are also eligible for business expense reimbursement of up to
             $900 per month. Up to $400 of the expense budget may be used for
13             communications.

14             B. Conversion to Straight Commission

15             The Regional Manager may recommend the following, based on
16             the Sales Consultant's annualized territory sales:

17             Territory Sales Annualize $700,000 or More

18             When a Sales Consultant's territory reaches an annualized volume
             sales of $700,000 or more, the Regional Manager may recommend
19             that the Sales Consultant converts his/her compensation package
             from salary plus commission to straight commission.  Commission
20             is paid according to the current commission program in effect. The
             current commission rate for a Sales Consultant receiving straight
21             commission is 12.5%. Sales Consultants who convert to straight
             commission are not eligible for an automobile allowance or in-
22             territory business expense reimbursements . . .

23             Territory Sales Annualize $699,999 or Less

24
             If the territory sales are less than $699,999 annualized, the Sales
25             Consultant may continue on salary plus commission until such
             time that the territory sales trends show annualized sales of at least
26             $700,000, based on his/her performance on the job.

27   *See* Ex. 62 (Dep. Ex. 21) at SYNTHES-000427-28.

28

**DISPUTED.  Plaintiff disputes the existence of a "compensation formula." No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations. See Plaintiff's objections to evidence filed concurrently herewith.**

84.    The explanation of the compensation formula for the Trauma in the 2010 Sales Policy Manual was substantively identical to the explanation in the 2007 Sales Policy Manual. *See* Ex. 63 (Dep. Ex. 22) at SYNTHES-000540-41.

**DISPUTED.  Plaintiff disputes the existence of a "compensation formula." No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations.  See Plaintiff's objections to evidence filed concurrently herewith.**

85.    Synthes' witnesses have testified that, by stating that Sales Consultants on the straight commission compensation plan were "not eligible for an automobile allowance or in-territory business expense reimbursements," the 1999, 2007, and 2010 Sales Policy Manuals confirmed that straight commission Sales Consultants would not receive direct reimbursement because their enhanced commission rate indemnified those expenses.  *See*, *e.g.*, Ex. 17, R. Gennett ¶ 20; Ex. 7, Meister (12-19-12) Dep. at 134:23-135:6; Ex. 11, Wilkin Dep. at 38:8-14. Synthes' witnesses have also explained that Synthes' witnesses have also testified that the

reimbursement process referenced in the policy manuals (and the company's Travel & Expense policies) is a ***direct reimbursement model*** requiring proof of actual expenses submitted for approval by a Regional Manager and subject to company review and audit.  *See* Ex. 1, Andrews Dep. at 22:6-24:18, 29:10-31:13, 37:2-9, 53:8-55:18, 57:20-60:6, 194:24-197:20; Ex. 12, Andrews Decl. ¶¶ 2-4.

**DISPUTED. Plaintiff disputes that the policy stating that Sales Consultants on straight commission were "not eligible for automobile allowance or in-territory business expense reimbursements. . . confirmed that straight commission Sales Consultants would not receive direct reimbursement because their enhanced commission rate indemnified those expenses" because there is no such written policy until 2013.  UMF No. 47 Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four) Decl. ¶ 11;  Hayes Decl. ¶ 11;  Warne Decl. ¶ 11; Marsh Decl. ¶ 11. See Plaintiff's objections to evidence filed concurrently herewith.**

86.    Jacqueline Meister explained the meaning of the "not eligible for . . . reimbursements" language in the 1999, 2007, and 2010 Sales Policy Manuals:

> [T]he expense reimbursement is a method by which someone who is on base plus commission gets paid their expenses.  When they go straight commission, the methodology changes so that their expenses are covered within that enhanced commission rate.  So they wouldn't necessarily use the reimbursement process.

*See* Ex. 7, Meister (12-19-12) Dep. at 134:23-135:6.

**DISPUTED.  Plaintiff disputes the existence of a "compensation formula." No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations.  See also Plaintiff's objections**

**to evidence filed concurrently herewith.**

87.     Rick Gennett, the architect of the compensation formula, also explained the meaning of the "not eligible for . . . reimbursements[s]" language in the 1999, 2007, and 2010 Sales Policy Manuals:

> It should be no surprise . . . that the policy statements make reference to the fact that the company was not going to pay twice for the same allowances and that fully commissioned sales consultants were consequently not eligible for a car allowance or reimbursement of in-territory expenses.  In the absence of such a disclaimer there would have been ambiguity about the formula and its impact on compensation.

*See* Ex. 17, R. Gennett Decl. ¶ 20; *See also* Ex. 7, Meister (12-19-12) Dep. at 134:23-135:6.

**DISPUTED.  Plaintiff disputes the existence of a "compensation formula."  No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)).  To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations.  See also Plaintiff's objections to evidence filed concurrently herewith.**

88.     Steven Wilkin, a former Sales Consultant and current Regional Manager in California explained that the "not eligible for . . . reimbursements" language in the Sales Policy Manuals was "very clear that you're not eligible for those [expense reimbursements] because they are built into the commission percentage."  *See* Ex. 11, Wilkin Dep. at 38:8-14; *See also* Ex. 4, Hurley Dep. at 55:3-21, 56:5-13.

**DISPUTED. Plaintiff disputes that the policy stating that Sales Consultants on straight commission were "not eligible for . . . reimbursements" language confirmed that straight commission Sales Consultants would not receive direct reimbursement because their enhanced commission rate indemnified those expenses because there is no such**

**written policy until 2013. UMF No. 47 Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four) Decl. ¶ 11;  Hayes Decl. ¶ 11;  Warne Decl. ¶ 11; Marsh Decl. ¶ 11. See Plaintiff's objections to evidence filed concurrently herewith.**

89.     Synthes' witnesses have also testified that the "not eligible for . . . reimbursements" language in the Sales Policy Manuals confirmed that Sales Consultants could not "double dip" and receive direct reimbursement on top of the indemnification for expenses built into the straight commission plan.  *See*, *e.g.*, Ex. 4, Hurley Dep. at 56:5-13; Ex. 10, Wholey Dep. at 92:19-21; Ex. 11, Wilkin Dep. at 38:8-14.

**DISPUTED. Plaintiff disputes that the policy stating that Sales Consultants on straight commission were "not eligible for . . . reimbursements" language confirmed that straight commission Sales Consultants would not receive direct reimbursement because their enhanced commission rate indemnified those expenses because there is no such written policy until 2013 UMF No. 47 Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four) Decl. ¶ 11;  Hayes Decl. ¶ 11;  Warne Decl. ¶ 11; Marsh Decl. ¶ 11. See Plaintiff's objections to evidence filed concurrently herewith.**

90.     Laurie Hurley explained that the "not eligible for . . . reimbursements" language meant that "a sales consultant who converts to straight commission is not eligible for auto or other expense *reimbursement* . . . [b]ecause it would be double-dipping if they were eligible [for direct reimbursement], because it's built into the formula of the 12-and-a-half percent."  *See* Ex. 4,  Hurley Dep. at 56:5-13 (emphasis added).

**DISPUTED. Plaintiff disputes that the policy stating that Sales Consultants on straight commission were "not eligible for . . . reimbursements" language confirmed that straight commission Sales Consultants would not receive direct reimbursement because their enhanced commission rate indemnified those expenses because there is no such written policy until 2013 UMF No. 47 Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four) Decl. ¶ 11;  Hayes Decl. ¶ 11;  Warne Decl. ¶ 11; Marsh Decl. ¶ 11. See Plaintiff's objections to evidence filed concurrently herewith.**

91.     Steven Wilkin explained that the "not eligible for . . . reimbursements" language

meant that "they weren't going to allow us to double dip and get both the expenses and the allowances built into the commission percentage and direct reimbursement." *See* Ex. 11, Wilkin Dep. at 38:8-14.

**DISPUTED. Plaintiff disputes that the policy stating that Sales Consultants on straight commission were "not eligible for . . . reimbursements" language confirmed that straight commission Sales Consultants would not receive direct reimbursement because their enhanced commission rate indemnified those expenses because there is no such written policy until 2013. UMF No. 47 Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four) Decl. ¶ 11;  Hayes Decl. ¶ 11;  Warne Decl. ¶ 11; Marsh Decl. ¶ 11. See Plaintiff's objections to evidence filed concurrently herewith.**

92.     David Wholey explained that "it would be double-dipping" for a Sales Consultant to receive both the allocation for expenses built into the straight commission plan and direct reimbursement of those same expenses: "You can't double-dip or pay someone at 12-and-a-half percent and expense them for all the gas, parking, et cetera." *See* Ex. 10, Wholey Dep. at 92:19-21.

**DISPUTED. Plaintiff disputes that Sales Consultants on straight commission "would be double-dipping" because they would receive both the allocation for expenses built into the straight commission plan and direct reimbursement of those same expenses. Until 2013, there was no policy that informed the Sales Consultants that they would not receive direct reimbursement because their enhanced commission rate indemnified those expenses. UMF No. 47 Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four) Decl. ¶ 11;  Hayes Decl. ¶ 11;  Warne Decl. ¶ 11; Marsh Decl. ¶ 11. See Plaintiff's objections to evidence filed concurrently herewith.**

### e.     2012 Sales Policies.

93.     In September 2012, Synthes posted updated Sales Policies on its corporate intranet in connection with Synthes' merger with Johnson & Johnson. *See* Ex. 92 (Dep. Ex. 205) at SYNTHES-003573-82;  Ex. 8, Meister (2/25/15) Dep. at 201:22-203:16.

**DISPUTED. Plaintiff disputes this fact because there is no indication in the**

**testimony cited that this policy was placed on the intranet in connection with Synthes'
merger with Johnson & Johnson. See Plaintiff's objections to evidence filed concurrently
herewith.**

94.   Synthes told Sales Consultants that the updated Sales Policies had been posted on
the intranet.  *See* Ex. 8, Meister (2/25/15) Dep. at 203:4-10.

**DISPUTED.  Plaintiff disputes this fact because Ms. Meister's testimony does not
unequivocally state that Synthes told the Sales Consultants that the updated policy was on
the intranet. See Plaintiff's objections to evidence filed concurrently herewith.**

95.   The 2012 Sales Policy for the Trauma division stated expressly the specific
allocation for in-territory car and business expenses built into the enhanced commission rate
under the straight commission plan.  *See* Ex. 92 (Dep. Ex. 205) at SYNTHES-003573-74.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

96.   The 2012 Sales Policy for the Trauma division stated that the "expenses allocated
to Sales Consultants on a Base Salary & Commission arrangement are included in the 12.5%
commission rate" and that "as a result, Sales Consultants who convert to straight commission are
not entitled to an additional direct reimbursement for automobile allowance or in-territory
business expenses because the $500 automobile allowance and up to $900 of reimbursable
expenses are built into the higher commission rate":

> Base Salary & Compensation
>
> Normally, Sales Consultants upon hire will be paid a
> predetermined base salary plus a designated commission rate.
> Sales Consultants may remain on or return to base salary plus
> designated commission based on specific circumstances or
> territory realignments.  Commission is paid on monthly net sales.
> Sales Consultants paid base salary plus commission may be
> eligible for an automobile allowance of $500 and are eligible for
> business expense reimbursement of up to $900 per period.  Up to
> $400 per period of the expense budget may be used for
> communications costs.  Any in-territory expenditures above the
> allowance must be pre-approved by the Regional Manager before
> they are incurred.  Expense reimbursement requests must be made
> in accordance with DePuy Synthes' direct reimbursement and
> compliance policies.
>
> Straight Commission

When a Sales Consultant's territory reaches an annualized volume of $700,000 or more, a Sales Consultant may choose to have his or her compensation package converted from salary plus commission to straight commission.  Commission is paid according to the current commission program in effect.  The current commission rate for a Sales Consultant receiving straight commission is 12.5%.  Commission is paid on monthly net sales.  ***The above expenses allocated to Sales Consultants on a Base Salary & Commission arrangement are included in the 12.5% commission rate.  As a result, Sales Consultants who convert to straight commission are not entitled to an additional direct reimbursement for automobile allowance or in-territory business expenses because the $500 automobile allowance and up to $900 of reimbursable expenses are built into the higher commission rate***.  Any in-territory expenditures above the allocated allowance must be pre-approved by the Sales Consultant's Regional Manager before they are incurred.  Fully-commissioned Sales Consultants are eligible to receive direct reimbursement of pre-approved in-territory expenses above the allocated allowance, subject to DePuy Synthes' direct reimbursement and compliance policies.

*See* Ex. 92 (Dep. Ex. 205) at SYNTHES-003573-74 (emphasis added).

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

97.     Under the heading "Expense Payment Policy," the 2012 Sales Policy for the Trauma division also stated that "Sales Consultants paid on a full commission basis will not be entitled to direct reimbursement for in-territory expenses as allocated expenses are built into the expected compensation derived from the assigned territory sales volume multiplied by the commission rate" and that "[f]or purposes of managing expenses, the allocated expenses equate to the period allowance of $500 for automobile and $900 for other expenses":

Expense Payment Policy

Associate Sales Consultants and Sales Consultants paid base salary plus commission will be eligible for direct reimbursement for both in-territory and out-of-territory expenses, subject to the Company's direct expense reimbursement and compliance policies.  Associate Sales Consultants and Sales Consultants on this compensation arrangement may be eligible for an automobile allowance of $500 per period and are eligible for business expense reimbursement of up to $900 per period.  Up to $400 per period of the expense budget may be used for communications costs. Any in-territory expenditures above the allowance must be pre-approved by the Regional Manager before they are incurred.

***Sales Consultants paid on a full commission basis will not be entitled to direct reimbursement for in-territory expenses as***

*allocated expenses are built into the expected compensation derived from the assigned territory sales volume multiplied by the commission rate.  For purposes of managing expenses, the allocated expenses equate to the period allowance of $500 for automobile and $900 for other expenses*.  Any in-territory expenditures above the allocated allowance must be pre-approved by your Regional Manager before they are incurred.  Fully-commissioned Sales Consultants are eligible to receive direct reimbursement for pre-approved in-territory expenses above the allocated allowance and out-of-territory expenses, subject to the Company's direct reimbursement and compliance policies.

*See* Ex. 92 (Dep. Ex. 205) at SYNTHES-003573-74 (emphasis added).

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

### f.    Sales Consultant Compensation Plans.

98.    In December 2012, Synthes provided each Sales Consultant in California (including the members of the Expense Class) with a written Compensation Plan for the year 2013.  *See* Ex. 19.A, Hurley (9-23-15) Decl.  *See also* Ex. 86 (Dep. Ex. 199) at SYNTHES-003538-54 (2013 Trauma Compensation Plan).

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

99.    Synthes provided these Compensation Plans to Sales Consultants to comply with a new California law, Labor Code § 2751.  *See* Ex. 19, Hurley (9-23-15) Decl. ¶ 2; Ex. 19.A, Hurley (9-23-15) Decl;  *See also* Ex. 8, Meister (2/25/15) Dep. at 107:3-7 ("[W]e were required to put formal compensation plans in place in writing, California Law, oh, [2751], something like that, we did that, of course, for each of the divisions."); *id.* at 107:15-18 ("Q: So when was that that this process you're describing took place?; A: Well, we started our formal plans with the 2013 year.").

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

100.    Consistent with Labor Code § 2751, all Sales Consultants in California were required to provide Synthes with a signed acknowledgment of the 2013 Compensation Plan.  *See* Ex. 19, Hurley (9-23-15) Decl. ¶ 2; Ex. 19.A, Hurley (9-23-15) Decl.; *See also* Ex. 19, Hurley (9-23-15) Decl. at ¶ 2; Ex. 88 (Dep. Ex. 201) (Spine acknowledgment form); Ex. 91 (Dep. Ex.

204) at SYNTHES-003555 (CMF acknowledgment form); Ex. 8, Meister (2-25-15) Dep. at

194:6-8 ("This is the acknowledgement document that's used to accompany the full plan when it

goes out to the individual consultants.").

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

101.   The 2013 Compensation Plan for the Trauma division stated expressly the

specific allocation for in-territory car and business expenses built into the enhanced commission

rate under the straight commission plan. *See* Ex. 86 (Dep. Ex. 199) at SYNTHES-003538-54.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

102.   The 2013 Compensation Plan for the Trauma Division stated, under the heading

"Conversion to Full Commission," that "[u]pon conversion, the $500 per period auto allowance

and up to $900 per period of reimbursable in-territory business expenses are built into the full

commission base compensation plan":

> Upon request by the individual Sales Consultant, the Regional
> Manager may recommend conversion to straight commission in
> accordance with the following formula:  when a Sales Consultant
> territory reaches an annualized volume of $700,000 or more in
> sales, a Sales Consultant may choose (with Regional Manager
> recommendation) to convert his/her compensation package from
> salary plus commission to full commission.  Commission is paid
> according to the then current commission program in effect.  ***Upon
> conversion, the $500 per period auto allowance and up to $900
> per period of reimbursable in-territory business expenses are
> built into the full commission base compensation plan***.  To the
> extent required by applicable state law, Sales Consultants on the
> full commission base compensation plan may be eligible to receive
> direct reimbursement of pre-approved in-territory expenses above
> the allocated allowance, subject to DePuy Synthes' direct
> reimbursement and compliance policies.

*See* Ex. 86 (Dep. Ex. 199) at SYNTHES-003545 (emphasis added).

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently**

**herewith.**

103.   In December 2013, Synthes provided each Sales Consultant in California

(including the members of the Expense Class) with a written Compensation Plan for the year

2014. *See* Ex. 83 (Dep. Ex. 194) at SYNTHES-008067-87 (2014 Trauma Compensation Plan);

Ex. 85 (Dep. Ex. 198) at SYNTHES-008111-23 (2014 Spine Compensation Plan); Ex. 87 (Dep.

Ex. 200) at SYNTHES-008088-008110 (2014 CMF Compensation Plan).

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

104.   All Sales Consultants in California were required to provide Synthes with a signed acknowledgment of the 2014 Compensation Plan.  *See* Ex. 19, Hurley (9-23-15) Decl. ¶ 3; *See also* Ex. 8, Meister (2-25-15) Dep. at 194:9-13 ("Q: Are there documents that look like this for the other subsequent commission plans that we've looked at for 2014?; A: There would be acknowledgement pages for the plans.").

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

105.   The 2014 Compensation Plan for the Trauma division stated expressly the specific allocation for in-territory car and business expenses built into the enhanced commission rate under the straight commission plan.  *See* Ex. 83 (Dep. Ex. 194) at SYNTHES-008067-87; Ex. 87 (Dep. Ex. 200) at SYNTHES-008088-008110.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

106.   The 2014 Compensation Plan for the Trauma Division stated, under the heading "Conversion to Full Commission," that "[u]pon conversion, the $500 per period auto allowance and up to $900 per period of reimbursable in-territory business expenses are built into the full commission base compensation plan":

> Upon request by the individual Sales Consultant, the Regional Manager may recommend conversion to straight commission in accordance with the following formula:  when a Sales Consultant territory reaches an annualized volume of $700,000 or more in sales, a Sales Consultant may choose (with Regional Manager recommendation) to convert his/her compensation package from salary plus commission to full commission.  Commission is paid according to the then current commission program in effect.  ***Upon conversion, the $500 per period auto allowance and up to $900 per period of reimbursable in-territory business expenses are built into the full commission base compensation plan***.  To the extent required by applicable state law, Sales Consultants on the full commission base compensation plan may be eligible to receive direct reimbursement of pre-approved in-territory expenses above the allocated allowance, subject to DePuy Synthes' direct reimbursement and compliance policies.

*See* Ex. 83 (Dep. Ex. 194) at SYNTHES-008076-77 (emphasis added).

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

107.    In December 2014, Synthes provided each Sales Consultant in California (including the members of the Expense Class) with a written Compensation Plan for the year 2015.  *See* Ex. 19, Hurley (9-23-15) Decl. ¶ 4; *See also* Ex. 89 (Dep. Ex. 202) at SYNTHES-009244-59 (2015 Spine Compensation Plan); Ex. 90 (Dep. Ex. 203) at SYNTHES-009260-80 (2015 Trauma Compensation Plan); Ex. 95 (Dep. Ex. 215) at SYNTHES-009281-009302 (2015 CMF Compensation Plan).

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

108.    All Sales Consultants in California were required to provide Synthes with a signed acknowledgment of the 2015 Compensation Plan.  *See* Ex. 19, Hurley (9-23-15) Decl. ¶ 4.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

109.    The 2015 Compensation Plan documents for the Trauma division stated expressly the specific allocation for in-territory car and business expenses built into the enhanced commission rate under the straight commission plan.  *See* Ex. 90 (Dep. Ex. 203) at SYNTHES-009260-80.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

110.    The 2015 Compensation Plan for the Trauma division stated, under the heading "Conversion to Full Commission," that "[u]pon conversion, the $500 per period auto allowance and up to $900 per period of reimbursable in-territory business expenses are built into the full commission base compensation plan":

> Upon request by the individual Sales Consultant, the Regional Manager may recommend conversion to straight commission in accordance with the following formula:  when a Sales Consultant territory reaches an annualized volume of $800,000 or more in sales, a Sales Consultant may choose (with Regional Manager recommendation) to convert his/her compensation package from salary plus commission to full commission.  Commission is paid according to the then current commission program in effect.  ***Upon conversion, the $500 per period auto allowance and up to $900 per period of reimbursable in-territory business expenses are built into the full commission base compensation plan***.  To the extent required by applicable state law, Sales Consultants on the full commission base compensation plan may be eligible to receive direct reimbursement of pre-approved in-territory expenses above the allocated allowance, subject to DePuy Synthes' direct reimbursement and compliance policies.

See Ex. 90 (Dep. Ex. 203) at SYNTHES-009269 (emphasis added).

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

### g. Monthly Commission Statements.

111.     Synthes provides each Sales Consultant with monthly "Commission Statements" indicating the sales invoiced by the Sales Consultant and the commissions to be paid to the Sales Consultant. *See* Ex. 7, Meister (12/19/12) Dep. at 278:12-279:7 (Sales Consultants receive Commission Statements "when they get their commission check"); Ex. 4, Hurley Dep. at 166:18-24 (describing exhibit as a "monthly commission statement").

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

112.     Starting in January 2013, Synthes added a specific footnote to each Sales Consultant's commission statement stating the specific expense allocations built into the enhanced commission rate under the straight commission plan. *See* Ex. 96 (Dep. Ex. 224); Ex. 4, Hurley Dep. at 169:10-13 ("Q: Do you know whether that . . . applied to Spine and Trauma and CMF?; A: Yes."). *See also id.* at 168:1-2 ("it was added I want to say in 2013").

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

113.     Starting in January 2013, the Commission Statements sent to Trauma Sales Consultants (including the members of the Expense Class) included the following language:

> *** For sales consultants who are on the full commission
> compensation plan, ***the full commission compensation
> arrangement includes allocated reasonable and necessary
> business expenses based on allowance of $500 for automobile per
> month and $900 for other business expenses***.

*See*, *e.g.*, Ex. 19, Hurley (9-23-15) Decl. ¶ 5 & Ex. B. (emphasis added).

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

### h. Regional Managers and Sales Consultants are Required to Discuss the Compensation Formula at Conversion.

114.     Synthes trains and requires its Regional Managers to discuss the compensation formula, including the expense allowances under the base plan and the expense allocations built into the straight commission plan with Sales Consultants prior to recommending or approving a Sales Consultant's conversion to the straight commission plan. *See* Ex. 17, R. Gennett Decl.

¶ 24;  Ex. 15, Bertz Decl. ¶ 7;  Ex. 14, Bennett (9-18-15) Decl. ¶ 5.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed. No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations. Further, whether Regional Managers were required to discuss said formula and how in-territory expenses were included is immaterial because there is no written policy that evidences that these pre-conversion discussions were required.  See Plaintiff's objections to evidence filed concurrently herewith.**

115.    Rick Gennett explained that Regional Managers "were trained to discuss" the compensation formula, expense allowances, and expense allocations with Sales Consultants requesting to convert to the straight commission plan:

> When a person was considering moving to straight commission, managers were trained to discuss with them the fact that the enhanced compensation of 12.5% at the minimum conversion threshold would provide them compensation that would cover and indemnify the in-territory expenses and car allowance and that, as a result, they would not get in-territory expenses reimbursed, unless otherwise approved by management, because these were already built into their total compensation.

*See* Ex. 17, R. Gennett Decl. ¶ 24.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed. No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class**

1
2
3
4
5
6

**members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations. Further, whether Regional Managers were required to discuss said formula and how in-territory expenses were included is immaterial because there is no written policy that evidences that these pre-conversion discussions were required. See Plaintiff's objections to evidence filed concurrently herewith.**

7
8
9
10
11

116.    Steve Bertz explained that, as West Area Vice President in the Trauma division, he "require[s] Regional Managers to again discuss the compensation system, including the formula and the fact the enhanced commission rate under the straight commission plan builds in the same expenses and car allowance that are paid directly under the base plan, during the conversion process."  *See* Ex. 15, Bertz Decl. ¶ 7.

