**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **TROY M. LINDELL, ON BEHALF OF HIMSELF AND OTHERS SIMILARLY SITUATED,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**SYNTHES USA, SYNTHES USA SALES LLC, SYNTHES SPINE COMPANY, LP,**<br><br>**Defendants.** | **1:11-cv-02053 LJO BAM**<br><br>**MEMORANDUM DECISION AND ORDER RE: PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 207 & 212)** |

## I. INTRODUCTION

Plaintiff Troy M. Lindell was employed as a sales consultant for Defendants Synthes USA, Synthes USA Sales, and Synthes Spine Company (collectively "Synthes Companies") and was responsible for certain territories in California. He argues, on behalf of himself and other similarly situated class members, that Defendants' employment practices violate several California Labor Codes.

## II. PROCEDURAL HISTORY

Plaintiff filed this class action lawsuit on December 13, 2011. Doc. 1. An amended complaint was filed on February 27, 2012.[1] First Am. Compl. ("FAC"), Doc. 24. Plaintiff argues that Defendants (a) do not reimburse certain employees for business expenses as required by Cal. Labor Code § 2802, (b) took unlawful deductions in violation of Cal. Labor Code §§ 221, 223 & 300, (c) willfully failed to pay employees upon discharge in violation of Cal. Labor Code §§ 201- 203, and (d) engaged in unfair

---

[1] The original and first amended complaint identified two plaintiffs, but the second named plaintiff was dismissed pursuant to the parties' stipulation on June 18, 2012. Doc. 50.

1  competition in violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§

2  17200 -210. *Id.* ¶¶ 72, 82, 88, & 95. Plaintiff also seeks to recover under California's Private Attorney

3  General Act ("PAGA"), Cal. Labor Code §§ 2698-2699.5, for violations of Labor Code Sections 201-

4  203, 221, 223, 300 and 2804. *Id.* ¶¶ 101-130. Plaintiff assets that this Court has subject matter

5  jurisdiction based on the class action nature of the case and the parties' diversity of citizenship. 28

6  U.S.C. § 1332.

7       On September 20, 2013, Plaintiff moved to certify two classes pursuant to the Class Action

8  Fairness Act, 28 U.S.C. §§ 1332(d) and 1711-15. Doc. 87. One class (the "Expense Class") includes

9  employee sales consultants from Defendants' Trauma and Spine and Craniomaxillofacial ("CMF")

10 Division, who earned wages based on commission. *Id.* at 2. Plaintiff claims that Defendants had a policy

11 of not reimbursing these employees for business expenses. *Id.* The other class (the "Deduction Class")

12 includes "all former, current, and future Sales Consultants" employed by Defendants for the time period

13 beginning December 13, 2007 through the date of the final disposition of this lawsuit. *Id.* Plaintiff

14 claims that Defendants deducted money from these employees' paychecks and failed to pay them in full

15 when their employment was terminated. FAC ¶ 83, 90. On March 4, 2014, Magistrate Judge Barbara A.

16 McAuliffe issued Findings and Recommendations ("F & R's"), Doc. 139, recommending that the Court

17 grant Plaintiff's motion. After reviewing Defendants' objections to the F & R's, Doc. 140, this Court

18 adopted them in full and certified both classes. Doc. 149. Shortly thereafter, Defendants applied to Ninth

19 Circuit for permission to appeal this order. Doc. 150. This request was denied on August 22, 2014. Doc.

20 161.

21      On September 24, 2015, Defendants filed for summary judgment and Plaintiff filed for partial

22 summary judgment. Defs.' Notice of Mot. and Mot. for Summ. J., Doc. 207; Mem. in Supp. of Defs.'

23 Mot. for Summ. J. ("DMSJ"), Doc. 207-1; Pl.'s Notice of Mot. and Mot. for Partial Summ. J., Doc. 211;

24

25

1  Mem. of P. & A. in Supp. of Pl.'s Mot. for Partial Summ. J. ("PMSJ"), Doc. 212.[2] Along with their

2  motion, Defendants filed both a joint statement of undisputed facts ("DJSUF"), Doc. 207-2, and a

3  "Supplemental Statement of Undisputed Facts" ("DSSUF"), Doc. 207-3. Plaintiff also filed his own

4  separate statement of undisputed facts ("PSUF"), Doc. 213, with his motion.

5      The Parties filed oppositions on October 21, 2015. Pl.'s Opp'n to Defs.'Mot. for Summ. J. ("Pl.

6  Opp'n"); Defs.' Opp'n to Pl.'s Mot. for Partial Summ. J. ("Defs. Opp'n"), Doc. 218. Along with his

7  Opposition, Plaintiff filed responses to the DSSUF, ("PDSUF") Doc. 220, as well as objections to some

8  of the evidence on which Defendants rely, Doc. 221. Defendants also responded to factual assertions

9  made in the PSUF. Defs.' Response and Objections to PJSUF ("DPSUF"), Doc. 218-1.

10     The Parties filed replies on November 20, 2015. Reply in Supp. of Defs.' Mot. for Summ. J.

11  ("Defs. Reply"), Doc. 225; Reply in Supp. of Pl.'s Mot. for Partial Summ. J. ("Pl. Reply"), Doc. 228.

12  Also on November 20, 2015, Defendants also filed a response to Plaintiff's evidentiary objections.

13  Defs.' Resp. to Pl.'s Objections to Evidence, Doc. 227.

14     The hearing set for the pending motions was vacated on November 23, 1015 pursuant to L. R.

15  230(g). Doc. 230.

16  **III. <u>RULING ON OBJECTIONS</u>**

17     Plaintiff filed voluminous evidentiary objections, to which Defendants have responded. Docs.

18  221 & 227. "At the summary judgment stage, [a court] do[es] not focus on the admissibility of the

19  evidence's form. [A court] instead focus[es] on the admissibility of its contents." *Fraser v. Goodale*, 342

20  F.3d 1032, 1036 (9th Cir. 2003). To the extent that Plaintiff's objections are based on arguments that

21  evidence is "conclusory," "vague" or "abstract," such objections are unnecessary because they duplicate

22  the summary judgment standard. *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D.

23  Cal. 2006) ("[S]tatements in declarations based on speculation or improper legal conclusions, or

24  _____

25  [2] On the same day, Defendants moved to decertify the two classes. Defs.' Mot. to Decertify, Doc. 209. That matter is addressed in a separate order being filed concurrently.

3

argumentative statements, are not facts and likewise will not be considered on a motion for summary judgment. Objections on any of these grounds are simply superfluous in this context."). Similarly, objections brought on the basis of a failure to comply with the best evidence rule are also inappropriate. *Alvarez v. T-Mobile USA, Inc.*, No. CIV. 2:10-2373 WBS, 2011 WL 6702424, at *4 (E.D. Cal. Dec. 21, 2011). Plaintiff's objections brought on any of the above grounds are therefore OVERRULED.

The Ninth Circuit does mandate that "documents which have not had a proper foundation laid to authenticate them cannot support [or defend against] a motion for summary judgment." *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988) (quoting *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987)). However, as long as "substantive evidence 'could' be made use of at trial, it does not have to be admissible per se at summary judgment." *Portnoy v. City of Davis*, 663 F. Supp. 2d 949, 953 (E.D. Cal. 2009) (quoting *Fraser*, 342 F.3d at 1036). Thus, the Court will rule on objections to evidence on which it relies, where the objections are based on Fed. R. Evid. 901 (authenticating or identifying evidence) or the parties otherwise argue that the evidence could not be admitted at trial. *Id.*

## IV. BRIEF FACTUAL BACKGROUND[3]

Synthes Companies design, manufacture, market, and distribute implants and instruments for surgery. PDSUF #2. Defendants have a number of operating divisions, including the three divisions at issue in this case: Trauma, Spine, and Craniomaxillofacial ("CMF"). *Id.* #12. Prior to 1990, Defendants hired sales consultants on an independent contract basis. *Id.* #26. In 1990, Defendants offered to employ their sales consultants directly. *Id.* #28.

