1

2

3                              **UNITED STATES DISTRICT COURT**

4                       **FOR THE EASTERN DISTRICT OF CALIFORNIA**

5

6  **TROY M. LINDELL, ON BEHALF OF**              **1:11-cv-02053 LJO BAM**
   **HIMSELF AND OTHERS SIMILARLY**
7  **SITUATED,**                                  **MEMORANDUM DECISION AND**
                                                   **ORDER RE: DEFENDANTS' MOTION**
8                    **Plaintiff,**               **TO DECERTIFY THE EXPENSE**
                                                   **CLASS AND THE DEDUCTION CLASS**
9                    **v.**                        **(Doc. 209)**

10 **SYNTHES USA, SYNTHES USA SALES LLC,**
   **SYNTHES SPINE COMPANY, LP,**
11
                     **Defendant.**
12

13          **I. <u>PRELIMINARY STATEMENT TO PARTIES AND COUNSEL</u>**

14         Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this

15 Court is unable to devote inordinate time and resources to individual cases and matters. Given the

16 shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters

17 necessary to reach the decision in this order. The parties and counsel are encouraged to contact the

18 offices of United States Senators Feinstein and Boxer to address this Court's inability to accommodate

19 the parties and this action. The parties are required to reconsider consent to conduct all further

20 proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to

21 parties than that of U.S. District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil

22 cases.

23         Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension

24 mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Judge O'Neill

25 is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and

                                                  1

1   without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as

2   visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a

3   U.S. District Judge either from inside or from outside the Eastern District of California.

## II. INTRODUCTION

5   Plaintiff Troy M. Lindell was employed as a sales consultant for Defendants Synthes USA,

6   Synthes USA Sales, and Synthes Spine Company (collectively "Synthes Companies") and was

7   responsible for certain territories in California. He argues, on behalf of himself and other similarly

8   situated class members, that Defendants' employment practices violate several California Labor Codes.

## III. PROCEDURAL HISTORY

10   Plaintiff filed this class action lawsuit on December 13, 2011. Compl., Doc. 1. An amended

11   complaint was filed on February 27, 2012.[1] First Am. Compl. ("FAC"), Doc. 24. Plaintiff argues that (a)

12   Defendants do not reimburse certain employees for business expenses as required by Cal. Labor Code §

13   2802, (b) took unlawful deductions in violation of Cal. Labor Code §§ 221, 223 & 300, (c) willfully

14   failed to pay employees upon discharge in violation of Cal. Labor Code §§ 201- 203, and (d) engaged in

15   unfair competition in violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof.

16   Code §§ 17200 -210. *Id.* ¶¶ 72, 82, 88, & 95. Plaintiff also seeks to recover under California's Private

17   Attorney General Act ("PAGA"), Cal. Labor Code §§ 2698-2699.5, for violations of Labor Code

18   Sections 201-203, 221, 223, 300 and 2804. *Id.* ¶¶ 101-130. Plaintiff assets that this Court has subject

19   matter jurisdiction based on the class action nature of the case and the parties' diversity of citizenship.

20   28 U.S.C. § 1332.

21   On September 20, 2013, Plaintiff moved to certify two classes. Doc. 87. One class (the "Expense

22   Class") includes employee sales consultants from Defendants' Trauma and Spine Divisions who were

23   subject to a straight commission policy, as well as employee sales consultants in its Craniomaxillofacial

24

25   [1] The original and first amended complaint identified two plaintiffs, but the second named plaintiff was dismissed pursuant to the parties' stipulation on June 18, 2012. Doc. 50.

1   ("CMF") Division, who received a higher level of commission. *Id.* at 2. Plaintiff claims that Defendant

2   had a policy of not reimbursing these employees for business expenses. *Id.* The other class (the

3   "Deduction Class") includes "all former, current, and future Sales Consultants" employed by Defendants

4   for the time period beginning December 13, 2007 through the date of the final disposition of this

5   lawsuit. *Id.* Plaintiff claims that Defendants deducted money from these employees' paychecks and

6   failed to pay them in full when their employment was terminated. FAC ¶¶ 83, 90. On March 4, 2014,

7   Magistrate Judge Barbara A. McAuliffe issued Findings and Recommendations ("F & R's"), Doc. 139,

8   recommending that the Court grant Plaintiff's motion. After reviewing Defendants' objections to the F

9   & R's, Doc. 140, this Court adopted them in full and certified both classes. Doc. 149. Shortly thereafter,

10  Defendant applied to Ninth Circuit for permission to appeal this order. Doc. 150. This request was

11  denied on August 22, 2014. Doc. 161.

