Todd F. Jackson (SBN 202598)
Catha Worthman (SBN 230399)
Darin Ranahan (SBN 273532)
FEINBERG, JACKSON,
WORTHMAN & WASOW LLP
383 4th Street, Suite 201
Oakland, CA 94607
Telephone: (510) 269-7998
todd@feinbergjackson.com
catha@feinbergjackson.com
darin@feinbergjackson.com

Charles Trudrung Taylor (SBN 127105)
Ana de Alba (SBN 253917)
LANG, RICHERT & PATCH
Fig Garden Financial Center
5200 North Palm Avenue, Fourth Floor
Fresno, CA 93704
Telephone: (559) 228-6700
ctt@lrplaw.net
ada@lrplaw.net

*Counsel for Plaintiff and the Certified Classes*

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY M. LINDELL, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>SYNTHES USA, SYNTHES USA SALES LLC, SYNTHES SPINE COMPANY LP,<br><br>Defendants. | Case No. 1:11-CV-02053-LJO-BAM<br><br>**PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Court:** Hon. Barbara A. McAuliffe<br>**Courtroom:** 8<br>**Date:** September 2, 2016<br>**Time:** 9:00 a.m. |

1

**NOTICE OF MOTION AND MOTION**

2   TO DEFENDANTS SYNTHES USA, SYNTHES USA SALES LLC, AND SYNTHES SPINE

3   COMPANY LP, AS WELL AS THEIR COUNSEL OF RECORD AND ALL OTHER

4   INTERESTED PARTIES:

5        PLEASE TAKE NOTICE THAT on September 2, 2016, at 8:30 a.m., in Department 4 on

6   the 7th floor of this Court located at 2500 Tulare Street, Fresno, CA 93721, Plaintiff Troy Lindell

7   ("Plaintiff") will move and hereby moves the Court for an order granting the following relief:

8      (1)    Preliminarily approving the Parties' proposed class action settlement as non-

9              collusive and within the range of possible settlement approval.

10     (2)    Directing notice of the proposed settlement and the Fairness Hearing to Class

11             Members pursuant to Federal Rule of Civil Procedure 23(c)(2)(B) and 23(e)(1).

12     (3)    Implementing the plan for directing notice to the Class Members on the terms set

13             forth in the Settlement, and setting forth the dates or deadlines for opting out and

14             objecting and for the Parties and the Settlement Administrator to perform the

15             required acts relating to the notice process as provided in the Settlement.

16     (4)    Amending the class definition to end at a date certain.

17     (5)    Setting a final Fairness Hearing for December 16, 2016, or the earliest available

18             date thereafter, to (a) determine whether the proposed settlement should be

19             approved as a fair, reasonable, and adequate settlement of the claims encompassed

20             by the settlement; (b) to determine whether to grant Class Counsel's motion for

21             attorney's fees and reimbursement of costs and expenses; and (c) to determine

22             whether to grant Plaintiff's application for a service award.

23     (6)    Appointing Settlement Services, Inc. as the Settlement Administrator.

24       This Motion is based on the Parties' Settlement Agreement (attached as Exhibit 1 to the

25   Declaration of Catha Worthman filed herewith), the Declaration of Catha Worthman, the

26   Declaration of Charles Trudrung Taylor, the Proposed Order filed herewith, the other records and

27

28

---

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL
- i -

1   pleadings filed in this action, and such other documentary and oral evidence or argument as may

2   be presented to the Court at the hearing of this Motion.

3

4    Dated: August 5, 2016                          Respectfully submitted,

5
                                                    By:  ___/s/ Catha Worthman___
6                                                          Catha Worthman

7                                                   FEINBERG, JACKSON, WORTHMAN &
                                                    WASOW LLP
8
                                                    *Counsel for Plaintiff and the Certified Classes*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## TABLE OF CONTENTS

3

Notice of Motion and Motion ................................................................. i

4

Memorandum of Points and Authorities ................................................ iii

5

Table of Contents ................................................................................. iii

6

Table of Authorities .............................................................................. v

7

I.     Introduction ................................................................................ 1

8

II.    Factual and Procedural History .................................................. 2

9

III.   Key Terms of the Proposed Settlement ...................................... 4

10

IV.    Preliminary Approval Is Warranted ........................................... 8

11

    A.    Legal Standard. ................................................................. 8

12

    B.    The Settlement Is the Product of Well-Informed, Arm's Length Negotiations with No Hint of Collusion. ............... 9

13

14

    C.    The Settlement Contains No "Obvious Deficiencies" nor Is There Improper Favorable Treatment for the Plaintiff or a Segment of the Class. .......................... 9

15

        1.    There Is No Premium to the Named Plaintiff. ............ 9

16

        2.    The Proposed Distribution Plan Is Fair. .................... 9

17

        3.    Class Members Are Not Required to Take Affirmative Acts for Payment. ................................. 10

18

19

        4.    The Release Is Fair, Reasonable, and Co-Extensive with the Complaint. . 11

20

        5.    The Settlement Provides a Substantial Economic Recovery. ................... 11

21

        6.    The Requested Attorney's Fee and Costs Are Fair and Reasonable. ......... 11

22

        7.    The Proposed Service Award Is Reasonable. ........... 12

23

        8.    The Overwhelming Majority of the Net Settlement Fund Will Be Distributed to Class Members, and the Cy Pres Recipient Is Appropriate. ........................... 13

24

25

        9.    The Settlement Is Well Within the Range of Possible Approval. ............. 14

26

            a.    The strength of Plaintiff's case and the risk, expense, complexity and likely duration of further litigation. ......................... 14

27

            b.    The Settlement amount and individual awards provide reasonable compensation for Class Members' damages. ................................. 15

28

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

- iii -

c. The extent of discovery completed. ................................................. 15

d. The experiences and views of counsel. ........................................... 16

V. The Court Should Approve the Notice to the Class Members ........................................... 16

VI. Amendment of the Class Definition Is Appropriate ......................................... 17

VII. The Court Should Set a Fairness Hearing ......................................................... 18

VIII. Conclusion ...................................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*Andrews Farms v. Calcot, Ltd.*, 268 F.R.D. 380 (E.D. Cal. 2010) .............................................17

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ...................................................................17

*Chiaramonte v. Pitney Bowes, Inc.*, No. 06-1507, 2008 WL 510765 (S.D. Cal. Feb. 25, 2008) ...................................................................................................................................14

*Churchill Village, LLC v. General Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)............................15

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)................................................8

