Todd F. Jackson (SBN 202598)
Catha Worthman (SBN 230399)
Darin Ranahan (SBN 273532)
FEINBERG, JACKSON,
WORTHMAN & WASOW LLP
383 4th Street, Suite 201
Oakland, CA 94607
Telephone: (510) 269-7998
todd@feinbergjackson.com
catha@feinbergjackson.com
darin@feinbergjackson.com

Charles Trudrung Taylor (SBN 127105)
Ana de Alba (SBN 253917)
LANG, RICHERT & PATCH
Fig Garden Financial Center
5200 North Palm Avenue, Fourth Floor
Fresno, CA 93704
Telephone: (559) 228-6700
ctt@lrplaw.net
ada@lrplaw.net

*Counsel for Plaintiff and the Certified Classes*

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TROY M. LINDELL, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>SYNTHES USA, SYNTHES USA SALES LLC, SYNTHES SPINE COMPANY LP,<br><br>Defendants. | Case No. 1:11-CV-02053-LJO-BAM<br><br>**PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Court:** Hon. Barbara A. McAuliffe<br>**Courtroom:** 8<br>**Date:** December 16, 2016<br>**Time:** 9:00 a.m. |

**NOTICE OF MOTION AND MOTION**

TO DEFENDANTS SYNTHES USA, SYNTHES USA SALES LLC, AND SYNTHES SPINE COMPANY LP, AS WELL AS THEIR COUNSEL OF RECORD AND ALL OTHER INTERESTED PARTIES:

PLEASE TAKE NOTICE THAT on December 16, 2016, at 9:00 a.m., in Department 8 on the 6th floor of this Court located at 2500 Tulare Street, Fresno, CA 93721, Plaintiff Troy Lindell ("Plaintiff") will move and hereby moves the Court for an order finally approving the Parties' proposed class action settlement by determining the proposed settlement to be a fair, reasonable, and adequate settlement of the claims encompassed by the settlement, directing the Parties and the Settlement Administrator to implement the terms of the Agreement pertaining to the distribution of the Net Settlement Amount, making findings of fact and stating conclusions of law in support of the foregoing, and directing the entry of judgment in accordance with the Parties' Agreement pursuant to Federal Rules of Civil Procedure 54 and 58.

This Motion is based on the Parties' Settlement Agreement, the accompanying Memorandum of Points and Authorities, the Declaration of Darin Ranahan filed herewith, the Declaration of Stephen Donaldson filed herewith, the proposed findings and recommendations filed herewith, the other records and pleadings filed in this action, and such other documentary and oral evidence or argument as may be presented to the Court at the hearing of this Motion.

Dated: November 18, 2016              Respectfully submitted,

                                      By:   */s/ Darin Ranahan*
                                            Darin Ranahan

                                      FEINBERG, JACKSON, WORTHMAN & WASOW LLP

                                      *Counsel for Plaintiff and the Certified Classes*

# MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

Notice of Motion and Motion ................................................................................................ i

Memorandum of Points and Authorities ............................................................................... ii

Table of Contents .................................................................................................................. ii

I.   Introduction ................................................................................................................ 1

II.  Factual and Procedural History ................................................................................. 1

    A.   Pre-Settlement Litigation of This Matter. ......................................................... 2

    B.   Post-Settlement Litigation of This Matter. ........................................................ 3

III. Key Terms of the Proposed Settlement .................................................................... 6

IV.  Final Approval Is Warranted .................................................................................... 10

    A.   Legal Standard. ............................................................................................... 10

    B.   The Settlement Is Entitled to a Strong Presumption of Fairness. .................. 12

    C.   The Settlement Is Fair, Reasonable, and Adequate. ...................................... 12

        1.   The Strength of Plaintiff's Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation. ........................................................ 13

        2.   The Settlement Amount and Individual Awards Provide Reasonable Compensation for Class Members' Damages. ........................................... 13

        3.   The Large Extent of Discovery Completed and the Late Stage of the Proceedings Favor Approval. ...................................................................... 14

        4.   The Experience and Views of Counsel. ...................................................... 14

        5.   The Reaction of the Class Members to the Proposed Settlement. ............. 15

V.   Conclusion ................................................................................................................ 15