12
13
14
15
16
17
18
19
20
21
22
23

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed. No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations. Further, whether Regional Managers were required to discuss said formula and how in-territory expenses were included is immaterial because there is no written policy that evidences that these pre-conversion discussions were required. See Plaintiff's objections to evidence filed concurrently herewith.**

24
25
26

117.    David Wholey testified that, during his pre-conversion discussions, he made it "blatantly clear" that the expenses reimbursed under the base plan were "part of the 12-and-half percent commission":

27
28

> "I actually talked to them about how . . . when they[] crossover,
> make it blatantly clear that, your expenses are reimbursed up to

under the hybrid [base compensation] program and your allowance, ***and then that those are part of the 12 1/2 percent commission***."

*See* Ex. 10, Wholey Dep. at 35:24-36:6 (emphasis added).

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed. No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations. Further, whether Regional Managers were required to discuss said formula and how in-territory expenses were included is immaterial because there is no written policy that evidences that these pre-conversion discussions were required. See Plaintiff's objections to evidence filed concurrently herewith.**

118.    Wholey also provided a more detailed description of the substance of his pre-conversion discussions:

> I work with sales consultants closely in reviewing their territory. Letting them know that they're transitioning from their compensation package, which follows the model of the sales policy manual in that the allowance for the expenses up to $900, as well as a car allowance, netted him X amount for his territory size, with that 4 percent commission.
>
> And that he would be transitioning to a 12-and-a-half percent territory based on – or twelve-and-a-half percent commission based on the territory and his income could be expected here.
>
> ***But that the expenses that were directly reportable when he was under the hybrid plan are encompassed in that 12-and-a-half percent commission***.
>
> And that he wouldn't double-dip or think that he could be eligible for direct reimbursement at that 12-and-a-half percent commission.

*See* Ex. 10, Wholey Dep. at 202:23-203:15 (emphasis added).

**DISPUTED. This fact is immaterial. Plaintiff further disputes that a compensation formula existed. No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members. UMF Nos. 17, 21, 23, 26, 47-51. Additionally, class members have testified that there was no "formula" as Synthes is using the term. See Class Member Declarations. Further, whether Regional Managers were required to discuss said formula and how in-territory expenses were included is immaterial because there is no written policy that evidences that these pre-conversion discussions were required. See Plaintiff's objections to evidence filed concurrently herewith.**

119.   Wholey testified further that he "told [Sales Consultants] that the expenses set out in the [Sales Policy Manuals] were part of the compensation when they moved to full commission" and were "incorporated into their 12-and-a-half percent commission":

> Q: [Y]ou told people that the expenses set out in the policy manual were part of the compensation when they moved to full commission; is that right?
>
> A: Yes.
>
> Q: And did you then comment on whether they would be eligible for expenses over and above that?
>
> A: Yes.
>
> Q: What did you tell them?
>
> A: That the expenses were incorporated into their 12-and-a-half percent commission

*See* Ex. 10, Wholey Dep. at 214:14-215:1.

**DISPUTED. This fact is immaterial. Plaintiff further disputes that a compensation formula existed. No written documents exist that show Synthes used such a "formula" for**

**the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members. UMF Nos. 17, 21, 23, 26, 47-51. Additionally, class members have testified that there was no "formula" as Synthes is using the term. See Class Member Declarations. Further, whether Regional Managers were required to discuss said formula and how in-territory expenses were included is immaterial because there is no written policy that evidences that these pre-conversion discussions were required. See Plaintiff's objections to evidence filed concurrently herewith.**

120.     Brian Murray, a Trauma Regional Manager (and a former Sales Consultant who is a member of the Expense Class), explained that, during his pre-conversion discussions he has "made clear to each Sales Consultant that the 12.5% commission rate includes an amount allocated for in-territory business expenses." *See* Ex. 49, Murray Decl. ¶ 10 at SYNTHES-003505-06.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed. No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members. UMF Nos. 17, 21, 23, 26, 47-51. Additionally, class members have testified that there was no "formula" as Synthes is using the term. See Class Member Declarations. Further, whether Regional Managers were required to discuss said formula and how in-territory expenses were included is immaterial because there is no written policy that evidences that these pre-conversion discussions were required. See Plaintiff's objections to evidence filed concurrently herewith.**

121.   As part of these pre-conversion conversations, California Regional Managers in the Trauma division prepare and review spreadsheets and other calculations for their Sales Consultants that use the compensation formula to show that the straight commission plan covers and includes all of the elements of the base compensation plan, including the car allowance and allowance for in-territory business expenses.  For example, Eric Sorensen testified at his deposition:

> Q: So you talk with – you talk with the sales consultants who are making the transition to full commission about what the difference in their compensation is going to look like once they make that switch?
>
> A: Correct.
>
> Q: Do you have a standard discussion that you have with them? Do you have a standard protocol that you use?
>
> A: Relatively standard if they are on a salary – if they are on a salary plus.
>
> Q: Can you tell me what that relatively standard protocol is, what you say to them?
>
> A: We take into account their salary or guarantee, any of their auto allowance, their expenses, any commissions that are associated with it, and come up with a total package versus what – what the compensation would look like on the – on the commission basis, and then what the opportunity is from there forward.

*See* Ex. 9, Sorensen Dep. at 113:7-24.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed.  No written documents exist that show Synthes used such a "formula" for the Expense Class.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)).  To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations.  Further, whether Regional Managers were required to discuss said formula and how in-**

**territory expenses were included is immaterial because there is no written policy that evidences that these pre-conversion discussions were required. See Plaintiff's objections to evidence filed concurrently herewith.**

122.   David Wholey testified at his deposition:

> I really want to look at a territory, is it sufficient. . . . So we look at the territory, what it did last couple years.  We look at the potential . . . and we look at the individual's expenses.  What is it really costing you to do your business, because it's different from San Francisco versus Sacramento.  And most consultants, it's pretty night and day difference between a hybrid model and a 12-and-a-half percent model.  Expenses are a part of the 12-and-a-half percent model.

*See* Ex. 10, Wholey Dep. at 26:17-28:6.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed.  No written documents exist that show Synthes used such a "formula" for the Expense Class.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)).  To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations. Further, whether Regional Managers were required to discuss said formula and how in-territory expenses were included is immaterial because there is no written policy that evidences that these pre-conversion discussions were required. See Plaintiff's objections to evidence filed concurrently herewith.**

123.   Wholey testified further that "When I sit down with my consultants who want to do the crossover I look at their specific expenses, what their gas is.  The model that the company uses of 9 [hundred] and 4 [hundred], 9 [hundred] and 5 [hundred] is actually maximum." *See* Ex. 10, Wholey Dep. at 33:16-19.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation**

**formula existed.  No written documents exist that show Synthes used such a "formula" for the Expense Class.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)).  To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations. Further, whether Regional Managers were required to discuss said formula and how in-territory expenses were included is immaterial because there is no written policy that evidences that these pre-conversion discussions were required. See Plaintiff's objections to evidence filed concurrently herewith.**

124.    Bryan Murray explained that "I help the Sales Consultant calculate the differential in income between the base plus commission arrangement and the 12.5% enhanced commission rate so that he or she is certain that the amounts to be earned will more than fully cover their known business expenses as well as result in substantial additional income."  *See* Ex. 49, Murray Decl. ¶ 10 at SYNTHES-003505-06. ]

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed.  No written documents exist that show Synthes used such a "formula" for the Expense Class.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)).  To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations. Further, whether Regional Managers were required to discuss said formula and how in-territory expenses were included is immaterial because there is no written policy that evidences that these pre-conversion discussions were required. See Plaintiff's objections to evidence filed concurrently herewith.**

125.    Current and former Trauma Sales Consultants who are members of the Expense Class have confirmed these pre-conversion discussions.  For example, John Branco (a Trauma Sales Consultant) explained: "[My Regional Manager] clearly communicated to me the pros and cons of converting and informed me that in-territory expenses were built into the compensation model and the enhanced commission rate."  *See* Ex. 33, Branco Decl. ¶ 3 at SYNTHES-003468-69.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed. No written documents exist that show Synthes used such a "formula" for the Expense Class.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)).  To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations.  Further, whether Regional Managers were required to discuss said formula and how in-territory expenses were included is immaterial because there is no written policy that evidences that these pre-conversion discussions were required. See Plaintiff's objections to evidence filed concurrently herewith.**

126.    Banco explained further:

> I wanted to take advantage of the company's enhanced commission compensation plan and discussed converting to full commission with my Regional Manager.  He told me that it was my personal choice and did an analysis comparing my then current compensation, where I submitted business expenses for reimbursement, with the full commission program that had in-territory expenses covered by an enhanced commission rate.  This analysis showed me that I was leaving considerable money on the table if I remained on my existing compensation plan.

*See* Ex. 33, Branco Decl. ¶ 3 at SYNTHES-003468.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

127.    Michael Bruce, a Trauma Sales Consultant, explained that "I . . . had

conversations with my Regional Manager, Bill Fogarty, to discuss the compensation options." *See* Ex. 34, Bruce Decl. ¶ 5 at SYNTHES-003472.

**DISPUTED. This fact is immaterial. Plaintiff further disputes that a compensation formula existed. No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members. UMF Nos. 17, 21, 23, 26, 47-51. Additionally, class members have testified that there was no "formula" as Synthes is using the term. See Class Member Declarations. Further, whether Regional Managers were required to discuss said formula and how in-territory expenses were included is immaterial because there is no written policy that evidences that these pre-conversion discussions were required. See Plaintiff's objections to evidence filed concurrently herewith.**

128. Bryan Murray explained that, as a Trauma Sales Consultant considering conversion to the straight commission plan, "I was encouraged by my Regional Manager to make sure that I was comfortable, based on the projected sales in my territory, that my compensation at the 12.5% commission rate would more than cover my expenses and the company allowance and, over and above that, would provide me with additional income compared with what I had been making." *See* Ex. 49, Murray Decl. ¶ 6 at SYNTHES-003505.

**DISPUTED. This fact is immaterial. Plaintiff further disputes that a compensation formula existed. No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members. UMF Nos. 17, 21, 23, 26, 47-51. Additionally, class members have testified that there was no "formula" as Synthes is using the term. See Class Member Declarations.**

**Further, whether Regional Managers were required to discuss said formula and how in-territory expenses were included is immaterial because there is no written policy that evidences that these pre-conversion discussions were required. See Plaintiff's objections to evidence filed concurrently herewith.**

129.    John Bartlett, a Trauma Sales Consultant, explained: "I spoke with my Regional Manager about the conversion and did the calculations taking into account my known business expenses to make sure that I would be financially better off."  *See* Ex. 28, Bartlett Decl. ¶ 5 at SYNTHES-003461

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed. No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations. Further, whether Regional Managers were required to discuss said formula and how in-territory expenses were included is immaterial because there is no written policy that evidences that these pre-conversion discussions were required. See Plaintiff's objections to evidence filed concurrently herewith.**

### i.    Ongoing Conversations Regarding the Compensation Formula.

130.    Throughout the course of employment, Trauma Regional Managers also engage their Sales Consultants in ongoing conversations regarding Synthes' compensation formula and the "metrics" of converting from the base compensation plan to the straight commission compensation plan.  *See*, *e.g.*, Ex. 9, Sorensen Dep. at 114:10-13

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed. No written documents exist that show Synthes used such a "formula" for**

1   the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s

2   Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents

3   demonstrate the absence of any "formula" allocating a set amount to expenses, because

4   under its facial policies, Synthes denied expense reimbursement to Expense Class

5   members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that

6   there was no "formula" as Synthes is using the term.  See Class Member Declarations.

7   Further, whether Regional Managers were required to discuss said formula and how in-

8   territory expenses were included is immaterial because there is no written policy that

9   evidences that these pre-conversion discussions were required. See Plaintiff's objections to

10  evidence filed concurrently herewith.

11      131.    For example, Eric Sorensen testified that "[i]t's . . . many conversations.  They

12  know that [the] auto allowance isn't going to be above and beyond anymore, that it's included in

13  the commission-only [plan] as part of the compensation."  See Ex. 9, Sorensen Dep. at 114:10-

14  13.

15      **DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation**

16  **formula existed. No written documents exist that show Synthes used such a "formula" for**

17  **the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s**

18  **Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents**

19  **demonstrate the absence of any "formula" allocating a set amount to expenses, because**

20  **under its facial policies, Synthes denied expense reimbursement to Expense Class**

21  **members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that**

22  **there was no "formula" as Synthes is using the term.  See Class Member Declarations.**

23  **Further, whether Regional Managers were required to discuss said formula and how in-**

24  **territory expenses were included is immaterial because there is no written policy that**

25  **evidences that these pre-conversion discussions were required. See Plaintiff's objections to**

26  **evidence filed concurrently herewith.**

27          **5.      Troy Lindell Understood the Compensation Formula.**

28      132.    Synthes communicated the compensation formula to Lindell and Lindell

understood the compensation formula, including his expense reimbursement allowances under the base compensation plan and the allocations for expense indemnification built into the straight commission plan.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed. No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations. Further, whether Regional Managers were required to discuss said formula and how in-territory expenses were included is immaterial because there is no written policy that evidences that these pre-conversion discussions were required. See Plaintiff's objections to evidence filed concurrently herewith.**

133.    Lindell began his employment with Synthes in July 1999 on the base compensation plan.  *See* Ex. 57 (Dep. Ex. 9) at SYNTHES-000073-74.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

134.    Lindell received and signed an offer letter stating his $40,000 base salary, 4% commission rate, $400 monthly car allowance, and $900 monthly allowance for direct reimbursement of in-territory business expenses under base plan:

Your compensation package is as follows:

- Annual base salary of $40,000

- Eligibility for 4% commission as of September 1, 1999

- An automobile allowance of $400 monthly is provided

- Variable territory expenses up to $900 monthly to be received with weekly expense reports

- Communications expenses, *i.e.* telephone, car phone, pager, etc. may not exceed $400 of the $900 in variable expenses

*See* Ex. 57 (Dep. Ex. 9) at SYNTHES-000073-74 (emphasis added);  *See also* Ex. 5, Lindell Dep. at 48:4-15; 53:14-55:10.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

135.    While working under the base plan, Lindell understood that he was entitled to "$400 for automobile allowance that was automatically provided" and "up to $900 a month for other variable expenses" for which he would "have to submit an expense request."  *See* Ex. 5, Lindell Dep. at 53:14-55:10.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

136.    Lindell received a copy of the 1999 Sales Policy Manual at or around the time he began employment with Synthes. *See* Ex. 5, Lindell Dep. at 104:20-105:10; 105:25-106:1.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

137.    Lindell "reviewed" and became "familiar with" the Sales Policy Manual.  *See* Ex. 5, Lindell Dep. at 105:11-15.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

138.    Lindell made a request to his Regional Manager, David Wholey, to convert to the straight commission plan and converted to the straight commission plan effective November 1, 2001.  *See* Ex. 65 (Dep. Ex. 27) at SYNTHES-000054-55.  *See also* Ex. 5, Lindell Dep. at 112:19-113:25.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

139.    Lindell testified at his deposition that Synthes' policies regarding conversion from the base plan to the straight commission plan, as stated in the Sales Policy Manuals, were "common knowledge."  *See* Ex. 5, Lindell Dep. at 106:25-107:19.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

140.    Lindell testified at his deposition that Synthes' compensation formula, as stated in the Sales Policy Manuals, was "simple math":

Q: So, you did have some general understanding of the circumstances in which you could request to go to full commission?

A: Yes.

Q: Do you see that it says, "When a Sales Consultant's territory reaches an annualized volume sales of $700,000 or more," do you see that?

A: Yes.

Q: And what did you understand by that kind of threshold reference there to the level of sales, if anything?

A: Well, simple math, really.

Q: What do you mean by, "simple math, really"?

A: You take the combination of your salary and the expenses, and at a certain point you could earn more money but not be able to use the expenses anymore, and it would be -- you would generate more money.

*See* Ex. 5, Lindell Dep. at 107:24-109:15.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed. No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations. Further, whether Regional Managers were required to discuss said formula and how in-territory expenses were included is immaterial because there is no written policy that evidences that these pre-conversion discussions were required.   See Plaintiff's objections to evidence filed concurrently herewith.**

141.    Lindell testified at his deposition that he agreed that the compensation formula, as

stated in Synthes' Sales Policy Manuals, reflected a "mathematical formula" and that the

conversion threshold reflected a "mathematic equation":

> Q: So it's a formula?
>
> A: Yes.
>
> Q: A mathematical formula, right?
>
> A: Yes.
>
> Q: And it consists of at least two things right? The volume of sales –
>
> A: Yes.
>
> Q : – times 12.5 percent?
>
> A: Yes.
>
> Q: And then you do an equation to see if the volume of sales times 12.5 percent exceeds your base pay, plus four percent commission, plus the direct expense allowance that you will be provided, right?
>
> A: Yes.
>
> Q: If you go to the next paragraph it starts in bold with the word, "Conversion."  Do you see that?
>
> A: Yes.
>
> Q: And it says, "Conversion to a commissioned Sales Consultant may be considered when annualized territory sales regularly exceeds $700,000."  Do you see that?
>
> A: Yes.
>
> Q: Do you have any personal knowledge or understanding as to why it was necessary for them, for the sales to regularly exceed $700,000?
>
> A: Once again, it's a mathematic equation

*See* Ex. 5, Lindell Dep. at 108:16-109:15.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation**

**formula existed. No written documents exist that show Synthes used such a "formula" for**

**the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s**

**Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations. Further, whether Regional Managers were required to discuss said formula and how in-territory expenses were included is immaterial because there is no written policy that evidences that these pre-conversion discussions were required.  See Plaintiff's objections to evidence filed concurrently herewith.**

142.    Lindell agreed at his deposition that "[i]n that formula, [Synthes] took those monthly sales times 12.5%, would then cover base pay, plus 4 percent commission plus expense allowance" under the base plan.  *See* Ex. 5, Lindell Dep. at 116:25-117:3.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed.  No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)).  To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations. Further, whether Regional Managers were required to discuss said formula and how in-territory expenses were included is immaterial because there is no written policy that evidences that these pre-conversion discussions were required.  See Plaintiff's objections to evidence filed concurrently herewith.**

143.    Lindell testified at his deposition that he made the decision to request conversion to the straight commission plan based on this "mathematic formula."  *See* Ex. 5, Lindell Dep. at 114:1-3 ("Q: What factors do you recall leading you to make that request to Mr. Wholey?; A:

The mathematic formula.").

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

144.    Lindell testified at this deposition that, at the time he requested conversion he was confident that the consistent sales in his territory exceeded the $700,000 conversion threshold. *See* Ex. 5, Lindell Dep. at 114:4-12.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

145.    Indeed, at the time of his November 1, 2001 conversion, Lindell's year-to-date territory sales were $727,365 through the first ten months of 2001.  *See* Ex. 65 (Dep. Ex. 27) at SYNTHES-000055.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

146.    Lindell agreed at his deposition that, based on $725,000 in annualized sales, his total compensation under the straight commission plan would include and exceed his maximum total compensation under the combined elements of the base plan.  *See* Ex. 5, Lindell Dep. at 117:4-118:18.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

147.    Lindell testified at his deposition that he personally did the calculations regarding conversion under the compensation formula and that he believed he could make more money under the straight commission plan as compared to the combined elements of the base plan.  *See* Ex. 5, Lindell Dep. at 114:10-12; 115:8-9.  *See also* Ex. 5, Lindell Dep. at 130:24-131:3 ("Q: And presumably because you made the request you got to a point, a comfort level that either way you were going to make more money by going to full commission, taking into consideration the expenses; A: Yes.").

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed. No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class**

members.  **UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations.  Further, whether Regional Managers were required to discuss said formula and how in-territory expenses were included is immaterial because there is no written policy that evidences that these pre-conversion discussions were required.  *See* Ex. 5, Lindell Dep. at 114:10-12; 115:8-9.  See Plaintiff's objections to evidence filed concurrently herewith.**

148.   Lindell testified at his deposition that when he did his calculations "in terms of deciding whether to opt to go to full commission," he based his calculations on both the maximum allowances offered by the base plan and on his actual in-territory expenses:

> Q: When you did your calculations in terms of deciding whether to opt to go to full commission, did you also calculate based upon not only the allowance but also what your actual expenses were, to make sure that you would have all of that built in and more if you went to full commission?
>
> A: I tried.  Yes.
>
> Q: So you did it both ways?
>
> A: Yes.
>
> Q: Okay.  And presumably because you made the request you got to a point, a comfort level that either way you were going to make more money by going to full commission, taking into consideration the expenses?
>
> A: Yes.

*Id.* at 130:14-131:4

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed. No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that**

there was no "formula" as Synthes is using the term.  See Class Member Declarations.

Further, whether Regional Managers were required to discuss said formula and how in-territory expenses were included is immaterial because there is no written policy that evidences that these pre-conversion discussions were required.  *See* Ex. 5, Lindell Dep. at 114:10-12; 115:8-9.  See Plaintiff's objections to evidence filed concurrently herewith.

149.    David Wholey, Lindell's Regional Manager at the time of his conversion, testified that he discussed the compensation formula with Lindell and explained that Lindell's "direct expenses" under the base plan "were part of the 12-and-a-half percent" commission rate under the straight commission plan:

> ***I explained to him that the expenses were part of the 12-and-a-half percent***.  He could stay at the . . . base pay and 4 percent and direct expenses and make this much money, versus going over to straight commission of 12-and-a-half percent on the territory, with or without growth, these would be the dollar figures

*See* Ex. 10, Wholey Dep. at 91:7-16 (emphasis added).  *See also id.* at 91:17-20 ("Q: So your testimony is that you told him that the expenses were part of the 12-and-half percent?; A: Correct."); *id.* at 212:22-24 ("I told him that his expenses were incorporated in the 12-and-a-half percent commission that he would now be earning.").

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed. No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations. Further, whether Regional Managers were required to discuss said formula and how in-territory expenses were included is immaterial because there is no written policy that evidences that these pre-conversion discussions were required.  Finally, Plaintiff disputes**

**that Wholey had such a conversation with him as Lindell cannot recall Wholey helping him**

**with any conversion formulas.  See Exh. 5 Lindell depo. at p. 114:3-23.  See Plaintiff's**

**objections to evidence filed concurrently herewith.**

150.    Wholey testified further that, during his pre-conversion conversations with Lindell,  he specifically reviewed "the costs of doing business in his territory" and "what the territory will be at 12-and-a-half percent" under the straight commission plan."  *See* Ex. 10, Wholey Dep. at 90:13-91:1.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation**

**formula existed. No written documents exist that show Synthes used such a "formula" for**

**the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s**

**Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents**

**demonstrate the absence of any "formula" allocating a set amount to expenses, because**

**under its facial policies, Synthes denied expense reimbursement to Expense Class**

**members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that**

**there was no "formula" as Synthes is using the term.  See Class Member Declarations.**

**Further, whether Regional Managers were required to discuss said formula and how in-**

**territory expenses were included is immaterial because there is no written policy that**

**evidences that these pre-conversion discussions were required.  Finally, Plaintiff disputes**

**that Wholey had such a conversation with him as Lindell cannot recall Wholey helping him**

**with any conversion formulas.  See Exh. 5 Lindell depo. at p. 114:3-23.  See Plaintiff's**

**objections to evidence filed concurrently herewith.**

**C.    The Sales Consultant Compensation Formula in the Spine Division.**

**1.    Overview of the Spine Division's Compensation Formula.**

151.    Throughout and preceding the class period, Synthes has compensated Sales Consultants in the Spine division pursuant to the following formula:

*Annualized sales x 12.5% commission >*

*Base salary + 4% commission + car allowance + direct expense reimbursement allowance*

1   *See* Ex. 21, Landau Decl. ¶¶ 2-3.  *See also* Ex. (Dep. Ex. 20) at P000407; Ex. 62 (Dep. Ex. 21) at

2   SYNTHES-000436; Ex. 63 (Dep. Ex. 22) at SYNTHES-000536; Ex. 92 (Dep. Ex. 205) at

3   SYNTHES-003580-81.

4   **DISPUTED.  Plaintiff disputes the existence of a "compensation formula." No**

5   **written documents exist that show Synthes used such a "formula" for the Expense Class.**

6   **UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req.**

7   **for Produc. of Docs. (Set Four)).  To the contrary, all written documents demonstrate the**

8   **absence of any "formula" allocating a set amount to expenses, because under its facial**

9   **policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17,**

10  **21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as**

11  **Synthes is using the term.  See Class Member Declarations.   See Plaintiff's objections to**

12  **evidence filed concurrently herewith.**

13  152.    One side of the compensation formula is the base compensation plan.  In the

14  Spine division, the base plan offers Sales Consultants a base salary, a reduced 4% commission

15  rate, a car allowance, and an allowance for direct reimbursement of in-territory business

16  expenses.  *See* Ex. 61 (Dep. Ex. 20) at P000407; Ex. 62 (Dep. Ex. 21) at SYNTHES-000436; Ex.