At the time sales consultants are hired, they are required to read and sign an offer letter. PDSUF, #74, 216. The offer letter sets forth the conditions regarding their initial compensation package including

---

[3] Because on summary judgment the evidence of the non-moving party is assumed to be true and disputed facts are construed in the non-movant's favor, the Court sets forth the undisputed facts and notes those disagreements of fact that are relevant to this decision.

1  base salary, commission rate, car allowance and in-territory expense reimbursement allowance. *Id.*

2  Defendants also gave new employees hard copies of their sales policy manuals. *Id.* #78. Employees were

3  required to acknowledge in writing that they read and understood the manuals. *Id.* #79. Defendants

4  issued updated versions of their policy manuals in 1999, 2007, and 2010. *Id.* #80; "1999 Policy," Doc.

5  207-11, Ex. 61, at CR 4[4]; "2007 Policy," Doc. 207-11, Ex. 62 at CR 140, "2010 Policy," Doc. 207-11,

6  Ex. 63, at CR 199.[5,6] When Defendants issued these updated versions, they distributed hard copies to

7  employees and posted them on their corporate intranet. PDSUF #81. Defendants updated their policies

8  again in 2012, and distributed copies to employees that December. *Id.*, Doc. 220, #93, 98. California-

9  based employees were required to sign an acknowledgment form stating that they had received the

10  policy. *Id.* #100.

11  ## V. **STANDARD OF DECISION**

12  Summary judgment is proper if the movant shows "there is no genuine dispute as to any material

13  fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party

14  bears the initial burden of "informing the district court of the basis for its motion, and identifying those

15  portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with

16  the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."

17  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). A fact is material

18  if it could affect the outcome of the suit under the governing substantive law; "irrelevant" or

19  "unnecessary" factual disputes will not be counted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

20

21  [4] Plaintiff states that he objects to the 1999 Policy on the basis of "Lack of Foundation, Hearsay." Doc. 221 at 31. Plaintiff however does not argue that the document provided in Exhibit 61 is *not* a true and correct copy of Defendants' 1999 policy,

22  nor does Plaintiff otherwise explain why the document is hearsay. Doc. 220, # 82. Rather, Plaintiff "disputes the policy was properly cited." *Id.* This is simply not a foundational or hearsay objection.  Defendants laid the foundation for the document in 207-4. Plaintiff's objections to this document are OVERRULED.

23  [5] Plaintiff raises similar objections to the 2007 Policy and 2010 Policy on the basis of "Lack of Foundation, Hearsay." Doc. 221 at 31. Plaintiff however does not argue that these documents are *not* true and correct copies of Defendants' 2007 and

24  2010 policies, nor does he explain his hearsay objection. Defendants laid the foundation for the document in 207-4. Plaintiff's objections to these documents are OVERRULED.

25  [6] These policies are duplicated elsewhere in the record. For clarity, the Court will cite to the relevant record location relied upon by the parties in their arguments.

(1986).

If the moving party would bear the burden of proof on an issue at trial, that party must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In contrast, if the non-moving party bears the burden of proof on an issue, the moving party can prevail by "merely pointing out that there is an absence of evidence" to support the non-moving party's case. *Id*. When the moving party meets its burden, the non-moving party must demonstrate that there are genuine disputes as to material facts by either:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence. *See Anderson*, 477 U.S. at 255. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. Only admissible evidence may be considered in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun*, 509 F.3d at 984.

## VI. <u>ANALYSIS</u>

### A.    <u>Business Expense Reimbursement Claims</u>

Plaintiff moves for summary judgment on their claim that Defendants violated Cal. Labor Code § 2802 by failing to reimburse Expense Class members for business expenses for the period December 13, 2007 – December 30, 2012. PMSJ at 2. Defendants move for summary judgment on this issue for the

6

1    period between December 13, 2007 and September 2012 as well as for the period beginning in

2    September 2012 through the present. DMSJ at 13.

3            1.      **Factual Background of Business Expense Reimbursement Claims**

4            Sales consultants in the Trauma, Spine, and CMF divisions generally begin their employment

5    under a compensation plan that includes at least $35,000 annual salary, a 4% or 8% commission rate, a

6    $450 to $500 monthly car allowance, and a $900 to $1000 monthly allowance for direct reimbursement

7    for in-territory business expenses. PDSUF #45, 161, 202. Employees making more than $600,000 to

8    $700,000[7] annually in sales are offered the option to convert to a "straight commission plan." *Id.* #46,

9    204. Under this plan, Trauma and Spine employees earn a commission of 12.5%. DPSUF #10. Straight

10   commission employees in the CMF division earn a base salary of $30,000 as well as a commission rate

11   of 12.5%. PDSUF #203. Commissions are paid monthly on a net basis. PDSUF #262.[8] Plaintiff

12   characterizes commissions as ranging from "approximately 2% to 12.5% of the net sales price of an

13   item." DPSUF #58. However, and as Defendants point out, the evidence relied upon by both parties

14   indicates that the minimum commission rate is 4%. *Id.* (quoting the 2007 Policy, Ex. 6, Doc. 214-6 &

15   2010 Policy, Ex. 8, Doc. 214-8).

16           Whether and how Defendants reimburse straight-commission employees for business expenses is

17   a central issue in this case. Plaintiff claims that the Defendants have a policy under which these

18   employees are "not eligible for an automobile allowance or in-territory business expense

19   reimbursements." DPSUF #10-11, 48. In support of this argument, Plaintiff points to 2007 and 2010

20   corporate policy documents that state, "[f]ield employees who are on straight (or full) commission will

21   not be reimbursed for their expenses while they are in-territory." *Id.* #21 (citing Synthes' 2010 Travel

22   and Expense Policy ("2010 TE Policy"), Ex. 13, Doc. 214-13 at 6). Defendants argue that class

23   _____

24   [7] In 2015, the threshold for converting to straight commission increased to $800,000. PDSUF # 53.

25   [8] While Plaintiff claims that this element is disputed, this appears to be a typo. Regardless, Plaintiff does not point to any
     evidence in the record that would support the existence of such a dispute.

                                                7

1    members have not produced evidence documenting that they incurred business expenses. DPSUF #29,

2    32. Plaintiff, however, produces the testimony of class members who state that they "regularly incur

3    communication expenses," "incur regular freight expenses," that "automobile expenses are common,"

4    and that they are required to maintain home offices at their own expense. DPSUF #29, 32, 38, 41 (citing,

5    *e.g.* Decl. of Troy Lindell ("Lindell Decl."), Doc. 89-8 ¶ 7; Decl. of Peter Harrison ("Harrison Decl."),

6    Doc. 89-9 ¶ 9. Defendants do not dispute that class members are required to have a computer, but

7    maintain that the evidence shows that freight is usually paid by the customer and that its companies

8    reimburse for postage-related expenses. DPSUF #39. Plaintiff also produces evidence that class

9    members incur expenses related to educating hospital staff on the proper use of Defendants' products,

10   including entertainment and educational materials. DPSUF #43 (citing *e.g.* Lindell Decl. ¶ 7; Harrison

11   Decl. ¶ 9). Defendants counter that Plaintiff has not shown the class members "regularly incur" such

12   expenses or that they were not indemnified for these activities. *Id.*

13         Defendants claim that under the straight commission plan, the enhanced commission rate was

14   "designed to include and indemnify all of the elements of the base plan, including the full allowances for

15   regular in-territory car and business expenses." DPSUF #10-11. In support of this argument, Defendants

16   point to the deposition testimony of their Fed. R. Civ. P. 30(b)(6) ("30(b)(6)") corporate representative

17   witness, who states that the reimbursement methodology for straight-compensation employees is that

18   "their expenses are covered within that enhanced commission rate." Dep. of Jacqueline Meister

19   ("Meister Dep."), Doc. 209-4 at 135; Ct. R. 434.[9] This witness also stated that even straight-

20   compensation employees might have expenses directly reimbursed if such an expense was irregular. *Id.*

21   Defendants also produced the testimony of regional manager Steven Wilkin, who stated that it "was

22   clear" to him that straight commission employees were not eligible for direct reimbursement because

23   they were "built into the commission percentage." Dep. Of Steven ("Wilkin Dep"), Doc. 209-4, at 38;

24
_____

25   [9] Plaintiff's objections to the Meister Declaration are OVERRULED. The foundation for this testimony was laid in PDSUF #
     17, 85, 96. Doc. 207-2. Additionally Ms. Meister testified that she had personal knowledge of the Companies' expense
     policies. Meister Dep. at 39; C.R. 410. Defendants authenticated the document in Doc. 207-4 ¶ 10.