12       Now before the Court is Defendants' Motion to Decertify the two classes. Def.'s Mot. to

13  Decertify ("MTD"), Doc. 209.[2] Plaintiff filed an Opposition on October 21, 2015. Pl.'s Opp'n to Def.'s

14  Mot. to Decertify the Classes ("Opposition"), Doc. 219. Defendant replied on November 20, 2015.

15  Reply in Supp. of Def.'s Mot. to Decertify ("Reply"), Doc. 226. The hearing set for the motion was

16  vacated on November 23, 1015 pursuant to L. R. 230(g). Doc. 230.

17  ### IV. <u>RULING ON OBJECTIONS</u>

18       Plaintiff filed voluminous objections related to exhibits filed along with the MTD and

19  Defendants' briefings on summary judgment. Doc. 221. Since a motion to certify a class is a preliminary

20  procedure, courts do not require strict adherence to the Federal Rules of Evidence. *Eisen v. Carlisle and*

21  *Jacquelin*, 417 U.S. 156, 178 (1974) (The class certification procedure "is not accompanied by the

22  traditional rules and procedures applicable to civil trials."). At the class certification stage, "the court

23

24  ---

25  [2] Parties filed cross motions for summary judgment on the same day that Defendant filed the MTD. Obviously, the parties did not have the benefit of the Court's findings as to those motions at the time the MTD was briefed. Thus, the Court's analysis reflects the procedural posture of the case at the time the MTD was filed.

1  makes no findings of fact and announces no ultimate conclusions on Plaintiffs' claims." *Arredondo v.*

2  *Delano Farms Co.,* 301 F.R.D. 493, 505 (E.D. Cal. 2014) (internal quotations omitted). Therefore, the

3  Court may consider inadmissible evidence at this stage. *Keilholtz v. Lennox Hearth Prods., Inc.*, 268

4  F.R.D. 330, 337 n. 3 (N.D. Cal. 2010). "The court need not address the ultimate admissibility of the

5  parties' proffered exhibits, documents and testimony at this stage, and may consider them where

6  necessary for resolution of the [Motion for Class Certification]." *Alonzo v. Maximus, Inc.*, 275 F.R.D.

7  513, 519 (C.D. Cal. 2011); *Waine-Golston v. Time Warner Entm't-Advance/New House P'ship*, No.

8  11CV1057-GPB RBB, 2012 WL 6591610, at *9 (S.D. Cal. Dec. 18, 2012). The Court finds that the

9  same evidentiary concerns apply to decertification motions. Accordingly, the Court overrules Plaintiffs'

10  evidentiary objections. It shall review all the evidence presented, whether admissible for all purposes or

11  not.

12  ### V. FACTUAL BACKGROUND[3]

13      The Synthes Companies design, manufacture, market, and distribute implants and instruments

14  for surgery. Pl.'s Objections to Defs.' Supplemental Statement of Undisputed Facts ("PDSUF"), Doc.

15  220, #2. Defendants have a number of operating divisions, including the three divisions at issue in this

16  case: Trauma, Spine, and CMF. *Id.* #12. Prior to 1990, Defendants hired sales consultants on an

17  independent contract basis. *Id.* #26. In 1990, Defendants offered to employ their sales consultants

18  directly. *Id.* #28.

19      Sales consultants in the Trauma, Spine, and CMF divisions generally begin their employment

20  under a compensation plan that includes at least $35,000 annual salary, a 4% or 8% commission rate, a

21  $450 to $500 monthly car allowance, and a $900 to $1000 monthly allowance for direct reimbursement

22  for in-territory business expenses. PDSUF #45, 161, 202. Employees making more than $600,000 to

23

24

25

---

[3] There is substantial overlap between the parties' briefs regarding the MTD and their cross-motions for summary judgment. In evaluating the MTD, the Court relies on all the record evidence, setting forth the undisputed facts and noting disagreements of fact that are relevant to this decision.