*Clesceri v. City Beach Investigations & Protective Servs., Inc.*, No. 10-3873, 2011 WL 320998 (C.D. Cal. Jan. 27, 2011) ............................................................................13, 15

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998)........................................................................11

*Cordy v. USS-Posco Indus.*, No. 12-00553, 2014 WL 212587 (N.D. Cal. Jan. 17, 2014) ...................................................................................................................................13

*Davis v. Brown Shoe Co.*, No. 1:13-cv-01211-LJO-BAM, 2015 WL 6697929 (E.D. Cal. Nov. 3, 2015) ...........................................................................................8, 11, 13

*Dearaujo v. Regis Corp.*, Nos. 2:14-01408-KJM-AC; 2:14-cv-01411-KJM-AC, 2016 WL 354947 (E.D. Cal. June 30, 2016)........................................................................8, 9

*Eddings v. Health Net, Inc.*, No. 10-1744, 2013 WL 3013867 (C.D. Cal. June 13, 2013) ...................................................................................................................................13

*Garner v. State Farm Mut. Auto Ins. Co.*, No. 08-1365, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010).............................................................................................................8

*Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554 (2007) .............................................2, 3

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................................8

*In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630 (S.D. Cal. 2008)..............................17

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001) ............................................11

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) *cert. denied,* 134 S. Ct. 8 (2013) ..................................................................................................................................12

*Martens v. Smith Barney*, 1998 WL 1661385 (S.D.N.Y. July 28, 1998) and 181 F.R.D. 243, 262 (S.D.N.Y. 1998)..............................................................................11

*Misra v. Decision One Mortgage Co.*, No. 07-0994, 2009 WL 4581276 (C.D. Cal. Apr. 13, 2009) ...................................................................................................................16

*Morales v. Conopco, Inc.*, No. 2:13-2213 WBS EFB, 2016 WL 3688407 (E.D. Cal. Jul. 12, 2016) ....................................................................................................8, 14, 15

*Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615 (9th Cir. 1982)............................14

*Roberts v. Texaco*, 979 F. Supp. 185 (S.D.N.Y. 1997) ....................................12

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009)............................................13

*Singer v. Becton Dickinson & Co.*, No. 08-821, 2010 WL 2196104 (S.D. Cal. Jun. 1, 2010) ............................................11

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)......................................11, 12

*Stuart v. RadioShack Corp.*, No. 07-4499, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) ............................................11

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ......................................12

*Wright v. Linkus Enter., Inc.*, 259 F.R.D. 468 (E.D. Cal. 2009)....................................16

**STATUTES**

California Business & Professions Code §§ 17200 et seq. ........................................2, 7

California Civil Code § 1542 ............................................7

California Labor Code § 221............................................2, 7

California Labor Code § 223............................................2, 7

California Labor Code § 2802............................................2, 7

California Labor Code § 300............................................2, 7

California Labor Code §§ 201-03 ............................................2, 7

California Labor Code § 2698 *et seq.* ............................................2, 7

**OTHER AUTHORITIES**

Manual for Complex Litigation, Fourth............................................8

**RULES**

Federal Rule of Civil Procedure 23(a) ............................................17

Federal Rule of Civil Procedure 23(b) ............................................3, 15, 17

Federal Rule of Civil Procedure 23(c) ............................................15, 16, 17

Federal Rule of Civil Procedure 23(e) ............................................8, 17

## I.    INTRODUCTION

Plaintiff Troy Lindell seeks preliminary approval of a $5,000,000 non-reversionary settlement on behalf of the certified Expense and Deductions Classes.[1] After four and a half years of hard fought litigation, this settlement will resolve the Classes' claims against Defendant Synthes[2] under the California Labor Code, including claims for unpaid expense reimbursements, illegal deductions from earned wages, and associated penalties under the Private Attorneys General Act and waiting time penalties, all as specifically pleaded in the operative First Amended Complaint.

The $5 million non-reversionary settlement easily satisfies the standard that governs preliminary approval of a class action settlement, as it falls well within the range of reasonableness in light of the amounts at stake and the risks of potential further litigation and delay.

This case has been vigorously litigated, and the Parties continue to contest the issues at stake. In addition to extensive discovery, the Parties have engaged in substantial motion practice. This Court certified two classes in March 2014, and subsequently decided cross motions for summary judgment in January 2016, as well as a motion to decertify the classes. Plaintiff prevailed on a motion for summary judgment for the Deductions Class for an earlier part of the class period, and Synthes prevailed on a motion for summary judgment for the Expense Class for a later part of the class period. This left liability for other portions of the class period, as well as damages for the portion of the Deductions Class claims for which Plaintiff prevailed on summary judgment, to be determined at trial, with multiple legal and factual issues unresolved. Trial was set for October 2016. Although Plaintiff remains confident that he and the Classes would ultimately prevail, the outcomes of the remaining claims at trial were uncertain, as were the possible outcomes of any appeals. The parties could not agree on the appropriate course for trial,

---

[1] The Classes are defined according to the Court's order granting Plaintiff's motion for class certification (ECF No. 139, adopted by ECF No. 149), with the proposed modification for both Classes of an end date of July 14, 2016, the date the parties signed their Settlement Term Sheet. *See infra* §

[2] "Synthes" or "Defendant" refers collectively to Defendants Synthes USA, Synthes USA Sales LLC, and Synthes Spine Company LP.

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL
- 1 -

1  the appropriate methods for determining liability or damages, or the amounts of damages at issue,

2  particularly for the Expense Class.

3        Settlement was reached only after multiple sessions, phone calls, and emails with an

4  experienced mediator. In the view of Class Counsel, this settlement is a strong result for the

5  Classes in light of the risks, time, and expense of protracted litigation weighed against the

6  settlement's immediate and significant benefits. For this reason and as further discussed below,

7  the Court should grant preliminary approval, order notice to the Classes, and set a subsequent

8  fairness hearing to consider whether to grant final approval of the settlement as fair, reasonable,

9  and adequate, as well as whether to grant motions for attorneys' fees and for a service award.