# I. INTRODUCTION

Plaintiff Troy Lindell seeks final approval of a $5,000,000 non-reversionary settlement on behalf of the certified Expense and Deductions Classes.[1] For the reasons set forth at preliminary approval, this settlement remains fair, reasonable, and adequate. The Deductions Class will receive *more* than the actual deductions taken during the class period, while the Expense Class will receive more than 47% of the estimated unreimbursed expenses for the pre-2013 period, or over 30% of total estimated unreimbursed expenses if the post 2013 period for which Plaintiff lost summary judgment is taken into account, and the narrow release is coterminous with the claims in the complaint. These figures—which are based on Synthes' aggregate exposure—are the same even after the removal of 39 individuals who were previously included on the class list. The only function of the removal of these individuals was to raise the average distribution to class members to over $17,000, rather than $14,000, Plaintiff's estimate when moving for preliminary approval. In addition, Plaintiff and the Certified Classes faced substantial risk, expense, and delay should the case have proceeded to trial, in particular with respect to the Expense Class claims, which faced uncertain liability, uncertain damages, and potential issues with maintaining the case as a class action. Moreover, as spelled out in the preliminary approval briefing, the procedural posture of the case—following substantial discovery and motion practice—and the experienced views of counsel weigh in favor of final approval.

Following the Court's preliminary approval of the settlement and class notice, the response from the Classes has been overwhelmingly positive. As of the date of this filing, the Settlement Administrator and counsel have received *no* objections or opt-outs. In addition, they have only received a single challenge to the data from which distribution will be calculated, which was quickly resolved with agreement by the challenger and both Parties.

# II. FACTUAL AND PROCEDURAL HISTORY

The relevant procedural and factual history is spelled out in greater detail in Plaintiff's

---

[1] The Classes are defined according to the Court's order granting Plaintiff's motion for class certification (ECF No. 139, adopted by ECF No. 149), as modified for both Classes to include an end date of July 14, 2016 (Findings & Recommendations ¶ 3, ECF No. 259; Order Adopting Findings & Recommendations, ECF No. 259).

motion for preliminary approval. *See* ECF No. 249 at 2-4. Plaintiff has reproduced that history here for ease of reference, and supplemented it to include further procedural history since filing the preliminary approval brief.

**A.     Pre-Settlement Litigation of This Matter.**

Plaintiff filed this Action on December 13, 2011 on behalf of two classes of Sales Consultants who worked for Synthes: (1) an Expense Class for whom Synthes maintained a policy that failed to reimburse them as required under California Labor Code § 2802, as interpreted in *Gattuso v. Harte-Hanks Shoppers, Inc*., 42 Cal. 4th 554 (2007); and (2) a Deductions Class from whom Synthes improperly deducted money from their wages in violation of California Labor Code §§ 221, 223, and 300. Decl. of C. Worthman in Supp. of Mot. for Prelim. Approval ("Worthman Prelim. Approval Decl.") ¶ 18, ECF No. 249-3. Plaintiff also brought claims for waiting time penalties under California Labor Code §§ 201-03, for unfair business practices under the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and for penalties under the California Private Attorney General Act ("PAGA"), Cal. Lab. Code §§ 2698 *et seq.*, that arise from the underlying expense and deductions claims. *Id.* Synthes denied liability on all claims. The Court certified these classes on March 4, 2014, and on January 6, 2016, denied Synthes' decertification motion and granted in part and denied in part the Parties' cross-motions for summary judgment. *See* ECF Nos. 139, 149, 232, 233.

As set forth in Plaintiff's preliminary approval motion, the Parties engaged in substantial pre-resolution discovery. Plaintiff served Synthes with seven sets of requests for production, totaling 85 different requests, and five sets of interrogatories, totaling 27 different interrogatories. Worthman Prelim. Approval Decl. ¶ 19. In response, Synthes produced 73,690 pages of documents, as well as various native format spreadsheets, and answered the interrogatories. *Id.* Synthes served Plaintiff with two sets of requests for production, totaling 64 different requests, and two sets of interrogatories, totaling 20 different interrogatories, all of which Plaintiff answered. *Id.* Synthes also served document requests and interrogatories on four different Class Members represented by counsel for Plaintiff. *Id.* Plaintiff took three different depositions pursuant to Federal Rule of Civil Procedure 30(b)(6) and seven different depositions of current

1  and former Synthes employees. *Id.* Synthes took the depositions of Plaintiff and four different

2  Class Members. *Id.* Lastly, Plaintiff conducted document discovery and depositions for of

3  Synthes' two expert witnesses, while Synthes conducted document discovery and a deposition of

4  Plaintiff's one expert witness. *Id.*

5  Settlement was reached only after the Parties participated in a mediation session with an

6  experienced mediator, Michael Dickstein, on October 30, 2015 and again on May 6, 2016,

7  followed in both cases by extensive telephonic negotiations. Worthman Prelim. Approval Decl.