17  63 (Dep. Ex. 22) at SYNTHES-000536;  Ex. 92 (Dep. Ex. 205) at SYNTHES-003580-81.

18  **DISPUTED.  Plaintiff disputes the existence of a "compensation formula." No**

19  **written documents exist that show Synthes used such a "formula" for the Expense Class.**

20  **UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req.**

21  **for Produc. of Docs. (Set Four)).  To the contrary, all written documents demonstrate the**

22  **absence of any "formula" allocating a set amount to expenses, because under its facial**

23  **policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17,**

24  **21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as**

25  **Synthes is using the term.  See Class Member Declarations.**

26  153.    The other side of the compensation formula is the straight commission

27  compensation plan.  In the Spine division, the straight commission plan offers Sales Consultants

28  an enhanced commission rate (12.5%) that is designed to include all of the elements of the base

compensation plan.  *See* Ex. 61 (Dep. Ex. 20) at P000407; Ex. 62 (Dep. Ex. 21) at SYNTHES-000436; Ex. 63 (Dep. Ex. 22) at SYNTHES-000536; Ex. 92 (Dep. Ex. 205) at SYNTHES-003580-81.

**DISPUTED.  Plaintiff disputes the existence of a "compensation formula."  No written documents exist that show Synthes used such a "formula" for the Expense Class.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)).  To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations.**

        2.      **The Compensation Formula in the Spine Division During the Class Period.**

154.    Throughout the class period until January 1, 2014, Sales Consultants in the Spine division started employment under the base compensation plan with a $40,000 base salary, a 4% commission rate, a $450 monthly car allowance, and a $1,000 monthly allowance for direct reimbursement of in-territory business expenses.  *See* Ex. 62 (Dep. Ex. 21) at SYNTHES-000436; Ex. 63 (Dep. Ex. 22) at SYNTHES-000536; Ex. 92 (Dep. Ex. 205) at SYNTHES-003580;  *See also* Ex. 2, Birchler Dep. at 148:8-13.

**UNDISPUTED, but misleading as there are facts that evidence that Sales Consultants in the Spine division did not always start employment under the base compensation plan with a $40,000 base salary, a 4% commission rate, a $450 monthly car allowance, and a $1,000 monthly allowance for direct reimbursement of in-territory business expenses.**

155.    Throughout the class period until January 1, 2014, Synthes' Sales Policy Manuals provided that Spine Sales Consultants could convert to the straight commission plan at $700,000 in annualized sales.  *See* Ex. 62 (Dep. Ex. 21) at SYNTHES-000436; Ex. 63 (Dep. Ex. 22) at SYNTHES-000536; Ex. 92 (Dep. Ex. 205) at SYNTHES-003580.

**UNDISPUTED, but misleading as not all Sales Consultants converted to straight commission plans only after reaching $700,000 in annualized sales. In fact, some were hired under straight commission and others converted before reaching that amount in sales.**

156.    As shown by the following table, at the $700,000 annualized sales threshold, a Spine Sales Consultant's total compensation under the straight commission structure ($87,500), included and exceeded a Spine Sales Consultant's maximum total compensation under the combined elements of the base structure in effect until January 1, 2014 ($85,400):

|  | Base | Straight Commission |
|---|---|---|
| **Salary** | $40,000 | $0 |
| **Commissions** | $28,000 *($700,000 x 4%)* | $87,500 *($700,000 x 12.5%)* |
| **Auto Allowance** | $5,400 *($450/month x 12)* | $0 *(Indemnification)* |
| **Direct Reimbursement Allowance** | $12,000 *($1000/month x 12)* | |
| **TOTAL COMPENSATION** | **$85,400** | **$87,500** |

*See* Ex. 62 (Dep. Ex. 21) at SYNTHES-000436; Ex. 63 (Dep. Ex. 22) at SYNTHES-000536; Ex. 92 (Dep. Ex. 205) at SYNTHES-003580. *See also* Ex. 6, McGee Dep. at 147:12-14 ("So 40 & 4 plus 450 and a thousand at 700,000 sales is right around what 12 1/2 -- 12 1/2 percent is actually slightly higher.").

**DISPUTED.  Plaintiff disputes the existence of a "commission structure."  Some Sales Consultants received a different commission rate and/or base salary. There is no written policy before 2013 that proves that such a "structure" existed nor that the total compensation upon conversion would include allocations of all of the base compensation package including full car and maximum expense allowance.  Furthermore, this table was not part of any documentation Synthes' Sales Consultants received when determining whether to switch to full commission. UMF No. 47 Ex. 14 at Nos. 74, 75 (Def.'s Resps. to**

**Pl.'s Req. for Produc. of Docs. (Set Four) Decl. ¶ 11;  Hayes Decl. ¶ 11;  Warne Decl. ¶ 11;**

**Marsh Decl. ¶ 11. See Plaintiff's objections to evidence filed concurrently herewith.**

157.    Michael Landau, an Area Vice President and former Vice President of Sales for the Spine Division, explained that "the reason for this [$700,000] conversion level was to ensure that a Sales Consultant upon conversion would continue to receive compensation which covered all of the base compensation package including the car allowance and the expense reimbursement allowance." *See* Ex. 21, Landau Decl. ¶ 2; *See also* Ex. 2, Birchler Dep. at 139:21-40:11.

**DISPUTED.  This fact is immaterial.  Synthes' subjective belief regarding the purpose of the conversion threshold is irrelevant.  Whatever their beliefs are, they do not show that Synthes established a policy that reimburses its Sales Consultants for expenses, communicates a specific apportionment between wages and expenses, or fully indemnifies the Sales Consultants for their reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)) .**

158.    Kurt Birchler, another former Vice President of Sales for the Spine division testified based on "personal knowledge" that "the reason for that [threshold] was to ensure . . . that, when somebody converted, they would receive compensation to include all of their base salary commissions and direct reimbursement." *See* Ex. 2, Birchler Dep. at 140:1-11.

**DISPUTED.  This fact is immaterial.  Synthes' subjective belief regarding the purpose of the conversion threshold is irrelevant.  Whatever their beliefs are, they do not show that Synthes established a policy that reimburses its Sales Consultants for expenses, communicates a specific apportionment between wages and expenses, or fully indemnifies the Sales Consultants for their reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)).**

159.    Birchler testified further that "at $700,000, and it's really, you know, that's the – the reason that number was chosen was that at 12-and-a-half-percent straight commission,

including his base salary, including his commissions and including the maximum reimbursement that he could have been getting previous to that [under the base compensation plan], he would be paid $87,500. So, that shows that [expenses are] included in the straight commission that he was getting." Ex. 2, Birchler Dep. at 134:12-21.

**DISPUTED.  This fact is immaterial.  Synthes' subjective belief regarding the purpose of the conversion threshold is irrelevant.  Whatever their beliefs are, they do not show that Synthes established a policy that reimburses its Sales Consultants for expenses, communicates a specific apportionment between wages and expenses, or fully indemnifies the Sales Consultants for their reasonably necessary business expenses**.  **UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)).**

160.    The published conversion threshold in the Spine division reflects the minimum level of sales where a Sales Consultant may convert to the straight commission plan.  If, for example, a Sales Consultant on the base plan has a different compensation arrangement than the standard arrangement under the base plan (such as a higher base salary), the Spine division adjusts the conversion threshold to ensure that the Sales Consultant may convert only at a level of annualized sales where the total compensation under the straight commission structure includes and exceeds the Sales Consultant's maximum total compensation under the combined elements of the Sales Consultant's base structure.  *See* Ex. 21, Landau Decl. ¶ 3 ("At all times . . . the company policy and practice was to ensure that fully commissioned sales consultants on conversion were indemnified for all of their base compensation. . . . This was very important because the point of the compensation system was to create an incentive and not a disincentive.").

**DISPUTED.  Plaintiff disputes the consistent application of a "conversion level." Some Sales Consultant were immediately hired as commission only Sales Consultants, others did not have to meet a territory threshold in order to be transferred to commission only, and others were transferred prior to meeting any "threshold" at all. There is no written policy before 2013 that proves that such a "structure" existed nor that the total**

**compensation upon conversion would include allocations of all of the base compensation package including full car and maximum expense allowance.  UMF No. 47 Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four) Decl. ¶ 11;  Hayes Decl. ¶ 11;  Warne Decl. ¶ 11; Marsh Decl. ¶ 11. See Plaintiff's objections to evidence filed concurrently herewith.**

161.    During the class period, some Sales Consultants in the Spine division in California have started employment with a higher base salary of $45,000 or $50,000 per year.  *See* Ex. 149 (Offer letter to Expense See Class Member Charles Warne with $50,000 base salary); Ex. 6, McGee Dep. at 103:25-104:4, 104:18-22.  *Cf.* Ex. 53, Scurci Decl. ¶ 3 ($50,000 base salary in September 2007).

**DISPUTED.  Some Sales Consultants were immediately hired as commission only Sales Consultants and others received a different commission rate and/or base salary. Furthermore, there is no written policy before 2013 that proves that such a "structure" existed nor that the total compensation upon conversion would include allocations of all of the base compensation package including full car and maximum expense allowance.  UMF No. 47 Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four) Decl. ¶ 11;  Hayes Decl. ¶ 11;  Warne Decl. ¶ 11; Marsh Decl. ¶ 11. See Plaintiff's objections to evidence filed concurrently herewith.**

162.    During the class period, at least some Regional Managers in California have required Spine Sales Consultants to reach a threshold of $800,000 in annualized sales to convert to the straight commission plan.  *See* Ex. 23, McGee Decl. ¶¶ 3-4;  *Cf.* Ex. 2, Birchler Dep. at 136:5-8 ("[The threshold] was between 7 and $800,000, depending upon, you know, where they lived and the peculiarities of their, of their territory.").

**DISPUTED.  Some Sales Consultants were immediately hired as commission only Sales Consultants and others received a different commission rate and/or base salary. Furthermore, there is no written policy before 2013 that proves that such a "structure" existed nor that the total compensation upon conversion would include allocations of all of the base compensation package including full car and maximum expense allowance.  UMF**

1    **No. 47 Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four) Decl.**

2    **¶ 11;  Hayes Decl. ¶ 11;  Warne Decl. ¶ 11; Marsh Decl. ¶ 11. See Plaintiff's objections to**

3    **evidence filed concurrently herewith.**

4    163.  As shown by the following table, at $800,000 in annualized sales, a Spine Sales

5  Consultant's total compensation under the straight commission structure ($100,000), includes

6  and exceeds a Spine Sales Consultant's maximum total compensation under the combined

7  elements of the base structure in effect until January 1, 2014, adjusted to reflect a $50,000 base

8  salary ($99,400):

|  | Base | Straight Commission |
|---|---|---|
| **Salary** | $50,000 | $0 |
| **Commissions** | $32,000<br>*($800,000 x 4%)* | $100,000<br>*($800,000 x 12.5%)* |
| **Auto Allowance** | $5,400<br>*($450/month x 12)* | $0<br>*(Indemnification)* |
| **Direct Reimbursement Allowance** | $12,000<br>*($1000/month x 12)* | |
| **TOTAL COMPENSATION** | **$99,400** | **$100,000** |

*See* Ex. 62 (Dep. Ex. 21) at SYNTHES-000436; Ex. 63 (Dep. Ex. 22) at SYNTHES-000536; Ex. 92 (Dep. Ex. 205) at SYNTHES-003580.

**DISPUTED.  Plaintiff disputes the existence of a "commission structure."  Some Sales Consultants received a different commission rate and/or base salary. There is no written policy before 2013 that proves that such a "structure" existed nor that the total compensation upon conversion would include allocations of all of the base compensation package including full car and maximum expense allowance.  Furthermore, this table was not part of any documentation Synthes' Sales Consultants received when determining whether to switch to full commission. UMF No. 47 Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four) Decl. ¶ 11;  Hayes Decl. ¶ 11;  Warne Decl. ¶ 11; Marsh Decl. ¶ 11. See Plaintiff's objections to evidence filed concurrently herewith.**

164.    Effective on or before January 1, 2014, Synthes implemented direct expense reimbursement for all Sales Consultants in the Spine division, including those on the straight commission plan. *See* Ex. 85 (Dep. Ex. 198) at SYNTHES-008115 (2014 Spine Compensation Plan: "Sales Consultants are eligible for direct reimbursement of expenses in accordance with an subject to the Company's expense reimbursement policies and Health Care Compliance and Privacy Policies.").

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

165.    Also effective on or before January 1, 2014, Synthes implemented a "fleet car" program, which provided company cars to all Sales Consultants in the Spine division. *See* Ex. 85 (Dep. Ex. 198) at SYNTHES-008115 (2014 Spine Compensation Plan: "Sales Consultants are eligible to participate in the Company's SAFE Fleet Program."); Ex. 93 (Dep. Ex. 208) at SYNTHES-009115-009120 (description of SAFE Fleet program). *See also* Ex. 6, McGee Dep. at 143:17-21.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

166.    Synthes implemented direct expense reimbursement for straight commission sales consultants and the fleet care program in connection with the integration of the Spine division's sales force with the sales force of DePuy Orthopedics as part of Synthes' merger with Johnson & Johnson. *See* Ex. 6, McGee Dep. at 145:8-23.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

167.    The Spine division follows the compensation formula and, by policy and practice, does not allow Sales Consultants to convert to the straight commission plan until and unless their annualized sales reach the conversion threshold. *See* Ex. 21, Landau Decl. ¶¶ 3-4. Michael Landau, a former Vice President of Sales and current Area Vice President for the Spine division explained that he "would not approve a conversion unless I was convinced that the sales in the territory were consistently and reliably running at or above the minimum threshold for conversion." *See* Ex. 21, Landau Decl. ¶ 3.

**DISPUTED.  Plaintiff disputes the consistent application of a "compensation formula."  Some Sales Consultant were immediately hired as commission only Sales**

**Consultants, others did not have to meet a territory threshold in order to be transferred to commission only, and others were transferred prior to meeting any "threshold" at all. There is no written policy before 2013 that proves that such a "structure" existed nor that the total compensation upon conversion would include allocations of all of the base compensation package including full car and maximum expense allowance.  UMF No. 47 Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four) Decl. ¶ 11; Hayes Decl. ¶ 11;  Warne Decl. ¶ 11; Marsh Decl. ¶ 11. See Plaintiff's objections to evidence filed concurrently herewith.**

168.    Throughout the class period, the Spine division has not required Sales Consultants to convert to the straight commission plan, either at the conversion threshold or at any other level of sales.  *See* Ex. 2, Birchler Dep. at 134:23-24, 135:1-2 ("[T]he fact is, is that not everybody went on straight commission at $700,000. They went on straight commission, if they wanted, at 800,000 or $750,000.").  The decision by a Sales Consultant to convert from the base plan to the straight commission plan is voluntary.  *See* Ex. 6, McGee Dep. at 117:5-6 ("Nobody was ever forced into a 12 1/2 percent compensation model. Most sought it out."); Ex. 2, Birchler Dep. at 88:12-14 ("We didn't make him, we didn't force him, you know, it was a conversation we had with him.").

**DISPUTED.  Plaintiff disputes that the Spine division has not required Sales Consultants to convert to the straight commission plan, either at the conversion threshold or at any other level of sales.  Further, the evidence Synthes cites does not prove this fact as Plaintiff is not aware of what the case was for every single Spine division employee. UMF No. 47 Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four) Decl. ¶ 11;  Hayes Decl. ¶ 11;  Warne Decl. ¶ 11; Marsh Decl. ¶ 11. See Plaintiff's objections to evidence filed concurrently herewith.**

169.    If a Spine Sales Consultant's territory sales decline below the conversion threshold after the Sales Consultant converts to the straight commission plan (such as, for example, if Synthes loses a hospital contract or a doctor leaves the territory), Synthes protects the Sales Consultant by providing a guaranteed salary or other guarantees to ensure that the Sales

Consultant's total income remains above the conversion threshold.  *See* Ex. 6, McGee Dep. at 86:18-22.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

170.    Spine Sales Consultants who convert to the straight commission plan may choose to convert back to the base plan at any time.  *See* Ex. 7, Meister (12-19-12) Dep. at 141:1-6 ("If any point in time something changes within the territory so that the volume of sales decreases, they have the option to move back to salary plus [commission].").  However, Spine Sales Consultants rarely choose to convert back from the straight commission plan to the base plan. *See* Ex. 6, McGee Dep. at 86:23-25, 87:1-2 (Q: ". . .[H]ave you ever had somebody go on a – back to a salary plus commission arrangement from being on a full commission arrangement?"; A: "I don't recall ever receiving a request for that.")]

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

171.    The compensation formula in the Spine division does not incorporate out-of-territory expenses.  See Ex. 61 (Dep. Ex. 20) at P000407; Ex. 62 (Dep. Ex. 21) at SYNTHES-000436; Ex. 63 (Dep. Ex. 22) at SYNTHES-000536; Ex. 92 (Dep. Ex. 205) at SYNTHES-003580-81. Spine Sales Consultants on the base plan and Spine Sales Consultants on the straight commission plan are eligible for direct reimbursement of out-of-territory business expenses pursuant to Synthes' expense reimbursement policies. *See* Ex. 62 (Dep. Ex. 21) at SYNTHES-000447-48; Ex. 64 (Dep. Ex. 24) at SYNTHES-000585; *See also* Ex. 7, Meister (12/19/12) Dep. at 134:22-135:8 ("They would [submit for direct reimbursement] if they were outside of the territory."); *id.* at 244:20-24.

**DISPUTED.  Plaintiff disputes the existence of a "compensation formula." No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)).  To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as**

**Synthes is using the term.  See Class Member Declarations.  See Plaintiff's objections to evidence filed concurrently herewith.**

172.    The compensation formula in the Spine division also does not incorporate extraordinary in-territory expenses that would be reimbursed outside of the expense allowance for Sales Consultants on the base plan.  *See* Ex. 92 (Dep. Ex. 205) at SYNTHES-003580-81.  Spine Sales Consultants on the base plan and Spine Sales Consultants straight commission plan are eligible for direct reimbursement of extraordinary in-territory business expenses.  *See id.* at SYNTHES-003580-81.

**DISPUTED.  Plaintiff disputes the existence of a "compensation formula."  No written documents exist that show Synthes used such a "formula" for the Expense Class.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)).  To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations.  See Plaintiff's objections to evidence filed concurrently herewith.**

### 3.    The Spine Division Communicates the Compensation Formula to Sales Consultants.

173.    Throughout the class period, the Spine division has provided Sales Consultants with numerous forms of written and oral communication describing its compensation formula, including the expense reimbursement allowances offered by the base compensation plan and the allocations for expense indemnification built into the straight commission plan.  These communications occur at all times during a Sales Consultant's employment, from hiring through the decision to convert to the straight commission plan.

**DISPUTED.  Plaintiff disputes the existence of a "compensation formula."  No written documents exist that show Synthes used such a "formula" for the Expense Class.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req.**

for Produc. of Docs. (Set Four)).  **To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations.  See Plaintiff's objections to evidence filed concurrently herewith.**

### a.  The Interview and Hiring Process.

174.   The Spine Division trains and requires its Regional Managers to discuss the compensation formula, including the expense allowances under the base plan and the expense allocations built into the straight commission plan with prospective Sales Consultants during the interview and hiring process.  *See* Ex. 21, Landau Decl. ¶ 4.  *See also* Ex. 6, McGee Dep. at 77:11-15, 78:5-16, 79:23-81:14.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that Regional Managers were required to discuss the compensation formula and how in-territory expenses were included because prior to 2013, there is no written policy that evidences this requirement nor any sort of "compensation formula." Whatever conversations Regional Managers had with Sales Consultants, they do not show that Synthes established a policy that reimburses its Sales Consultants for expenses, communicates a specific apportionment between wages and expenses, or fully indemnifies the Sales Consultants for their reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). See Plaintiff's objections to evidence filed concurrently herewith.**

175.   Michael Landau explained that, as Vice President of Sales for the Spine division (and also as an Area Vice President), he "required Regional Managers to discuss the compensation system during the interview and recruitment process."  *See* Ex. 21, Landau Decl. ¶ 4.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that Regional Managers were required to discuss the compensation formula and how in-territory**

1   **expenses were included because prior to 2013, there is no written policy that evidences this**
2   **requirement nor any sort of "compensation formula." Whatever conversations Regional**
3   **Managers had with Sales Consultants, they do not show that Synthes established a policy**
4   **that reimburses its Sales Consultants for expenses, communicates a specific apportionment**
5   **between wages and expenses, or fully indemnifies the Sales Consultants for their**
6   **reasonably necessary business expenses. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14**
7   **at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). See Plaintiff's**
8   **objections to evidence filed concurrently herewith.**

9       176.    California Regional Managers in the Spine division confirmed that they were
10  trained to discuss Synthes' compensation formula with prospective and newly-hired Sales
11  Consultants.  Robert McGee testified that he was trained to discuss "how the formula worked."
12  *See* Ex. 6, McGee Dep. at 77:11-15.

13      **DISPUTED.  This fact is immaterial.  Plaintiff further disputes that Regional**
14  **Managers were required to discuss the compensation formula and how in-territory**
15  **expenses were included because prior to 2013, there is no written policy that evidences this**
16  **requirement nor any sort of "compensation formula." Whatever conversations Regional**
17  **Managers had with Sales Consultants, they do not show that Synthes established a policy**
18  **that reimburses its Sales Consultants for expenses, communicates a specific apportionment**
19  **between wages and expenses, or fully indemnifies the Sales Consultants for their**
20  **reasonably necessary business expenses. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14**
21  **at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). See Plaintiff's**
22  **objections to evidence filed concurrently herewith.**

23      177.    Consistent with his training, Robert McGee testified further that he would
24  "describe the two plans" during interviews and explain that the elements of the base plan were
25  built into the enhanced commission rate under the straight commission plan:

26          Whenever we spoke about compensation, I would describe the two
            plans.  I would tell people that when you're hired into the company
27          you start at $40,000 salary, 4 percent commission, $450 car
            expense and a thousand dollars in direct reimbursable expenses
28          designed to cover in-territory expenses.

> And I would tell them where most people do their best to achieve is to try to get to the 12 1/2 percent direct compensation model where you're paid 12 1/2 percent on everything that you earn, *and your expenses are included in that 12 1/2 percent model*.

*See* Ex. 6, McGee Dep. at 81:25-82:11.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that Regional Managers were required to discuss the compensation formula and how in-territory expenses were included because prior to 2013, there is no written policy that evidences this requirement nor any sort of "compensation formula."  Whatever conversations Regional Managers had with Sales Consultants, they do not show that Synthes established a policy that reimburses its Sales Consultants for expenses, communicates a specific apportionment between wages and expenses, or fully indemnifies the Sales Consultants for their reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). See Plaintiff's objections to evidence filed concurrently herewith.**

### b.    Spine Sales Consultants Train Their Colleagues.

178.    Spine Sales Consultants, including members of the Expense Class, also train newly-hired colleagues on the compensation formula and the expense allocations built into the straight commission plan.  For example, Raymond Hahn, a Spine Sales Consultant in California who has worked for Synthes since November 1998 and converted to the straight commission plan in 2000 (and is a member of the Expense Class), has also been a "Field Trainer" in California:

> I have had responsibility as a Field Trainer for Synthes.  In connection with these responsibilities, I have spoken with Associate Sales Consultants and Sales Consultants about when it makes sense to request going to full commission and how to look at their expenses as part of this decision.

*See* Ex. 41, Hahn Decl. ¶ 9 at SYNTHES-003486.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that Regional Managers were required to discuss the compensation formula and how in-territory**

**expenses were included because prior to 2013, there is no written policy that evidences this requirement nor any sort of "compensation formula." Whatever conversations Regional Managers had with Sales Consultants, they do not show that Synthes established a policy that reimburses its Sales Consultants for expenses, communicates a specific apportionment between wages and expenses, or fully indemnifies the Sales Consultants for their reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)).  See Plaintiff's objections to evidence filed concurrently herewith.**

### c. Offer Letters.

179.    At hiring, Spine Sales Consultants receive – and are required to read and sign – a detailed offer letter setting forth their base salary, commission rate, car allowance, and in-territory expense reimbursement allowance.  *See*, *e.g.*, Ex. 73 (Dep. Ex. 73) at SYNTHES-008172 (Harrison offer letter); Ex. 104 (Dep. Ex. 149) at SYNTHES-008789-90 (Warne offer letter).