Ct. R. 711.[10] Defendants also point to corporate documents for the years 2013-2015 that state the allocation for in-territory car and business expenses are built into the enhanced commission rate under the straight commission plan. PDSUF #224-25. In response, Plaintiff produces testimony of class members who state that Defendants never explained that their commission was designed to cover expenses or provided them with a breakdown of their wages. *E.g.* Harrison Decl. ¶ 11; Decl. of Edwin Houston Hayes ("Hayes Decl."), Doc. 89-14, ¶ 12.

The parties do not dispute that employees may submit expenses for in-territory work if something is "outside the norm." PDSUF # 251.

## 2.    Analysis of the Period Between December 13, 2007 and September or December of 2012

Section 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . ." Cal. Lab. Code § 2802(a). To establish liability under section 2802, an employee must show that "(1) the employee made expenditures or incurred losses; (2) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (3) the expenditures or losses were necessary." *Cassady v. Morgan, Lewis & Bockius LLP*, 145 Cal. App. 4th 220, 230 (2006), as modified (Dec. 21, 2006).

For the period between December 13, 2007 and December of 2012, Defendants argue that Plaintiff failed to show that class members incurred business expenses on a class-wide basis because he only produced receipts or tax returns for a small fraction of the class. DMSJ at 24-25. Defendants do not actually assert that class-members did not incur *any* business related-expenses. Rather, they argue that the manner in which Plaintiff proffers evidence of expenses is "insufficient on summary judgment." DPSUF #27. For example, Plaintiff testified in a declaration that he incurred regular expenses for cell

---

[10] Plaintiff's objections to the Wilkin Declaration are OVERRULED. The foundation for this testimony was laid in Wilkin identified in DJSUF # 88. His personal knowledge of the matters is evident from his testimony. Defendants authenticated the document in Doc. 207-4 ¶ 14.

phone service, internet access, shipping and office supplies. Decl. of Troy Lindell ("Lindell Decl."), Doc. 89-8, ¶ 7. Defendants claim that these are "conclusory statements." DPSUF #27. The Court disagrees with Defendants' characterization of the evidence. Plaintiff's statement that he incurred "regular" expenses does not call for a legal conclusion but rather reflects Plaintiff's experience that he incurred such expenses on a regular or consistent basis. None of the cases cited by Defendants support their position that a witness's generalized recollection of his own experience is insufficient evidence to survive or even prevail on summary judgment. Rather, these cases stand for the fact that a party must point to some evidence in the record and not rely on assertions made in the pleadings. *E.g. Gonzalez v. Cty. of Yolo*, No. 2:13-CV-01368-KJM-AC, 2015 WL 4419025, at *5 (E.D. Cal. July 17, 2015) ("Unsupported assertions are insufficient: the purpose of summary judgment is "'to pierce the pleadings and to assess the proof.'") (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585(1986)). Accordingly, at summary judgment, Plaintiff need only point to facts in the record that show that class members incurred business expenses for which they were not reimbursed. Their own testimony is sufficient to establish this. While Defendants may not believe that such evidence is sufficient for Plaintiff to succeed on this claim, they produce no evidence that supports a position that class members did not incur business expenses.[11],[12] Thus, this Court finds that there is no genuine dispute that Expense Class members incurred some manner of business expenses.

The parties strenuously disagree as to whether class members were actually reimbursed for such expenses. Plaintiff maintains that he is entitled to summary judgment because Defendants' sales policy manuals "leave no question that Defendant did not reimburse expenses for Expense Class members." PMSJ at 8. In support of this argument, Plaintiff points to the 2007 and 2010 Policy Manuals. *Id.*  For example, the 2010 Manual contains the following statement: "Sales Consultants who convert to straight

---

[11] Defendants also raise the issue that Plaintiff may not use expert testimony to establish liability on a statistical basis. DMSJ at 25. However, they concede that Plaintiff does not seek to do so. *Id.*
[12] Defendants further  argue that "[t]he expenses incurred by a Sales Consultant are subject to wide range of varying circumstances." DPSUF at 29, quoting Decl. of R. Gennett ("Gennett Decl."), Doc. 207-6, ¶ 25. As discussed in the F&Rs, this argument is related to damages, not liability.

1   commission are not eligible for an automobile allowance or in-territory business expense

2   reimbursements." Doc. 214-8 at Ct. R. 58. Defendants argue that the enhanced commission that straight

3   commission employees receive indemnifies these employees as a matter of practice. DMSJ at 12; Defs.'

4   Opp'n at 5. While Defendants state that they have "never claimed that its expense indemnification is an

5   'unwritten practice,'" DPSUF #46, they produce no evidence that, prior to December of 2012, such

6   policies were documented in writing.

7          As both parties recognize, the issues raised in this case are similar to those raised in *Gattuso v.*

8   *Harte-Hanks Shoppers, Inc*., 42 Cal. 4th 554 (2007). In *Gattuso*, the California Supreme Court held that

9   Section 2802 allows an employer to reimburse employees through an increase in base salary or

10  commission rate. However, an employer "may not combine the payments for [labor and expenses] in

11  such a way would seriously hamper or effectively preclude enforcement of the various statutory and

12  contractual obligations." *Id.* at 572. Therefore, an employer can only satisfy the requirements of 2802

13  through enhanced salary or commission if it "establishes some means to identify the portion of overall

14  compensation that is intended as expense reimbursement, [and] that the amounts so identified are

15  sufficient to fully reimburse the employees for all expenses actually and necessarily incurred." *Id.* at

16  575. Further, An employer "must also communicate to its employees the method or basis for

17  apportioning any increases in compensation between compensation for labor performed and business

18  expense reimbursement." *Id.* at 574. The *Gattuso* Court rephrased these issues later in the decision,

19  holding that the validity of a program to reimburse by an increase in base salary "will turn on the

20  resolution of the following issues:"

21          (1) Did [Defendants] adopt a practice or policy of reimbursing [class
            members] for [] expenses by paying them higher commission rates and
22          base salaries . . ?
            (2) If so, did it establish a method to apportion the enhanced compensation
23          payments between compensation for labor performed and expense
            reimbursement?
24          (3) If so, was the amount paid for expense reimbursement sufficient to
            fully reimburse the [class members] for the . . . expenses they reasonably
25          and necessarily incurred?

1   *Id.* at 576.