1   $700,000 annually in sales are offered the option to convert to a "straight commission plan." *Id.* #46,

2   204. Under this plan, Trauma and Spine employees earn a commission of 12.5%. Defs.' Resp. and

3   Objections to Pl.'s Separate Statement of Undisputed Material Facts ("DPSUF"), Doc. 218-1 #10.

4   Straight commission employees in the CMF division earn a base salary of $30,000 as well as a

5   commission rate of 12.5%. PDSUF #203. Commissions are paid monthly on a net basis. PDSUF #262.

6   Plaintiff characterizes commissions as ranging from "approximately 2% to 12.5% of the net sales price

7   of an item." DPSUF #58. However, and as Defendants point out, the evidence relied upon by both

8   parties indicates that the minimum commission rate is 4%. *Id.* (quoting Synthes' 2007 and  2010 Sales

9   Policies ("2007 Policy" & "2010 Policy"), Ex. 6, Doc. 214-6; Ex. 8, Doc. 214-8.[4]

10        Whether and how Defendants reimburse straight-commission employees for business expenses is

11   a central issue in this case. Plaintiff claims that the Defendants have a policy under which these

12   employees are "not eligible for an automobile allowance or in-territory business expense

13   reimbursements." DPSUF #10-11, 48. In support of this argument, Plaintiff points to 2007 and 2010

14   corporate policy documents that state, "[f]ield employees who are on straight (or full) commission will

15   not be reimbursed for their expenses while they are in-territory." *Id.* # 21 (citing Synthes' 2010 Travel

16   and Expense Policy ("2010 TE Policy"), Ex. 13, Doc. 214-13 at 6. Defendants claim that under the

17   straight commission plan, the enhanced commission rate was "designed to include and indemnify all of

18   the elements of the base plan, including the full allowances for regular in-territory car and business

19   expenses." DPSUF #10-11. In support of this argument, Defendants point to the deposition testimony of

20   their Fed. R. Civ. P. 30(b)(6) ("30(b)(6)") corporate representative witness, who states that the

21   reimbursement methodology for straight-compensation employees is that "their expenses are covered

22   within that enhanced commission rate." Dep. of Jacqueline Meister ("Meister Dep."), Doc. 209-4 at 135;

23   CR 434.

24   _____

25   [4] These policies are duplicated elsewhere in the record.  For clarity, the Court will cite to the relevant record location relied
upon by the parties in their arguments.

1    Under Defendants' compensation plans, sales consultants earn commissions upon completion of

2  a sale. DPSUF # 56; PDSUF #261. Payment is disbursed once an invoice is received, however the

3  money is considered an advance until payment is received from the customer. DPSUF #57.

4    Defendants' internal policies allow it to take at two primary types of deductions from a sales

5  consultant's paycheck. PDSUF # 291. These deductions are up to 50% of a product's list price. DPSUF

6  # 59; PDSUF # 289 Customer service, or "PPOR," deductions are authorized in certain circumstances

7  where a product is shipped without a customer purchase order and the Sales Consultant fails to timely

8  obtain the purchase order. PDSUF # 292. Accounts receivable, or "PINVR," deductions are authorized

9  in certain circumstances where a sales consultant (a) fails to provide proof of delivery for a product, (b)

10  fails to provide a valid purchase order for a product, or (c) fails to provide proof that a product was

11  returned to Defendants. PDSUF # 293.  Several class members testified that Defendants took such

12  deductions taken from their paychecks. DPSUF #60. Defendant argues that because deductions were

13  only applied to advances on wages, they cannot be considered deductions from actual wages. *Id.*

14  ### VI. STANDARD OF DECISION

15    A class may be certified only if: (1) the class is so numerous that joinder of all members is

16  impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of

17  the representative parties are typical of the claims or defenses of the class; and (4) the representative

18  parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). These

19  requirements are commonly referred to as the numerosity, commonality, typicality, and adequacy

20  requirements. *Norris–Wilson v. Delta–T Group, Inc.,* 270 F.R.D. 596, 601 (S.D. Cal. 2010). Plaintiff

21  bears the burden of establishing that all four requirements of Rule 23(a) are met. *Zinser v. Accufix*