10  **II.      FACTUAL AND PROCEDURAL HISTORY**

11        Plaintiff filed this Action on December 13, 2011. An original complaint and an amended

12  complaint were filed. *See* ECF Nos. 1, 24. Plaintiff's claims were brought on behalf of two

13  classes of Sales Consultants who worked for Synthes. On behalf of an Expense Class, Plaintiff

14  claimed that Synthes maintained an unlawful policy that failed to reimburse Sales Consultants as

15  required under California Labor Code § 2802, as interpreted in *Gattuso v. Harte-Hanks Shoppers,*

16  *Inc.*, 42 Cal. 4th 554 (2007). On behalf of a Deductions Class, Plaintiff claimed that Synthes

17  improperly deducted money from Sales Consultants' wages in violation of California Labor Code

18  §§ 221, 223, and 300. Plaintiff also brought claims for waiting time penalties under California

19  Labor Code §§ 201-03, for unfair business practices under the California Unfair Competition Law

20  ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and for penalties under the California Private

21  Attorney General Act ("PAGA"), Cal. Lab. Code §§ 2698 *et seq.*, that arise from the Labor Code

22  claims. The Court certified these classes on March 4, 2014, and on January 6, 2016, denied

23  Synthes' decertification motion and granted in part and denied in part the Parties' cross-motions

24  for summary judgment. *See* ECF Nos. 139, 149, 232, 233.

25        Throughout the case, Synthes has denied any liability or wrongdoing of any kind,

26  including but not limited to liability or wrongdoing that was alleged or could have been alleged in

27  Plaintiff's Complaint. Synthes contends they have complied at all times with the California Labor

28  Code, the UCL, and any other applicable California law. On March 29, 2012, Synthes filed an

1    answer, affirmative defenses, and counterclaims to Plaintiff's First Amended Complaint. ECF No.

2    30.[3] Synthes sought a declaratory judgment that its compensation policy for Sales Consultants

3    complied at all times with California law under *Gattuso*. In January 2013, Synthes changed its

4    compensation policies to explicitly state that a certain portion of Sales Consultants' compensation

5    was allocated to expenses and a certain portion was allocated to wages, as Plaintiff had contended

6    *Gattuso* requires. *See* Mem. Decision & Order re: Parties' Cross Mots. for Summ. J. ("MSJ

7    Order") 19-20, ECF No. 232. In addition, Synthes stopped taking the deductions Plaintiff

8    challenged during the course of this case, including ceasing to take customer service deductions

9    as of September 2013, and ceasing to take accounts receivable deductions after the Court granted

10   summary judgment on a portion of the deductions claims in January 2016. *See* MSJ Order 22;

11   Worthman Decl. ¶ 19.

12           The Parties engaged in substantial pre-resolution discovery, including voluminous written

13   discovery, numerous depositions, and expert discovery. Plaintiff served Synthes with seven sets

14   of requests for production, totaling 85 different requests, and five sets of interrogatories, totaling

15   27 different interrogatories. In response, Synthes produced 73,690 pages of documents, as well as

16   various native format spreadsheets, and answered the interrogatories. Synthes served Plaintiff

17   with two sets of requests for production, totaling 64 different requests, and two sets of

18   interrogatories, totaling 20 different interrogatories, all of which Plaintiff answered. Synthes also

19   served document requests and interrogatories on four different Class Members represented by

20   counsel for Plaintiff. Plaintiff took three different depositions pursuant to Federal Rule of Civil

21   Procedure 30(b)(6) and seven different depositions of current and former Synthes employees.

22   Synthes took the depositions of Plaintiff and four different Class Members. Lastly, Plaintiff

23   conducted document discovery and depositions for of Synthes' two expert witnesses, while

24   Synthes conducted document discovery and a deposition of Plaintiff's one expert witness.

25   Worthman Decl. ¶ 19.

26

27

28   _____

[3] Defendants' Amended Answer, Affirmative Defenses and Counterclaims, ECF No. 64, was
withdrawn. *See* Notice of Withdrawal, ECF No. 66.

1    The Parties participated in a mediation session with an experienced mediator, Michael

2    Dickstein, on October 30, 2015 and again on May 6, 2016, followed in both cases by extensive

3    telephonic negotiations. Worthman Decl. Ex. 1 ("Settlement Agreement") ¶ 9; Ex. 2; Worthman

4    Decl. ¶ 20. On June 1, 2016, the Parties agreed in principle to settle this class action, with a

5    Memorandum of Understanding signed July 14, 2016, and a further Settlement Agreement signed

6    on August 5, 2016. Worthman Decl. Exs.1, 2.

7                    **III.      KEY TERMS OF THE PROPOSED SETTLEMENT**

8            **$5,000,000 Non-Reversionary Settlement Fund**. The settlement provides for Synthes to

9    make a non-reversionary payment of $5,000,000 to the Classes in settlement of all claims in the

10   case ("Settlement Fund"). Settlement Agreement ¶ 34. In addition to the $5 million Settlement

11   Fund, Synthes will pay the employer's share of state and federal payroll taxes (*e.g.*, FICA,

12   FUTA) on all amounts that are paid to Class Members for unpaid wages. *Id.* ¶ 35.

13           Class Members will not be required to submit claims or take any other affirmative action

14   to receive their shares of the settlement proceeds; instead checks will be mailed to all Class

15   Members based on the plan of allocation formula. *Id.* ¶ 39. Class Members will share in the

16   settlement on a pro rata basis based on a formula that takes into account their time worked as

17   Sales Consultants subject to the straight commission policies Plaintiff challenged in this case, the

18   dollar amounts of deductions taken as reflected on their paystubs, and whether the Sales

19   Consultant has a potential claim for waiting time penalties as a former employee. *See id.* ¶¶ 39-

20   43.

21           The parties propose that Settlement Services, Inc. (SSI) act as the Settlement

22   Administrator. *Id.* ¶ 29. SSI is an experienced and accomplished class action administrator. It also

23   submitted the lowest of two bids requested by Class Counsel, estimating costs of administration

24   at between $12,600 to $15,000. *See* Worthman Decl. ¶ 23.

25           **Attorneys' Fees and Costs**. Class Counsel will apply to the Court for an award of up to

26   30% of the Settlement Fund, that is, $1,500,000. As will be discussed in greater detail in Class

27   Counsel's fee motion, this amount is substantially below Class Counsel's lodestar calculated at

28   Class Counsel's litigation rates. *See* Worthman Decl. ¶ 26. Class Counsel will also apply to the

1   Court for an award of costs of up to $200,000, including expenses for mediation, experts,

2   depositions, and other expenses. Only those fees and costs awarded by the Court will be paid to

3   Class Counsel from the Settlement Fund. *Id.* ¶ 38. The amount of fees and costs Class Counsel

4   are seeking is discussed in the Class Notice. *See* Proposed Order Ex. A ("Class Notice") § 6.