8  Ex. 1 ("Settlement Agreement") ¶ 9, ECF No. 249-4; *id.* Ex. 2 ("Term Sheet"), ECF No. 249-5;

9  Worthman Prelim. Approval Decl. ¶ 20. Following the parties reaching settlement, counsel for

10 Synthes mailed a copy of the proposed settlement to various Attorneys General on August 15,

11 2016, pursuant to the Class Action Fairness Act ("CAFA"). Decl. of D. Ranahan in Supp. of Final

12 Approval ("Ranahan Decl.") ¶ 8.

13 During this litigation, the underlying facts of the case changed in two ways that affected

14 liabilities and damages. First, Synthes changed its compensation policies in January 2013 to

15 explicitly state that a certain portion of Sales Consultants' compensation was allocated to

16 expenses and a certain portion was allocated to wages, as Plaintiff had contended *Gattuso*

17 requires. *See* Mem. Decision & Order re: Parties' Cross Mots. for Summ. J. ("MSJ Order") 19-20,

18 ECF No. 232. The Court relied on this change in granting Synthes' motion for summary

19 judgment with respect to the Expense Class claims from January 2013 forward. *See id.* at 20-21.

20 Second, Synthes stopped taking the deductions Plaintiff challenged during the course of this case,

21 including ceasing to take customer service deductions as of September 2013, and ceasing to take

22 accounts receivable deductions after January 2016, when the Court granted summary judgment

23 for Plaintiff on a portion of the deductions claims. *See id.* at 22; Worthman Prelim. Approval

24 Decl. ¶ 19.

25 **B.      Post-Settlement Litigation of This Matter.**

26 Following settlement, the Court granted preliminary approval of this matter in September

27 2016. *See* Findings & Recommendations Granting Pl.'s Mot. for Prelim. Approval ("Prelim.

28 Approval Findings & Recommendations"), ECF No. 257; Order Adopting Findings &

Recommendations & Granting Prelim. Approval, ECF No. 259. It modified the class definitions to include an end date of July 14, 2016, with the final class definitions being:

> a. An "Expense Class" of all former and current sales consultants who were employed by Synthes in California from four years prior to the filing of this action (December 13, 2007) to July 14, 2016, and who were subject to the following "straight commission" compensation policies:
>
>> i. The policy that sales consultants from the Trauma and Spine Sales Divisions who receive "straight commission" "are not eligible for an automobile allowance or in-territory business expense reimbursement"; and
>>
>> ii. The policy that sales consultants from the CMF Sales Division receive "a predetermined base salary of $30,000, plus a higher level of commission with no expenses;" and
>
> b. A "Deductions Class" of all former and current Sales Consultants who were employed by Synthes in California from four years prior to the filing of this action (December 13, 2007) to July 14, 2016, who at some time during Synthes' employ had a deduction assessed against them.

Prelim. Approval Findings & Recommendations ¶ 3, ECF No. 257.

The Court also ordered notice of the settlement to go out to the class, which the Settlement Administrator sent to the majority of the Classes on October 13, 2016. Decl. of S. Donaldson in Supp. of Final Approval ("Donaldson Decl.") ¶ 6. A smaller, second round of notice went out to 24 class members three days later on October 17, 2016. *Id.* ¶ 8.[2] As a result, the notices included deadlines of October 28, 2016 and November 1, 2016 for the 15-day data challenge, respectively and November 28, 2016 and December 1, 2016 for the 45-day opt-outs and/or objections. *See* Prelim. Approval Findings & Recommendations ¶¶ 10-11; Donaldson Decl. ¶¶ 6, 8. As of November 18, 2016, the Settlement Administrator has received only *one* data challenge, which it quickly resolved in the challenger's favor with the agreement of the parties, and has received *no* opt-outs or objections. Donaldson Decl. ¶¶ 6, 8. Twenty notices were returned undeliverable, for which the Settlement Administrator was able to obtain seventeen new addresses and re-send notice. *See id.* ¶ 9. For those Class Members whose new addresses the Settlement Administrator did not discover, Class Counsel is currently attempting to locate them, as well. *See id.* ¶ 9;

---

[2] This second round went out later due to an error in the dates of employment for these individuals, which was fixed prior to class notice going out. Donaldson Decl. ¶ 5.

Ranahan Decl. ¶ 4. Moreover, if the Settlement Administrator is unsuccessful in delivering settlement checks, Class Counsel will take efforts to track down individuals whose settlement distributions total $3,000 or more. *See* Settlement Agreement ¶ 45.c, ECF No. 249-4.