**UNDISPUTED, but misleading because as phrased, this fact gives the impression that total compensation upon conversion would include allocations of all of the base compensation package including full car and maximum expense allowance, which it does not.  *See*, *e.g.*, Ex. 73 (Dep. Ex. 73) at SYNTHES-008172 (Harrison offer letter); Ex. 104 (Dep. Ex. 149) at SYNTHES-008789-90 (Warne offer letter) See Plaintiff's objections to evidence filed concurrently herewith.**

### d. Sales Policy Manuals.

180.    Synthes' 2007 Sales Policy Manual explained the compensation formula for the Spine division:

COMPENSATION FOR SPINE SALES CONSULTANTS

A. New Hire:

All new hires begin employment as salaried Sales Consultants. Compensation is a predetermined base salary, plus commission based on the current commission rate in effect. The current commission rate in effect is 4%. Commission for new hires will be

paid on sales beginning the first full calendar month of territory responsibility. Commission is paid on monthly net sales excluding repairs. An automobile allowance of $450/month is also paid to the salaried Sales Consultant. New Hires are also eligible for business expense reimbursement of up to $1000 per month. Up to $500 of the expense budget may be used for communications.

B. Conversion

The Regional Manager may recommend the following, based on the Sales Consultant's annualized territory sales:

1. Territory Sales Annualize $700,000 or More

When a Sales Consultant's territory reaches an annualized sales volume of greater than $700,000 the Regional Manager may recommend that the Sales Consultant converts from salary plus commission to straight commission. Commission is paid according to the current commission program in effect. The current commission rate for this compensation program is 12.5%. Sales Consultants who convert to straight commission are not eligible for an automobile allowance or in-territory business expense reimbursement. . . .

2. Territory Sales Annualize $699,999 or Less

If the territory sales are less than $699,999 annualized, the Sales Consultant may continue on salary plus commission until such time that the territory sales trends show annualized sales of at least $700,000, based on his/her performance in the job.

*See* Ex. 62 (Dep. Ex. 21) at SYNTHES-000436.

**DISPUTED.  Plaintiff disputes the existence of a "compensation formula." No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)) . To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51. Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations.  See Plaintiff's objections to evidence filed concurrently herewith.**

181.    The explanation of the compensation formula for the Spine division in the 2010 Sales Policy Manual was substantively identical to the explanation in the 2007 Sales Policy Manual.  *See* Ex. 63 (Dep. Ex. 22) at SYNTHES-000536.

**DISPUTED.  Plaintiff disputes the existence of a "compensation formula."  No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)) . To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations.  See Plaintiff's objections to evidence filed concurrently herewith.**

182.    Synthes' witnesses have testified that, by stating that Spine Sales Consultants on the straight commission plan were "not eligible for an automobile allowance or in-territory business expense reimbursements," the 2007 and 2010 Sales Policy Manuals confirmed that straight commission Sales Consultants would not receive direct reimbursement because their enhanced commission rate indemnified those expenses.  *See also* Ex. 7, Meister (12-19-12) Dep. at 134:23-135:6.

**DISPUTED. Plaintiff disputes that the policy stating that Sales Consultants on straight commission were "not eligible for automobile allowance or in-territory business expense reimbursements. . . confirmed that straight commission Sales Consultants would not receive direct reimbursement because their enhanced commission rate indemnified those expenses" because there is no such written policy until 2013. UMF No. 47 Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four) Decl. ¶ 11;  Hayes Decl. ¶ 11;  Warne Decl. ¶ 11; Marsh Decl. ¶ 11. See Plaintiff's objections to evidence filed concurrently herewith.**

e.    **2012 Sales Policies.**

183.    The 2012 Sales Policy for the Spine division stated expressly the specific

1  allocation for in-territory car and business expenses built into the enhanced commission rate

2  under the straight commission plan.  *See* Ex. 92 (Dep. Ex. 205) at SYNTHES-003573-82.

3  **UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

4  184.   The 2012 Sales Policy for the Spine division stated that the "expenses allocated to

5  Sales Consultants on a Base Salary & Commission arrangement are included in the 12.5%

6  commission rate" and that "as a result, Sales Consultants who convert to straight commission are

7  not entitled to an additional direct reimbursement for automobile allowance or in-territory

8  business expenses because the $450 automobile allowance and up to $1,000 of reimbursable

9  expenses are built into the higher commission rate":

Base Salary & Commission

Normally, Sales Consultants upon hire will be paid a
predetermined base salary plus a designated commission rate.
Sales Consultants may remain on or return to base salary plus
designated commission based on specific circumstances or
territory realignments.  Commission is paid on monthly net sales.
Sales Consultants paid base salary plus commission may be
eligible for an automobile allowance of $450 and are eligible for
business expense reimbursement of up to $1,000 per month.  Up to
$500 per month of the expense budget may be used for
communications costs.  Any in-territory expenditures above the
allowance must be pre-approved by the Regional Manager before
they are incurred.  Expense reimbursement requests must be made
in accordance with DePuy Synthes' direct reimbursement and
compliance policies.

Straight Commission

When a Sales Consultant's territory reaches an annualized volume
of $700,000 or more, a Sales Consultant may choose to have his or
her compensation package converted from salary plus commission
to straight commission.  Commission is paid according to the
current commission program in effect.  The current commission
rate for a Sales Consultant receiving straight commission is 12.5%.
Commission is paid on monthly net sales.  ***The above expenses
allocated to Sales Consultants on a Base Salary & Commission
arrangement are included in the 12.5% commission rate.  As a
result, Sales Consultants who convert to straight commission are
not entitled to an additional direct reimbursement for automobile
allowance or in-territory business expenses because the $450
automobile allowance and up to $1000 of reimbursable expenses
are built into the higher commission rate***.  Any in-territory
expenditures above the allocated allowance must be pre-approved
by the Sales Consultant's Regional Manager before they are

incurred.  Fully-commissioned Sales Consultants are eligible to receive direct reimbursement of pre-approved in-territory expenses above the allocated allowance, subject to DePuy Synthes' direct reimbursement and compliance policies.

*See* Ex. 92 (Dep. Ex. 205) at SYNTHES-003580-81 (emphasis added).

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

185.    Under the heading "Team Sell Expense Payment Policy," the 2012 Sales Policy for the Spine division also stated that "Sales Consultants paid on a full commission basis will not be entitled to direct reimbursement for in-territory expenses as allocated expenses are built into the expected compensation derived from the assigned territory sales volume multiplied by the commission rate" and that "[f]or purposes of managing expenses, the allocated expenses equate to the period allowance of $450 for automobile and $1000 for other expenses":

> Associate Sales Consultants and Sales Consultants paid base salary plus commission will be eligible for direct reimbursement for both in-territory and out-of-territory expenses, subject to the Company's direct expense reimbursement and compliance policies.  Associate Sales Consultants and Sales Consultants on this compensation arrangement may be eligible for a monthly automobile allowance of $450 and are eligible for business expense reimbursement of up to $1,000 per month.  Up to $500 per month of the expense budget may be used for communications costs.  Any in-territory expenditures above the allowance must be pre-approved by the Regional Manager before they are incurred.
>
> ***Sales Consultants paid on a full commission basis will not be entitled to direct reimbursement for in-territory expenses as allocated expenses are built into the expected compensation derived from the assigned territory sales volume multiplied by the commission rate.  For purposes of managing expenses, the allocated expenses equate to the monthly allowance for $450 for automobile and $1,000 for other expenses.***  Any in-territory expenditures above the allocated allowance must be pre-approved by your Regional Manager before they are incurred.  Fully-commissioned Sales Consultants are eligible to receive direct reimbursement of pre-approved in-territory expenses above the allocated allowance and out-of-territory expenses, subject to the Company's direct reimbursement and compliance policies.

*See* Ex. 92 (Dep. Ex. 205) at SYNTHES-003580-81 (emphasis added).

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

f.      **Monthly Commission Statements.**

186.    Starting in January 2013, the Commission Statements sent to Spine Sales

Consultants (including the members of the Expense Class) included the following language:

> *** For sales consultants who are on the full commission
> compensation plan, ***the full commission compensation
> arrangement includes allocated reasonable and necessary
> business expenses based on allowance of $450 for automobile per
> month and $1,000 for other business expenses***.

*See*, *e.g.*, Ex. 94 (Dep. Ex. 212) at SYNTHES-007044-45 (emphasis added); Ex. 19, Hurley

Decl. (9-23-15) ¶ 5.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

g.      **Regional Managers and Sales Consultants Discuss the
Compensation Formula at Conversion.**

187.    Michael Landau explained that, as Vice President of Sales for the Spine division

(and also as an Area Vice President), he "required Regional Managers to discuss the

compensation system . . . during the conversion process."  *See* Ex. 21, Landau Decl. ¶ 4.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that Regional**

**Managers were required to discuss the compensation formula and how in-territory**

**expenses were included because prior to 2013, there is no written policy that evidences this**

**requirement nor any sort of "compensation formula." Whatever conversations Regional**

**Managers had with Sales Consultants, they do not show that Synthes established a policy**

**that reimburses its Sales Consultants for expenses, communicates a specific apportionment**

**between wages and expenses, or fully indemnifies the Sales Consultants for their**

**reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14**

**at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). See Plaintiff's**

**objections to evidence filed concurrently herewith.**

188.    Robert McGee testified that, during his pre-conversion discussions, he made sure

that it was "clear" to Sales Consultants that "expenses were part of [the] 12-and-half-percent

commission structure:

> [O]nce their sales reached a certain threshold, typically $700,000, we would sit down together and evaluate that at 12 1/2 percent to make sure that all of the metrics we described in the precious conversation [at hiring] were met and that all parties felt right about proceeding with that *and that they were clear that when they moved to the 12 1/2 percent, that the expenses were part of that 12 1/2 commission structure*.

*See* Ex. 6, McGee Dep. at 99:1-9 (emphasis added).

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that Regional Managers were required to discuss the compensation formula and how in-territory expenses were included because prior to 2013, there is no written policy that evidences this requirement nor any sort of "compensation formula."  Whatever conversations Regional Managers had with Sales Consultants, they do not show that Synthes established a policy that reimburses its Sales Consultants for expenses, communicates a specific apportionment between wages and expenses, or fully indemnifies the Sales Consultants for their reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). See Plaintiff's objections to evidence filed concurrently herewith.**

189.     Robert McGee testified further that he followed a "standard protocol" for his pre-conversion discussions:

> I would sit down with them.  I would look at their sales historically, look at the most current trends.  I'd talk with them about their business, their customers, what their expectations were, how solid the business was.  We'd look at their direct reimbursed expenses and try to determine compensation, their car allowance. . . . [W]e would use this for the framework of our discussion.  And we would calculate what they were earning at 40,000 salary plus 4 percent, plus car, plus expenses.  And then we would look at what their sales were historically and trend would look like at 12 1/2 percent.

*See* Ex. 6, McGee Dep. at 90:19-91:17.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that Regional Managers were required to discuss the compensation formula and how in-territory expenses were included because prior to 2013, there is no written policy that evidences this**

**requirement nor any sort of "compensation formula." Whatever conversations Regional Managers had with Sales Consultants, they do not show that Synthes established a policy that reimburses its Sales Consultants for expenses, communicates a specific apportionment between wages and expenses, or fully indemnifies the Sales Consultants for their reasonably necessary business expenses. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). See Plaintiff's objections to evidence filed concurrently herewith.**

190.    McGee also testified that "[a]t the time, I would have requested or created a spreadsheet that would have shown what their sales were and something that would have had the actual [expense] numbers so they could have seen that, and I could see it.  And we would sit down with this as the framework and look at the specifics." *See* Ex. 6, McGee Dep. at 92:8-13.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that Regional Managers were required to discuss the compensation formula and how in-territory expenses were included because prior to 2013, there is no written policy that evidences this requirement nor any sort of "compensation formula." Whatever conversations Regional Managers had with Sales Consultants, they do not show that Synthes established a policy that reimburses its Sales Consultants for expenses, communicates a specific apportionment between wages and expenses, or fully indemnifies the Sales Consultants for their reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). See Plaintiff's objections to evidence filed concurrently herewith.**

191.    McGee explained that he would pull up a consultant's sales numbers from Hyperion, Synthes' sales database, and would "get information on the sales consultant's expenses" from Synthes' sales administration department.  *See* Ex. 6, McGee Dep. at 92:14-22. McGee would also "typically ask the sales consultant about it [their expenses] themselves" and "could also reference it based on . . . the expense reports that came to [him] for approval" from the sales consultants.  *See id*. at 92:23-93:10.

1  **DISPUTED.  This fact is immaterial.  Plaintiff further disputes that Regional**
2  **Managers were required to discuss the compensation formula and how in-territory**
3  **expenses were included because prior to 2013, there is no written policy that evidences this**
4  **requirement nor any sort of "compensation formula." Whatever conversations Regional**
5  **Managers had with Sales Consultants, they do not show that Synthes established a policy**
6  **that reimburses its Sales Consultants for expenses, communicates a specific apportionment**
7  **between wages and expenses, or fully indemnifies the Sales Consultants for their**
8  **reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14**
9  **at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). See Plaintiff's**
10  **objections to evidence filed concurrently herewith.**

11    192.    Kurt Birchler, a former Spine Regional Manager who later served as the Spine
12  division's national Vice President of Sales, also testified at his deposition:

13        [W]hen you would talk to a SC about when the right time was, to
          convert to straight commission, it was, look, your salary's blank.
14        At your current – these sales, your commissions, salary plus, blank,
          and your – let's talk about your expenses and they're, so it's X, Y,
15        Z, so let's call your expenses Z.  But if you go on, straight
          commission, you make way more money than the sum of those
16        three things.

17  *See* Ex. 2, Birchler Dep. at 53:1-23

18    **DISPUTED.  This fact is immaterial.  Plaintiff further disputes that Regional**
19  **Managers were required to discuss the compensation formula and how in-territory**
20  **expenses were included because prior to 2013, there is no written policy that evidences this**
21  **requirement nor any sort of "compensation formula." Whatever conversations Regional**
22  **Managers had with Sales Consultants, they do not show that Synthes established a policy**
23  **that reimburses its Sales Consultants for expenses, communicates a specific apportionment**
24  **between wages and expenses, or fully indemnifies the Sales Consultants for their**
25  **reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14**
26  **at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). See Plaintiff's**
27  **objections to evidence filed concurrently herewith.**
28

193.    William Thiele, a former Spine Regional Manager (who was also previously a Sales Consultant and is a member of the Expense Class) explained that "I help the Sales Consultant calculate the differential in income between the base plus commission arrangement and the 12.5% enhanced commission rate so that he or she is certain that the amounts to be earned will more than fully cover their known business expenses as well as result in substantial additional income."  *See* Ex. 54, Thiele Decl. ¶ 10 at SYNTHES-003517.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that Regional Managers were required to discuss the compensation formula and how in-territory expenses were included because prior to 2013, there is no written policy that evidences this requirement nor any sort of "compensation formula." Whatever conversations Regional Managers had with Sales Consultants, they do not show that Synthes established a policy that reimburses its Sales Consultants for expenses, communicates a specific apportionment between wages and expenses, or fully indemnifies the Sales Consultants for their reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). See Plaintiff's objections to evidence filed concurrently herewith.**

194.    Current and former Spine Sales Consultants who are members of the Expense Class have confirmed these pre-conversion discussions.  For example, William Thiele explained that, as s Spine Sales Consultant considering conversion to the straight commission plan, "I was encouraged by my Regional Manager to make sure that I was comfortable, based on the projected sales in my territory, that my compensation at the 12.5% commission rate would more than cover my expenses and the company allowance and, over and above that, would provide me with additional income compared with what I had been making. My Regional Manager told me that in-territory business expenses were built into the 12.5% commission rate and that I should be sure to do the calculations to make sure that I was fully covered."  *See* Ex. 54, Thiele Decl. ¶ 5 at SYNTHES-003516.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that Regional Managers were required to discuss the compensation formula and how in-territory**

expenses were included because prior to 2013, there is no written policy that evidences this requirement nor any sort of "compensation formula." Whatever conversations Regional Managers had with Sales Consultants, they do not show that Synthes established a policy that reimburses its Sales Consultants for expenses, communicates a specific apportionment between wages and expenses, or fully indemnifies the Sales Consultants for their reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). See Plaintiff's objections to evidence filed concurrently herewith.

195.    Bill Gardner, a Spine Sales Consultant, also explained: "I monitored my sales closely leading up to my decision to convert to the 12.5% commission arrangement and also met with my Regional Manager to compare how much I would be making in the 12.5% commission arrangement versus how much I was making under the base plus commission arrangement (where I would submit business expenses – both for in-territory and out-of-territory – for reimbursement)." *See* Ex. 38, Gardner Decl. ¶ 4 at SYNTHES-003479-80

DISPUTED.  This fact is immaterial.  Plaintiff further disputes that Regional Managers were required to discuss the compensation formula and how in-territory expenses were included because prior to 2013, there is no written policy that evidences this requirement nor any sort of "compensation formula." Whatever conversations Regional Managers had with Sales Consultants, they do not show that Synthes established a policy that reimburses its Sales Consultants for expenses, communicates a specific apportionment between wages and expenses, or fully indemnifies the Sales Consultants for their reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). See Plaintiff's objections to evidence filed concurrently herewith.

> h.    **Regional Managers and Sales Consultants Have Ongoing Conversations Regarding the Compensation Formula.**

196.    Throughout the course of employment, Trauma Regional Managers also engage their Sales Consultants in ongoing conversations regarding Synthes' compensation formula and

the "metrics" of converting from the base compensation plan to the straight commission compensation plan. *See*, *e.g.*, Ex. 6, McGee Dep. at 81:3-14, 133:12-16.

**DISPUTED. This fact is immaterial. Plaintiff further disputes that Regional Managers were required to discuss the compensation formula and how in-territory expenses were included because prior to 2013, there is no written policy that evidences this requirement nor any sort of "compensation formula." Whatever conversations Regional Managers had with Sales Consultants, they do not show that Synthes established a policy that reimburses its Sales Consultants for expenses, communicates a specific apportionment between wages and expenses, or fully indemnifies the Sales Consultants for their reasonably necessary business expenses. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). See Plaintiff's objections to evidence filed concurrently herewith.**

197.   Robert McGee testified at his deposition:

> The discussion about this was – this transition from a 40 & 4 to a 12 1/2 percent compensation was an ongoing one. . . . [W]e would have these conversations about the metrics and about this timing, about the transition and, you know, about this specific formula for conversion to straight commission. My boss had it with me, and I had it with sales consultants.

*See* Ex. 6, McGee Dep. at 81:3-14.

**DISPUTED. This fact is immaterial. Plaintiff further disputes that Regional Managers were required to discuss the compensation formula and how in-territory expenses were included because prior to 2013, there is no written policy that evidences this requirement nor any sort of "compensation formula." Whatever conversations Regional Managers had with Sales Consultants, they do not show that Synthes established a policy that reimburses its Sales Consultants for expenses, communicates a specific apportionment between wages and expenses, or fully indemnifies the Sales Consultants for their reasonably necessary business expenses. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). See Plaintiff's**

objections to evidence filed concurrently herewith.

198.    McGee testified further: "I try to be very clear and consistent in my conversations with all of these [Sales Consultants] that if they were directly reimbursed, they would submit in that format.  If they were under 12 1/2 percent, expenses were built in."  *See* Ex. 6, McGee Dep. at 133:12-16.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that Regional Managers were required to discuss the compensation formula and how in-territory expenses were included because prior to 2013, there is no written policy that evidences this requirement nor any sort of "compensation formula."  Whatever conversations Regional Managers had with Sales Consultants, they do not show that Synthes established a policy that reimburses its Sales Consultants for expenses, communicates a specific apportionment between wages and expenses, or fully indemnifies the Sales Consultants for their reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)).  See Plaintiff's objections to evidence filed concurrently herewith.**

D.    **The Sales Consultant Compensation Formula in the CMF Division.**

1.    **Overview of the CMF Division's Compensation Formula.**

199.    Throughout and preceding the class period, Synthes has compensated Sales Consultants in the CMF division pursuant to the following formula:

*Reduced Base Salary + (Annualized sales x 12.5% commission) >*

*Base salary + 8% commission + car allowance + direct expense reimbursement allowance*

*See* Ex. 14, Bennett (9-18-2015) Decl. ¶¶ 2-4;  *See also* Ex. 62 (Dep. Ex. 21) at SYNTHES-000432; Ex. 63 (Dep. Ex. 22) at SYNTHES-000532; Ex. 92 (Dep. Ex. 205) at SYNTHES-003576-77; Ex. 91 (Dep. Ex. 204) at SYNTHES-003560-61; Ex. 87 (Dep. Ex. 200) at SYNTHES-008095-96; Ex. 95 (Dep. Ex. 215) at SYNTHES-009289-91.

**DISPUTED.  Plaintiff disputes the existence of a "compensation formula."  No**

1   **written documents exist that show Synthes used such a "formula" for the Expense Class.**

2   **UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req.**

3   **for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the**

4   **absence of any "formula" allocating a set amount to expenses, because under its facial**

5   **policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17,**

6   **21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as**

7   **Synthes is using the term.  See Class Member Declarations. See Plaintiff's objections to**

8   **evidence filed concurrently herewith.**

9

10        200.    One side of the compensation formula is the base compensation plan.  In the CMF

11   division, the base plan offers Sales Consultants a base salary, a reduced 8% commission rate, a

12   car allowance, and an allowance for direct reimbursement of in-territory business expenses.  Ex.

13   62 (Dep. Ex. 21) at SYNTHES-000432; Ex. 63 (Dep. Ex. 22) at SYNTHES-000532; Ex. 92

14   (Dep. Ex. 205) at SYNTHES-003576-77; Ex. 91 (Dep. Ex. 204) at SYNTHES-003560; Ex. 87

15   (Dep. Ex. 200) at SYNTHES-008095; Ex. 95 (Dep. Ex. 215) at SYNTHES-009289-90.

16        **DISPUTED.  Plaintiff disputes the existence of a "compensation formula." No**

17   **written documents exist that show Synthes used such a "formula" for the Expense Class.**

18   **UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req.**

19   **for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the**

20   **absence of any "formula" allocating a set amount to expenses, because under its facial**

21   **policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17,**

22   **21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as**

23   **Synthes is using the term.  See Class Member Declarations.  See Plaintiff's objections to**

24   **evidence filed concurrently herewith.**

25        201.    The other side of the compensation formula is the straight commission

26   compensation plan.  In the CMF division, the straight commission plan offers Sales Consultants

27   a reduced base salary and an enhanced commission rate (12.5%) that is designed to include all of

28   the elements of the base compensation plan. Ex. 62 (Dep. Ex. 21) at SYNTHES-000432; Ex. 63

1
2
3

(Dep. Ex. 22) at SYNTHES-000532; Ex. 92 (Dep. Ex. 205) at SYNTHES-003576-77; Ex. 91 (Dep. Ex. 204) at SYNTHES-003560-61; Ex. 87 (Dep. Ex. 200) at SYNTHES-008096; Ex. 95 (Dep. Ex. 215) at SYNTHES-009290-91.

4
5
6
7
8
9
10
11
12

**DISPUTED.  Plaintiff disputes the existence of a "compensation formula." No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term. See Class Member Declarations.  See Plaintiff's objections to evidence filed concurrently herewith.**

13
14

        **2.      The Compensation Formula in the CMF Division During the Class Period.**

15
16
17
18
19
20
21
22

202.    Throughout the class period, Synthes' Sales Policy Manuals and Compensation Plans have provided that Sales Consultants in the CMF division generally start employment under the base compensation plan with a $35,000 base salary, an 8% commission rate, a $500 monthly car allowance, and a $1,000 monthly allowance for direct reimbursement of in-territory business expenses.  *See* Ex. 62 (Dep. Ex. 21) at SYNTHES-000432; Ex. 63 (Dep. Ex. 22) at SYNTHES-000532; Ex. 92 (Dep. Ex. 205) at SYNTHES-003576-77; Ex. 91 (Dep. Ex. 204) at SYNTHES-003560; Ex. 87 (Dep. Ex. 200) at SYNTHES-008095; Ex. 95 (Dep. Ex. 215) at SYNTHES-009289-90.

23
24
25
26
27

**UNDISPUTED, but misleading as there are facts that evidence that Sales Consultants in the Trauma division did not always start employment under the base compensation plan with a $40,000 base salary, a 8% commission rate, a $500 monthly car allowance, and a $1,000 monthly allowance for direct reimbursement of in-territory business expenses. See Plaintiff's objections to evidence filed concurrently herewith.**

28

203.    Throughout the class period, Synthes' Sales Policy Manuals and Compensation

1    Plans have provided that CMF Sales Consultants on the straight commission plan receive a base

2    salary (of $30,000) in addition to the enhanced 12.5% commission rate.  *See* Ex. 62 (Dep. Ex.