2          While the *Gattuso* Court did not identify which party bears the burden on each of these three

3   prongs, it held that it is the employee's duty to show that a reimbursement method did not cover his

4   actual expenses. *Id.* at 569. ("If the employee can show that the reimbursement amount that the

5   employer as paid is less than the actual expenses that the actual expenses that the employee has

6   necessarily incurred . . .the employer must make up the difference.") Similarly, a California appellate

7   court held that it is generally the plaintiff's responsibility to prove all elements of a cause of action

8   brought under Section 2802. *Cassady v. Morgan, Lewis & Bockius LLP*, 145 Cal. App. 4th 220, 239

9   (2006), as modified (Dec. 21, 2006); *see also Mireles v. Paragon Sys., Inc.*, No. 13CV122 L BGS, 2014

10  WL 4385453, at *7 (S.D. Cal. Sept. 4, 2014) (recognizing that plaintiff has the burden of proving 2802

11  elements). Thus, for Plaintiff to be entitled to summary judgment, it is his burden to produce evidence

12  that shows that *either* (a) Defendants had a policy of not reimbursing class members for expenses, *or* (b)

13  that Defendants did reimburse employees, but not in a manner that communicated to employees how

14  expenses were apportioned in paychecks *or* (c) that Defendants reimbursed employees *but* did not fully

15  reimburse them for their expenses. *See Gattuso*, 42 Cal. 4th at 573 ("Because providing an

16  apportionment method is a practical necessity for effective enforcement of section 2802 's

17  reimbursement provisions, it is implicit in the statutory scheme."[13]). Defendants can defeat Plaintiff's

18  motion if they can show that there is a genuine dispute regarding any fact material to these issues. Fed.

19  R. Civ. P. 56(c). In contrast, for Defendants to prevail on their motion, they must show that Plaintiff's

20  claims (or any critical element of them) are not supported by record evidence.

21              **a.      Whether Defendants Had a Policy of Not Reimbursing Employees**

22          Plaintiff maintains that the language in Defendants' 2007 and 2010 policies is proof positive that

23  _____

24  [13] The use of the word "scheme" obscures whether the apportionment requirement is "implicit" in section 2802, as opposed to
    section 226, or some other related code section. *Id.* at 573. However, *Gattuso's* analysis is clearly focused on section 2802;
25  with the court considering section 226 only to the extent that plaintiff argued that allowing enhanced salaries under 2802
    would conflict with 226. *Id.* Thus, this Court reads *Gattuso* as requiring apportionment as an element of 2802.

1   Defendants had a policy of *not* reimbursing class members for expenses. PMSJ at 9; Pl.'s Reply at 2. As

2   discussed above, Defendants produce evidence that the policy language was meant only to preclude

3   employees for recovering twice for the same expenses. *See also* Defs.' Opp'n at 5-6; DPSUF #87,

4   Gannett Decl. Doc. 209-5, ¶ 20. Plaintiff would have the Court discredit such evidence as being

5   outweighed by "the unambiguous pre-litigation evidence to the contrary." Reply at 4. That is something

6   the Court may not do at summary judgment.  *Anderson*, 477 U.S. 242 at 249 ("[A]t the summary

7   judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the

8   matter but to determine whether there is a genuine issue for trial.").

9        Plaintiff also argues that the plain language of Defendants' written policies must control as a

10   matter of law. In support of this argument, Plaintiff first cites to the parol evidence principle that

11   "[w]hen a dispute arises over the meaning of contract language, the first question to be decided is

12   whether the language is 'reasonably susceptible' to the interpretation urged by the party." *People ex rel.*

13   *Lockyer v. R.J. Reynolds Tobacco* Co., 107 Cal. App. 4th 516, 524 (2003). Under California law,

14   however, the parol evidence rule applies only "[w]hen the parties to a written contract have agreed to it

15   as an 'integration'—a complete and final embodiment of the terms of an agreement." *Masterson v. Sine*,

16   68 Cal. 2d 222, 225 (1968); *see also Sussex Fin. Enterprises, Inc. v. Bayerische Hypo-Und Vereinsbank*

17   *AG*, 460 F. App'x 709, 711 (9th Cir. 2011). "When only part of the agreement is integrated, the same

18   rule applies to that part, but parol evidence may be used to prove elements of the agreement not reduced

19   to writing." *Id.* Here, Plaintiff does not argue (or point to any evidence that suggests) that either of the

20   2007 or 2010 policies (or any part within them) is an integrated writing; thus there is no basis for this

21   Court to find that the parol evidence rule applies.

22        Plaintiff also argues that "the law does not allow an employer to 'selectively abide' by its own

23   employment policies." Pl. Opp'n at 5. This misses the point, because Plaintiff is not actually arguing that

24   Defendants did not abide by their manuals. Rather, he argues that the policies espoused in the manuals

25   are unlawful. Further, the cases Plaintiff cites in support of this argument dealt with whether personnel

manuals had the potential to alter employment contracts; not whether such manuals precluded the introduction of evidence interpreting these contracts. *Huey v. Honeywell, Inc.* 82 F.3d 327, 332 (9th Cir. 1996) ("Summary judgment was improper because a material question of fact existed as to whether Huey's employment contract had been modified by Honeywell's representations and course of conduct."); *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317 (2000) ("When an employer promulgates formal personnel policies and procedures in handbooks, manuals, and memoranda disseminated to employees, a strong inference may arise that the employer intended workers to rely on these policies as terms and conditions of their employment, and that employees did reasonably so rely."). Thus, these cases do not touch on whether the Court may properly consider Defendants' testimonial evidence as to how they interpreted their own policies.

Plaintiff further argues that statements in the 2007 and 2010 Policies constitute a "judicial admission" because Defendants attached and referred to them in their Answer. Pl. Opp'n at 5. "Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (internal quotations omitted). The Answer describes how Plaintiff started his career receiving an automobile allowance of $500 per month as well as business reimbursements of up to $900 month, but switched to a straight commission plan in November of 2001. Defs.' Answer, Affirmative Defenses and Countrcls. ("Answer"), Doc. 30, at 21, 23 ¶¶ 10, 25. These facts are not in dispute. The text also states that the Defendants implemented an expense policy in 2010 that is referred to in Exhibit B. *Id.* at 25 ¶ 43. That policy states, in part that "[F]ield employees who are on straight commission will <u>not</u> be reimbursed for their expenses while in-territory." TE Policy, Answer Ex. B, at 40 (emphasis in original). What is judicially admissible from these statements is that the TE Policy had an operative effect and that the policy contained the above language. Such statements are *evidence* that Defendants may not have reimbursed employees; but they are not judicial admissions to this effect. In other words, the statements in the Policy and the answer do not assert that employees were not actually indemnified

1    by their enhanced commission. In sum, the Court cannot dismiss contrary evidence relied on by

2    Defendants as a matter of contract law or judicial admission. The parties have produced evidence that

3    shows there is a genuine dispute as to whether Defendants had some sort of reimbursement policy in

4    place for Expense Class members between 2007 and 2012.

5           Defendants also argue that Plaintiff's reimbursement claim must fail because he has not shown

6    that, to the extent that employees incurred expenses, those expenses were not reimbursed. DMSJ at 12.

7    This argument is unpersuasive. As discussed above, *Gattuso* does not require a plaintiff to show that he

8    was inadequately reimbursed if his employer did not communicate an apportionment method to him to

9    establish liability. 42 Cal. 4th at 576. This is only logical because a plaintiff cannot be expected to show

10   that he was not reimbursed if his employer's failure to comply with 2802 prevents him from doing so.

11           **b.    Whether Paychecks Were Apportioned[14]**

12          As discussed above, *Gattuso* requires a reimbursement policy to have "some means to identify

13   the portion of overall compensation that is intended as expense reimbursement" and that an employer

14   must communicate this method to employees. 42 Cal. 4th at 574-75.[15] Plaintiff argues that Defendants

15   did not have a way of apportioning wages from expenses, much less communicate such a method to

16   employees. PMSJ at 13. This argument is predicated on the written 2007 and 2010 policy statements.

17   Defendants claim that the enhanced commissions indemnified straight commission employees at the

18   same rate at which other employees were directly reimbursed. DMSJ at 13-14; Defs.' Opp'n at 9. The

19   Court reads this to mean that an employee who would otherwise be eligible for $1400 in expenses would

20   be indemnified at that amount under the straight commission plan. Such a lump-sum system might

21   _____

22   [14] The Court realizes it is not necessary to reach the second prong of the *Gattuso* analysis because it has found that there is a
     genuine dispute as to facts regarding the first prong. However, this analysis provides further support for the Court's
     conclusion that neither party is entitled to summary judgment for this time period.