22  *Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

23    In addition to the requirements imposed by Rule 23(a), Plaintiff bears the burden of

24  demonstrating that the class is maintainable pursuant to Rule 23(b). *Narouz v. Charter Commc'ns, LLC*,

25  591 F.3d 1261, 1266 (9th Cir. 2010). In this case, Plaintiff seeks certification of the Class under Rule

1    23(b)(3). To certify a class under Rule 23(b)(3), Plaintiff must demonstrate: (1) "questions of law or fact

2    common to the members of the class predominate over any questions affecting only individual

3    members" ("predominance") and (2) a class action is "superior to other available methods for the fair

4    and efficient adjudication of the controversy" ("superiority"). Fed. R. Civ. P. 23(b)(3).

5    A class certification order "may be altered or amended before final judgment." Fed. R. Civ. P.

6    23(c)(1)(C). On a motion to decertify a class, the Ninth Circuit rule is that the party resisting the motion

7    bears the burden of showing that the motion should not be granted. *Marlo v. United Parcel Service, Inc.*,

8    639 F.3d 942, 947 (9th Cir. 2011). The resisting party meets this burden by showing that class

9    certification is still warranted. *Id*.

10   **VII. ANALYSIS**

11   Defendants argue that both classes should be decertified because they do not meet the

12   commonality, superiority or predominance requirements of Rule 23. They also argue that the Expense

13   Class is overbroad.

14   **A.     Commonality**

15   **1.     As to the Expense Class**

16   This Court certified the Expense Class based on Plaintiff's allegation that Defendants had a

17   policy of failing to reimburse class members for necessary business expenses. *See* F &R's at 5-11.

18   Defendants now argue that this class should be decertified because the evidentiary record does not

19   support Plaintiff's claim that they had an unlawful policy. MTD at 15-17; Reply at 3-7. Defendants also

20   assert that Plaintiff's claim would require a "highly individualized inquiry" to address liability as to each

21   class member. *Id.* at 17-20.

22   Defendants argue that the "full record confirms that Synthes ***does not*** have any unlawful 'express

23   policy of failing to provide expense reimbursement' to straight commission SCs and ***has never had any***

24   ***such policy at any time during the class period.***" MTD at 15 (emphasis in original). In support of this

25   argument, Defendants point to the testimony of its own executives, in which they explain that certain

7

1   employees are paid on a straight commission basis in a manner that is supposed to indemnify them for

2   their business expenses. *Id*. Thus, the Court construes Defendants' argument as being that this policy is

3   lawful.

4          Defendants have made this argument before; first in opposition to Plaintiff's Motion to Certify

5   and then as an objection to magistrate judge's findings and recommendations. As Magistrate Judge

6   McAuliffe explained (and this Court adopted), the existence of this question tends to *support*

7   certification:

8                  At the very core of this case is the undisputed fact that Synthes does not
                   separately reimburse the necessary business expenses of Expense Class
9                  members. On its face, this fact alone could create across-the-board liability
                   under Section 2802. However, Synthes presents a uniform defense that
10                 applies to each and every Expense Class member: Synthes does not
                   separately reimburse Expense Class members' business expenses because
11                 those expenses are covered through an enhanced commission permitted by
                   *Gattuso*.

12  F & R's at 7.

13         Defendants present new evidence that they communicated to employees that the enhanced

14  commission rate indemnifies class members "at the same allowances offered for direct reimbursement"

15  as its other employees. MTD at 16. They go on to argue that this evidence overwhelms Plaintiff's

16  "unsupported allegation" that Defendants have a different policy of failing to provide expense

17  reimbursement." *Id.* at 17. This argument is unpersuasive in light of the documentary evidence Plaintiff

18  provided in support of its motion for certification in the form of company manuals and other

19  publications. For example, Plaintiff presented versions of their Sales Policy Manual that state: "Sales

20  Consultants who convert to straight commission are not eligible for an automobile allowance or in-

21  territory business expense reimbursements." Doc. 89-2 at 3; Doc. 89-3 at 54. When determining class

22  certification a district court "is required to examine the merits of the underlying claim in this context,

23  only inasmuch as it must determine whether common questions exist; not to determine whether class

24  members could actually prevail on the merits of their claims." *Ellis v. Costco Wholesale Corp*., 657 F.3d

25

1   970, 983 n. 8 (9th Cir. 2011). Evidence presented by Plaintiff (and Defendants) shows that *the question*

2   of whether Defendants had a policy of failing to reimburse is an issue common to all class members.