5   Class Counsel will file their fee and cost application at least 14 days before the deadline for Class

6   Members to object to the settlement. The settlement is not contingent on Class Counsel receiving

7   the full amount of fees and costs for which they apply. *See* Settlement Agreement ¶ 38

8        **Service Award**. The Representative Plaintiff, Mr. Lindell, can apply to the Court for a

9   service award not to exceed $10,000 in recognition of his service to the Class. As will be

10  discussed in greater detail in the motion for this service award, the Representative Plaintiff

11  substantially contributed to the success of the case. In addition to regularly providing support to

12  Class Counsel, he responded to discovery requests, reviewed the allegations in the complaints for

13  accuracy, prepared for his deposition, was deposed in this case, attended the mediation, was

14  subject to counterclaims, and continued to assist in the investigation of this case throughout the

15  litigation. Worthman Decl. ¶ 27. If Mr. Lindell applies for and receives a service award, he shall

16  provide Synthes a complete and general release of all known and unknown claims. Settlement

17  Agreement ¶¶ 58-59. As will be detailed in the motion for a service award, the maximum service

18  award requested (i.e. $10,000) represents a very small fraction of the total monetary relief to the

19  Classes and is below the average amount that class members will recover. The amounts that the

20  Representative Plaintiff will seek as service payment is discussed in the Class Notice. Class

21  Notice § 10. The Settlement is not contingent on the Court awarding the service award.

22       **Payment to the Labor Workforce Development Agency for Claims Under the Private**

23  **Attorneys General Act**. The settlement provides for an allocation of $50,000 to claims for

24  penalties under the Private Attorneys General Act (PAGA). As required, 75 percent of this

25  amount will be paid to the Labor Workforce Development Agency, or $37,500. As will be more

26  fully explained at final approval, the amount set aside is typical of wage and hour settlements and

27  appropriate in light of the risks and inherent discretion of the Court over PAGA awards. *See, e.g.*,

28  *Torchia v. W.W. Grainger, Inc.*, No. 1:13-cv-01427-LJO-JLT, 2014 WL 3966292, *2 (E.D. Cal.

1   Aug. 13, 2014) (approving $7,500 of a $10,000 payment to LWDA in $2,750,000 wage and hour

2   settlement). The LWDA payment is discussed in the Class Notice. *See* Class Notice §§ 5-6.

3   **Distribution of the Net Settlement Fund to the Class Members**. The portion of the

4   Settlement Fund remaining after amounts awarded to Class Counsel for fees and costs, as well as

5   payments to the Representative Plaintiff, the Settlement Administrator, and the LWDA, is

6   calculated to be at least $3,200,000. Worthman Decl. ¶ 23. This amount (the Net Settlement

7   Amount) will be distributed among all Class Members who do not opt out. Synthes has identified

8   174 individuals in the Expense Class and 140 individuals in the Deductions Class. There is an

9   overlap between the two Classes, and Synthes has identified 225 total Sales Consultants in total

10  who are part of either or both Classes. The average payment to Class Members will thus be over

11  $14,000. *Id.*

12  Class Members do not need to take any action to receive their settlement shares. Checks

13  will be mailed to Class Members pursuant to the plan of allocation. Settlement Agreement ¶ 45.

14  If some Class Members do not cash their checks within 180 days after reasonable efforts

15  to find them and encourage them to do so and there are more than three times the costs of

16  administration remaining in the settlement fund, that amount will be redistributed *pro rata* to the

17  participating Class Members who cashed their checks. *Id.* ¶ 44. If such funds do not exceed three

18  times the costs of administration, or after one redistribution has been accomplished, the remaining

19  funds will be paid in accordance with *cy pres* to the Legal Aid Society – Employment Law Center

20  of the San Francisco Bay Area. *Id.*

21

22  **Plan for Distributing the Net Settlement Fund Among Participating Class Members**.

23  The Settlement sets forth a plan to distribute the Net Settlement Amount among

24  participating Class Members on a modified *pro rata* basis. 63% of the Net Settlement Amount

25  will be allocated to the Expense Class and 37% will be allocated to the Deductions Class. For the

26  Expense Class, 90% will be allocated to claims up to and including December 31, 2012, and 10%

27  will be allocated to claims on and after January 1, 2013 (for which Synthes prevailed on summary

28  judgment). Those amounts will be allocated to Class Members based on their pro rata shares of

1    days of employment under Synthes' straight commission policies. For the Deductions Class, 60%

2    will be allocated to deductions damages and 40% to waiting time penalties. Settlement

3    Agreement ¶¶ 39-43. In distributing the deductions damages, deductions up to and including

4    December 31, 2012, the period for which Plaintiff obtained summary judgment, will be given a

5    weight of 1.25. Deductions on and after January 1, 2013, will be given a weight of 1. Distribution

6    will then be pro rata among Deductions Class Members according to their share of total weighted

7    deductions taken. The portion of deductions allocated to waiting time penalties will be distributed

8    evenly among former employees through July 14, 2016.

9         **Release of Claims**. Under the terms of the Settlement, all Class Members who do not opt

10   out will, by operation of the entry of the Judgment and Final Approval, release Synthes from only

11   those "claims based on the facts alleged in this case asserted on behalf of the classes in the

12   lawsuit . . . ." Settlement Agreement ¶ 56.[4]  The Representative Plaintiff, Mr. Lindell, has agreed

13   to a general release and a waiver of rights under California Civil Code § 1542. *Id.* ¶¶ 58-59.

14        **Opt Out and Objection Rights**. The Notice makes clear the rights of Class Members to

15   opt out or object if they so desire. The Settlement provides that Class Members shall have the

16   right to opt out or object within 45 days of the mailing of the Class Notice, and provides clear

17   instructions for how to do so. *Id.* ¶¶ 52-53.

18
_____

19   [4] The complete release in the Settlement Agreement, which is coterminous with the claims in the
     operative complaint, provides that:

20              Upon the Final Effective Approval Date and being mailed a
                Settlement Award payment, the Class Representative and each
21              Settlement Class Member shall release the Released Parties from all
                claims based on the facts alleged in this case asserted on behalf of
22              the classes in the lawsuit, including, without limitation, (a) the
                claims for unpaid business expenses under California Labor Code §
23              2802 and unlawful wage deductions under Labor Code §§ 221, 223,
                and 300 as well as the Private Attorney General Act penalties under
24              Labor Code § 2698 *et seq.* and the violations of the Unfair
                Competition Law (Business & Professions Code § 17200) that arise
25              from the claims under Labor Code §§ 2802, 221, 223, 300 and (b)
                to the extent permitted by law, claims for waiting time penalties
26              under Labor Code §§ 201-03.