While counsel will update the Court if it receives any objections or opt-outs between the date of filing this document and the final December 1, 2016 deadline for opting out or objection, at this point the response of the Certified Classes to the proposed settlement is overwhelmingly favorable.

In addition, as set forth in the parties' October 11 stipulation and proposed order to send a letter in lieu of class notice (ECF No. 260) and discussed at the November 2, 2016 telephonic status conference in this matter (ECF No. 264), while preparing class notice the Parties discovered that 39 individuals Synthes had previously included on class lists were not, in fact, part of either the Expense or the Deductions Class. Ranahan Decl. ¶ 5. As explained by defense counsel at the status conference, Synthes included on earlier class lists all Sales Consultants who were subject to the deductions policies at issue, but ultimately these 39 people did not have deductions taken before the end of the Class Period and thus were not in the certified classes. *See* Minute Order, ECF No. 264; Prelim. Approval Findings & Recommendations ¶ 3, ECF No. 257 (requiring as part of the class definition for Deductions Class members to have actually had a deduction taken against them); Findings & Recommendations Granting Pl.'s Mot. for Class Cert. 33:7-10, ECF No. 139 (same).[3] The Court on October 13 approved a letter to these individuals explaining that they are not members of either class and allowing them 30 days to submit evidence contradicting this conclusion. *See* Order, ECF No. 261; Class Notice, ECF No. 260-1. On October 14, 2016, the Parties sent out the court-approved letter to these individuals with a 30-day data challenge deadline expiring on November 14, 2016. Donaldson Decl. ¶ 7. As of November 18, 2016, *none* of these individuals have submitted data challenges arguing that they

---

[3] The 39 people identified as not being in the Settlement Class were never subject to the expense policies that Plaintiff challenged here, in the sense that they did not work under a "straight commission" compensation policy, as set forth in the class definition.

should be considered part of the Settlement Class. *See id.*; Ranahan Decl. ¶ 5.[4]

As discussed at the hearing, the total exposure and the value of this settlement overall is not affected by these 39 individuals' non-participation. Plaintiff's calculations were and are based on aggregate exposure, including actual deductions taken and time worked by all Sales Consultants subject to the challenged expense policies specifically cited in the Court's class certification order. Thus, the exposure numbers provided to the Court at preliminary approval and the percentage values of the settlement (63% for the Expense Class and 37% for the Deductions Class) are the same at final approval. The only number that has changed is the average payout per class member, which is now over $17,000 for the smaller number of actual class members.

### III.   KEY TERMS OF THE PROPOSED SETTLEMENT

The key terms of the proposed settlement, set forth in Plaintiff's preliminary approval briefing, are reproduced here for the convenience of the Court.

**$5,000,000 Non-Reversionary Settlement Fund**. The settlement provides for Synthes to make a non-reversionary payment of $5,000,000 to the Classes in settlement of all claims in the case ("Settlement Fund"). Settlement Agreement ¶ 34. In addition to the $5 million Settlement Fund, Synthes will pay the employer's share of state and federal payroll taxes (*e.g.*, FICA, FUTA) on all amounts that are paid to Class Members for unpaid wages. *Id.* ¶ 35.

Class Members will not be required to submit claims or take any other affirmative action to receive their shares of the settlement proceeds; instead checks will be mailed to all Class Members based on the plan of allocation formula. *Id.* ¶ 39. Class Members will share in the settlement on a pro rata basis based on a formula that takes into account their time worked as Sales Consultants subject to the straight commission policies Plaintiff challenged in this case, the dollar amounts of deductions taken as reflected on their paystubs, and whether the Sales Consultant has a potential claim for waiting time penalties as a former employee. *See id.* ¶¶ 39-43.

Settlement Services, Inc. (SSI) is acting as the Settlement Administrator pursuant to the

---

[4] These declarations are intended to satisfy the Court's order that counsel "file a supplemental declaration within seven (7) days of the response deadline advising the Court whether any eliminated class members submitted a written challenge to the revised class list." ECF No. 264.

1  Parties' agreement and the Court's order granting preliminary approval. *Id.* ¶ 29; Findings &
2  Recommendations ¶ 5, ECF No. 257. SSI is an experienced and accomplished class action
3  administrator. It also submitted the lowest of two bids requested by Class Counsel, estimating
4  costs of administration at between $12,600 to $15,000. *See* Worthman Prelim. Approval Decl. ¶
5  23.