3    21) at SYNTHES-000432; Ex. 62 (Dep. Ex. 22) at SYNTHES-000532; Ex. 92 (Dep. Ex. 205) at

4    SYNTHES-003576-77; Ex. 91 (Dep. Ex. 204) at SYNTHES-003560-61; Ex. 87 (Dep. Ex. 200)

5    at SYNTHES-008096; Ex. 95 (Dep. Ex. 215) at SYNTHES-009290-91.

6    **DISPUTED.  Plaintiff disputes that Sales Consultants in this division always started**

7    **their employment with a base compensation plan.  Some Sales Consultant were**

8    **immediately hired as commission only Sales Consultants, others did not have to meet a**

9    **territory threshold in order to be transferred to commission only, and others were**

10   **transferred prior to meeting any "threshold" at all. See Plaintiff's objections to evidence**

11   **filed concurrently herewith.**

12   204.    Throughout the class period until January 1, 2015, Synthes' Sales Policy Manuals

13   and Compensation Plans have provided that CMF Sales Consultants could convert to the straight

14   commission plan at $600,000 in annualized sales.  *See* Ex. 62 (Dep. Ex. 21) at SYNTHES-

15   000432; Ex. 63 (Dep. Ex. 22) at SYNTHES-000532; Ex. 92 (Dep. Ex. 205) at SYNTHES-

16   003576-77; *See eg.* Ex. 91 (Dep. Ex. 204) at SYNTHES-003563; Ex. 87 (Dep. Ex. 200) at

17   SYNTHES-008098.

18   **UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

19   205.    As shown by the following table, at $600,000 in annualized sales, a CMF Sales

20   Consultant's total compensation under the straight commission structure ($105,000) includes and

21   exceeds a CMF Sales Consultant's maximum total compensation under the combined elements

22   of the base structure in effect during the class period ($101,000):

|                        | Base                        | Straight Commission              |
|------------------------|-----------------------------|----------------------------------|
| **Salary**             | $35,000                     | $30,000                          |
| **Commissions**        | $48,000<br>*($600,000 x 8%)* | $75,000<br>*($600,000 x 12.5%)* |
| **Auto Allowance**     | $6,000<br>*($500/month x 12)* | $0<br>*(Indemnification)*       |
| **Direct Reimbursement** | $12,000                   |                                  |

| Allowance | ($1000/month x 12) | |
|---|---|---|
| **TOTAL COMPENSATION** | **$101,000** | **$105,000** |

*See* Ex. 62 (Dep. Ex. 21) at SYNTHES-000432; Ex. 63 (Dep. Ex. 22) at SYNTHES-000532; Ex. 92 (Dep. Ex. 205) at SYNTHES-003576-77; *See e.g.*, Ex. 91 (Dep. Ex. 204) at SYNTHES-003563; Ex. 87 (Dep. Ex. 200) at SYNTHES-008098; Ex. 95 (Dep. Ex. 215) at SYNTHES-009292-93.

**DISPUTED. Plaintiff disputes the existence of a "commission structure." Some Sales Consultants received a different commission rate and/or base salary. There is no written policy before 2013 that proves that such a "structure" existed nor that the total compensation upon conversion would include allocations of all of the base compensation package including full car and maximum expense allowance. Furthermore, this table was not part of any documentation Synthes' Sales Consultants received when determining whether to switch to full commission. UMF No. 47 Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four) Decl. ¶ 11; Hayes Decl. ¶ 11; Warne Decl. ¶ 11; Marsh Decl. ¶ 11. See Plaintiff's objections to evidence filed concurrently herewith.**

206.     Bob Bennett, a former Sales Consultant, Regional Manager, and Vice President of Sales for the CMF division, explained that "[t]he reason for the $600,000 conversion level was to ensure that a CMF Sales Consultant upon conversion would continue to receive compensation which covered all of the base compensation package including the car allowance and the expense reimbursement allowance." *See* Ex. 14, Bennett (9-18-15) Decl. ¶ 2.

**DISPUTED. This fact is immaterial. Synthes' subjective belief regarding the purpose of the conversion threshold is irrelevant. Whatever their beliefs are, they do not show that Synthes established a policy that reimburses its Sales Consultants for expenses, communicates a specific apportionment between wages and expenses, or fully indemnifies the Sales Consultants for their reasonably necessary business expenses. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). See Plaintiff's objections to evidence filed concurrently herewith.**

207.    Effective January 1, 2015, Synthes adjusted the CMF division's published conversion threshold in $800,000 in annualized sales.  *See* Ex. 95 (Dep. Ex. 215) at SYNTHES-009292-93.  This adjustment reflected (a) the effect of the Medical Device Excise Tax ("MDET") under the Affordable Care Act (the MDET is a 2.3% excise tax on medical device sales that reduces the net sales of Sales Consultants) and (b) Synthes' integration of the CMF and Trauma divisions as part of Synthes' merger with Johnson & Johnson.  *See* Ex. 4, Hurley Dep. at 142:6-7 ("Both divisions are in alignment with the threshold[.]"), 142:13-143:2.

**DISPUTED.  This fact is immaterial.  Synthes' subjective belief regarding the purpose of the conversion threshold is irrelevant.  Whatever their beliefs are, they do not show that Synthes established a policy that reimburses its Sales Consultants for expenses, communicates a specific apportionment between wages and expenses, or fully indemnifies the Sales Consultants for their reasonably necessary business expenses.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). See Plaintiff's objections to evidence filed concurrently herewith.**

208.    The published conversion threshold in the CMF division reflects the minimum level of sales where a Sales Consultant may convert to the straight commission plan.  *See* Ex. 14, Bennett (9-18-2015) Decl. ¶¶ 3-4.  The CMF division follows the compensation formula and, by policy and practice, does not allow Sales Consultants to convert to the straight commission plan until and unless their annualized sales reach the conversion threshold.  *See* Ex. 14, Bennett (9-18-2015) Decl. ¶ 3.

**DISPUTED.  Plaintiff disputes the existence of a "compensation formula." No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations.  See Plaintiff's objections to**

1    **evidence filed concurrently herewith.**

2       209.    Throughout the class period, the CMF division has not required Sales Consultants

3    to convert to the straight commission plan, either at the conversion threshold or at any other level

4    of sales.  *See* Ex. 14, Bennett (9-18-15) Decl. ¶ 3.  The decision by a Sales Consultant to convert

5    from the base plan to the straight commission plan is voluntary.  *See* Ex. 14, Bennett (9-18-15)

6    Decl. ¶ 3; *See also* Ex. 13, Bennett (10-28-13) Decl. ¶¶ 3-5; Ex. 36, Edwards Dec. ¶ 5 at

7    SYNTHES-003475-76; Ex. 44, Hollowell Decl. ¶ 6 at SYNTHES-003492; Ex. 51, Price Decl. ¶

8    5 at SYNTHES-003510.

9       **DISPUTED.  Plaintiff disputes the existence of a "compensation formula." No**

10   **written documents exist that show Synthes used such a "formula" for the Expense Class.**

11   **UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req.**

12   **for Produc. of Docs. (Set Four)).  To the contrary, all written documents demonstrate the**

13   **absence of any "formula" allocating a set amount to expenses, because under its facial**

14   **policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17,**

15   **21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as**

16   **Synthes is using the term.  See Class Member Declarations. See Plaintiff's objections to**

17   **evidence filed concurrently herewith.**

18      210.    If a CMF Sales Consultant's territory sales decline below the conversion

19   threshold after the Sales Consultant converts to the straight commission plan (such as, for

20   example, if Synthes loses a hospital contract or a doctor leaves the territory), Synthes protects the

21   Sales Consultant by providing a guaranteed salary or other guarantees to ensure that the Sales

22   Consultant's total income remains above the conversion threshold.  *See* Ex. 14, Bennett (9-18-

23   15) Decl. ¶ 6.

24      **UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

25      211.    CMF Sales Consultants who convert to the straight commission plan may choose

26   to convert back to the base plan at any time.  *See, e.g.*, Ex. 44, Hollowell Decl. ¶ 7 at SYNTHES-

27   003492 ("I also understood that I always had the option to return to my prior base plus

28   commission arrangement (where I would submit business expenses – both for in-territory and

out-of-territory – for reimbursement) if circumstances led me to believe that the base plus 12.5%

commission arrangement would not fully cover my prior in-territory expenses.").

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

212.    The compensation formula in the CMF division does not incorporate out-of-

territory expenses.  Ex. 61 (Dep. Ex. 20) at P000407; Ex. 92 (Dep. Ex. 205) at SYNTHES-

003576-77; Ex. 91 (Dep. Ex. 204) at SYNTHES-003560-61; Ex. 87 (Dep. Ex. 200) at

SYNTHES-008096; Ex. 95 (Dep. Ex. 215) at SYNTHES-009290. CMF Sales Consultants on the

base plan and Spine Sales Consultants on the straight commission plan are eligible for direct

reimbursement of out-of-territory business expenses pursuant to Synthes' expense

reimbursement policies.  *See* Ex. 62 (Dep. Ex. 21) at SYNTHES-000447-48; Ex. 64 (Dep. Ex.

24) at SYNTHES-000585; *See also* Ex. 7, Meister (12/19/12) Dep. at 134:22-135:8 ("They

would [submit for direct reimbursement] if they were outside of the territory."); *id.* at 244:20-24.

**DISPUTED.  Plaintiff disputes the existence of a "compensation formula." No**
**written documents exist that show Synthes used such a "formula" for the Expense Class.**
**UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req.**
**for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the**
**absence of any "formula" allocating a set amount to expenses, because under its facial**
**policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17,**
**21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as**
**Synthes is using the term.  See Class Member Declarations.  See Plaintiff's objections to**
**evidence filed concurrently herewith.**

213.    The compensation formula in the CMF division also does not incorporate

extraordinary in-territory expenses that would be reimbursed outside of the expense allowance

for Sales Consultants on the base plan.  *See* Ex. 92 (Dep. Ex. 205) at SYNTHES-003576-77; Ex.

91 (Dep. Ex. 204) at SYNTHES-03563; Ex. 95 (Dep. Ex. 215) at SYNTHES-009293.  CMF

Sales Consultants on the base plan and CMF Sales Consultants straight commission plan are

eligible for direct reimbursement of extraordinary in-territory business expenses.  *See* Ex. 92

(Dep. Ex. 205) at SYNTHES-003576-77; Ex. 91 (Dep. Ex. 204) at SYNTHES-03563; Ex. 95

(Dep. Ex. 215) at SYNTHES-009293.

**DISPUTED.  Plaintiff disputes the existence of a "compensation formula." No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations. See Plaintiff's objections to evidence filed concurrently herewith.**

### 3.    The CMF Division Communicates the Compensation Formula to Sales Consultants.

214.    Throughout the class period, the CMF division has provided Sales Consultants with numerous forms of written and oral communication describing its compensation formula, including the expense reimbursement allowances offered by the base compensation plan and the allocations for expense indemnification built into the straight commission plan.  These communications occur at all times during a Sales Consultant's employment, from hiring through the decision to convert to the straight commission plan.

**DISPUTED.  Plaintiff disputes the existence of a "compensation formula." No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations.  See Plaintiff's objections to evidence filed concurrently herewith.**

### a.     The Interview Process

215.     The CMF Division trains and requires its Regional Managers to discuss the compensation formula, including the expense allowances under the base plan and the expense allocations built into the straight commission plan with prospective Sales Consultants during the interview and hiring process.  *See* Ex. 14, Bennett (9-18-15) Decl. ¶ 7.  Bob Bennett explained that, as Vice President of Sales for the CMF division, he "expected, required, and trained Regional Managers to discuss the compensation system during the interview and recruitment process." *See* Ex. 14, Bennett Decl. (9-18-15) ¶ 9.

**DISPUTED.  Plaintiff disputes the existence of a "compensation formula." No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations. See Plaintiff's objections to evidence filed concurrently herewith.**

### b.     Offer Letters.

216.     At hiring, CMF Sales Consultants receive – and are required to read and sign – a detailed offer letter setting forth their base salary, commission rate, car allowance, and in-territory expense reimbursement allowance.

**UNDISPUTED, but misleading because as phrased, this fact gives the impression that total compensation upon conversion would include allocations of all of the base compensation package including full car and maximum expense allowance, which it does not. See Plaintiff's objections to evidence filed concurrently herewith.**

### c.     Sales Policy Manuals.

217.     Synthes' 2007 Sales Policy Manual explained the compensation formula for the CMF division:

A.  New Hire

All new hires begin employment as New Hire Sales Consultants. Compensation is a predetermined base salary (of $35,000 annually), plus commission based on the current commission rate in effect. The current commission rate for New Hire SMF Sales Consultants is 8%. Commission for new hires will be paid on sales beginning the first full calendar month of territory responsibility. Commission is paid on monthly net sales excluding repairs. An automobile allowance of $500/month is also paid to the New Hire Sales Consultant. New Hires are also eligible for business expense reimbursement of up to $1,000 per month. Up to $500 per month of the expense budget may be used for communications.

B.  Conversion

A 12.5% commission rate should be considered when a territory maintains consistency in sales which annualize $600,000. . . .

1. Territory Sales Annualize $600,000 or More

When a Sales Consultant's territory reaches an annualized volume of sales of $600,000 or more, the Regional Manager may recommend that the Sales Consultant converts his/her compensation package from salary, commission plus expenses, to a predetermined base salary of $30,000, plus a higher level of commissions with no expenses. Commission is paid according to the current commission program in effect. The current commission rate is 12.5% when a SMF Sales Consultant moves to this compensation package. . . .

2. Territory Sales Annualize $599,999 or Less

If the territory sales are less than $599,999 annualized, the Sales Consultant may continue on salary, commission, plus expenses until such a time that the territory sales trend show annualized sales of at least $600,000, based on his/her performance on the job.

*See* Ex. 62 (Dep. Ex. 21) at SYNTHES-000432.

**DISPUTED.  The policy speaks for itself and was not properly quoted.**

218.    The explanation of the compensation formula for the CMF division in the 2010 Sales Policy Manual was substantively identical to the explanation in the 2007 Sales Policy Manual.  *See* Ex. 63 (Dep. Ex. 22) at SYNTHES-000532.

**DISPUTED.  Plaintiff disputes the existence of a "compensation formula." No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req.**

**for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations.  See Plaintiff's objections to evidence filed concurrently herewith.**

219.    Synthes' witnesses have testified that, by stating that CMF Sales Consultants on the straight commission plan received "no expenses," the 2007 and 2010 Sales Policy Manuals confirmed that straight commission Sales Consultants would not receive direct reimbursement because their enhanced commission rate indemnified those expenses.  *See* Ex. 14, Bennett (9-18-15) Decl. ¶ 13.  *See also generally* Ex. 7, Meister (12-19-12) Dep. at 134:23-135:6; *id.* at 244:20-24.

**DISPUTED. Plaintiff disputes that the policy stating that Sales Consultants on straight commission received "no expenses," confirmed that straight commission Sales Consultants would not receive direct reimbursement because their enhanced commission rate indemnified those expenses" because there is no such written policy until 2013. UMF No. 47 Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four) Decl. ¶ 11;  Hayes Decl. ¶ 11;  Warne Decl. ¶ 11; Marsh Decl. ¶ 11. See Plaintiff's objections to evidence filed concurrently herewith.**

### d.    2012 Sales Policies.

220.    The 2012 Sales Policy for the CMF division stated expressly the specific allocation for in-territory car and business expenses built into the enhanced commission rate under the straight commission plan.  *See* Ex. 92 (Dep. Ex. 205) at SYNTHES-003573-82.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

221.    The 2012 Sales Policy for the CMF division stated that the "expenses allocated to Sales Consultants on a Base Salary & Commission arrangement are included in the 12.5% commission rate" and that "as a result, Sales Consultants who convert to the compensation arrangement that includes full commission are not entitled to an additional direct reimbursement

1    for automobile allowance or in-territory business expenses because the $500 automobile

2    allowance and up to $1,000 of reimbursable expenses are built into the higher commission rate":

3            Base Salary & Commission

4            Normally, Sales Consultants upon hire will be paid a
             predetermined base salary plus a designated commission rate.

5            Sales Consultants may remain on or return to this base salary plus
             designated commission based on specific circumstances or

6            territory realignments.  Commission is paid on monthly net sales.
             Sales Consultants paid this base salary plus commission may be

7            eligible for an automobile allowance of $500 and are eligible for
             business expense reimbursement of up to $1,000 per month.  Up to

8            $500 per month of the expense budget may be used for
             communications costs.  Any in-territory expenditures above the

9            allowance must be pre-approved by the Regional Manager before
             they are incurred.  Expense reimbursement requests must be made

10           in accordance with the Company's direct reimbursement and
             compliance policies.

11

12           Full Commission

13           When a Sales Consultant territory reaches a specific annualized
             volume of sales (**generally no less than $600,0000**) which is equal

14           to their current compensation **including the above expense
             allowance**, based on the Sales Consultant's 12 period territory

15           sales, a Sales Consultant may choose to have his or her
             compensation package converted from the base salary plus

16           commission arrangement (which includes direct reimbursement for
             automobile allowance and in-territory business expenses) to a

17           compensation arrangement including the full commission rate.
             Commission is paid according to the current commission program

18           in effect.  The current full commission rate for a Sales Consultant
             is 12.5%.  Commission is paid on monthly net sales.  ***The above***

19           ***expenses allocated to Sales Consultants on a Base Salary &
             Commission arrangement are included in the 12.5% commission***

20           ***rate.  As a result, Sales Consultants who convert to the
             compensation arrangement that includes full commission are not***

21           ***entitled to an additional direct reimbursement for automobile
             allowance or in-territory business expenses because the $500***

22           ***automobile allowance and up to $1,000 of reimbursable expenses
             are built into the higher commission rate***.  Any in-territory

23           expenditures above the allocated allowance must be pre-approved
             by the Sales Consultant's Regional Manager before they are

24           incurred.  Sales Consultants who are on the compensation
             arrangement that includes full commission are eligible to receive

25           direct reimbursement of pre-approved in-territory expenses above
             the allocated allowance, subject to the Company's direct

26           reimbursement and compliance policies.

27

28   *See* Ex. 92 (Dep. Ex. 205) at SYNTHES-003576-77.

1   **DISPUTED.  Synthes did not properly quote the policy.  From "[t]he above**

2   **expenses allocated" was not bolded in the policy**.

3   222.   Under the heading "Expense Payment Policy," the 2012 Sales Policy for the CMF

4   division also stated that "Sales Consultants who are on a compensation arrangement that does

5   include full commission will not be entitled to direct reimbursement for in-territory expenses as

6   allocated expenses are built into the expected compensation derived from the assigned territory

7   sales volume multiplied by the higher full commission rate" and that "[f]or purposes of

8   managing expenses, the allocated expenses equate to the period allowance of $500 for

9   automobile and $1,00 for other expenses":

> Associate Sales Consultants and Sales Consultants who are on a
> compensation arrangement that does <u>not</u> include full commission
> will be eligible for direct reimbursement for both in-territory and
> out-of-territory expenses, subject to the Company's direct expense
> reimbursement and compliance policies.  Associate Sales
> Consultants and Sales Consultants on this compensation
> arrangement may be eligible for a monthly automobile allowance
> of $500 and are eligible for business expense reimbursement of up
> to $1,000 per month.  Up to $500 per month of the expense budget
> may be used for communications costs.  Any in-territory
> expenditures above the allowance must be pre-approved by the
> Regional Manager before they are incurred.
>
> Sales Consultants who are on a compensation arrangement that
> does include full commission will not be entitled to direct
> reimbursement for in-territory expenses as allocated expenses are
> built into the expected compensation derived from the assigned
> territory sales volume multiplied by the higher full commission
> rate.  For purposes of managing expenses, the allocated expenses
> equate to the monthly allowance of $500 for automobile and
> $1,000 for other expenses.  Any in-territory expenditures above the
> allocated allowance must be pre-approved by your Regional
> Manager before they are incurred.  Sales Consultants who are on
> the compensation arrangement that includes full commission  are
> eligible to receive direct reimbursement of pre-approved in-
> territory expenses above the allocated allowance and out-of-
> territory expenses, subject to the Company's direct reimbursement
> and compliance policies.

*See* Ex. 92 (Dep. Ex. 205) at SYNTHES-003576-77

   **UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

e.     **Sales Consultant Compensation Plans.**

223.     As required by California law, Synthes sent compensation plans to CMF Sales Consultants for years 2013, 2014, and 2015.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

224.     The 2013 Compensation Plan documents for the CMF division stated expressly the specific allocation for in-territory car and business expenses built into the enhanced commission rate under the straight commission plan.  *See* Ex. 91 (Dep. Ex. 204) at SYNTHES-003563.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

225.     The 2013 Compensation Plan for the CMF division stated, under the heading "Conversion to predetermined Salary and full Commission," that "[u]pon conversion, the $500 per period auto allowance and up to $1,000 per period of reimbursable in-territory business expenses are built into the full commission compensation plan":

> When a Sales Consultant territory reaches a specific annualized volume of sales which is equal to their current compensation, based on the Sales Consultant's 12 period territory sales, and upon request by the individual Sales Consultant, the Regional Manager may recommend that the Sales Consultant converts his/her compensation package from salary plus current commission in effect to reduced salary plus full commission.  Commission is paid according to the then current commission program in effect.  ***Upon conversion, the $500 per period auto allowance and up to $1,000 per period of reimbursable in-territory business expenses are built into the full commission compensation plan***.  To the extent required by applicable state law, Sales Consultants on the full commission base compensation plan may be eligible to receive direct reimbursement of pre-approved in-territory expenses above the allocated allowance, subject to DePuy Synthes' direct reimbursement and compliance policies.

*See* Ex. 91 (Dep. Ex. 204) at SYNTHES-003563 (emphasis added)

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

226.     The 2014 Compensation Plan for the CMF division stated expressly the specific allocation for in-territory car and business expenses built into the enhanced commission rate under the straight commission plan.  *See* Ex. 87 (Dep. Ex. 200) at SYNTHES-008088-008110.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

227.    The 2014 Compensation Plan for the CMF division stated, under the heading "Compensation Components," that "*[a] full commission Sales Consultant with a predetermined base salary is not eligible for a separate auto allowance or direct reimbursement of in-territory business expenses, based on an allocation of $1500 per period for expenses ($500 for auto allowance and $1000 for variable expenses)*.  Payment for expenses is built into the full commission compensation program."  *See* Ex. 87 (Dep. Ex. 200) at SYNTHES-008096 (emphasis added).

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

228.    The 2015 Compensation Plan for the CMF division stated expressly the specific allocation for in-territory car and business expenses built into the enhanced commission rate under the straight commission plan.  *See* Ex. 95 (Dep. Ex. 215) at SYNTHES-009281-009302.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

229.    The 2015 Compensation Plan for the CMF division stated, under the heading "Legacy DePuy Synthes Compensation," that "*[a] full commission Sales Consultant with a predetermined base salary is not eligible for a separate auto allowance or direct reimbursement of in-territory business expenses, based on an allocation of $1500 per period for expenses ($500 for auto allowance and $1000 for variable expenses)*. Payment for expenses is built into the full commission compensation plan."  *See* Ex. 95  (Dep. Ex. 215) at SYNTHES-009290 (emphasis added).

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

230.    The 2015 Compensation Plan for the CMF division also stated, under the heading "Conversion to Full Commission," that "*[u]pon conversion, the $500 per period auto allowance and up to $900 per period of reimbursable in-territory business expenses are built into the full commission base compensation plan*."  *See* Ex. 95 (Dep. Ex. 215) at SYNTHES-009293 (emphasis added).

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

### f.    Monthly Commission Statements.

231.    Starting in January 2013, the Commission Statements sent to CMF Sales

Consultants (including the members of the Expense Class) included the following language:

> *** For sales consultants who are on the full commission compensation plan, *the full commission compensation arrangement includes allocated reasonable and necessary business expenses based on allowance of $500 for automobile per month and $1,000 for other business expenses*.

*See*, *e.g.*, Ex. 19, Hurley (9-23-15) Decl. ¶ 5 & Ex. B (emphasis added).