23   [15] Plaintiff also interprets *Gattuso* to mean that employers must communicate their apportionment method in writing, citing to
     a footnote in the case that states that employers "*should*, in providing the documentation required by section 226, subdivision

24   (a), separately identify the amounts that represent payment for labor performed and the amounts that represent reimbursement
     for business expenses." 42 Cal. 4th at 574 n. 6 (emphasis added). Given the choice of language and the fact that this was

25   relegated to a footnote, the Court does not read this statement as a legal imperative. Moreover, to the extent that it functions
     as a directive, it seems relegated to compliance with section 226, not 2802.

comply with *Gattuso*, because if an employee's actual expenses exceeded this value, then that person would have a basis for challenging the amount they were indemnified as insufficient. 42 Cal. 4th at 480 ("Of course, an employee must be permitted to challenge the amount of a lump-sum payment as being insufficient under section 2802."). Plaintiff denies that such a system was in place, and that, to the extent that it may have been, Defendants never communicated it to employees. Pl.'s Reply at 5. Such a failure to communicate would mean that the system did not comply with section 2802, because it would "effectively preclude [its] enforcement." 42 Cal. 4th at 572.

Defendants cite to the deposition testimony and declarations of numerous employees who attest that their business expenses are "built into the commission structure." Wilkin Depo. at 31-32. Doc 209-4 at 709.[16] Synthes managers also consistently describe that, before an employee transitions to a straight commission plan, the employee will evaluate whether his annual sales would mean that he would make enough money at the higher commission rate to compensate for the lack of base salary and the maximum amount of monthly expenses to which they would otherwise be entitled. *E.g.* Deposition of Eric Sorenson ("Sorenson Depo."), Doc. 209-4 at 117-18, Ct. R. 577.[17]

Some regional managers testified that the system reimbursed employees in a lump-sum manner. *E.g.* Decl. of Rick Gennett ("Gennett Decl."), Doc. 209-5, ¶ 15. ("The compensation system was designed and implemented to include an allocation of expenses at the maximum amount allowable on the base package.");[18] Decl. of Michael Landau ("Landau Decl."), Doc. 209-5, ¶ 2 ("It was explained to me by then Vice President of Sales Kurt Bichler that the reason for this conversion level was to ensure that a sales consultant upon conversion would continue to receive compensation which covered all the

---

[16] Plaintiff's objections to this exhibit are OVERRULED. Defendants laid the foundation in PDSUF #63; *see also* fn. 10, *supra*.
[17] Plaintiff's objections to this exhibit are OVERRULED. Defendants laid the foundation in PDSUF #68. Personal knowledge is apparent from the context of the deposition. Defendants authenticated the document in Doc. 207-4 ¶ 12.
[18] Plaintiff's objections to this exhibit are OVERRULED. Defendants laid the foundation in their MSJ (at 14) and in PDSUF #34-37. Personal knowledge is apparent from the context of the declaration. Defendants authenticated the document in Doc. 207-4 ¶ 12.

16

1   base compensation package including the car allowance and the expense reimbursement allowance.").[19]

2          Other testimony tended to show Defendants did not provide employees with a method to

3   differentiate their earnings from the expense payments *after* their conversion. Testimony of these

4   employees suggests that employees were *not* indemnified for any fixed amount. Regional Manager Eric

5   Sorenson, for example, implies that the allotment figures are relied upon solely to determine if an

6   employee should make the switch to straight commission. Sorenson Dep. at 118. When he was asked

7   whether Synthes gave employees a formula to determine the amount of their wages allocated to

8   expenses after the transition, he replies in apparent confusion, that "that's all gone over before they

9   make the switch. . .so maybe after they have switched, I don't know I guess  . . ." Similarly, Regional

10  Manager David Wholey testified that "the cost of their business or doing this business is taken care of

11  within the 12 and half percent. . ." but never specifies that there is an upper limit on the costs employees

12  are expected to assume. Wholey Depo. Doc. 209-3 at 92, CR 642, PDSUF #69. Rather, Wholey testifies

13  that when assessing whether an employee should convert, he relies less on an employee's previously

14  allocated expense level and more on the individual's actual expenses, "what is it really costing you to do

15  your business, because its different from San Francisco versus Sacramento." *Id.* at 27. This sentiment is

16  echoed by numerous other employees. *E.g.* Declaration of Jason Buran (Buran Decl.), Doc. 209-7, Ex.

17  35, PDSUF #240, ¶ 5. ("Before I made the switch, I did the math to make sure this would be beneficial

18  to me. I knew what my expenses were and I am able to identify and control them on a weekly and

19  monthly basis.").

20         Tellingly, the evidence also shows that there was no objective way for an employee to obtain

21  additional reimbursement for business expenses. If Defendants actually had a lump-sum system in place,

22  one would expect that employees would be able to recover for any expenses they incurred that exceeded

23  this value. Instead, the witnesses testify that they were able to seek reimbursement for in-territory

24  ─────────────────────

25  [19] Plaintiff's objections to this exhibit are OVERRULED. Defendants laid the foundation in their MSJ (at 14) and in PDSUF #157. Personal knowledge is apparent from the context of the declaration. Defendants authenticated the document in Doc. 207-4 ¶ 12.

1   expenses only if they were "outside the norm." PDSUF #251; *E.g.* Decl. of William Thiele ("Thiele

2   Decl."), Doc. 207-10, ¶ 7.[20] Reimbursement for such expenses were handled by supervisors on a

3   "discretionary basis," and no employee or manager provided an objective criteria for assessing when

4   such a request would be granted. *Id.* This is also apparent from Sorenson's testimony. Counsel asked

5   him if an employee, previously allocated $900 in expenses, could recover the difference if he incurred

6   $1500 in expenses once he was on straight commission. *Id.* at 118-19. Sorenson replied, "I don't have

7   any idea what he would do with the $600 that he incurred during the month." *Id.* at 119.

8       The evidence clearly shows that there is a genuine dispute as to whether the Defendants had a

9   lump-sum apportionment system in place, and whether such a system was communicated to employees,

10   as required by section 2802. For the reasons discussed above, the Court DENIES Plaintiff's motion for

11   summary judgment as to the expense class for the period between December 13, 2007 and December 30,

12   2012, as well as Defendants' motions for the period between December 13, 2007 and September 2012.

13       **3.**    <u>**Analysis of Period Between September 2012 or January 2013 and the Present**</u>

14       Defendants argue that they are entitled summary judgment as to the Expense Class claims for

15   claims incurred after September 2012. DMSJ at 12. Defendants argue that at this time, they posted

16   updated sales policy documents on their intranet stating that the specific allocation for expenses was

17   built into the straight commission plan. *Id.*

18       In support of this argument, Defendants first point to what it refers to as the 2012 Sales Policy

19   for the Trauma, Spine, and CMF Divisions. DSSUF #95 and Doc. 207-4 ¶ 95, referring to "2012

20   Policy," Doc. 209-14. Plaintiff objects to this document, first on the basis that is not properly

21   authenticated. Pl.'s Opp'n at 19. The Court OVERRULES Plaintiff's objection on the basis of Counsel's

22   declaration affirming that the document is "a true and correct copy" of a document it refers to as the

23   "2012 Sales Policies for the Trauma, Spine and CMF divisions." Doc. 207-4 ¶ 95. However, the Court

24   

25   [20] Plaintiff's objections to this exhibit are OVERRULED. Defendants laid the foundation in PDSUF # 237. Personal
knowledge is apparent from the context of the declaration. Defendants authenticated the document in Doc. 207-4 ¶ 12

1   agrees with Plaintiff that Defendants have not provided credible evidence supporting their assertion that

2   the document was published or posted on their intranet in September 2012. The document itself is

3   undated and contains no cover or title page referring to a time period. Doc. 209-14. While Defendants