3   The merits of the issue are not properly before the Court at this time. Defendants' continued reliance on

4   a common defense (that it did in fact reimburse through higher commission rates) is further evidence

5   that this issue is properly resolved on a class wide basis. Opposition at 10.

6        Defendants also argue that the Expense Class should be decertified because the Court will need

7   to conduct a "highly individualized inquiry" as it is liability to each class member. MTD at 17-18. In

8   support of this argument, Defendants point to two cases in which district courts declined to certify

9   classes bringing actions under Section 2802. *Id.* These cases are distinct from the one at bar. The

10  putative class members in these cases challenged whether business reimbursement amounts were

11  *sufficient* to reimburse them for their expenses. *Ortiz v. CVS Caremark Corp.*, No. C-12-05859 EDL,

12  2013 WL 6236743, at *12 (N.D. Cal. Dec. 2, 2013) (". . .any challenge to Defendant' mileage

13  reimbursement method would require Plaintiff to show that the mileage reimbursement was less than

14  class members' actual expenses."); *Ruiz v. Affinity Logistics Corp.*, No. 05CV2125JLS (CAB), 2009

15  WL 648973, at *8 (S.D. Cal. Jan. 29, 2009) (" . . . the determination of whether the reimbursement

16  amount was sufficient would require the Court to delve into five factual scenarios, if not more."). As the

17  magistrate judge pointed out, the issue in this case is not whether reimbursement amounts were

18  sufficient, but whether Defendants provided *any* expense reimbursement or indemnification. F & R's at

19  10-11; Compl. ¶ 50 ("Synthes has failed to indemnify or in any manner reimburse Plaintiff and similarly

20  situated Class Members for these expenditures and losses, all of which constitute necessary and actually

21  incurred business expenses."). The answer as to whether Synthes' higher commission rates indemnified

22  employees for expenses will be the same for all members of the Expense Class. No individualized

23  inquiry is needed to resolve this question. Therefore, the certification of the Expense Class is proper.

24      **2.**      **As to the Deduction Class**

25      This Court certified the Deduction Class based on Plaintiff's allegation that Defendants have a

1   policy of unlawfully deducting monies from its employees' commissions. *See* F & R's at 15. Plaintiff

2   argues the amount of and the instances in which Defendants take deductions are beyond the Deduction

3   Class members' control and unlawful under California law. FAC ¶¶ 53-55. Defendants now argue that

4   the class should be decertified because there is no evidence that they *actually* had a policy of

5   withholding wages. MTD at 22. This argument is unpersuasive in light of the undisputed fact that their

6   2007 and 2010 sales manuals provide that certain activities outside of an employee's control may result

7   in deductions of up to 50% of a product's list price, while an employee may only earn up to 12% of

8   product's list price as commission. PDSUF  #287. Plaintiff also presented the deposition of Defendants'

9   corporate representative, who testified that this written policy was in effect from 2007-2010. Ex. 5 at 38-

10  39. Such a policy might violate Section 2802's prohibition of passing the costs of doing business to

11  employee under the guise of a sales commission deduction. *Sciborski v. Pac. Bell Directory*, 205 Cal.

12  App. 4th 1152, 1171 (2012) (finding that deductions from sales commissions are permitted only if they

13  relate to the condition of the sale and not "merely serve as a basis to shift the employer's cost of doing

14  business to the employee."). Whether this is *actually* the case can be determined at summary judgment

15  or trial. *See* F & R's at 18.[5] But the question is one that is common to the class as a whole and thus

16  supports certification. *Id.*

17          Defendants also argue that there is no evidence that they actually deducted any wages from class

18  members' commissions. MTD at 20. This argument is premised on the assertion that Defendants only

19  took deductions from unaccrued advances, as opposed to earned commissions. *Id.* This is a legal

20  argument that is common to all class members because whether the policy is unlawful is a "common

21  answer" that is apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct.

22  2541, 2551 (2011) (internal quotations omitted).  It is, therefore, further evidence that certification is

23  proper.