27              Claims for benefits arising under the Employee Retirement Income
                Security Act ("ERISA") are expressly preserved.
28
     Settlement Agreement ¶¶ 56-57.

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

## IV.     PRELIMINARY APPROVAL IS WARRANTED

### A.     Legal Standard.

It is well settled in this Circuit and elsewhere that there is a "strong judicial policy favoring settlement of class actions." *Morales v. Conopco, Inc.*, No. 2:13-2213 WBS EFB, 2016 WL 3688407, at *2 (E.D. Cal. Jul. 12, 2016) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)); *see also Garner v. State Farm Mut. Auto Ins. Co.*, No. 08-1365, 2010 WL 1687832, at *8-9 (N.D. Cal. Apr. 22, 2010) (discussing this Circuit's long history of deferring "to the private consensual decision of the parties" and declining to "second-guess" settlement terms).

Approval of a class action settlement under Federal Rule of Civil Procedure 23(e) requires a two-step process. "First, counsel submit the proposed terms of the settlement and the Court makes a preliminary fairness evaluation." *Manual for Complex Litig.*, *Fourth* § 21.632. At the preliminary stage, the court determines "whether a proposed settlement is within the range of reasonableness," and if so, directs notice to the class members of a formal fairness hearing at which it may consider further arguments and evidence in support of or opposition to the settlement. *Id.* at n.976.

To grant preliminary approval, the Court must find only that it is non-collusive and within the range of possible final approval. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007); *see also Dearaujo v. Regis Corp.*, Nos. 2:14-01408-KJM-AC; 2:14-cv-01411-KJM-AC, 2016 WL 3549473, at *5 (E.D. Cal. June 30, 2016); *Davis v. Brown Shoe Co.*, No. 1:13-cv-01211-LJO-BAM, 2015 WL 6697929, at *2 (E.D. Cal. Nov. 3, 2015). Preliminary approval is appropriate so long as "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval." *Dearaujo*, 2016 WL 3549473, at *9 (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079); *Davis*, 2015 WL 6697929, at *2; *see also* Manual for Complex Litig., Fourth, § 21.632 & n.976.

**B.     The Settlement Is the Product of Well-Informed, Arm's Length Negotiations with No Hint of Collusion.**

The Settlement here was reached after several years of hard-fought litigation, which has led to well-informed counsel on both sides. Motion practice and discovery have been extensive. *See supra* § II; Worthman Decl. ¶¶ 18-19. Counsel for the Class Members, who are experienced wage and hour class action attorneys, believe the settlement is fair, adequate, reasonable, and in the best interest of the Class Members in light of all known facts and circumstances, including the risks of the outcome of trial and appeals as well as delay. *Id.* ¶ 22; *see also infra* § C.9.d (discussing views of Class Counsel).

Negotiations were held at arm's length with an experienced mediator, Michael Dickstein. *Id.* ¶ 20. Participation in mediation "tends to support the conclusion that the settlement process was not collusive." *Dearaujo*, 2016 WL 3549473, at *10 (taking judicial notice of Michael Dicksten's role as mediator as a factor favoring preliminary approval). Here the mediation required multiple sessions and substantial intermediary work, further demonstrating that there is no hint of collusion.

**C.     The Settlement Contains No "Obvious Deficiencies" nor Is There Improper Favorable Treatment for the Plaintiff or a Segment of the Class.**

**1.     There Is No Premium to the Named Plaintiff.**

The settlement does not grant preferential treatment to the Representative Plaintiff, who will share in the Net Settlement Fund on the same terms as all other Class Members. Although the Representative Plaintiff can apply for a service award at final approval, as described below, the Settlement is not contingent on the Court granting that award.

**2.     The Proposed Distribution Plan Is Fair.**

The proposed distribution plan is fair and objectively reasonable. The formula for distributing the settlement is based on objective employment data, including the relative number of days of employment each Expense Class Member was employed as a straight-commission Sales Consultant before and after January 1, 2013, the amount of deductions taken from Deductions Class Member's paychecks, and whether or not each Deductions Class Member is a current or former employee and thus potentially eligible to recover waiting time penalties for

1    failure to pay earned wages. The Parties have agreed on a distribution ratio that allocates 37% of

2    the Net Settlement Fund to the Deductions Class and 63% to the Expense Class. This division,

3    negotiated between the Parties, reflects an appropriate weighting in light of the outcomes on

4    summary judgment briefing, with a more substantial likelihood of recovery for the Deductions

5    Class than for the Expense Class. *Id.*

6         The further distribution ratios negotiated between the parties similarly reflect appropriate

7    adjustments for the strengths and weaknesses of the Classes' various claims. Thus, for the

8    Expense Class, 90% will be allocated to claims up to and including December 31, 2012, and 10%

9    will be allocated to claims on and after January 1, 2013 (for which Synthes prevailed on summary

10   judgment). For the Deductions Class, 60% will be allocated to deductions damages and 40% to

11   waiting time penalties, consistent with the fact that overall deductions damages and waiting time

12   penalties were about 50% and 50%, but the Deductions Class faces arguments from Synthes that

13   waiting time penalties were unrecoverable due to the need to prove willfulness under the

14   California Labor Code.  Settlement Agreement ¶¶ 39-43; Worthman Decl. ¶ 24. In distributing

15   the deductions damages, deductions up to and including December 31, 2012, the period for which

16   Plaintiff obtained summary judgment, will be given a weight of 1.25. Deductions on and after

17   January 1, 2013, will be given a weight of 1. Distribution will then be pro rata among Deductions

18   Class Members according to their share of total weighted deductions taken. The portion of

19   deductions allocated to waiting time penalties will be distributed evenly among former employees

20   through July 14, 2016.

21        In short, the proposed distribution plan is a proper attempt to distribute the total recovery

22   equitably among the Class based on objective factors.