6  **Attorneys' Fees and Costs**. As set forth in its fee brief, Class Counsel has applied to the
7  Court for an award of 30% of the Settlement Fund, that is, $1,500,000. This amount is
8  substantially below Class Counsel's lodestar calculated at Class Counsel's litigation rates. *See*
9  Decl. of C. Worthman in Supp. of Pl.'s Mot. for Attorneys' Fees & Costs and Class Rep. Service
10 Award ("Worthman Fee Decl.") ¶¶ 4-5 & Exs. 1-2, ECF No. 265-1. Class Counsel has also
11 applied to the Court for an award of costs of $179,871, which includes expenses for mediation,
12 experts, depositions, and other expenses, plus minor costs incurred between now and the time of
13 distribution estimated to total less than $185,000. *See* Pl.'s Mot. for Attorneys' Fees & Costs and
14 Service Award 1, 13, ECF No. 265. Only those fees and costs awarded by the Court will be paid
15 to Class Counsel from the Settlement Fund. Settlement Agreement ¶ 38. The amount of fees and
16 costs Class Counsel are seeking is discussed in the Class Notice. *See* Class Notice § 6, ECF No.
17 257-1. The settlement is not contingent on Class Counsel receiving the full amount of fees and
18 costs for which they apply. *See* Settlement Agreement ¶ 38.

19 **Service Award**. The Representative Plaintiff, Mr. Lindell, has applied to the Court for a
20 service award of $10,000 in recognition of his service to the Class. He substantially contributed to
21 the success of the case. In addition to regularly providing support to Class Counsel, he faced
22 counterclaims and has contributed substantial time and expense to this litigation. By Mr. Lindell's
23 estimate, he spent over 150 hours on this matter as a Named Plaintiff, including multiple trips
24 from Iowa to California to participate in his deposition and the mediation of this matter,
25 responding to written discovery, meeting and corresponding with Class Counsel regarding the
26 litigation, reviewing documents related to the case, preparing his declarations, and
27 communicating with other members of the Settlement Class regarding the litigation. Worthman
28 Prelim. Approval Decl. ¶ 27; Decl. of T. Lindell in Supp. of Mot. for Award of Attorneys' Fees &

Costs and Class Rep. Service Award ¶ 6. If Mr. Lindell receives a service award, he shall provide Synthes a complete and general release of all known and unknown claims. Settlement Agreement ¶¶ 58-59. The maximum service award requested (i.e. $10,000) represents a very small fraction of the total monetary relief to the Classes and is below the average amount that class members will recover. The amounts that the Representative Plaintiff seeks as service payment is discussed in the Class Notice. Class Notice § 10. The Settlement is not contingent on the Court awarding the service award.

**Payment to the Labor Workforce Development Agency for Claims Under the Private Attorneys General Act**. The settlement provides for an allocation of $50,000 to claims for penalties under the Private Attorneys General Act (PAGA). As required, 75 percent of this amount will be paid to the Labor Workforce Development Agency, or $37,500. The amount set aside is typical of wage and hour settlements and appropriate in light of the risks and inherent discretion of the Court over PAGA awards. *See*, *e.g.*, *Torchia v. W.W. Grainger, Inc.*, No. 1:13-cv-01427-LJO-JLT, 2014 WL 3966292, *2 (E.D. Cal. Aug. 13, 2014) (approving $7,500 of a $10,000 payment to LWDA in $2,750,000 wage and hour settlement). The LWDA payment is discussed in the Class Notice. *See* Class Notice §§ 5-6. Plaintiff is providing notice to the LWDA of this application for approval of the settlement contemporaneously with filing this motion. *See* Ranahan Decl. ¶ 6.

**Distribution of the Net Settlement Fund to the Class Members**. The portion of the Settlement Fund remaining after amounts awarded to Class Counsel for fees and costs, as well as payments to the Representative Plaintiff, the Settlement Administrator, and the LWDA, is calculated to be approximately $3.25 million. Ranahan Decl. ¶ 7. This amount (the Net Settlement Amount) will be distributed among all Class Members who do not opt out. Synthes has identified 186 total Sales Consultants in total who are part of either or both Classes.[5] Ranahan

---

[5] The total number of class members has shifted from the 225 listed in the preliminary approval papers as a result of (1) realizing that one member who had previously opted out had rescinded his opt-out (*see* Stip. & Proposed Order 3 n.1, ECF No. 260); (2) determining that 39 individuals previously included on the Class List were not in fact members of either class (*see id.* at 2:9-12; Minute Order, ECF No. 264); and (3) later discovery that former Named Plaintiff Mark Pope, whom the Court ordered removed from the class, was still included in the final class list (*see* Order Dismissing Mark Pope, ECF No. 50; Ranahan Decl. ¶ 7).