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

### g.   Regional Managers and Sales Consultants Discuss the Compensation Formula at Conversion.

232.   Bob Bennett explained that, as Vice President of Sales for the CMF division, he "required Regional Managers to discuss the compensation system with Sales Consultants during the conversion process, including a specific explanation that the expenses paid directly under the base plan were built into the enhanced commission rate under the straight commission plan." *See* Ex. 14, Bennett (9-18-15) Decl. ¶ 10; *See also* Ex. 36, Edwards Dec. ¶ 5 at SYNTHES-003475-76; Ex. 44, Hollowell Decl. ¶ 5 at SYNTHES-003491-92; Ex. 51, Price Decl. ¶ 6 at SYNTHES-003510. Bennett followed this same practice as a Regional Manager prior to his promotion to Vice President of Sales.  *See* Ex. 14, Bennett Decl. (9-18-15) ¶¶ 7-8;

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed. No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations. Further, whether Regional Managers were required to discuss said formula and how in-territory expenses were included is immaterial because there is no written policy that evidences that these pre-conversion discussions were required.  See Plaintiff's objections to evidence filed concurrently herewith.**

233.    Bennett explained further that, in the CMF division, there is a "standard procedure" for the pre-conversion discussions between Regional Managers and Sales Consultants" that includes "the Regional Manager preparing a detailed Excel spreadsheet [ ] that showed the Sales Consultants actual territory sales, actual in-territory expenses, and actual car allowance and compared the total compensation that the Sales Consultant would make under the base plan and the straight commission plan." *See* Ex. 14, Bennett (9-18-15) Decl. ¶ 10; *See also* Ex. 44, Hollowell Decl. ¶ 5 at SYNTHES-003491-92; Ex.51, Price Decl. ¶ 6 at SYNTHES-003510.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed. No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations. Further, whether Regional Managers were required to discuss said formula and how in-territory expenses were included is immaterial because there is no written policy that evidences that these pre-conversion discussions were required. See Plaintiff's objections to evidence filed concurrently herewith.**

234.    CMF Sales Consultants who are members of the Expense Class have confirmed these pre-conversion conversations regarding the compensation formula.  For example, Ryan Edwards explained: "I spoke to my Regional Manager, Bob Bennett, about making this conversion and he walked me through the sales numbers in the territory . . . and how much more money I would be making in the base plus 12.5% commission arrangement than the base plus 8% commission arrangement (where I would submit business expenses – both for in-territory and out-of-territory for reimbursement).  *See* Ex. 36, Edwards Decl. ¶ 5 at SYNTHES-003476.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation**

1  **formula existed. No written documents exist that show Synthes used such a "formula" for**

2  **the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s**

3  **Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents**

4  **demonstrate the absence of any "formula" allocating a set amount to expenses, because**

5  **under its facial policies, Synthes denied expense reimbursement to Expense Class**

6  **members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that**

7  **there was no "formula" as Synthes is using the term.  See Class Member Declarations.**

8  **Further, whether Regional Managers were required to discuss said formula and how in-**

9  **territory expenses were included is immaterial because there is no written policy that**

10 **evidences that these pre-conversion discussions were required. See Plaintiff's objections to**

11 **evidence filed concurrently herewith.**

12      235.    Alex Hollowell, a CMF Sales Consultant who is a member of the Expense Class,

13 explained: "I approached my manager, Bob Bennett, in December 2008 to discuss with him the

14 prospect of converting to the base plus 12.5% commission arrangement.  He gave me an Excel

15 spreadsheet template to help me understand the options using the sales in my territory and my

16 average expenses.  I analyzed whether I would make more money on the base plus 12.5%

17 commission arrangement than under my current arrangement (where I would submit business

18 expenses – both for in-territory and out-of-territory – for reimbursement)."  *See* Ex. 44,

19 Hollowell Decl. ¶ 5 at SYNTHES-003491-92.

20      **DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation**

21 **formula existed. No written documents exist that show Synthes used such a "formula" for**

22 **the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s**

23 **Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents**

24 **demonstrate the absence of any "formula" allocating a set amount to expenses, because**

25 **under its facial policies, Synthes denied expense reimbursement to Expense Class**

26 **members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that**

27 **there was no "formula" as Synthes is using the term.  See Class Member Declarations.**

28 **Further, whether Regional Managers were required to discuss said formula and how in-**

1  **territory expenses were included is immaterial because there is no written policy that**
2  **evidences that these pre-conversion discussions were required. See Plaintiff's objections to**
3  **evidence filed concurrently herewith.**

4      236.    Aaron Price, a CMF Sales Consultant who is a member of the expense class,
5  explained: "My Regional Manager provided me with a spreadsheet comparing the compensation
6  programs to determine what my income would be under either scenario, taking into account base
7  pay, commissions and in-territory expenses." *See* Ex. 51, Price Decl. ¶ 6 at SYNTHES-003510

8      **DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation**
9  **formula existed. No written documents exist that show Synthes used such a "formula" for**
10 **the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s**
11 **Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents**
12 **demonstrate the absence of any "formula" allocating a set amount to expenses, because**
13 **under its facial policies, Synthes denied expense reimbursement to Expense Class**
14 **members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that**
15 **there was no "formula" as Synthes is using the term.  See Class Member Declarations.**
16 **Further, whether Regional Managers were required to discuss said formula and how in-**
17 **territory expenses were included is immaterial because there is no written policy that**
18 **evidences that these pre-conversion discussions were required. See Plaintiff's objections to**
19 **evidence filed concurrently herewith.**

20      **E.    The Expense Class Understood the Conversion Formula.**

21      237.    ***Thirty-one members of the Expense Class have submitted sworn declarations***
22 stating that they understood the compensation formula and understood that the enhanced
23 commission rate offered by the straight commission plan included the same in-territory car and
24 business expenses that they received directly under the base plan.  *See* Ex. 26, Abel Decl. ¶¶ 5-6
25 at SYNTHES-003456-57; Ex. 27, Baker Decl. ¶¶ 4-5 at SYNTHES-003458-59; Ex. 28, Bartlett
26 Decl. ¶¶ 4-5 at SYNTHES-003460-61; Ex. 29, Becky Decl. ¶¶ 6-7 at SYNTHES-003462-63; Ex.
27 30, Bloom Decl. ¶¶ 4-6 at SYNTHES-003464-65; Ex. 31, Bommarito Decl. ¶¶ 5-6 at
28 SYNTHES-003466-67; Ex. 33, Branco Delc. ¶¶ 3-5 at SYNTHES-003468-69; Ex. 34, Bruce

Decl. ¶¶ 4-6 at SYNTHES-003471-72; Ex. 35, Buran Decl. ¶¶ 5-6 at SYNTHES-003473-74; Ex. 36, Edwards Decl. ¶¶ 5-6 at SYNTHES-003475-76; Ex. 37, Felty Decl. ¶¶ 4-6 at SYNTHES-003477-78; Ex. 38, Gardner Decl. ¶¶ 4-6 at SYNTHES-003479-80; Ex. 39, D. Gennett Decl. ¶¶ 5-6 at SYNTHES-003481-82; Ex. 40, Goeckeritz Decl. ¶¶ 4-6 at SYNTHES-003483-84; Ex. 41, Hahn Decl. ¶¶ 5-6 at SYNTHES-003485-86; Ex. 42, C. Hayes Decl. ¶ 3 at SYNTHES-003487-88; Ex. 43, Heil Decl. ¶¶ 3-5 at SYNTHES-003489-90; Ex. 44, Hollowell Decl. ¶¶ 5, 7, 8 at SYNTHES-003491-92; Ex. 45, Loizu Decl. ¶¶ 4-6 at SYNTHES-003494-95; Ex. 46, McDermott Decl. ¶¶ 4-6 at SYNTHES-003497-98; Ex. 47, Miller Decl. ¶¶ 5-8 at SYNTHES-003499-500; Ex. 48, Minor Decl. ¶¶ 4-6 at SYNTHES-003502-03; Ex. 49, Murray Decl. ¶¶ 4-7 at SYNTHES-003504-05; Ex. 50, Pratt Decl. ¶¶ 3, 6, 7 at SYNTHES-003507-08; Ex. 51, Price Decl. ¶¶ 5-7 at SYNTHES-003509-10; Ex. 52, Reitmeier Decl. ¶¶ 5-6 at SYNTHES-003511-12; Ex. 53, Scurci Decl. ¶¶ 6-8 at SYNTHES-003514; Ex. 54, Thiele Decl. ¶¶ 5, 6, 10 at SYNTHES-003515-17; Ex. 55, Turner Dec. ¶¶ 5-7 at SYNTHES-003518-19; Ex. 56, Wisner Decl. ¶¶ 4-5 at SYNTHES-003520-21; Ex. 32, Boulet Decl. ¶¶ 4-6 at SYNTHES-003705-06.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed. No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations.  See Plaintiff's objections to evidence filed concurrently herewith.**

238.    These members of the Expense Class have also stated under oath that each "fully understood that the higher 12.5% commission rate included compensation for any reasonable and necessary in-territory business expenses I might incur." *See* Ex. 26, Abel Decl. ¶ 6 at SYNTHES-003457; Ex. 27, Baker Decl. ¶ 5 at SYNTHES-003459; Ex. 28, Bartlett Decl. ¶ 5 at SYNTHES-003461; Ex. 29, Becky Decl. ¶ 7 at SYNTHES-003463; Ex. 30, Bloom Decl. ¶ 6 at

SYNTHES-003465; Ex. 31, Bommarito Decl. ¶ 6 at SYNTHES-003467; Ex. 34, Bruce Decl. ¶ 6 at SYNTHES-003472; Ex. 35, Buran Decl. ¶ 6 at SYNTHES-003474; Ex. 37, Felty Decl. ¶ 6 at SYNTHES-003478; Ex. 38, Gardner Decl. ¶ 6 at SYNTHES-003480; Ex. 39, D. Gennett Decl. ¶ 6 at SYNTHES-003482; Ex. 40, Goeckeritz Decl. ¶ 6 at SYNTHES-003484; Ex. 41, Hahn Decl. ¶ 6 at SYNTHES-003486; Ex. 43, Heil Decl. ¶ 5 at SYNTHES-003490; Ex. 44, Hollowell Decl. ¶ 8 at SYNTHES-003492; Ex. 45, Loizu Decl. ¶ 6 at SYNTHES-003495; Ex. 46, McDermott Decl. ¶ 6 at SYNTHES-003498; Ex. 47, Miller Decl. ¶ 8 at SYNTHES-003500; Ex. 48, Minor Decl. ¶ 6 at SYNTHES-003502; Ex. 49, Murray Decl. ¶ 7 at SYNTHES-003505; Ex. 50, Pratt Decl. ¶ 7 at SYNTHES-003508; Ex. 51, Price Decl. ¶ 7 at SYNTHES-003510; Ex. 52, Reitmeier Decl. ¶ 6 at SYNTHES-003512; Ex. 53, Scurci Decl. ¶ 8 at SYNTHES-003514; Ex. 54, Thiele Dec. ¶ 6 at SYNTHES-003516; Ex. 55, Turner Decl. ¶ 7 at SYNTHES-003519; Ex. 56, Wisner Dec. ¶ 4 at SYNTHES-003520; Ex. 32, Boulet Decl. ¶ 7 at SYNTHES-003706.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed. No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations. Further, whether Regional Managers were required to discuss said formula and how in-territory expenses were included is immaterial because there is no written policy that evidences that these pre-conversion discussions were required.  See Plaintiff's objections to evidence filed concurrently herewith.**

239.    Many of the members of the Expense Class have also confirmed that they run their own mathematical calculations using the compensation formula and their actual expenses to confirm that their compensation under the straight commission plan will cover and include all of the elements of the base plan.  For example, James Bommarito explained

> Prior to making this conversion, I personally reviewed the options and did the math to make sure [], based on the projected sales in my territory, that my compensation at the 12.5% commission rate would more than cover my expenses and the company allowance and, over and above that, would provide me with additional income compared with what I had been making.

*See* Ex. 31, Bommarito Decl. ¶ 5 at SYNTHES-003466-67.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed.  No written documents exist that show Synthes used such a "formula" for the Expense Class.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)).  To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations.  Further, a Sales Consultants subjective belief is insufficient because there are no written policies explaining the expense allocations. See Plaintiff's objections to evidence filed concurrently herewith.**

240.    Jason Buran explained: "Before I made the switch, I did the math to make sure this would be beneficial to me.  I knew what my expenses were and I am able to identify and control them on a weekly and monthly basis."  *See* Ex. 35, Buran Decl. ¶ 5 at SYNTHES-003473-74

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed.  No written documents exist that show Synthes used such a "formula" for the Expense Class.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)).  To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that**

1    there was no "formula" as Synthes is using the term.  See Class Member Declarations.

2    Further, a Sales Consultants subjective belief is insufficient because there are no written

3    policies explaining the expense allocations. See Plaintiff's objections to evidence filed

4    concurrently herewith.

5        241.    Wade Felty explained: "I also did my own calculations to ensure that I would be

6    making enough money in the 12.5% commission arrangement to not only cover my income from

7    the base + lower commission arrangement plus expenses, but also to make additional income."

8    *See* Ex. 37, Felty Decl. ¶ 4 at SYNTHES-003477-78.

9        **DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation**

10   **formula existed. No written documents exist that show Synthes used such a "formula" for**

11   **the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s**

12   **Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents**

13   **demonstrate the absence of any "formula" allocating a set amount to expenses, because**

14   **under its facial policies, Synthes denied expense reimbursement to Expense Class**

15   **members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that**

16   **there was no "formula" as Synthes is using the term.  See Class Member Declarations.**

17   **Further, a Sales Consultants subjective belief is insufficient because there are no written**

18   **policies explaining the expense allocations. See Plaintiff's objections to evidence filed**

19   **concurrently herewith.**

20       242.    Toby Goeckeritz, explained: "I did the math and it was clear to me that I could

21   make more money taking into consideration my base pay, 4% commission, and my expense

22   allocation."  *See* Ex. 40, Goeckeritz Decl. ¶ 4 at SYNTHES-003483.

23       **DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation**

24   **formula existed. No written documents exist that show Synthes used such a "formula" for**

25   **the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s**

26   **Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents**

27   **demonstrate the absence of any "formula" allocating a set amount to expenses, because**

28   **under its facial policies, Synthes denied expense reimbursement to Expense Class**

**members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations.  Further, a Sales Consultants subjective belief is insufficient because there are no written policies explaining the expense allocations. See Plaintiff's objections to evidence filed concurrently herewith.**

243.    Raymond Hahn explained: "Before I made the switch, I did the math to make sure that I was comfortable, based on the projected sales in my territory, that my compensation at the 12.5% commission rate would more than cover my expenses and the company allowance, over and above that, would provide me with additional income compared with what I had been making." *See* Ex. 41, Hahn Decl. ¶ 5 at SYNTHES-003485-86.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed. No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations.  Further, a Sales Consultants subjective belief is insufficient because there are no written policies explaining the expense allocations. See Plaintiff's objections to evidence filed concurrently herewith.**

244.    Julia Heil explained: "I did the calculations and it was a very clear decision to make the switch." *See* Ex. 43, Heil Decl. ¶ 4 at SYNTHES-003490.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed. No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because**

1   under its facial policies, Synthes denied expense reimbursement to Expense Class

2   members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that

3   there was no "formula" as Synthes is using the term.  See Class Member Declarations.

4   Further, a Sales Consultants subjective belief is insufficient because there are no written

5   policies explaining the expense allocations. See Plaintiff's objections to evidence filed

6   concurrently herewith.

7        245.   Timothy McDermott explained:

8             Prior to making this conversion, I knew the cost of business
9             expenses I was incurring to support my territory because I was
              provided an allowance and I had to submit for these expenses.  I
10            knew the enhanced commission rate would more than cover my
              expenses and the company allowance and, over and above that,
11            would provide me with additional income compared with what I
              had been making.  I knew exactly what I was getting into through
12            this conversion and did the math to make sure that it would be
              positive financially, which it was.

13   See Ex. 46, McDermott Decl. ¶ 5 at SYNTHES-003498.

14        DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation

15   formula existed. No written documents exist that show Synthes used such a "formula" for

16   the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s

17   Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents

18   demonstrate the absence of any "formula" allocating a set amount to expenses, because

19   under its facial policies, Synthes denied expense reimbursement to Expense Class

20   members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that

21   there was no "formula" as Synthes is using the term.  See Class Member Declarations.

22   Further, a Sales Consultants subjective belief is insufficient because there are no written

23   policies explaining the expense allocations. See Plaintiff's objections to evidence filed

24   concurrently herewith.

25        246.   Bryan Murray explained: "I . . . personally did the math to assess these options.

26   In light of the projected sales in my territory, I was confident that under the 12.5% commission

27   structure, I would be significantly better off than under a base plus commission arrangement

28

1   (where I would submit business expenses – both for in-territory and out-of-territory – for

2   reimbursement)." *See* Ex. 49, Murray Decl. ¶ 4 at SYNTHES-003504-05.

3   **DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation**

4   **formula existed. No written documents exist that show Synthes used such a "formula" for**

5   **the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s**

6   **Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents**

7   **demonstrate the absence of any "formula" allocating a set amount to expenses, because**

8   **under its facial policies, Synthes denied expense reimbursement to Expense Class**

9   **members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that**

10  **there was no "formula" as Synthes is using the term.  See Class Member Declarations.**

11  **Further, a Sales Consultants subjective belief is insufficient because there are no written**

12  **policies explaining the expense allocations. See Plaintiff's objections to evidence filed**

13  **concurrently herewith.**

14      247.  Ryan Pratt explained:

15          In making my decision I considered the income I would have
16          under the base pay plus 4% commission arrangement where I
        would submit expenses and the income I would get from the 12.5
17          % commission arrangement. I knew the cost of business expenses I
        had been incurring, which were not that significant, and I knew the
18          allowance being provided by the Company.   I recall reviewing a
        spreadsheet which showed that at an annual sales volume of
19          $700,000 or more, it would be to my advantage to choose the full
        commission structure because, based on my actual expenses, I
20          would make more money under this arrangement.

21  *See* Ex. 50, Pratt Decl. ¶ 6 at SYNTHES-003508.

22      **DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation**

23  **formula existed. No written documents exist that show Synthes used such a "formula" for**

24  **the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s**

25  **Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents**

26  **demonstrate the absence of any "formula" allocating a set amount to expenses, because**

27  **under its facial policies, Synthes denied expense reimbursement to Expense Class**

28  **members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that**

there was no "formula" as Synthes is using the term.  See Class Member Declarations.  Further, a Sales Consultants subjective belief is insufficient because there are no written policies explaining the expense allocations. See Plaintiff's objections to evidence filed concurrently herewith.

248.    Paul Reitmeier explained: "I clearly understood that in-territory business expenses were built into the base plus 12.5% commission structure and I ran my own spreadsheet calculations using my known business expenses to determine which compensation plan would work best for me."  *See* Ex. 52, Reitmeier Decl. ¶ 5 at SYNTHES-003511-12.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed. No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations.  Further, a Sales Consultants subjective belief is insufficient because there are no written policies explaining the expense allocations. See Plaintiff's objections to evidence filed concurrently herewith.**

249.    Brett Scurci explained: "I knew exactly what expenses I was incurring for my territory and I did a calculation using an Excel spreadsheet comparing my compensation under the two compensation plan options available to me."  *See* Ex. 53, Scurci Decl. ¶ 7 at SYNTHES-03514.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed. No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents**

1  demonstrate the absence of any "formula" allocating a set amount to expenses, because

2  under its facial policies, Synthes denied expense reimbursement to Expense Class

3  members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that

4  there was no "formula" as Synthes is using the term.  See Class Member Declarations.

5  Further, a Sales Consultants subjective belief is insufficient because there are no written

6  policies explaining the expense allocations. See Plaintiff's objections to evidence filed

7  concurrently herewith.

8        250.     These current and former Sales Consultants in the Expense Class have stated

9  under oath that, after converting to the straight commission plan, they "have continued to submit

10  reasonable and necessary out-of-territory business expenses for reimbursement to Synthes, and

11  have been reimbursed for those out-of-territory business expenses."  See Ex. 26, Abel Decl. ¶ 7

12  at SYNTHES-003457; Ex. 27, Baker Decl. ¶ 6 at SYNTHES-003459; Ex. 29, Becky Decl. ¶ 8 at

13  SYNTHES-003463; Ex. 30, Bloom Decl. ¶ 7 at SYNTHES-003465; Ex. 31, Bommarito Decl. ¶

14  7 at SYNTHES-003467; Ex. 34, Bruce Decl. ¶ 7 at SYNTHES-003472; Ex. 35, Buran Decl. ¶ 7

15  at SYNTHES-003474; Ex. 36, Edwards Decl. ¶ 7 at SYNTHES-003476; Ex. 37, Felty Decl. ¶ 7

16  at SYNTHES-003478; Ex. 38, Gardner Decl. ¶ 7 at SYNTHES-003480; Ex. 39, D. Gennett

17  Decl. ¶ 7 at SYNTHES-003482; Ex. 40, Goeckeritz Decl. ¶ 7 at SYNTHES-003484; Ex. 41,

18  Hahn Decl. ¶ 7 at SYNTHES-003486; Ex. 42, C. Hayes Decl. ¶ 4 at SYNTHES-003488; Ex. 43,

19  Heil Decl. ¶ 6 at SYNTHES-003490; Ex. 44, Hollowell Decl. ¶ 9 at SYNTHES-003492; Ex. 45,

20  Loizu Decl. ¶ 7 at SYNTHES-003495; Ex. 46, Ex. McDermott Decl. ¶ 7 at SYNTHES-003498;

21  Ex. 47, Miller Decl. ¶ 9 at SYNTHES-003500; Ex. 48, Minor Decl. ¶ 7 at SYNTHES-003502;

22  Ex. 49, Murray Decl. ¶ 8 at SYNTHES-003505; Ex. 50, Pratt Decl. ¶ 8 at SYNTHES-003508;

23  Ex. 51, Price Decl. ¶ 8 at SYNTHES-003510; Ex. 52, Reitmeier Decl. ¶ 7 at SYNTHES-003512;

24  Ex. 53, Scurci Decl. ¶ 9 at SYNTHES-003514; Ex. 54, Thiele Dec. ¶ 7 at SYNTHES-003516;

25  Ex. 55, Turner Decl. ¶ 8 at SYNTHES-003519; Ex. 32, Boulet Decl. ¶ 8 at SYNTHES-003706.

26      DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation

27  formula existed. No written documents exist that show Synthes used such a "formula" for

28  the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s

1   **Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents**

2   **demonstrate the absence of any "formula" allocating a set amount to expenses, because**

3   **under its facial policies, Synthes denied expense reimbursement to Expense Class**

4   **members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that**

5   **there was no "formula" as Synthes is using the term.  See Class Member Declarations.**

6   **Further, a Sales Consultants subjective belief is insufficient because there are no written**

7   **policies explaining the expense allocations. See Plaintiff's objections to evidence filed**

8   **concurrently herewith.**

9   251.   These current and former Sales Consultants in the Expense Class have also stated

10   under oath that, after converting to the straight commission plan, they "can submit in-territory

11   expenses to my Regional Manager on a discretionary basis if it is something outside the norm."

12   *See* Ex. 26, Abel Decl. ¶ 7 at SYNTHES-003457; Ex. 27, Baker Decl. ¶ 6 at SYNTHES-003459;

13   Ex. 30, Bloom Decl. ¶ 7 at SYNTHES-003465; Ex. 31, Bommarito Decl. ¶ 7 at SYNTHES-

14   003467; Ex. 37, Felty Decl. ¶ 8 at SYNTHES-003478; Ex. 45, Loizu Decl. ¶ 7 at SYNTHES-

15   003495; Ex. 53, Scurci Decl. ¶ 9 at SYNTHES-003514; Ex. 54, Thiele Dec. ¶ 7 at SYNTHES-

16   003516.

17   **UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

18   252.   For example, Captain Hayes, a Trauma Sales Consultant, explained: "I have, on

19   occasion, submitted in-territory expenses to my Regional Manager for him to consider on a

20   discretionary basis for shipping costs related to new equipment."  *See* Ex. 42, C. Hayes Decl. ¶ 4

21   at SYNTHES-003488.

22   **UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

23   **F.   Additional Undisputed Facts Relating the Expense Class's Understanding of**
    **the Compensation Formula.**

24

25   253.   In addition to their conversations with their Regional Managers, Sales Consultants

26   also regularly contact Synthes' Expense and Sales Administration Departments prior to

27   converting to the straight commission plan to discuss the compensation formula and to collect

28   information regarding their actual in-territory expenses.  *See* Ex. 1, Andrews Dep. at 143:4-12;

Ex. 4, Hurley Dep. at 116:12-118:12.