4   submit in their briefings that it became effective in September 2012, the deposition testimony

5   Defendants cite in support is not consistent with that assertion. Defs.' MSJ at 12. In reference to the

6   document, Defendants' 30(b)(6) witness states that it "covers the Trauma division, it covers the CMF

7   division, and covers the Spine division in the 2011 time period." PDSUF # 93-95, referring to Meister

8   Depo. at 201-204. In response to Counsel's question as to how she knew it was 2011, the witness stated,

9   "Because it was prior to the merger . . ." Meister Depo. at 202. In their Reply, Defendants cite to

10  additional testimony. Defs.' Reply, at 4, fn. 4. In this additional testimony, the witness confirms that she

11  doesn't know when "in 2011" the policy was posted to the intranet. Meister Depo. at 205. Because the

12  underlying testimony refers to a document that was posted sometime in 2011 and Defendants' argument

13  discusses 2012 events, it is unclear that the document referred to in the deposition is actually the

14  document Defendants produced at 209-14. Thus, the Court concludes that Defendants did not put

15  evidence to show that the Document produced at 209-14 changed the status quo regarding Defendants'

16  expense policies in September of 2012. It cannot support their motion for summary judgment.

17      Defendants also assert that they changed their practices in January 2013. They cite to the

18  declaration of manager Laurie Hurley, who states that she sent out an electronic copy of their 2013

19  Compensation Plan ("2013 Plan") to Trauma sales consultants in December 2012. Decl. of Laurie

20  Hurley ("Hurley Decl."), Doc. 209-4, ¶ 2.[21] Plaintiff acknowledges that the 2013 Plan actually became

21  effective for Trauma employees at that time, but argues that Defendants do not show that this is true for

22  Spine and CMF employees. Pl.'s Opp'n at 19. As far as the CMF division goes, Hurley testified that she

23  was familiar with the CMF division practices and that Defendants sent copies of the 2013 Plan to them

24  _____

25  [21] Plaintiff's objections to this document are OVERRULED. Defendants authenticated this exhibit in their moving papers at
    12-13 and in Doc. 207-4 ¶ 7. Personal knowledge is apparent from the testimony itself.

as well. Hurly Decl. ¶¶ 1- 2. As to the Spine Division, Plaintiff stipulates to the fact that Defendants included the following language in "commission statements" sent to Spine division employees beginning in January of 2013: "For sales consultants who are on full commission compensation plan, the full commission compensation arrangement includes allocated reasonable and necessary business expenses based on allowance of $450 for automobile per month and $1000 for other business expenses." Doc. 220 ¶ 186. Defendants also refer to an example of a commission statement from January of 2013 that includes this statement. Hurley Decl. Ex. B; Doc. 209-5 at CR 212-23. This is similar to the language included in the 2013 Plan, which states that "Upon conversion, the $500 per period auto allowance and up to $900 per period of reimbursable in-territory business expenses are built into the full commission base plan." 2013 Policy at Ct. R. 60. Moreover, Plaintiff stipulates that in December of 2012, Defendants provided each Sales Consultant in California (including the members of the Expense Class), with a written Compensation Plan for the year 2013. Doc. 220 ¶ 98. For these reasons, the Court finds that Defendants have produced evidence that shows Defendants adopted new policy language in January of 2013, and that they communicated this new language in to Spine, Trauma, and CMF employees.

Plaintiff also argues that the 2013 Plan still fails to full the requirements put forth in *Gattuso*. Pl.'s Opp'n at 19-20. In support of this argument, Plaintiff refers to a Q & A Document obtained in discovery that states, "LSYN Consultants on straight commissions and no expenses before Oct. 1st will continue to be ineligible for expense reimbursement through 2013." Doc. 223-23 at CR 5. Plaintiff, however, provides little context for this document. Counsel for Plaintiff authenticates the document as a "document titled Expense Reporting produced by Synthes in this matter . . ." Doc. 223 ¶ 24. The email attached to it states that it is a "deck on expenses which we hope will provide guidelines and clarify some recent questions." Doc. 223-23 at Ct. R. 2. The email also states that it is a "work in progress." Plaintiff, however, does not identify the sender of the email or provide any basis for assuming that the statements in the Q & A Document were ever adopted in policy or practice. Plaintiff also refers to a

20

1    statement in the 2013 Policy as evidence that Defendants did not reimburse employees for some

2    expenses. Pl.'s Opp'n at 19. This statement provides that sales consultants will receive expenses "if their

3    normal compensation package includes direct in-territory business expense reimbursement." 2013

4    Policy at Ct. R. 65. While this language suggests that some employees might not be eligible for expense

5    reimbursement, it is not evidence that any employee *actually* incurred expenses that were not

6    reimbursed. Critically, Plaintiff does not point to any evidence that he or any other class member

7    incurred expenses after January of 2013. Doc. 218-1 # 29 (citing to Lindell Decl., Declaration of Peter

8    Harrison ("Harrison Decl.), Doc. 89-9; Declaration of Edwin Hayes ("Hayes Decl."), Doc. 89-14; Decl.

9    of Charles Warne ("Warne Decl."), Doc. 89-16; Declaration of Robert Marsh ("Marsh Decl."), Doc. 89-

10   15). In fact, not one of the witnesses who provided testimony regarding expense was employed by

11   Defendants after December of 2012. Lindell Decl. ¶ 3; Harrison Decl. ¶ 3; Hayes Decl. ¶ 3; Warne Decl.

12   ¶ 3; Marsh Decl. ¶ 3. Because Plaintiff has not provided evidence that of a threshold element of a section

13   2802 case was met; the Court need not reach the *Gattuso* analysis.

14       For the above reasons, the Court GRANTS Defendants' motion for summary judgment as to

15   Plaintiff's expense class claims for the period between January 2013 and the present.

16   **B.    Defendants' First Counterclaim**

17       Defendants also seek summary judgment on the first counterclaim asserted in its Amended

18   Answer. Doc. 207 (citing Doc. 64). The counterclaim is one for declaratory judgment regarding

19   Defendants' compliance with section 2802. Doc. 64 at 30, ¶ 70. Defendants, however, do not elaborate

20   on this request in their supporting memo. Plaintiff argues that the document containing the counterclaim

21   was withdrawn from the record, and therefore the counterclaim is not operative. Pl's Opp'n at 20 (citing

22   Doc. 66). Defendants do not address this issue in their Reply. Defendants' silence on the matter is

23   confusing, as is the apparent absence of an operative answer in this matter. The fact that Defendants

24   voluntarily withdrew the Amended Answer, coupled with the absence of any argument supporting

25   Defendants' motion on issue, requires the Court to grant Plaintiff's request. The Court DENIES

1   Defendants motion for summary judgment as to its first counterclaim.

2   **C.   Paycheck Deduction Claims**

3   Plaintiff's second cause of action alleges that Defendants improperly deducted money from class

4   members' wages in violation of California Labor Code sections 221, 223, and 300. FAC ¶¶ 82-84.

5   Plaintiff moves for summary judgment on behalf of himself and the Deductions Class as to liability for

6   his second cause of action for the period between December 13, 2007 and December 30, 2012. PMSJ at

7   2. Defendants oppose Plaintiff's motion and move for summary judgment in their favor. DMSJ at 29.

8   **1.   Factual Background of Deduction Class Claims**

9   Under Synthes Companies' compensation plans, sales consultants earn commissions upon

10   completion of a sale. DPSUF #56; PDSUF #261. Payment is disbursed once an invoice is received,

11   however the money is considered an advance until payment is received from the customer. DPSUF #57.