24  _____

25  [5] This issue is addressed by the Court in its order addressing the parties' cross-motions for summary judgment, filed concurrently with this one.

**B.      Superiority**

Defendants argue that both classes should be decertified because the Plaintiff has not submitted a viable trial plan for either the expense or deduction claims. MTD at 22; Reply at 7-9. A feasible trial plan is one factor a district court must consider in deciding whether a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[W]hen the complexities of class action treatment outweigh the benefits of considering common issues in one trial, class action treatment is not the 'superior' method of adjudication. *Zinser*, 253 F.3d at 1192.

**1.      As to the Expense Class**

Defendants argue that the Expense Class should be decertified because the case will require individualized inquiry to determine liability under Section 2802. MTD at 23. As discussed above, no individualized inquiry is needed to resolve the question of whether Defendants' higher commission rates indemnified employees for expenses. Under Plaintiff's theory, the answer (at least as to liability) will be the same for all members of the Expense Class. Defendants also argue that class members have produced relatively little evidence that they actually incurred business expenses. *Id.* For example, Defendants claim that they were only provided with tax information for ten members and credit card receipts for three, out of a class of two hundred. PDSUF #257-258. Plaintiff claims that such information is only relevant to the issue of damages, not liability because its claim rests entirely on its theory that it can establish that Defendants had policy that did not comply with state law. Opposition at 11. Consistent with this argument, Plaintiff has moved for summary judgment as to liability on this issue. The Court believes class certification continues to be a proper way to handle the litigation at this phase in the litigation. While resolution of the cross-motions for summary judgment may change this analysis, that issue is for another day.

**2.      As to the Deductions Class**

Defendants similarly argue that liability on the deductions issue will require analysis of individual payroll records of to verify whether deductions were actually taken from employees' wages.

1  MTD at 30; Reply at 8-10. As discussed above, the Court finds that Plaintiff has produced evidence

2  sufficient to show that Defendants operated under a policy that applied to the class as a whole.

3  **C.**     **Predominance**

4         Defendants argue that the evidentiary record confirms that individual issues predominate in this

5  case. MTD at 33. They point to the testimony of two class members from each class to support its

6  argument that the actual expenses and deductions each incurred is likely to vary greatly between class

7  members. MTD at 33-34. As Plaintiff points out, this argument pertains to damages; not liability. The

8  Ninth Circuit " . . . long ago observed that 'the amount of damages is invariably an individual question

9  and does not defeat class action treatment." *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087,

10  1089 (9th Cir. 2010) (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)). For the purpose of

11  evaluating Defendants' liability for Plaintiff's claims, class issues predominate.

12  **D.**     **Overbreadth**

13         The Expense Class is currently certified for the period extending from December 13, 2007

14  through "the date of final disposition" of this litigation. F & R Order, Doc. 149 at 2. Defendants argue

15  that the class must close by December 31, 2012 for most members and no later than December 31, 2013

16  for employees who worked in the Spine Division because it had changed its policy and sales manuals by

17  that time. MTD at 34-35; Reply at 10. The crux of Defendant' argument is that it adopted policies in

18  2013 to comply with the newly enacted California Labor Code Section 2751. MTD at 35; PDSUF #93-

19  110, 183-85. It argues that these changes also ensured that it complied with Section 2802. Plaintiff,

20  however, disagrees that the new policies had this effect, saying that Defendants' actions continue to

21  violate Section 2802. Opposition to Defendant' Motion for Summary Judgment, Doc. 222.[6] This

22  argument, like the ones before it, deals with issues of liability rather than class certification. The Court

23  addresses this issue in its order resolving parties' cross-motions for summary judgment, filed

24  _____

25  [6] Plaintiff incorporates by reference arguments made in his Opposition to Defendants' Motion for Summary Judgment.

1   contemporaneously with this one. Parties are referred to section VII(A)(3) of that Order.

2                              **VIII. <u>CONCLUSION AND ORDER</u>**

3        For the reasons discussed above, the Court DENIES Defendants' Motion to Decertify the

4   Classes, Doc. 209.

5   **IT IS SO ORDERED**
    **Dated: January 6, 2016**

6                                             **/s/ Lawrence J. O'Neill**
                                              **United States District Judge**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25