23        **3.      Class Members Are Not Required to Take Affirmative Acts for Payment.**

24        Class Members are not required to submit claims or take any other affirmative action to

25   receive their shares of the settlement, which will result in a much higher number of Class

26   Members receiving payments than would be the case if some affirmative step were required.

27   Settlement Agreement ¶ 45.

28

**4.      The Release Is Fair, Reasonable, and Co-Extensive with the Complaint.**

The release in the settlement is also fair and reasonable. The release being given by Class Members who do not opt out is narrow. It is limited to "claims based on the facts alleged in this case asserted on behalf of the classes in the lawsuit . . . ." Settlement Agreement ¶ 56.[5]

**5.      The Settlement Provides a Substantial Economic Recovery.**

The settlement also provides for substantial economic recovery by the Classes. Defendant will make a non-reversionary Settlement Fund payment of $5 million. The average gross (i.e. pre-tax) payment to Class Members from the Net Settlement Fund will be over $14,000 after deducting for the projected attorney's fees and costs, service payments, and administrative costs. Worthman Decl. ¶ 23. The Net Settlement Fund will result in an allocation of about $1.2 million for the Deductions Class—more than 100% of the deductions taken during the Class Period—and an allocation of about $2 million for the Expense Class, more than 47% of the estimated unreimbursed expenses for the class period through December 31, 2012, or 30% if the full Class Period is taken into account. *Id.* ¶¶ 23-25.

**6.      The Requested Attorney's Fee and Costs Are Fair and Reasonable.**

Prior to the Fairness Hearing, Class Counsel will file a formal application for attorneys' fees and costs and expenses along with briefing and declarations in support of the application. At this initial juncture, Plaintiff merely notes that attorney's fee requests provided for in the Settlement are fully in accord with Ninth Circuit Court authority, and do not constitute the type of "obvious deficiency" that would prevent preliminary approval and notice to the Classes.

The maximum attorney's fee provided for by the settlement, although slightly over the Ninth Circuit benchmark for common funds, is within the range this Court and many others have approved in similar class actions. *See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) (noting that, in the Ninth Circuit, in a common fund case, 25% of the common fund is a benchmark award for attorney's fees); *see also Stuart v. RadioShack Corp.*, No. 07-4499, 2010 WL 3155645, at *6 (N.D. Cal. Aug. 9, 2010) (awarding one-third of settlement fund in wage and hour case); *Singer v. Becton Dickinson & Co.*, No. 08-821, 2010 WL 2196104, at *8-9 (S.D. Cal.

---

[5] See note 4, *supra*, or Settlement Agreement ¶ 56 for text of complete release.

1    Jun. 1, 2010) (33.33% of wage and hour settlement "falls within the typical range . . . in similar

2    cases"; citing awards of 33.33%-40%); *Davis*, 2015 WL 6697929, at *10 (awarding 29.5% of the

3    common fund as attorneys' fees in wage and hour class action settlement). Class Counsel have

4    achieved a favorable result for the Class, particularly as to the deductions claim. Synthes has

5    changed its practices since commencement of this litigation, including ceasing customer service

6    deductions by September 2013 and accounts receivable deductions by January 2016, as well as

7    amending its policy manuals to attempt to more clearly spell out its expense policies. *See*

8    Worthman Decl. ¶ 19. Further, the 30% maximum that is allowable for the Class Counsel request

9    is already below their lodestar as will be further supported in briefing prior to Final Approval.

10   Worthman Decl. ¶ 26.

11        Class Counsel will also have the opportunity to seek reimbursement of their litigation

12   costs and expenses, not to exceed $200,000. As will be set forth in detail in Class Counsel's

13   application for costs and expenses, the costs and expenses for which Class Counsel will seek

14   reimbursement are of the type routinely reimbursed as necessary costs and expenses for litigation.

15   Those costs and expenses include expert fees, mediation fees, and deposition costs, among others.

16   The Settlement is not contingent on the Court granting the attorneys' fees and costs requested.

17        **7.    The Proposed Service Award Is Reasonable.**

18        The service payment request allowable under the settlement is legally and factually

19   justifiable. The service payment is intended to recognize the time and effort the Representative

20   Plaintiff expended on behalf of the Classes, as well as the risk he incurred during the course of

21   this litigation. Courts frequently award $15,000 or more as incentive awards to class

22   representatives.[6] As will be briefed in more detail in the application for a service award, the

23

_____

24   [6] *See, e.g.*, *Ontiveros v. Zamora*, 303 F.R.D. 356, 366 (E.D. Cal. 2014) (approving $15,000 service
     award); *Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) ($25,000 incentive award); *Ingram v. The*
25   *Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001) ($303,000 payment to each class representative
     plaintiff in employment case settling before class certification); *Martens v. Smith Barney*, 1998 WL
26   1661385, at *4 (S.D.N.Y. July 28, 1998) and 181 F.R.D. 243, 262 (S.D.N.Y. 1998) (payments of up
     to $150,000 for named plaintiffs, for a total of $1.9 million in incentive payments for employment
27   case settling prior to class certification); *Roberts v. Texaco*, 979 F. Supp. 185 (S.D.N.Y. 1997)
     ($85,000 for named plaintiff in employment case settling prior to class certification); *see also Van*
28   *Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) ($50,000 participation
     award in an Economic Stabilization Act case).

service award of $10,000 allowable under the Settlement, which is just 0.2% of the total

settlement amount, is more than justified given the time and effort Plaintiff dedicated to pursuing

this favorable result for the Classes, and given that the Named Plaintiff will provide Synthes with

a general release, faced counterclaims, and has contributed substantial time and effort to this

litigation. *See Monterrubio v. Best Buy Stores*, 291 F.R.D. 443, 462 (E.D. Cal. 2013) (listing

cases approving service awards ranging from 0.2% to 0.81% of total settlement). The Settlement

is not contingent on approval of the service award.

> **8.      The Overwhelming Majority of the Net Settlement Fund Will Be Distributed to Class Members, and the Cy Pres Recipient Is Appropriate.**

Under the settlement, the Net Settlement Fund will be distributed to Class Members

pursuant to the plan of allocation. Settlement Agreement ¶ 39. If some Class Members do not

cash their checks within 180 days, after reasonable efforts to locate them and encourage them to

do so, and if the amount of the uncashed checks exceeds three times the costs of administration,

then there will be a second round of distribution to Class Members who did cash their checks.

Settlement Agreement ¶¶ 44-45.

Only if the amount of uncashed checks is less than three times the cost of settlement

administration will there be a distribution to a *cy pres* beneficiary. *Id.* In that event, the designated

*cy pres* beneficiary is appropriate, since its mission has a close nexus to the claims in this case.