Decl. ¶ 7. The average payment to Class Members will thus be over $17,000. *Id.*

Class Members do not need to take any action to receive their settlement shares. Checks will be mailed to Class Members pursuant to the plan of allocation. Settlement Agreement ¶ 45. If some Class Members do not cash their checks within 180 days after reasonable efforts to find them and encourage them to do so and there are more than three times the costs of administration remaining in the settlement fund, that amount will be redistributed *pro rata* to the participating Class Members who cashed their checks. *Id.* ¶ 44. If such funds do not exceed three times the costs of administration, or after one redistribution has been accomplished, the remaining funds will be paid in accordance with *cy pres* to the Legal Aid Society – Employment Law Center of the San Francisco Bay Area. *Id.*

**Plan for Distributing the Net Settlement Fund Among Participating Class Members**.

The Settlement sets forth a plan to distribute the Net Settlement Amount among participating Class Members on a modified *pro rata* basis. 63% of the Net Settlement Amount will be allocated to the Expense Class and 37% will be allocated to the Deductions Class.[6] For the Expense Class, 90% will be allocated to claims up to and including December 31, 2012, and 10% will be allocated to claims on and after January 1, 2013 (for which Synthes prevailed on summary judgment). Those amounts will be allocated to Class Members based on their pro rata shares of days of employment under Synthes' straight commission policies. For the Deductions Class, 60% will be allocated to deductions damages and 40% to waiting time penalties. Settlement Agreement ¶¶ 39-43. In distributing the deductions damages, deductions up to and including December 31, 2012, the period for which Plaintiff obtained summary judgment, will be given a weight of 1.25. Deductions on and after January 1, 2013, will be given a weight of 1. Distribution will then be pro rata among Deductions Class Members according to their share of total weighted deductions taken. The portion of deductions allocated to waiting time penalties will be distributed evenly among former employees through July 14, 2016.

**Release of Claims**. Under the terms of the Settlement, all Class Members who do not opt

---

[6] As discussed on the November 2, 2016 telephonic status conference, these amounts were derived from total aggregate exposure, and thus do not change as a result of removing individuals from the class list. *See* Minute Order, ECF No. 264; Ranahan Decl. ¶ 5.

out will, by operation of the entry of the Judgment and Final Approval, release Synthes from only those "claims based on the facts alleged in this case asserted on behalf of the classes in the lawsuit . . . ." Settlement Agreement ¶ 56.[7] The Representative Plaintiff, Mr. Lindell, has agreed to a general release and a waiver of rights under California Civil Code § 1542. *Id.* ¶¶ 58-59.

**Opt Out and Objection Rights**. The Notice made clear the rights of Class Members to opt out or object if they so desired. The Settlement provides that Class Members shall have the right to opt out or object within 45 days of the mailing of the Class Notice, and provides clear instructions for how to do so. *Id.* ¶¶ 52-53. As of November 18, 2016, no Class Members have objected or opted out. Donaldson Decl. ¶¶ 6, 8; Ranahan Decl. ¶ 3.

### IV. FINAL APPROVAL IS WARRANTED

**A. Legal Standard.**

In order to approve a settlement that would bind class members, the court must find, after notice and a hearing, that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). This evaluation is done against the backdrop of "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor Erisa Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

Looking to the settlement itself, "[w]hen seeking final approval, plaintiffs may establish a

---

[7] The complete release in the Settlement Agreement, which is precisely coterminous with the claims in the operative complaint, provides that:

> Upon the Final Effective Approval Date and being mailed a Settlement Award payment, the Class Representative and each Settlement Class Member shall release the Released Parties from all claims based on the facts alleged in this case asserted on behalf of the classes in the lawsuit, including, without limitation, (a) the claims for unpaid business expenses under California Labor Code § 2802 and unlawful wage deductions under Labor Code §§ 221, 223, and 300 as well as the Private Attorney General Act penalties under Labor Code § 2698 *et seq.* and the violations of the Unfair Competition Law (Business & Professions Code § 17200) that arise from the claims under Labor Code §§ 2802, 221, 223, 300 and (b) to the extent permitted by law, claims for waiting time penalties under Labor Code §§ 201-03.
>
> Claims for benefits arising under the Employee Retirement Income Security Act ("ERISA") are expressly preserved.