**DISPUTED. This fact is immaterial. Plaintiff further disputes that a compensation formula existed. No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members. UMF Nos. 17, 21, 23, 26, 47-51. Additionally, class members have testified that there was no "formula" as Synthes is using the term. See Class Member Declarations. Further, a Sales Consultants subjective belief is insufficient because there are no written policies explaining the expense allocations. See Plaintiff's objections to evidence filed concurrently herewith.**

254.   Melonie Andrews, who worked as an Expense Reporting Supervisor for Synthes between June 2009 and May 2013 and worked previously as an Expense Report Administrator from March 2007 to June 2009, testified:

> [Sales consultants] would contact me because they would actually want to see what their expenses were for over the past year, so they could look and do their own analysis about moving from the salary and four percent to the full 12[-and-a-half] percent

*See* Ex. 1, Andrews Dep. at 143:4-12. *See also id.* at 13:13-20.

**DISPUTED. This fact is immaterial. Plaintiff further disputes that a compensation formula existed. No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members. UMF Nos. 17, 21, 23, 26, 47-51. Additionally, class members have testified that there was no "formula" as Synthes is using the term. See Class Member Declarations. Further, a Sales Consultants subjective belief is insufficient because there are no written**

**policies explaining the expense allocations.  See Plaintiff's objections to evidence filed concurrently herewith.**

255.   Laurie Hurley testified that, in her role as Sales Administration Manager for the Trauma division, she has had "probably hundreds" of conversations with Sales Consultants regarding the compensation formula.  *See* Hurley Dep. at 118:4-12.  Hurley explained that she had a "standard way of explaining the formula" during these conversations: "[W]e would talk about their current compensation and then how the new compensation package would work and how they would convert to 12-and-a-half percent, and then ***the expenses are included in that 12-and-a-half***.  And based on the threshold and the formula is how we get to their new compensation."  *See* Ex. 4, Hurley Dep. at 116:12-19.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation formula existed.  No written documents exist that show Synthes used such a "formula" for the Expense Class.  UMF No. 47; see also Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)).  To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations.  Further, a Sales Consultants subjective belief is insufficient because there are no written policies explaining the expense allocations.   See Plaintiff's objections to evidence filed concurrently herewith.**

G.   **The Expense Class Has Not Produced Evidence of Necessary Business Expenses.**

256.   Synthes served Lindell and the Expense Class with document requests seeking evidence supporting the Expense Class's claim that it was not reimbursed or indemnified for necessary business expenses.  *See* Ex. 98, Synthes' Requests for Production of Documents to Troy Lindell and the Certified Class (Set 2).

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

257.    The Expense Class produced redacted tax returns for Lindell and nine class members, Joaquin Munoz, Gregory Knapp, Ryan Edwards, Jonathan Sassani, Zach Wigley, Peter Harrison, Charles Warne, Robert Marsh, and Baltasar Garaygordobil.  *See* Ex. 99, Roberts Rep. ¶ 43.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

258.    The Expense Class produced various expense receipts or credit card statements for Lindell and two other class members, Edwin Houston Hayes and Robert Marsh.  *See* Ex. 67 (Dep. Ex. 37) at P-001974-P-002110; Ex. 68 (Dep. Ex. 38) at P001982-P002094; Ex. 69 (Dep. Ex. 39) at P001992-P002095, Ex. 70 (Dep. Ex. 40) at P002075-P002108; Ex. 71 (Dep. Ex. 41) at P001994-P002111; Ex. 82 (Dep. Ex. 186) at MARSH000267-000425; Ex. 78 (Dep. Ex. 136) at HAYES000001-43; Ex. 79 (Dep. Ex. 137) at HAYES000044-53.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

259.    The Expense Class produced vehicle mileage logs for one class member, Peter Harrison.  *See* Ex. 74 (Dep. Ex. 92) at HARRISON000085-000103; Ex. 75 (Dep. Ex. 93) at HARRISON000138-000157; Ex. 76 (Dep. Ex. 94) at HARRISON000183-000201.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

260.    After converting to the straight commission plan, the members of the Expense Class uniformly earned higher total compensation than the combined base salary, smaller commission rate, full car allowance, and maximum direct reimbursement allowance that they would have earned under the base plan.  *See* Ex. 16.A, Dovell Rep. at 22-23.  ***90% of the time***, the members of Expense Class earned at least ***$50,000 more*** per year than their total compensation under the base plan (including the full expense allowances).  *Id.*  Nearly ***75% of the time***, Expense Class members earned over ***$100,000 more*** per year than the total compensation that they would have earned under the base plan.  *Id.* & Ex. 22.  Lindell's own income increased from approximately $75,000 in 2001, the last year prior to his conversion from the base plan, to between $150,000 and $310,000 under the straight commission plan.  *See* Ex. 105.

**DISPUTED.  This fact is immaterial.  Plaintiff further disputes that a compensation**

formula existed. No written documents exist that show Synthes used such a "formula" for the Expense Class. UMF No. 47; *see also* Pl.'s MPA pp. 10-12; Ex. 14 at Nos. 74, 75 (Def.'s Resps. to Pl.'s Req. for Produc. of Docs. (Set Four)). To the contrary, all written documents demonstrate the absence of any "formula" allocating a set amount to expenses, because under its facial policies, Synthes denied expense reimbursement to Expense Class members.  UMF Nos. 17, 21, 23, 26, 47-51.  Additionally, class members have testified that there was no "formula" as Synthes is using the term.  See Class Member Declarations. Further, a Sales Consultants subjective belief is insufficient because there are no written policies explaining the expense allocations. See Plaintiff's objections to evidence filed concurrently herewith.

## VI.    UNDISPUTED FACTS RELATING TO THE DEDUCTION CLAIM.

### A.    Undisputed Facts Relating to Synthes' Commission Accrual Policy.

#### 1.    Sales Consultants Do Not Earn or Accrue Commissions until Sales are Complete.

261.    Throughout and preceding the class period, Synthes' policies have provided that Sales Consultants do not earn or accrue commissions until Synthes has received payment for a sale and the sale is complete. *See also* Ex. 7, Meister (12/19/12) Dep. at 175:8-10 ("[C]ommissions . . . aren't earned until the sale is completed, which is when Synthes gets paid on the invoice.").

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

262.    Synthes 1999, 2007, and 2010 Sales Policy Manuals state, under the heading "Accrual of Commissions":

> Sales Consultants earn a commission based on a percentage of his/her monthly net sales.  Sales are not complete until Synthes has received payment for the sale.  ***Commissions are not "earned" or "accrued" until the sale is complete (i.e. when customer's payment is received by the Company)***.  It is the Sales Consultant's responsibility to follow-up with the customer to ensure that payment is made under Section 2 – Deduction Policy.

*See* Ex. 61 (Dep. Ex. 20) at P000409; Ex. 62 (Dep. Ex. 21) at SYNTHES-000429, 000433, 000-437; Ex. 63 (Dep. Ex. 22) at SYNTHES-000533, 000537, 000542.

**DISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

263.    Synthes 2012 Sales Policies state, under the heading "Commission Basis, Advances, and Accruals, that "[c]ommissions are earned only when all Company requirements have been met and when the sale is complete.  Completion of the sale occurs only when the customer's payment has been received by the Company."  *See* Ex. 92 (Dep. Ex. 205) at SYNTHES-003573, 003576, 003580.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

264.    Synthes' 2013, 2014, and 2015 Compensation Plans for the Trauma and CMF divisions state, under the heading "Accrual of Commissions," that "[c]ommissions are 'earned' or 'accrued' only" when "a sale is complete" and "all company requirements have been met" and that "sales are not complete until [Synthes] has received payment for the sale."  *See* Ex. 83 (Dep. Ex. 194) at SYNTHES-008080 (2014 Trauma Compensation Plan); Ex. 86 (Dep. Ex. 199) at SYNTHES-003548 (2013 Trauma Compensation Plan); Ex. 87 (Dep. Ex. 200) at SYNTHES-008104 (2014 CMF Compensation Plan); Ex. 90 (Dep. Ex. 203) at SYNTHES-009272-73 (2015 Trauma Compensation Plan); Ex. 91 (Dep. Ex. 204) at SYNTHES-003566 (2013 CMF Compensation Plan); Ex. 95 (Dep. Ex. 215) at SYNTHES-009294-95 (2015 CMF Compensation Plan).

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

265.    Synthes' 2013 Compensation Plan for the Spine division stated, under the heading "Accrual of Commissions," that "[c]ommissions are 'earned' or 'accrued' only when all Company requirements have been met and when the sale is complete.  Sales are not complete until the Company has received payment for the sale."  *See* Ex. 84 (Dep. Ex. 196)  at SYNTHES-003529 (2013 Spine Compensation Plan).

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

266.    Synthes' 2014 Compensation Plan for the Spine division stated, under the heading "How and When Commissions Are Earned," that "[c]ommissions are earned only when a sale is complete and all Company requirements for the sale have been met.  A sale is not complete, and a commission is not earned, until the Company has received payment for the sale."  *See* Ex. 85

(Dep. Ex. 198) at SYNTHES-008115 (2014 Spine Compensation Plan).

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

267.    Synthes' 2015 Compensation Plan for the Spine division stated, under the heading "How and When Commissions Are Earned," that "[c]ommissions are earned only when a sale is complete [and] all Company requirements for the sale have been met.  A sale is not complete . . . until the Company has received payment for the sale." *See* Ex. 85 (Dep. Ex. 198)  at SYNTHES-009248-49 (2015 Spine Compensation Plan).

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

**2.    Sales Consultants Do Not Earn or Accrue Commissions after Separation from Employment.**

268.    Throughout and preceding the class period, Synthes' policies have provided that Sales Consultants who separate from employment with Synthes cannot accrue commissions after their separation date.

**DISPUTED.  Synthes' policies prior to 2013 did not limit accrual after Sales Consultants' separation dates. *See* SOF ¶¶ 269, 277. See Plaintiff's objections to evidence filed concurrently herewith.**

269.    Synthes' 1999, 2007, and 2010 Sales Policy Manuals state that "[i]f a Sales Consultant's employment is terminated for any reason, and his/her commissions do not accrue for any of the reasons specified . . . the Sales Consultant is responsible for the return of the advance to the Company."  *See* Ex. 61 (Dep. Ex. 20) at P000537; Ex. 62 (Dep. Ex. 21) at SYNTHES-000481; Ex. 63 (Dep. Ex. 22) at SYNTHES-000523.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

270.    Synthes' 2013 Trauma and CMF Compensation Plans state, under the heading "Terminated Sales Consultant," that "[a] Sales Consultant is only entitled to receive accrued commissions as of the date of termination.  Payment of unaccrued commissions following termination is purely a matter of Company discretion and subject to reconciliation of any prior or open deductions." *See* Ex. 86 (Dep. Ex. 199) at SYNTHES-003550; Ex. 91 (Dep. Ex. 204) at SYNTHES-003568.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

271.     Synthes' 2013 Spine Compensation Plan states, under the heading "Exit Commission Payments," that "[i]n the instance of a voluntary or involuntary separation from the Company, a Sales Consultant is only entitled to receive accrued commissions as of the date of separation. Payment of unaccrued commissions following separation is purely a matter of Company discretion and subject to reconciliation of any prior or open deductions. *See* Ex. 84 (Dep. Ex. 196) at SYNTHES-003530.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

272.     Synthes' 2014 and 2015 Trauma Compensation Plans state, under the heading "Exit Commission Payments":

> If your employment with the Company terminates for any reason (either voluntarily or involuntarily), you are only entitled to receive commissions that have accrued on or before the date of your termination. Also, . . . you will be responsible upon termination for repaying to the Company any advanced but unearned commissions (excluding your draw) and/or any commission overpayment.

*See* Ex. 83 (Dep. Ex. 194) at SYNTHES-008082; Ex. 90 (Dep. Ex. 203) at SYNTHES-009275.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

273.     Synthes' 2014 and 2015 Spine Compensation Plans state, under the heading "Eligibility for Commissions: New Hires, Transfers, and Termination of Employment":

> If you leave the Company, you will be paid only earned commissions (for completed sales) up to the date of your termination. You will not be eligible to receive commission payments on sales invoiced but not paid by the customer as of the date of your termination. (Also, see Section VII – Exit Commission Payments and the Commission Policy statement below for other terms applicable upon termination of employment.)

*See* Ex. 85 (Dep. Ex. 198) at SYNTHES-008116; Ex. 89 (Dep. Ex. 202) at SYNTHES-009249. The 2014 and 2015 Spine Compensation Plans state further, under the heading "Exit Commission Payments":

> If your employment with the Company terminates for any reason (either voluntarily or involuntarily), you are only entitled to receive commissions that have accrued on or before the date of your

> termination.  Also, . . . you will be responsible upon termination for repaying to the Company any advanced but unearned commissions (excluding your draw) and/or any commission overpayment.

*See* Ex. 85 (Dep. Ex. 198) at SYNTHES-008120; Ex. 89 (Dep. Ex. 202) at SYNTHES-009256.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

274.    Synthes' 2014 CMF Compensation Plan states, under the heading "Terminated Sales Consultant":

> A Sales Consultant is only entitled to receive accrued commissions as of the date of termination.  For those consultants on the 70K draw, a reconciliation will be done at the time of termination. Payment of accrued commissions following termination is purely a matter of Company discretion and subject to reconciliation of any prior or open deductions...*See* Ex. 87 (Dep. Ex. 200) at SYNTHES-008106.

**DISPUTED to the extent the document is misquoted.**

275.    Synthes' 2015 CMF Compensation Plan states, under the heading "Exit Commission Payments":

> If your employment with the Company terminates for any reason (either voluntarily or involuntarily), you are only entitled to receive commissions that have accrued on or before the date of your termination.  Also, . . . you will be responsible upon termination for repaying to the Company any advanced but unearned commissions (excluding your draw) and/or any commission overpayment.

*See* Ex. 95 (Dep. Ex. 215) at SYNTHES-009297.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

**B.    Undisputed Facts Relating to Synthes' Commission Payment Policy.**

276.    Throughout and preceding the class period, Synthes' policies have provided that, although commissions are not earned until sales are complete, Synthes advances commissions to Sales Consultants based on invoiced sales.  *See also* Ex. 7, Meister (12/19/12) Dep. at 175:2-4 ("[W]e will pay the sales consultant their commissions before we actually get paid by the customer.").

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

277.    Synthes' 1999, 2007, and 2010 Sales Policy Manuals state that "[i]f a Sales Consultant's employment is terminated for any reason, and his/her commissions do not accrue for any of the reasons specified . . . the Sales Consultant is responsible for the return of the advance to the Company."  *See* Ex. 61 (Dep. Ex. 20) at P000537; Ex. 62 (Dep. Ex. 21) at SYNTHES-000481; Ex. 63 (Dep. Ex. 22) at SYNTHES-000523.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

278.    Synthes 1999, 2007, and 2010 Sales Policy Manuals state, under the heading "Advances on Commissions":

> Synthes will allow advances after invoice on commissions prior to the completion of the sale.  These advances are monies that belong to the Company and are advanced to the Sales Consultant on the expectation that the sales will be completed by the customer's payment of the invoiced amount.  The Company retains the right to terminate payment of advances at any time.

*See* Ex. 61 (Dep. Ex. 20) at P000409; Ex. 62 (Dep. Ex. 21) at SYNTHES-000429, 000433, 000437; Ex. 63 (Dep. Ex. 22) at SYNTHES-000533, 000537, 000542.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

279.    Synthes 2012 Sales Policies state, under the heading "Commission Basis, Advances, and Accruals:

> Advances will be permitted after the sales have been invoiced and prior to the completion of the sale.  Advances belong to the Company and are advanced to the Sales Consultant with the expectation that the sales will be completed.  The Company retains the right to terminate the payment of advances at any time

*See* Ex. 92 (Dep. Ex. 205) at SYNTHES-003573, 003576, 003580.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

280.    Synthes' 2013, 2014, and 2015 Trauma Compensation Plans state, under the heading "Advances on Commissions":

> Synthes will allow advances after invoice on commissions prior to the completion of the sale.  These advances are monies that belong to the Company and are advanced to the Sales Consultant on the expectation that the sales will be completed by the customer's payment of the invoiced amount.  The Company retains the right to terminate payment of advances at any time.

*See* Ex. 86 (Dep. Ex. 199) at SYNTHES-003548-49; Ex. 83 (Dep. Ex. 194) at SYNTHES-008080; Ex. 203 at SYNTHES-009273.  The 2013, 2014, and 2015 Trauma Compensation Plans state further, under the heading "Commission Policy":

> If, when a participant leaves the Company, the remaining payments due to the participant . . . are not sufficient to cover the full amount of any advance or overpayment due to the Company, the participant is required to remit payment prior to his/her last day of employment.  Any amount not paid at such time will be considered a debt owed to the Company.

*See* Ex. 86 (Dep. Ex. 199) at SYNTHES-003554; Ex. 83 (Dep. Ex. 194) at SYNTHES-008086; Ex. 90 (Dep. Ex. 203) at SYNTHES-009258.

**DISPUTED to the extent the document is misquoted.**

281.   Synthes' 2013 Spine Compensation Plan states, under the heading "Advances on Commissions":

> The Company will allow advances after invoice on commissions prior to the completion of the sale.  These advances are monies that belong to the Company and are advanced to the Sales Consultant on the expectation that the sales will be completed by the customer's payment of the invoiced amount.  The Company retains the right to terminate payment of advances at any time.

*See* Ex. 84 (Dep. Ex. 196) at SYNTHES-003529.  The 2013 Spine Compensation Plan states further, under the heading "Commission Policy":

> By accepting commissions as part of a cumulative plan, you expressly agree that, in addition to any other method of repayment legally available to the Company, the Company may deduct, as an employee authorized deduction, any advance and/or commission overpayment amount at any time from any compensation owed by the Company to you, including, but not limited to, monthly commission and/or bonus payment(s), accrued but unused vacation time, and award monies, to the maximum extent allowed by law, until any overpayment amount is repaid in full to the Company.

*See* Ex. 84 (Dep. Ex. 196) at SYNTHES-003536.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

282.   Synthes' 2014 Spine Compensation Plan states, under the heading "Advances on Commissions":

The Company will pay advances on commissions for sales that have been invoiced but not completed. These advances are monies that belong to the Company and are advanced to the consultant on the expectation that the sales will be completed by the customers' payment of the invoiced amounts. Advances are paid net of any draw and are paid on a monthly basis in accordance with the Selling Cycle Calendar attached to this document. The Company retains the right to terminate payment of advances at any time.

As referenced above, commissions are not earned until all requirements for completion of the sale have been met and the invoice has been paid. Advanced commissions remain subject to any reconciliation necessary for deductions . . . .

If you leave the Company and the remaining payments due to you from the Company are not sufficient to cover the full amount of any advance you have received (other than the draw), then you will be required to remit payment to the Company to cover the insufficiency prior to your last day of employment. This obligation is discussed in more detail in the Commission Policy statement below.

*See* Ex. 85 (Dep. Ex. 198) at SYNTHES-008116. The 2014 Spine Compensation Plan states further, under the heading "Commission Policy":

By accepting commissions as part of a cumulative plan, you expressly agree that, in addition to any other method of repayment legally available to the company, the Company may deduct, as an employee authorized deduction, any advance (in excess of the draw) and/or commission overpayment amount at any time from any compensation owed by the Company to you, including, but not limited to, monthly commission and/or bonus payment(s), award payments, and accrued but unused vacation time, to the maximum extent allowed by law, until any overpayment amount is repaid in full to the Company.

*See* Ex. 85 (Dep. Ex. 198) at SYNTHES-008121.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

283. Synthes' 2015 Spine Compensation Plan states, under the heading "Advances on Commissions":

The Company will pay advances on commissions for sales that have been invoiced but not completed. These advances are monies that belong to the Company and are advanced to the consultant on the expectation that the sales will be completed by the customers' payment of the invoiced amounts. Advances are paid net of any draw and are paid on a monthly basis in accordance with the Selling Cycle Calendar attached to this document. The Company retains the right to terminate payment of advances at any time.

> As referenced above, commissions are not earned until all requirements for completion of the sale have been met and the invoice has been paid.  Advanced commissions remain subject to any reconciliation necessary for deductions . . . .

> If you leave the Company and the remaining payments due to you from the Company are not sufficient to cover the full amount of any advance you have received (other than the draw), then you will be required to remit payment to the Company to cover the insufficiency prior to your last day of employment.  This obligation is discussed in more detail in the Commission Policy statement below.

*See* Ex. 89 (Dep. Ex. 202) at SYNTHES-009249.  The 2015 Spine Compensation Plan states further, under the heading "Commission Policy":

> If, when a participant leaves the Company, the remaining payments due to the participant . . . are not sufficient to cover the full amount of any advance (in excess of the draw) and/or overpayment due to the Company, the participant is required to remit payment prior to his/her last day of employment.  Any amount not paid at such time will be considered a debt owed to the Company.

*See* Ex. 89 (Dep. Ex. 202) at SYNTHES-009258.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

284.   Synthes' 2013 and 2014 CMF Compensation Plans state, under the heading "Advances on Commissions":

> Synthes may allow commission advances after a commitment for payment is received from the customer and prior to completing of the sale.  These advances are monies that belong to the Company and are advanced to the Sales Consultant on the expectation that the sales will be completed by the customer's payment of the invoiced amount.  The Company retains the right to terminate payment of advances at any time.

*See* Ex. 87 (Dep. Ex. 200) at SYNTHES-008104; Ex. 91 (Dep. Ex. 204) at SYNTHES-003566-67.  The 2013 and 2014 CMF Compensation Plans state further, under the heading "Commission Policy":

> If, when a participant leaves the Company, the remaining payments due to the participant . . . are not sufficient to cover the full amount of any advance and/or overpayment due to the Company, the participant is required to remit payment prior to his/her last day of employment.  Any amount not paid at such time will be considered a debt owed to the Company.

*See* Ex. 87 (Dep. Ex. 200) at SYNTHES-008110; Ex. 91 (Dep. Ex. 204) at SYNTHES-003572.

**DISPUTED to the extent the document is misquoted.**

285.    Synthes' 2015 CMF Compensation Plan states, under the heading "Advances on Commissions":

> DePuy Synthes will allow advances after invoice on commissions prior to the completion of the sale.  These advances are monies that belong to the Company and are advanced to the Sales Consultant on the expectation that the sales will be completed by the customer's payment of the invoiced amount.  The Company retains the right to terminate payment of advances at any time.

*See* Ex. 95 (Dep. Ex. 215) at SYNTHES-009295.  The 2015 CMF Compensation Plan states further, under the heading "Commission Policy":

> If, when a participant leaves the Company, the remaining payments due to the participant . . . are not sufficient to cover the full amount of any advance (in excess of the draw) and/or overpayment due to the Company, the participant is required to remit payment prior to his/her last day of employment.  Any amount not paid at such time will be considered a debt owed to the Company.

*See* Ex. 95 (Dep. Ex. 215) at SYNTHES-009301-02.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

**C.    Undisputed Facts Relating to Synthes' Commission Deduction Policy.**

**1.    Synthes' Policy Allows Deductions Only From "Unaccrued Commissions."**

286.    Throughout and preceding the class period, Synthes' policies have provided that, Synthes may take deductions only from Sales Consultants' "unaccrued commissions." DISPUTED.  Plaintiff does not know what Synthes' policies were proceeding the class period.

**DISPUTED. Synthes' policies are not limited "only" to Sales Consultants' unaccrued commissions. *See* SOF ¶¶ 287-89.**

287.    Synthes' 1999, 2007, and 2010 Sales Policy Manuals state that "[i]f Synthes does not receive payment of an ordered item for any of the reasons specified in this [policy], 50% of the list price of the order will be deducted from the Sales Consultant's unaccrued commissions. The term 'unaccrued commissions' includes both past and future advances."  *See* Ex. 61 (Dep.

Ex. 20) at P000414; Ex. 62 (Dep. Ex. 21) at SYNTHES-000440; Ex. 63 (Dep. Ex. 22) at SYNTHES-000495.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

288.　　Synthes' 2012 Sales Policies state that that "[i]f Synthes does not receive payment of an ordered item for any of the reasons specified in this [policy], 50% of the list price of the order will be deducted from the Sales Consultant's unaccrued commissions.  The term 'unaccrued commissions' includes both past and future advances."  *See* Ex. 92 (Dep. Ex. 205) at SYNTHES-003574, 003577, 003581.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

289.　　Synthes' 2013 and 2014 Compensation Plans for the Trauma and CMF divisions state that "[i]f [Synthes] does not receive payment of an ordered item for any of the reasons specified in this [policy], 50% of the list price of the item(s) will be deducted from the Sales Consultant's unaccrued commissions.  The term 'unaccrued commissions' includes both past and future advances."  *See* Ex. 86 (Dep. Ex. 199) at SYNTHES-003551; Ex. 83 (Dep. Ex. 194) at SYNTHES-008083; Ex. 91 (Dep. Ex. 204) at SYNTHES-003569; Ex. 87 (Dep. Ex. 200) at SYNTHES-008106.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

290.　　Synthes' 2015 Compensation Plans for the Trauma and CMF divisions state that, "[t]o the extent permitted by state law," Synthes "reserves the right to reconcile a Sales Consultant's unaccrued commissions" and state further that "[t]he term 'unaccrued commissions' includes both past and future advances."  *See* Ex. 90 (Dep. Ex. 203) at SYNTHES-009276; Ex. 95 (Dep. Ex. 215) at SYNTHES-009298.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

291.　　Synthes' policies authorize the company to take two types of deductions from Sales Consultants' unaccrued commissions.