12   Defendants' internal policies allow them to take at two primary types of deductions from a sales

13   consultant's paycheck. PDSUF #291. These deductions are up to 50% of a product's list price. DPSUF

14   #59; PDSUF #289. Customer service, or "PPOR," deductions are authorized in certain circumstances

15   where a product is shipped without a customer purchase order and the Sales Consultant fails to timely

16   obtain the purchase order. PDSUF #292. Accounts receivable, or "PINVR," deductions are authorized in

17   certain circumstances where a sales consultant (a) fails to provide proof of delivery for a product, (b)

18   fails to provide a valid purchase order for a product, or (c) fails to provide proof that a product was

19   returned to Defendants. PDSUF #293. Several class members testified that Defendants took such

20   deductions from their paychecks. DPSUF #60. Defendant argues that because deductions were only

21   applied to advances, they cannot be considered deductions from actual wages. *Id.*

22   Defendants contend that the Spine division suspended all deductions by October 2012, PDSUF

23   #309 and that the Trauma and CMF divisions suspended PPOR deductions by September 2013, PDSUF

24   #311. Pointing to the deposition testimony of one of the Defendants' 30(b)(6) witnesses, Plaintiff

25   maintains that PINVR deductions are still being taken from employees. DPSUF #65 (quoting Deposition

1   of Karen Hummel ("Hummel Depo.") at 64, 74, Doc. 214-31; *see also* Doc. 209-4. Defendants state that

2   this testimony shows that the Spine division stopped taking deductions in 2012. DPSUF #65 (quoting

3   Hummel Depo., Doc. 209-4 at 65).

4   **2.   <u>Legal Background</u>**

5   California Labor Code section 221 provides that "[i]t shall be unlawful for any employer to

6   collect or receive from an employee any part of wages theretofore paid by said employer to said

7   employee." "Wages includes all amounts for labor performed by employees of every description,

8   whether the amount is fixed or ascertained by the standard of time, task, piece, *commission basis*, or

9   other method of calculation." Cal. Lab. Code § 200(a) (emphasis added). Labor Code section 221's

10  rights are nonnegotiable and cannot be waived by the parties. Cal. Lab. Code, § 219. "By enacting

11  [Labor Code] section 221 ... the Legislature has prohibited employers from using self-help to take back

12  any part of 'wages theretofore paid' to the employee, except in very narrowly defined circumstances

13  provided by statute." *Hudgins v. Neiman Marcus Group*, 34 Cal. App. 4th 1109, 1121 (1995). "An

14  employment compensation system which deducts company losses and expenses from employee base pay

15  runs afoul of California public policy." *Naser v. Metro. Life Ins. Co.*, No. 5:10-CV-04475 EJD, 2013

16  WL 4017363, at *11 (N.D. Cal. July 31, 2013) (citing *Prachasaisoradej v. Ralph's Grocery Co.*

17  *("Ralph's")*, 42 Cal. 4th 217 (2007)).

18  Under these laws, an employer may make an advance on commissions to employees "and later

19  reconcile[] any overpayments by deductions from future commissions. *Steinhebel v. Los Angeles Times*

20  *Commc'ns*, 126 Cal. App. 4th 696, 707 (2005). "The essence of an advance is that at the time of payment

21  the employer cannot determine whether the commission will eventually be earned because a condition to

22  the employee's right to the commission has yet to occur or its occurrence as yet is otherwise

23  unascertainable." *Id.*at 705. "The right of a salesperson or any other person to a commission depends on

24  the terms of the contract for compensation." *Koehl v. Verio, Inc.,* 142 Cal. App. 4th 1313, 1330 (2006).

25  \\

23

### 3.   **Analysis**

Defendants argue that where a contract stipulates conditions precedent to the accrual of commissions, California law does not prohibit taking deductions from money advanced to employees prior to that accrual. DMSJ at 29-30 (" '[A]dvances' are not 'wages' and, as a matter of law, commission advances are not subject to the wage payment and deduction requirements of the Labor Code."). In support of this argument, Defendants cite California appellate court decisions finding that advances, by definition, are not wages. *E.g. Steinhebel*, 126 Cal. App. 4th at 705 ("An advance, therefore, by definition is not a wage because all conditions for performance have not been satisfied."). In these cases, however, employers only sought to recover the amounts that were originally advanced and to enforce the conditions on accrual. For example, the *Koehl* Court found that "an employer may legally advance commissions to its employees prior to the completion of all conditions for payment and, by agreement, charge back any excess advance over commissions earned against any future advance should the conditions not be satisfied." 142 Cal. App. 4th at 1332. Similarly, the court in *Deleon v. Verizon Wireless, LLC,* discussed that "when a charge back occurs, the retail sales representative receives a reduced amount of the next advance to account for the earlier advance that never became a commissionable sale." 207 Cal. App. 4th 800, 810 (2012); *see also Steinhebel,* 126 Cal. App. 4th at 708 (describing deductions at issue as where "[r]espondent merely reduces the amount of the next advance to the employee to account for the fact that the earlier advance never ripened into a commissionable order.").

Defendants' policies are markedly different than the ones described in the above cases. Under Defendants' 2007 and 2010 policies, Defendants were able to "recover" from an employee more than was advanced for a particular sale. Defendants do not dispute that the amount of the deduction (50% of list price) is larger than the maximum amount an employee may receive as commission for a particular sale (up to 12.5% of list price). DPSUF #58. Therefore, a portion of the deduction must (eventually) be subtracted from something other than the amount advanced. That 'something' was the wage the

1    employee would have earned *from the accrual of other sales*. Defendants' argument that it took the

2    deductions from monies that were advances at the time of the deduction is an unpersuasive in light of the

3    fact that California law does not allow employers to shield deductions under the rubric of advances. Cal.

4    Lab. Code § 223 ("Where any statute or contract requires an employer to maintain the designated wage

5    scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by

6    statute or by contract."); *Ralphs*, 42 Cal. 4th at 238, n. 11 (observing that where cash and merchandise

7    losses were assessed against expected wages, "[t]he order in which calculations were performed to

8    achieve that prohibited result was irrelevant."); *Sciborski v. Pac. Bell Directory*, 205 Cal. App. 4th 1152,

9    1168 (2012) ("[A]n employer may not require an employee to agree to a wage deduction in the guise of

10   recouping an advance based on conditions that are unrelated to the sale and/or that merely reflect the

11   employer's attempt to shift the cost of doing business to an employee."). Defendants' policy, therefore,

12   necessarily resulted in deductions from wages.

13          In California, "the Legislature has recognized the employee's dependence on wages for the

14   necessities of life and has, consequently, disapproved of unanticipated or unpredictable deductions

15   because they impose a special hardship on employees." *Hudgins*, 34 Cal. App. at 1119. Similarly,

16   California appellate courts have found that the employee bond laws expressed in sections 400 to 410 of

17   the Labor Code dictate a public policy prohibiting an employer from subjecting an employee's

18   compensation "to unanticipated or undetermined deductions." *Quillian v. Lion Oil Co*., 96 Cal. App. 3d

19   156, 163 (1979); *see also Kerr's Catering Serv. v. Dep't of Indus. Relations,* 57 Cal. 2d 319, 328 (1962).

20   The California Supreme Court's most recent opinion on this topic holds that "sections 221 through 224,

21   in combination with other statutes, establish a public policy against *any* deductions, setoffs, or

22   recoupments by an employer from employee wages or earnings, except those deductions specifically

23   authorized by statute." *Ralphs*, 42 Cal. 4th at 241 (2007) (*citing Phillips v. Gemini Moving Specialists*

24   63 Cal.App.4th 563, 574 (1998)). Defendants do not argue that the deductions in this case are permitted

25

1   by any of exceptions identified in section 224 (or any other statute).[22] Nor do they offer any other basis

2   from which this Court might conclude that the California Supreme Court would uphold a deduction

3   policy that allows an employer to recover a greater sum than was advanced for a sale as a punitive or

4   remedial measure (short of an employee's dishonest actions or gross negligence[23]). In contrast,

5   California authorities have long prohibited employers from deducting costs from an employee's wages

6   "for cash shortages, breakage, loss of equipment, and other business losses that may result from the

7   employee's simple negligence." *Hudgins*, 34 Cal. App. 4th at 1118 (collecting cases). Accordingly, one

8   appeals court that considered the issue found that such an activity is categorically improper. *Stopol v.*

9   *PSS World Med., Inc.*, No. B143118, 2002 WL 192756, at *5 (Cal. Ct. App. Feb. 7, 2002) (finding that

10  trial court should have issued jury instruction describing that a practice of "deducting from the

11  salesperson's paycheck more than the advanced commission on the sale" was "improper.").[24] Because

12  Defendants' policy necessarily deducted money from employees' wages for business losses, it could not

13  comply with California law even if Class members agreed to such a condition in writing. *Quillian*, 96

14  Cal. App. 3d at 163 ("Where a contract has several distinct objects of which one at least is lawful, and

15  one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest.")