The Parties have agreed that the Legal Aid Society – Employment Law Center of the San

Francisco Bay Area shall be the *cy pres* recipient. *Id.* "The mission of the LAS-ELC is to promote

the stability of low-income workers, and represent such workers in claims arising from violations

of federal and state wage and hour laws." *See* Legal Aid Society—Employment Law Center,

https://las-elc.org/about. As such, there is a substantial nexus between the proposed *cy pres*

recipient and the interests of the class members. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 821

(9th Cir. 2012) *cert. denied,* 134 S. Ct. 8 (2013).[7] The organization has been approved as *cy pres*

recipient in numerous wage-and-hour class action settlements. *See, e.g., Eddings v. Health Net,*

---

[7] In the interest of full disclosure, two of the lawyers at firms serving as Class Counsel—Daniel Feinberg of Feinberg, Jackson, Worthman & Wasow and Ana de Alba of Lang Richert & Patch—serve on the LAS-ELC board of directors. Board positions are not compensated.

1   *Inc.*, No. 10-1744, 2013 WL 3013867 (C.D. Cal. June 13, 2013) (approving LAS-ELC as *cy pres*

2   beneficiary in wage-and-hour class action settlement); *Cordy v. USS-Posco Indus.*, No. 12-00553

3   JST, 2014 WL 212587, at *3 (N.D. Cal. Jan. 17, 2014) (same).

4       **9.      The Settlement Is Well Within the Range of Possible Approval.**

5           When addressing this requirement at preliminary approval, courts often tentatively assess

6   the factors that will go into a final fairness determination: (1) the strength of the plaintiffs' case;

7   (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of

8   maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the

9   extent of discovery completed and the stage of the proceedings; and (6) the experience and views

10  of counsel.[8] *Davis*, 2015 WL 6697929, at *4 (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d

11  948, 963 (9th Cir. 2009)). At the preliminary approval stage, the review of these factors is

12  "cursory" and is designed to make the parties "aware of areas in which further evidence will be

13  necessary." *Clesceri v. City Beach Investigations & Protective Servs., Inc.*, No. 10-3873, 2011

14  WL 320998, at *8 (C.D. Cal. Jan. 27, 2011).

15          **a.      The strength of Plaintiff's case and the risk, expense, complexity and
                      likely duration of further litigation.**

16          While Plaintiff believes he has meritorious claims, he is also cognizant that the Classes

17  face significant procedural, liability, and damages risks moving forward, including but not limited

18  to the following: the risks of trial; the risk that the Classes would be decertified at or after trial;

19  the risk of appeal; the risk that the Court or a jury would find the evidence insufficient to justify

20  damages awards in the amounts claimed by the Classes, particularly as to the Expense Class

21  where there is a risk the Court would require individual testimony or evidence to establish

22  damages; the risk that Synthes would prevail on its affirmative defenses; and ultimately the risk

23  that the Classes would recover less than the proposed Settlement or nothing at all.

24

25

26

27

28
    ---
    [8] An additional factor, the reaction of the class members to the proposed settlement, cannot be
    assessed at the preliminary approval stage prior to notice and the opportunity for opt-outs or
    objections.

1    In short, the Settlement provides a substantial and immediate benefit to the class which is

2    "preferable to lengthy and expensive litigation with uncertain results." *Morales v. Stevco, Inc.*,

3    No. 09-00704 AWI JLT, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011).

4            **b.    The Settlement amount and individual awards provide reasonable
                    compensation for Class Members' damages.**

5    The $5 million settlement is a substantial economic recovery for the small Classes in this

6    case. The total settlement—as well as the individual awards of an average estimated amount of

7    over $14,000—constitute substantial recoveries. Class Counsel believe that the Settlement

8    provides for a significant portion of the likely recovery were Plaintiff to fully prevail as a Class at

9    a trial on the merits. Worthman Decl. ¶ 23. By Plaintiff's Counsel's calculations, the amounts

10   recovered will result in an allocation of about $1.2 million for the Deductions Class—more than

11   100% of the deductions taken during the Class Period. The allocation for the Expense Class will

12   be about $2 million for the Expense Class, more than 47% of the estimated unreimbursed

13   expenses for the pre-2013 period, or over 30% of total estimated unreimbursed expenses if the

14   post 2013 period for which Plaintiff lost summary judgment is taken into account. *Id.* ¶¶ 23-25.

15   Given the procedural, liability and damages hurdles facing them, the total settlement and

16   corresponding *pro rata* awards are very favorable to the Classes. *See, e.g., Officers for Justice v.*

17   *Civil Serv. Commission*, 688 F.2d 615, 624 (9th Cir. 1982) ("Of course, the very essence of a

18   settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.");

19   *Chiaramonte v. Pitney Bowes, Inc.*, No. 06-1507, 2008 WL 510765, at *6 (S.D. Cal. Feb. 25,

20   2008) (in wage and hour settlement, noting that funds that are "only a fraction of the potential

21   recovery" have been approved; citing approval of 6% of potential recovery).

22           **c.    The extent of discovery completed.**

23   This factor considers whether the parties have gathered "sufficient information to make an

24   informed decision about the settlement." *See, e.g., Morales,* 2011 WL 5511767, at *11. Here,

25   given the advanced stage of the proceedings and the extensive discovery completed, (Worthman

26   Decl. ¶¶ 18-19) this factor weighs heavily in favor of approval. Moreover, the degree to which the

27   parties understood and litigated their positions is highlighted by the fact that the case settled only

28

---

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

1    after the Court had ruled on the parties' cross-motions for summary judgment and Synthes'

2    motion for decertification, and after multiple mediation sessions.

3                      **d.      The experiences and views of counsel.**

4            Class Counsel are very experienced in class litigation, including in wage and hour cases,

5    as the Court has recognized in appointing them at Class Certification. Findings &

6    Recommendations Granting Pl.'s Mot. for Class Cert. ("Class Cert. Dec'n") 20 n.14, ECF No.

7    139 ("Plaintiff's counsel has a wealth of experience in employment class actions."); *see also*

8    Worthman Decl. ¶¶ 3-16; Taylor Decl. ¶¶ 3-8. Class Counsel's endorsement of the settlement as

9    fair, reasonable, and adequate in light of the risks of further litigation and recommendation that it

10   be approved "is entitled to significant weight, and weighs in favor of settlement." *See e.g.*

11   *Morales*, 2011 WL 5511767, at *11; *Clesceri*, 2011 WL 320998, at *10.

12   **V.      THE COURT SHOULD APPROVE THE NOTICE TO THE CLASS MEMBERS**

13           Federal Rule of Civil Procedure 23(c)(2)(B) requires that absent class members receive

14   the "best notice that is practicable under the circumstances." For a Rule 23(b)(3) class, the notice

15   must clearly and concisely state: (i) the nature of the action; (ii) the definition of the class

16   certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an

17   appearance through an attorney if the member so desires; (v) that the court will exclude from the

18   class any member who requests exclusion; (vi) the time and manner for requesting exclusion;

19   (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. Proc.