Settlement Agreement ¶¶ 56-57.

presumption of fairness by demonstrating: '(1) [t]hat the settlement has been arrived at [through] arm's-length bargaining; (2) [t]hat sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently; (3) [t]hat the proponents of the settlement are counsel experienced in similar litigation; and (4) [t]hat the number of objectors or interests they represent is not large when compared to the class as a whole." *Trew v. Volvo Cars of N. Am., LLC*, 2007 WL 2239210, *2 (E.D. Cal. Jul. 31 2007) (quoting Alba Conte and Herbert B. Newberg, Newberg on Class Actions § 11:41 (4th ed. 2006)); *see also* Newberg on Class Actions § 13:45 (5th ed. 2014); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, *6 (N.D. Cal. Apr. 1, 2011) (Spero, M.J.) (initial presumption of fairness is usually established if settlement is recommended by class counsel after arm's-length bargaining).

In addition, the Ninth Circuit has identified several factors the district court should consider, as applicable, in reaching its determination of whether a proposed class action settlement is fair, reasonable, and adequate:

> The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625 (numerals added). "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). While "[t]he court must find that the proposed settlement is fundamentally fair, adequate, and reasonable . . . . the court's inquiry is ultimately limited 'to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties.' . . . The court, in evaluating the agreement of the parties, is not to reach the merits of the case or to form conclusions about the underlying questions of law or fact." *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1040-41 (N.D. Cal. 2008) (citation omitted; quoting *Officers for Justice v. Civil Serv. Comm'n of the City*

*and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

B.     **The Settlement Is Entitled to a Strong Presumption of Fairness.**

This Settlement Agreement meets each of the four factors for obtaining a presumption of fairness, and thus merits such a presumption. First, it was "arrived at [through] arm's-length bargaining," facilitated by mediator Michael Dickstein on October 30, 2015 and again on May 6, 2016, followed in both cases by extensive telephonic negotiations. *See Trew*, 2007 WL 2239210, at *2; Settlement Agreement ¶ 9, ECF No. 249-4; Term Sheet, ECF No. 249-5; Worthman Decl. ¶ 20. Participation in mediation "tends to support the conclusion that the settlement process was not collusive." *Dearaujo*, 2016 WL 3549473, at *10 (taking judicial notice of Michael Dickstein's role as mediator as a factor favoring preliminary approval).

Second, "sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently," including extensive written discovery, numerous depositions, expert discovery, and motion practice. *See Trew*, 2007 WL 2239210, at *2; *supra* section II.A.

Third, "the proponents of the settlement are counsel experienced in similar litigation," as demonstrated by the extensive curriculum vitae and experience described in their declarations submitted at the time of preliminary approval, and believe the settlement to be fair, reasonable, adequate, and in the best interest of the Class Members in light of all known facts and circumstances, including the risks of the outcome of trial and appeals as well as delay. *See Trew*, 2007 WL 2239210, at *2; Worthman Prelim. Approval Decl. ¶¶ 3-16, 21-22 & Exs. 3-4, ECF Nos. 249-3, 249-6, 249-7; Decl. of C. Taylor in Supp. of Prelim. Approval ("Taylor Prelim. Approval Decl.") ¶¶ 3-10, ECF No. 249-8; *see also infra* § IV.C.4.

Lastly, "the number of objectors or interests they represent is not large when compared to the class as a whole," given that there have been no objectors to date out of a class of 186 current and former Sales Consultants. *See Trew*, 2007 WL 2239210, at *2; Donaldson Decl. ¶¶ 6, 8; Ranahan Decl. ¶ 3. Accordingly, it merits a presumption of fairness.

C.     **The Settlement Is Fair, Reasonable, and Adequate.**

Regardless of whether the Court determines the presumption of fairness applies, all the relevant factors identified by the Ninth Circuit weigh in favor of settlement approval in this case.

### 1. The Strength of Plaintiff's Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation.

At the time of settlement, Plaintiff had partially succeeded in some claims, partially failed in others, and faced substantial uncertainty as to the remainder. *See supra* section II.A. While Plaintiff believes he has meritorious claims, he is also cognizant that the Classes face significant procedural, liability, and damages risks moving forward, including but not limited to the following: the risks of trial; the risk that the Classes would be decertified at or after trial; the risk of appeal; the risk that the Court or a jury would find the evidence insufficient to justify damages awards in the amounts claimed by the Classes, particularly as to the Expense Class where there is a risk the Court would require individual testimony or evidence to establish damages; the risk that Synthes would prevail on its affirmative defenses; and ultimately the risk that the Classes would recover less than the proposed Settlement or nothing at all. *See* Joint Status Report 2-11, ECF No. 239 (outlining outstanding disputes following summary judgment, including Synthes' intent to renew its motion to decertify the class).

In short, the Settlement provides a substantial and immediate benefit to the class which is "preferable to lengthy and expensive litigation with uncertain results." *Morales v. Stevco, Inc.*, No. 09-00704 AWI JLT, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011).