**DISPUTED. Synthes' policies authorize more than two categories. *See* Dep. Exs. 21, 22.**

292.　　Customer service, or "PPOR," deductions are authorized in certain circumstances

where a product is shipped without a customer purchase order and the Sales Consultant fails to timely obtain the purchase order. *See* Ex. 62 (Dep. Ex. 21) at SYNTHES-000440-41; Ex. 63 (Dep. Ex. 22) at SYNTHES-000495-96; Ex. 92 (Dep. Ex. 205) at SYNTHES-003574-75; Ex. 86 (Dep. Ex. 199) at SYNTHES-003551; Ex. 91 (Dep. Ex. 204) at SYNTHES-003569-70; Ex. 83 (Dep. Ex. 194) at SYNTHES-008083-84; Ex. 87 (Dep. Ex. 200) at SYNTHES-008107-08; Ex. 90 (Dep. Ex. 203) at SYNTHES-009276-77; Ex. 89 (Dep. Ex. 202) at SYNTHES-009250-51; Ex. 95 (Dep. Ex 215) at SYNTHES-009298-99**.**

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

293.    Accounts receivable, or "PINVR," deductions are authorized in certain circumstances where a Sales Consultant (a) fails to provide proof of delivery for a product, (b) fails to provide a valid purchase order for a product, or (c) fails to provide proof that a product was returned to Synthes. *See* Ex. 62 (Dep. Ex. 21) at SYNTHES-000442-43; Ex. 63 (Dep. Ex. 22) at SYNTHES-000497-98; Ex. 92 (Dep. Ex. 205) at SYNTHES-003575; Ex. 86 (Dep. Ex. 199) at SYNTHES-003553; Ex. 91 (Dep. Ex. 204) at SYNTHES-003571; Ex. 83 (Dep. Ex. 194) at SYNTHES-008085; Ex. 87 (Dep. Ex. 200) at SYNTHES-008108-09; Ex. 90 (Dep. Ex. 203) at SYNTHES-009278; Ex. 95 (Dep. Ex. 215) at SYNTHES-009300.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

294.    Synthes provides Sales Consultants with reminders of potential deductions. *See* Ex. 18, Hurley (10-28-13) Decl. ¶ 6.  For potential PPOR deductions, Sales Consultants (and their Regional Managers) receive weekly e-mail notifications of all discrepancies in their invoices and unresolved purchase orders. *See id* at ¶ 6;  *See also* Ex. 4, Hurley Dep. at 177:24-178:2 ("It's something that our department sends out to the regional managers for their review on a weekly – weekly or biweekly basis."); Ex. 10, Wholey Dep. at 160:3-164:10 ("They're sent to us each week.").

**DISPUTED.  The evidence does not support that these reminders were sent regularly throughout the Class Period. See Plaintiff's objections to evidence filed concurrently herewith.**

295.    In the case of potential PINVR deductions, Sales Consultants (and their Regional

Managers) receive reminders for any invoicing discrepancies that must resolved within 60 and then (if still unresolved) 30 days.  *See* Ex. 18, Hurley (10-28-13) Decl. ¶ 6.  *See also* Ex. 3, Hummel Dep. at 32:20-33:8 ("We send out a 60-day letter to the sales consultant asking him for his proof of delivery.  It's sent to the sales consultant as well as his regional manager.  If by 30 days of that 60 days, we do not receive a proof of delivery, payment is not received or a product is not returned, we send him a 30-day reminder.").

**DISPUTED. The evidence does not support that these reminders were sent regularly throughout the Class Period. See Plaintiff's objections to evidence filed concurrently herewith.**

296.     Synthes reports pending PPOR deductions internally on a "U1" report.  *See* Ex. 4, Hurley Dep. at 175:22-176:1 ("When an order goes to deduction, it goes to a U1 order type . . . [a]nd that's what the report is."); *id.* at 186:12-14 ("Q: Which categories [of deductions] do show up on U1 reports?; A: It's all of your PORs").

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

297.     However, not all pending PPOR deductions listed on a "U1" report are actually deducted from a Sales Consultant.  *See* Ex. 4, Hurley Dep. at 234:25-235:6 ("Q: A U1 report demonstrates the deductions that occur against an individual's commissions.  Is that right?; A: In not all cases.  I don't know if it actually went against their commissions or not.").

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

298.     When PPOR deductions were taken, the Trauma and CMF divisions limited the amount that could be deducted from a Sales Consultant to a maximum of $2,000 per monthly pay period.  *See also* Ex. 4, Hurley Dep. at 182:12-17 ("[W]e don't take any more than $2,000 from a consultant at one time . . . only $2,000 is taken per month."); *id.* at 198:19-199:3.

**DISPUTED. The evidence does not support that these deductions were limited to a maximum of $2,000 per monthly pay period throughout the Class Period. See Plaintiff's objections to evidence filed concurrently herewith.**

299.     Sales Consultants may obtain reversal of a pending or already-taken PPOR deductions with approval from their Regional Manager and Area Vice President.  *See* Ex. 4,

Hurley Dep. at 182:10-12 ("With regional manager approval and AVP approval, they can be stopped and reversed or cancelled."); Ex. 9, Sorensen Dep. at 94:10-12 ("[I]n certain circumstances, they have been up for a commission deduction, and I've approved reversals."); Ex. 10, Wholey Dep. at 201:15-17 ("Q: And have you been able to get deductions reversed?; A: I have."). *See also* Ex. 4, Hurley Dep. at 182:19-23 ("And there may be a circumstance where they – they find the product and they return it, so we'll stop all the deductions, future deductions, and give them back the $2,000. But that needs approval.").

**DISPUTED. There were numerous sales consultants who did not receive reversals and/or were told that reversals would not be allowed. Synthes' policy manuals provide that "*policy dictates that extensions or reversals will not be granted*." Ex. 6 at SYNTHES 454; Ex. 8 at SYNTHES 508. The Court has already cited evidence that shows that Synthes does not reverse deductions even if Synthes eventually receives payment for the sale. ECF No. 139 at 30(b)(6) witness testified that, as to reversals "[i]t usually is pretty difficult to get that done." De Alba Dec., Ex. 1 (Meister Depo. (12/19/2012) 217:16-17). See also Ranahan Decl. Depo. Ex. 249; Depo. Ex. 254; Sorenson Depo. 194:22-24 ("for a time it was said that we can't make any commission deduction reversals; to not even bother requesting that"). See Plaintiff's objections to evidence filed concurrently herewith.**

300. Robert McGee testified that, when requested by a Sales Consultant he "frequently" would "reverse" a pending deduction: "What I recall is more frequently that I would reverse them, because my memory is that most of the time it was for an issue that could be resolved." *See* Ex. 6, McGee Dep. at 168:25-169:3. McGee could not recall ever denying a reversal request. *See* Ex. 6, McGee Dep. at 165:13-16 ("Q: Has anybody ever asked you to reverse a deduction and you said no?; A: . . . I don't remember that.").

**Undisputed.** However, **there were numerous sales consultants who did not receive reversals and/or were told that reversals would not be allowed. Synthes' 30(b)(6) witness testified that, as to reversals "[i]t usually is pretty difficult to get that done." De Alba Dec., Ex. 1 (Meister Depo. (12/19/2012) 217:16-17). See also Ranahan Decl. Depo. Ex. 249; Depo. Ex. 254; Sorenson Depo. 194:22-24 ("for a time it was said that we can't make any**

commission deduction reversals; to not even bother requesting that").  **See Plaintiff's objections to evidence filed concurrently herewith.**

301.  David Wholey testified that "our whole goal is not to have a consultant get a deduction."  *See* Ex. 10, Wholey Dep. at 150:25-151:3.  Wholey "work[s] closely with the consultant" to avoid and reverse commission deductions.  *See id.* at 200:10-201:10; *id.* at 201:15-17 ("Q: And have you been able to get deductions reversed?; A: I have."); *id.* at 168:14-16 ("We work hard not to get deductions.  There are some times where we're successful in reversing them.").

**DISPUTED.  There were numerous sales consultants who did not receive reversals and/or were told that reversals would not be allowed. Further, lacks foundation to the extent his testimony is argued to be extrapolated to other Synthes management. See Plaintiff's objections to evidence filed concurrently herewith.**

302.  Eric Sorensen testified that "the reality is if there's a commission deduction, and someone asks for a reversal, over the years I've been happy to help out and request a reversal, if needed."  *See* Ex. 9, Sorensen Dep. at 198:21-24.  Sorensen added that deductions "are the last thing I want to see.  I don't want to see my guys getting deducted[.]"  *See also id.* at 193:24-194:8; *id.* at 194:16-19 ("I don't want to see it go to deduction.  I don't want to see their pay deducted.").

**DISPUTED.  This fact is immaterial as it was not the policy across the board and not evenly applied with all Sales Consultants. See Plaintiff's objections to evidence filed concurrently herewith.**

303.  McGee and Sorensen both testified that they could not recall an Area Vice President ever denying a deduction reversal that they had approved.  *See* Ex. 6, McGee Dep. at 166:4-6 ("Q: Was there ever a time that you tried to get a deduction reversed and you were not able to?; A: I don't think so."); Ex. 9, Sorensen Dep. at 195:8-11 ("[E]very time I've gone to get a commission deduction reversal, it's – we have got it approved.").  *See also id.* at 94:16-19 ("Q: Are there circumstances . . . where you give your preliminary approval and then . . . your AVP or whoever denies it?; A: I have not run into that personally.").

1    **DISPUTED.  This fact is immaterial as it was not the policy across the board and**

2    **not evenly applied with all Sales Consultants. See Plaintiff's objections to evidence filed**

3    **concurrently herewith.**

4    304.    When a pending PPOR deduction is reversed, the deduction is never taken from

5    the Sales Consultant, even though it would be listed on a U1 report.  *See*, *e.g.*, Ex. 4, Hurley Dep.

6    at 182:5-24.  When an already-taken PPOR deduction is reversed, a Sales Consultant may

7    receive a payment or credit for the amount that was deducted.  *See*, *e.g.*, *id*. at 182:5-24.

8    **Unable to dispute or admit, as Plaintiff does not have payroll records.**

9    305.    Synthes reports pending PINVR deductions internally on a monthly spreadsheet.

10   *See* Ex. 3, Hummel Dep. at 45:4-11, 46:21-23

11   **UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

12   306.    However, not all pending PINVR deductions listed on the monthly spreadsheet

13   are actually deducted from a Sales Consultant.  *See* Ex. 4, Hurley Dep. at 234:25-235:6 ("Q: A

14   U1 report demonstrates the deductions that occur against an individual's commissions.  Is that

15   right?; A: In not all cases.  I don't know if it actually went against their commissions or not.").

16   **DISPUTED, as this evidence does not concern PINVR deductions. See Plaintiff's**

17   **objections to evidence filed concurrently herewith.**

18   307.    Sales Consultants may obtain reversal of a certain pending or already-taken

19   PINVR deductions.  For example, Synthes' Sales Policy Manuals and Compensation Plans

20   provide that a PINVR deduction for an invalid purchase order number "may be reversed with a

21   letter from the customer stating that the PO number was valid."  *See* Ex. 62 (Dep. Ex. 21) at

22   SYNTHES-000441; Ex. 63 (Dep. Ex. 22) at SYNTHES-000496.  *See also*, *e.g.*, Ex. 3, Hummel

23   Dep. at 138:3-139:10.

24   **UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

25   308.    A pending PINVR deduction also would not be taken if Synthes received

26   customer payment or a credit memo before the deduction was taken.  *See*, *e.g.*, Ex. 3, Hummel

27   Dep. at 125:22-127:10.

28   **Unable to Dispute or Admit.**

## 2.    Synthes Has Stopped or Suspended Most Deductions.

309.    The Spine division suspended all deductions by October 2012.  *See* Ex. 97,  Defs.'

First Supp. Resp. Pl.'s Interrog. No. 21 ("[T]he Spine division stopped closing POR and PINVR

orders to commission deduction in or around October 2012.").  *See also* Ex. 8, Meister (2/25/15)

Dep. at 126:11-23 ("We stopped deductions."); Ex. 6, McGee Dep. at 162:21-22 ("The practice

of actually taking the deduction is not occurring at present."); Ex. 3, Hummel Dep. at 65:10-13

(testifying that "Spine sales consultants are not submitted for [PINVR] commission deductions"

as of "September 2012").

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

310.    The Spine division suspended deductions as a result of Synthes' merger with

Johnson & Johnson and integration with Johnson & Johnson's DePuy business unit.  *See* Ex. 8,

Meister (2/25/15) Dep. at 128:17-129:8 ("Q: And why did you stop?; A: Because it – there was

not a similar policy on the DePuy side.").

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

311.    The Trauma and CMF divisions suspended PPOR deductions by September 2013.

*See* Ex. 97, Defs.' First Supp. Resp. Pl.'s Interrog. Nos. 19 & 20 (stating that the Trauma and

CMF divisions "stopped closing POR orders to commission deduction in or around October

2012").  *See also* Ex. 4, Hurley Dep. at 178:23-179:9 ("It was Trauma and CMF, it stopped); *id.*

at 180:17-24 ("Q: And that's been the case since approximately September 2013?; A: Yes."); *id.*

at 227:9-12.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

312.    The Trauma and CMF divisions suspended PPOR deductions in connection with

Synthes' development of new healthcare compliance policies.  *See* Ex. 4, Hurley Dep. at 190:24-

191:10, 232:7-233:4.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

D.    **Undisputed Facts Relating to Sales Consultants' Authorization of Synthes' Commission Accrual, Payment, and Deduction Policies.**

313.    As a condition of employment, Sales Consultants are required to provide Synthes

with a signed "Authorization of Commission Deductions."  *See* Ex. 59 (Dep. Ex. 13) at

SYNTHES-000075.  *See also* Ex. 7, Meister (12/19/12) Dep. at 222:8-13 ("This is the

authorization of commission deductions.  This is also something that would be included in that

new hire packet . . . where we require the employee to sign and return, so that it . . . becomes part

of their personnel file.").

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

314.   The "Authorization of Commission Deductions" describes Synthes' policy with

respect to "Commission Accrual, Advances and Deductions from Unaccrued Commissions":

> Under the commission program presently in effect, a Sales
> Consultant earna commission based on a percentage of his/her
> monthly net sales.  Commissions are not "earned" or "accrued"
> until the sales is complete (i.e. when the customer payment is
> receive by Synthes).  However, Synthes will advance the
> commission to the Sales Consultant prior to completion of the sale.
> These advances are monies that belong to the Company and are
> advanced to the Sales Consultant on the expectation that the sales
> will be completed by receipt of customer's payment.  The
> Company retains the right to terminate payment of advances at any
> time.  If Synthes does not receive payment on an ordered item, for
> any of the reasons specified in [Synthes Sales' Policies'] 50% of
> the list price of the order will be deducted from the Sales
> Consultant's unaccrued commissions.  The term "unaccrued
> commissions refers to both past and future advances.

*See* Ex. 59 (Dep. Ex. 13) at SYNTHES-000075.

**DISPUTED.  The policy speaks for itself and Defendant misquoted the policy. Most**

**importantly, the bracketed "Synthes Sales Policies" actually refers to "Synthes Sales**

**Compensation Policy, Section VII of the Synthes Sales Policy & Procedure Manual." See**

**Plaintiff's objections to evidence filed concurrently herewith.**

315.   The "Authorization of Commission Deductions" also describe Synthes' policy

with respect to "Return of Advances Following Termination":

> If a Sales Consultant's employment with Synthes is terminated for
> any reason, and the advances that he or she has received do not
> accrue for any of the reasons specified in [Synthes' Sales Policies],
> the Sales Consultant is responsible for the return of the advances to
> the Company.

*See* Ex. 59 (Dep. Ex. 13) at SYNTHES-000075

Case 1:11-cv-02053-LJO-BAM   Document 220   Filed 10/21/15   Page 153 of 157

**DISPUTED. The policy speaks for itself and Defendant misquoted the policy. Most importantly, the bracketed "Synthes Sales Policies" actually refers to "Synthes Sales Compensation Policy, Section VII of the Synthes Sales Policy & Procedure Manual." See Plaintiff's objections to evidence filed concurrently herewith.**

316.    Lindell "carefully reviewed" and signed the "Authorization of Commission Deductions" on July 19, 1999. *See* Ex. 59 (Dep. Ex. 13) at SYNTHES-000075; Ex. 5, Lindell Dep. at 90:13-16, 94:7-12.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

**E.    Undisputed Facts Relating to Synthes' Commission Advance and Deduction Practices.**

317.    According to Synthes' California sales records during the class period, on average, approximately 70% of the monthly commissions paid to the members of the Deduction Class during the class period were unaccrued advances. *See* Ex. 16.A, Dovell Decl. at 29-30. Only about 30% of the monthly commissions paid to the members of the Deduction Class during the class period were accrued wages. *See id.*

**DISPUTED to the extent that this paragraph misleadingly omits that unaccrued commissions almost always accrue within three pay periods. UMF No. 80 (Dovell Dep. 220:19-22). See Plaintiff's objections to evidence filed concurrently herewith.**

318.    Although the advances paid to a Sales Consultant in one pay period will accrue into wages in later pay periods as customers remit payment to Synthes, a Sales Consultant will also receive new advances in those later pay periods for new invoiced sales. Jacqueline Meister explained at her deposition:

> So the sales consultants are paid monthly, once a month, and in that pay, in that commission pay, . . . there will always be a mix of earned and unearned commissions, because of the way we pay. We pay, you know, we pay in advance. We may get paid on an invoice 30 days, 60 days, 90 days later, right, but rather than hold back the commissions, you know, we will pay them in advance, you know, assuming that the invoice will be paid.
>
> So at any given time, there is always a combination of earned and unearned commissions that are being paid to a sales consultant on a monthly basis. And so what we have is sort of a continual

No. 11-cv-02503                    -153-              Pl.'s Objs.to Synthes' Supp. Statement

> reconciliation process that takes place on these monthly buckets of commissions.  Right.  So there's a continuous reconciliation that takes place, which is part of the deduction, you know, the deduction that might need to happen.

*See* Ex. 7, Meister (12/19/12) Dep. at 176:2-22.

**DISPUTED.  Synthes has produced no evidence of any reconciliation process ever taking place. See Plaintiff's objections to evidence filed concurrently herewith.**

319.    For this reason, Synthes' payroll records indicate that advances exceeded potential deductions in at least 99.95% of the total pay periods for members of the Deduction Class during the class period.  *See* Ex. 16.A, Dovell Decl. ¶ 16 at 29; *See also*, *e.g.*, Ex. 10, Wholey Dep. at 166:21-22 ("The deduction is applied against the advancement.")

**DISPUTED. Synthes has produced no evidence to show that it considered whether deductions were taken against advances or unaccrued commissions.  Synthes' analysis omits that cumulative deductions inevitably exceed the balance of advances. See Plaintiff's objections to evidence filed concurrently herewith.**

320.    Throughout the class period, Synthes' consistent practice has been to continue to advance commissions for sales invoiced through a Sales Consultant's separation date and to include those advances in a Sales Consultant's final paycheck.  Although Synthes' policy allows the company to seek repayment of unaccrued advances, Synthes' uniform practice is to allow Sales Consultants to keep all of the advances paid to them through separation.  *See* Ex. 18, Hurley Decl. (10/28/13) ¶ 10; Ex. 24, Shillinglaw Decl. ¶ 26.

**UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

321.    As a result of Synthes' consistent practice of advancing commissions through separation, Sales Consultants who leave Synthes separate from employment with a significant amount of unaccrued commissions that will never become earned wages.  *See* Ex. 16.A, Dovell Rep. at 30.  For example, an analysis of Synthes' records shows that Lindell's final advances exceeded his cumulative deductions and that the same was true for most (and possibly all) of the other Class members.  *Id.*

**DISPUTED. Synthes' policy prior to 2013 provided only that commissions that did**

1  **not accrue would not become earned wages. See SOF ¶ 277. Synthes' expert testified that**

2  **the vast majority of commissions accrue.  UMF No. 80 (Dovell Dep. 220:19-22).  Synthes**

3  **analysis depends on the assumption that all payments in a final paycheck are unaccrued**

4  **(which they were not by Synthes' own estimation, see SOF ¶ 317), and that all unaccrued**

5  **commission at the time of termination would not accrue, while the evidence shows the vast**

6  **majority would.  UMF No. 80 (Dovell Dep. 220:19-22).  See Plaintiff's objections to**

7  **evidence filed concurrently herewith.**

8  322.    Lindell and the Deduction Class have produced a report from an expert witness,

9  Dr. William Roberts.  *See* Ex. 99, Roberts Rep.   With respect to the Deduction Claim, Dr.

10  Roberts' report simply adds up (a) the potential PPOR deductions listed on "U1" reports and (b)

11  the potential PINVR deductions listed on Synthes' internal spreadsheets.  *See* Ex. 99, Roberts

12  Rep. at ¶¶ 50-57.

13  **UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

14  323.    Dr. Roberts' report does not consider or address whether a potential PPOR

15  deduction listed on the "U1" reports or a potential PINVR deduction listed on the internal

16  spreadsheets was reversed.  *See* Ex. 99, Roberts Rep. at ¶¶ 50-57.

17  **UNDISPUTED but see Plaintiff's objections to evidence filed concurrently herewith.**

18  324.    Dr. Roberts' report does not address or analyze whether a Deduction Class

19  member's monthly advances were larger than the class member's monthly deductions in any pay

20  period during the class period.  *See* Ex. 99, Roberts Rep. at ¶¶ 50-57.

21  **DISPUTED**. **See Plaintiff's objections to evidence filed concurrently herewith.**

22  325.    Dr. Roberts' report does not consider or address whether a separated Deduction

23  Class member's final advances from Synthes were larger than the class member's cumulative

24  deductions during the class period.  *See* Ex. 99, Roberts Rep. at ¶¶ 50-57.

25  **DISPUTED. See Plaintiff's objections to evidence filed concurrently herewith.**

26  326.    With respect to the Expense Claim, Dr. Roberts' report presents five

27  extrapolations of aggregate expenses based on five different methodologies, including one

28  approach that seeks to project class-wide expenses from deductions claimed on the tax returns of

just nine (of 184) Expense Class members.  *See* Ex. 99, Roberts Rep. ¶¶ 11-49.  Dr. Roberts

concedes that his projections do not address liability and cannot project necessary business

expenses for any individual members of the Expense Class.  *See* Ex. 99, Roberts Rep. ¶ 9; Ex.

106, Roberts Dep. at 37:5-7 ("I was not asked to do anything regarding liability."), 45:10-11 ("I

do not intend to offer any opinions on liability in this case."); 103:8-10 ("The model is not

designed to predict for an individual, so given that it's not designed for that, that's correct, it

does not do that."); 201:18-21 ("I am not estimating what the expenditures are for an individual.

I'm using this technique to estimate what on average expenditures are for the members of the

class.").

**DISPUTED. See Plaintiff's objections to evidence filed concurrently herewith.**

Dated: October 21, 2015                          Respectfully submitted,


                                                 by: /s/ Catha Worthman

                                                 Catha Worthman (SBN 230399)
                                                 Darin Ranahan (SBN 273532)
                                                 Michael Caesar (SBN 280548)
                                                 LEWIS, FEINBERG, LEE &
                                                 JACKSON, P.C.
                                                 476 9th Street
                                                 Oakland, California 94607
                                                 Telephone: (510) 839-6824
                                                 Facsimile: (510) 839-7839
                                                 cworthman@lewisfeinberg.com
                                                 dranahan@lewisfeinberg.com
                                                 mcaesar@lewisfeinberg.com

1

2                                        by: /s/ Ana de Alba

3                                        Charles Trudrung Taylor (SBN 127105)
                                         Ana de Alba (SBN 253917)
4                                        LANG, RICHERT & PATCH
                                         Fig Garden Financial Center
5                                        5200 North Palm Avenue, Fourth Floor
                                         Fresno, California 93704
6                                        Telephone: (559) 228-6700
                                         Facsimile: (559) 228-6727
7
                                         ctt@lrplaw.net
8                                        ada@lrplaw.net
                                         Counsel for Plaintiffs and the
9                                        Classes

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28