16  (quoting Cal. Civ. Code § 1599); (*Aguilar v. Zep Inc.*, No. 13-CV-00563-WHO, 2014 WL 4245988, at

17  *16 (N.D. Cal. Aug. 27, 2014) ("Even if a contract exists, however, an employer cannot shift the cost of

18  doing business to an employee . . .")). Thus, this Court finds that the policy identified in Defendants'

---

[22] Section 224 allows for deductions "when a deduction is expressly authorized in writing by the employee to cover insurance premiums, hospital or medical dues, or other deductions not amounting to a rebate or deduction from the standard wage . . ." Such deductions must be for the direct benefit of the employee, not the employer. *City of Oakland v. Hassey*, 163 Cal. App. 4th 1477, 1501 (2008), as modified (July 17, 2008).

[23] Industrial Welfare Commission ("IWC") Wage Order § 8 suggests that sums might be recoverable from an employee if it can be shown that a cash shortage, breakage or loss of equipment was caused by a "dishonest or willful act, or by the gross negligence of the employee." The Division of Labor Standards Enforcement's (DLSE's) manual, however, suggests that deductions taken for even this reason may not square with the law. DLSE Manual 11.2.4 (noting that the IWC Orders "purport to provide the employer the right to deduct for losses suffered as a result of dishonest or willful act," but also that "Labor Code § 224 clearly proscribes any deduction which is not either authorized by the employee in writing or permitted by law." Regardless, Defendants do not argue that they applied deductions to class members because of such willful misconduct.

[24] While *Stopol* is unpublished, the Court may rely on it as persuasive authority illustrating how California courts apply the law. *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098, 1117 (9th Cir. 2015) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value.") (internal quotations omitted).

1  2007 and 2010 manuals does not comply with California law. Because there is no genuine dispute that

2  Defendants did deduct money from class members' paychecks according to this policy, Plaintiff is

3  entitled to summary judgment as to liability for the Deductions class for the period between December

4  13, 2007 and December 30, 2012.[25] Conversely, the Court DENIES Defendant's motion for summary

5  judgment as to this time period.

6  **D.    Waiting Time Penalties**

7       Plaintiff's third cause of action alleges that Defendants are liable to Deductions Class members

8  because they deducted money from their paychecks at termination for unlawful purposes. FAC ¶¶ 87-89.

9  Specifically, Plaintiffs allege that Defendants deducted sums from their final payments to account for

10  customers' failure and tardiness to pay and for "minor mistakes in recording sales orders." *Id.* ¶ 89.

11  Defendants, but not Plaintiff, move for summary judgment on this claim.

12       While Defendants do not dispute they deducted amounts from employees' paychecks at

13  separation, they maintain that these amounts are only deducted from advances as opposed to wages.

14  DMSJ at 33. Accordingly, Defendants claim that Plaintiff must show that "cumulative deductions during

15  the class period exceeded the unaccrued advances that Synthes paid through the separation date." *Id.* As

16  discussed above, the Court has found that this "rolling bank" approach necessarily dips into wages

17  because deductions can eclipse the amount an employee is advanced (and ultimately earn) for a

18  particular sale. At the point where an employee separates from the company, the situation changes

19  slightly because the final paycheck includes commissions which may or may not eventually accrue into

20  earned wages. Under California law, in the absence of a governing contractual agreement, an employee

21  is entitled to commissions that he has earned, even if they have not vested at the time of his departure.

22  *Schachter v. Citigroup, Inc.*, 47 Cal. 4th 610, 622 (2009) ("He who shakes the tree is the one to gather

23  the fruit."). Thus, under California's default approach, any deductions taken from a final paycheck

24

25  [25] Because the Court has ruled in Plaintiff's favor, it need not reach Plaintiff's alternative arguments (that Defendants' deduction policy was unconscionable or that Defendants waived their rights to enforce such a policy). Pl.'s Opp'n at 26-28.

would be suspect.

Defendants argue that the default rule does not apply because the 2007 and 2010 policy manuals functioned as contracts on the issue. DMSJ at 32-33. They argue that the manuals clearly stated that employees could not accrue commissions after their separation date. DMSJ at 32. Therefore, Defendants argue, employees "do not have any right to advances that accrue after termination." *Id.* Plaintiff both denies the force of the policy manuals as contracts and disagrees that the manuals preclude the right to accrue commissions after separation. For the sake of evaluating this argument, the Court will assume without finding that the policy manuals function as contractual agreements. The statement at issue provides that "if a Sales Consultant's employment is terminated for any reason, and his/her commissions do not accrue for any of the reasons specified . . . the Sales Consultant is responsible for the return of the advance to the Company." PDSUF #269. The Court agrees with Plaintiff that Defendants' interpretation of their policy language - essentially that employees forfeit their rights to earned income at separation – could be determined to be unreasonable by a trier of fact. The statement gives no reason for an employee to believe that he may be relinquishing any rights to advances or earned income at separation. Rather, it seems only to reserve Defendants' right to seek reimbursement for sums that were advanced but never accrued. Thus, the Court cannot find that employees were not entitled to amounts that may have been considered advances in their final paychecks. Accordingly, the Court does not agree with Defendants' theory that Plaintiff must show that "cumulative deductions during the class period exceeded the unaccrued advances that Synthes paid through the separation date" to survive their motion for summary judgment. Thus, the Court DENIES Defendants' motion for summary judgment as to Plaintiff's third cause of action.

**E.      Defendants' Other Claims**

Defendants argue that they are entitled to summary judgment on Plaintiff's derivative PAGA and UCL claims if they are also awarded summary judgment as to Plaintiff's first three causes of action. DMSJ at 35. Because the Court has only granted a limited part of Defendants' motion, this argument is

28

1   unavailing. The Court therefore DENIES Defendants' motion as to Plaintiff's fourth and fifth causes of

2   action.

3   ## VII. CONCLUSION AND ORDER

4   The Court GRANTS IN PART and DENIES IN PART Plaintiff's and Defendants' motions for

5   summary judgment, Docs. 207 and 212, as follows:

6   The Court DENIES Plaintiff's motion for summary judgment as to the expense class for the

7   period between December 13, 2007 to December 30, 2012, as well as Defendants' motion for the period

8   between December 13, 2007 to September 2012.

9   The Court GRANTS Defendants' motion for summary judgment as to Plaintiff's expense class

10  claims for the period between January 2013 to the present.

11  The Court DENIES Defendants' motion for summary judgment as to its first counterclaim.

12  The Court GRANTS Plaintiff's motion for summary judgment as to Defendants' liability to

13  Deduction Class members pursuant to his second cause of action, for the period between December 13,

14  2007 and December 30, 2012. The Court DENIES Defendants' motion for summary judgment as to this

15  same issue.

16  The Court DENIES Defendants' motion for summary judgment as to Plaintiff's third, fourth

17  and fifth causes of action.

18  **IT IS SO ORDERED**
    **Dated: January 6, 2016**

19                                              **/s/ Lawrence J. O'Neill**
                                            **United States District Judge**

20

21

22

23

24

25

29