20   23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in

21   sufficient detail to alert those with diverse viewpoints to investigate and to come forward and be

22   heard." *Churchill Village, LLC v. General Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal

23   quotes omitted).

24           The proposed Class Notice meets all of the requirements of a notice to Rule 23(b)(3) class

25   members. The Notice explains in plain and easily understood language what the case is about; the

26   class definition and claims; the settlement amount; the requested amounts to be paid to Class

27   Counsel and as a service award to the Representative Plaintiff; the rights of Class Members to

28   opt-out or object to the Settlement's terms and the process by which they can do so; the binding

1   effect of the Settlement on those who do not request exclusion, including a description of the

2   Claims being released; and the particulars of the final fairness hearing. Class Notice §§ 5-6, 8, 10-

3   12.

4        The Parties' proposed plan for directing notice to the Settlement Class set forth in the

5   Settlement is also "the best notice that is practicable under the circumstances." Using last-known

6   addresses provided by Defendant, the Settlement Administrator will send the Class Notice by

7   First Class United States Mail to all Class Members. Settlement Agreement ¶ 45.c. Further, the

8   Settlement Administrator will take reasonable efforts, including performing a National Change of

9   Address check, using Social Security numbers provided by Class Counsel, and using contact

10  information provided by Class Counsel, to obtain the correct address of any Class Members for

11  whom the Class Notice is returned as undeliverable and shall attempt re-mailings where new

12  addresses are secured. The notice will be posted on Class Counsel's firm websites, as well.

13        Plaintiff is not aware of any additional method of distribution that would be reasonably

14  likely to result in the receipt of notice by Class Members who may otherwise not receive notice

15  pursuant to the proposed distribution plan. For these reasons, the Settlement's plan for directing

16  notice to class members satisfies Rule 23(c)(2)(B). *See, e.g.*, *Wright v. Linkus Enter., Inc.*, 259

17  F.R.D. 468, 475 (E.D. Cal. 2009); *Misra v. Decision One Mortgage Co.*, No. 07-0994, 2009 WL

18  4581276, at *9 (C.D. Cal. Apr. 13, 2009).

19        **VI.    AMENDMENT OF THE CLASS DEFINITION IS APPROPRIATE**

20        By order dated March 4, 2014, this Court certified the Classes as described above. *See*

21  Class Cert. Dec'n 32:21-33:10, ECF No. 139, adopted ECF No. 149.[9] The class definitions for the

---

The Court certified the following Classes:
   1) An "Expense Class" of all former, current, and future sales consultants who have been, are, or will be employed by Synthes in California from four years prior to the filing of this action (December 13, 2007) to the date of final disposition, and who are subject to the following "straight commission" policies:
      a) The policy that sales consultants from the Trauma and Spine Sales Divisions who receive "straight commission" "are not eligible for an automobile allowance or in-territory business expense reimbursement"; and
      b) The policy that sales consultants from the CMF Sales Divisions receive "a predetermined based salary of $30,000, plus a higher level of commission with no expenses"; and

1    Expense and Deductions Classes provided for class periods that ended on the "date of final

2    disposition." *See id.* at 32:26-27, 33:8-9. Plaintiff requests that the Court amend the definition of

3    the Classes to end as of July 14, 2016, the date that the Memorandum of Understanding was

4    reached between the Parties. Worthman Decl. ¶ 20; Ex. 2.

5         Plaintiff proposes to amend the class definitions because they need to be fixed at a date

6    certain in order for the settlement to be administratively feasible. Synthes' Sales Consultants

7    continue to leave Synthes' employ. Because the settlement calculations are based on proportional

8    shares, the distribution will be a moving target unless a date certain is used to terminate the Class

9    Period. The date the Parties propose to use here is the date that the Parties reached their

10   settlement and makes it possible for the Settlement Administrator to calculate the distribution.

11        "An order that grants or denies class certification may be altered or amended before final

12   judgment." Fed. R. Civ. Proc. 23(c)(1)(C). The district court "retains broad authority to modify

13   . . . certification at any time where it appears the class definition is inappropriate or inadequate."

14   *Andrews Farms v. Calcot, Ltd.*, 268 F.R.D. 380, 384 (E.D. Cal. 2010) (citing *Armstrong v. Davis*,

15   275 F.3d 849, 871 (9th Cir. 2001)). The amended definition of the Classes satisfies all the

16   requirements of Rule 23(a) and Rule 23(b)(3) for all the reasons set forth in the Court's March 4,

17   2014 class certification order and reaffirmed in its January 2016 order denying class

18   decertification. Thus, the Court should amend the definition of the Classes for purposes of the

19   Settlement.

20              **VII.    THE COURT SHOULD SET A FAIRNESS HEARING**

21        Because the Settlement meets the requirements for preliminary approval, the Court should

22   set a final fairness hearing to decide whether to grant final approval to the Settlement, as well as

23   whether to grant the Representative Plaintiff's application for a service award and Class

24   Counsel's motion for attorney's fees and costs. *See In re Wireless Facilities, Inc. Sec. Litig.*, 253

25   F.R.D. 630, 634 (S.D. Cal. 2008); Fed. R. Civ. Proc. 23(e)(2). . As reflected in the proposed order

26   _____

27        2) A "Deductions Class" of all former, current, and future Sales Consultants who have been,
     are, or will be employed by Synthes in California from four years prior to the filing of this
     action (December 13, 2007) to the date of final disposition, who at some time during Synthes'
28   employ had a deduction assessed against them.
     Class Cert. Dec'n 32:22-33.

1   submitted herewith, Plaintiff further requests that the Court order that the Motion for Judgment

2   and Final Approval is to be filed with the Court no later than 28 calendar days before the date of

3   the Fairness Hearing.

4                                    **VIII.   CONCLUSION**

5          In sum, Plaintiff requests that the Court (1) grant preliminary approval of the Settlement;

6   (2) direct notice to the Classes; (3) amend the Class Certification to end at the date certain of July

7   14, 2016; and (4) set a Fairness Hearing, all as set forth in the accompanying Proposed Order.

8

9    Dated: August 5, 2016                          Respectfully submitted,

10                                                   By: ___*/s/ Catha Worthman*___
                                                          Catha Worthman
11
                                                     FEINBERG, JACKSON, WORTHMAN &
12                                                   WASOW LLP

13                                                   *Counsel for Plaintiff and the Certified Classes*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28