### 2. The Settlement Amount and Individual Awards Provide Reasonable Compensation for Class Members' Damages.

The $5 million settlement is a substantial economic recovery for the small Classes in this case. The total settlement—as well as the individual awards of an average estimated amount of over $17,000—constitute substantial recoveries. Class Counsel believe that the Settlement provides for a significant portion of the likely recovery were Plaintiff to fully prevail as a Class at a trial on the merits. Worthman Prelim. Approval Decl. ¶ 23. By Plaintiff's Counsel's calculations, the amounts recovered will result in an allocation of about $1.2 million for the Deductions Class—more than 100% of the deductions taken during the Class Period. The allocation for the Expense Class will be over $2 million for the Expense Class, more than 47% of the estimated unreimbursed expenses for the pre-2013 period, or over 30% of total estimated unreimbursed expenses if the post 2013 period for which Plaintiff lost summary judgment is

taken into account. *Id.* ¶¶ 23-25.

Given the procedural, liability and damages hurdles facing them, the total settlement and corresponding *pro rata* awards are very favorable to the Classes. *See, e.g., Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 624 (9th Cir. 1982) ("Of course, the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes."); *Chiaramonte v. Pitney Bowes, Inc.*, No. 06-1507, 2008 WL 510765, at *6 (S.D. Cal. Feb. 25, 2008) (in wage and hour settlement, noting that funds that are "only a fraction of the potential recovery" have been approved; citing approval of 6% of potential recovery).

### 3.    The Large Extent of Discovery Completed and the Late Stage of the Proceedings Favor Approval.

This factor considers whether the parties have gathered "sufficient information to make an informed decision about the settlement." *See*, *e.g., Morales,* 2011 WL 5511767, at *11. Here, given the advanced stage of the proceedings and the extensive discovery completed, (Worthman Prelim. Approval Decl. ¶¶ 18-19) this factor weighs heavily in favor of approval. Moreover, the degree to which the parties understood and litigated their positions is highlighted by the fact that the case settled only after the Court had ruled on the parties' cross-motions for summary judgment and Synthes' motion for decertification, and after multiple mediation sessions.

### 4.    The Experience and Views of Counsel.

Class Counsel are very experienced in class litigation, including in wage and hour cases, as the Court recognized in appointing them at Class Certification, an appointment in confirmed upon granting preliminary approval. Findings & Recommendations Granting Pl.'s Mot. for Class Cert. 20 n.14, ECF No. 139 ("Plaintiff's counsel has a wealth of experience in employment class actions."); Prelim. Approval Findings & Recommendations ¶ 4, ECF No. 257; *see also* Worthman Prelim. Approval Decl. ¶¶ 3-16; Taylor Prelim. Approval Decl. ¶¶ 3-8. Class Counsel's endorsement of the settlement as fair, reasonable, and adequate in light of the risks of further litigation and recommendation that it be approved "is entitled to significant weight, and weighs in favor of settlement." *See e.g. Morales*, 2011 WL 5511767, at *11; *Clesceri*, 2011 WL 320998, at *10.

**5.     The Reaction of the Class Members to the Proposed Settlement.**

As discussed above, the reaction of the class members to the proposed settlement has been overwhelmingly positive. As of November 18, *no* class members have objected to the settlement and *no* class members have opted out. Donaldson Decl. ¶¶ 6, 8; Ranahan Decl. ¶ 3. Only a single class member submitted a data challenge. Donaldson Decl. ¶ 6; Ranahan Decl. ¶ 3. This reaction is far more positive than other class action settlements approved in this district. *See Davis v. Brown Shoe Co.*, 2015 WL 6697929, at *6 (E.D. Cal. Nov. 3, 2015) (collecting cases approving settlements where there were 3 to 30 opt outs).

Moreover, the Settlement Administrator took various steps to ensure class members would receive the notice, including remailing notice packets returned as non-deliverable to the new addresses obtained via Accurint searches and using updated contact information obtained by Class Counsel in its investigation of the case. *See* Donaldson Decl. ¶¶ 3, 9. The lack or any objections or opt-outs is all the more compelling in light of these measures.

## V.     CONCLUSION

In sum, Plaintiff requests that the Court (1) grant final approval of the Settlement; and (2) enter judgment in this matter, all as set forth in the accompanying proposed findings and recommendations.

Dated: November 18, 2016                                    Respectfully submitted,

                                                                                By:     */s/ Darin Ranahan*
                                                                                            Darin Ranahan

                                                                                FEINBERG, JACKSON, WORTHMAN &
                                                                                WASOW LLP

                                                                                *Counsel for Plaintiff and the Certified Classes*